**IN THE WESTERN DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **EVDOKIA NIKOLOVA,** | § | |
| Plaintiff | § | **CIVIL ACTION** |
| | § | |
| **VS.** | § | **NO. 1:19-CV-19-877** |
| | § | |
| **UNIVERSITY OF TEXAS AT AUSTIN,** | § | **JURY REQUESTED** |
| Defendant | § | |

<u>**PLAINTIFF'S ORIGINAL COMPLAINT**</u>

TO THE HONORABLE JUDGE OF THIS COURT:

Evdokia Nikolova, Ph.D., ("Dr. Nikolova" or "Plaintiff") files this Original Complaint against The University of Texas at Austin, ("UT Austin" or "Defendant") and shows the Court and Jury as follows:

<u>**INTRODUCTION**</u>

1.      This is an employment discrimination case.  Defendant UT Austin hired Dr. Nikolova as an assistant professor in the Department of Electrical and Computer Engineering ("ECE Department").  In spite of her outstanding accomplishments recognized by the ECE Department, the School of Engineering, and leading scholars in her field, UT Austin denied tenure to Dr. Nikolova.  Dr. Nikolova is a female who became pregnant during her pre-tenure review period at UT Austin.  UT Austin treated Dr. Nikolova differently requiring her to meet a higher standard than male faculty members, as well as female faculty members who did not become pregnant during their pre-tenure review period of employment at UT Austin.  A UT Austin faculty committee, the Committee of Counsel on Academic Freedom and Responsibility ("CCAFR"), reviewed Dr. Nikolova's tenure case and recommended serious consideration be given to reversing the denial of tenure, as well as citing the need to "conduct a substantial review of gender equity,

1

diversity, and inclusion in the department." Dr. Nikolova attempted to work with UT Austin to resolve this matter without filing a lawsuit but UT Austin refused. Dr. Nikolova brings this suit to help end UT Austin's discriminatory practices and policies against women faculty and employees, including those who want to have a family. She also brings this suit because of the damage to her and her career caused by UT Austin's illegal discriminatory actions.

### JURISDICTION AND VENUE

2.     This action involves a federal question under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et sec., as amended, including the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k). As such, jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(3).

3.     Venue is proper within the Western District of Texas, Austin Division, pursuant to 28 U.S.C. § 1391 because the events establishing the basis for Plaintiff's cause of action occurred within Travis County, Texas in the Western District of Texas, Austin Division.

### JURY DEMAND

4.     Plaintiff requests a jury trial.

### PARTIES

5.     Plaintiff Evdokia Nikolova is an individual who at all relevant times has been employed by Defendant University of Texas at Austin.

6.     Defendant University of Texas at Austin is a governmental entity established under the laws of the state of Texas and that is located in Austin, Texas. Defendant may be served process via its president, Gregory Fenves, via Associate VP for Legal Affairs, Jeffrey Graves, by agreement, at his place of business, FAC 438, Austin, Texas 78713.

2

## EXHAUSTION OF ADMINISTRATIVE REMEDIES
## AND TIMELINESS OF SUIT

7.      Plaintiff filed a Charge of Discrimination within 180 days and 300 days of Defendant's illegal actions concerning her employment.  The Charge was dual filed with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission, Civil Rights Division ("TWC").  On June 19, 2019, Plaintiff received a "Notice of Right to Sue" letter from the EEOC.  This suit is filed within 90 days of Plaintiff's receipt of that notice.

## FACTS

8.      UT Austin recruited Dr. Nikolova to work as a tenure track assistant professor in the Department of Electrical and Computer Engineering (ECE).  She began working at UT Austin in January 2014.  Dr. Nikolova's academic focus includes examining how human risk aversion transforms traditional computational models and solutions.  Her research and scholarship seeks to improve the design and efficiency of complex systems (such as networks and electronic markets), with applications in the areas of transportation and energy.

9.      Dr. Nikolova's degrees include a BA in Applied Mathematics with Economics from Harvard University, an MS in Mathematics from Cambridge University, U.K. and a Ph.D. in Computer Science from MIT.

10.     Before working at UT Austin, Dr. Nikolova was as an assistant professor at Texas A&M for two and a half years, beginning in the fall of 2011.

11.     At and around the time that UT Austin was recruiting, and prior to hiring, Dr. Nikolova, the ECE Department Chair, Dr. Ahmed Tewfik, told Dr. Nikolova that her prior experience as an assistant professor at A&M would count towards her tenure review period and that she would be able to go up for tenure on a normal tenure time clock, which began for Dr.

3

Nikolova in the Fall of 2011.

12.     Normally, assistant professors are considered for tenure in their sixth year, after having completed five academic years as an assistant professor.

13.     UT Austin considered Dr. Nikolova for tenure and promotion in the 2018-2019, her eighth year as an assistant professor and after she had completed seven academic years as an assistant professor; four and a half of which were at UT Austin and two and a half at Texas A&M University.

14.     During her employment at UT, Dr. Nikolova had taken what UT Austin refers to as a "probationary extension" and "modified instructional duty" ("MID") for pregnancy and childbirth, in the 2015-16 academic year.

15.     The probationary extension policy is designed to provide assistant professors whose families have a new child with an additional year during the tenure review period.  The policy applies to both female professors who give birth to a new child, as well as male professors whose spouse gives birth to a new child.  The policy also applies to professors who adopt a child.

16.     The MID policy allows female professors who give birth to a new child, as well as male professors whose spouse gives birth to a new child, to not teach for a semester.  The policy also applies to professors who adopt a child.

17.     UT Austin represents to faculty considering taking the probationary extension or MID that taking either or both will have no negative impact on an assistant professor in the tenure review process.

18.     When Dr. Nikolova was considered for tenure, UT Austin's ECE Department voted almost unanimously in favor of tenure and issued reports that described Dr. Nikolova as an outstanding professor.

19.    In top tier research universities like UT Austin, a primary consideration for tenure is a professor's research accomplishments.

20.    The Budget Council for UT Austin's ECE department, which is made up of all the full professors within the department, issued a report on Dr. Nikolova's research, which found that:

> "Assistant Professor Evdokia Nikolova leads a world-class research program . . . Dr. Nikolova has made foundational contributions in understanding the resulting equilibria, with important implications in many areas, e.g., the design of road tolls. She has a solid publication record, with 30 conference papers and 4 journal papers. Her work has received high recognition in academia (e.g., NSF CAREER Award 2014) and industry (e.g., Google Faculty Research Award 2013). Dr. Nikolova's research accomplishments clearly support her promotion to Associate Professor with tenure.  Her publications and awards amply demonstrate that she is deserving of promotion."

21.    UT Austin also received numerous letters supporting Dr. Nikolova's tenure and promotion from leading scholars in her field of study from other top academic institutions.

22.    UT Austin received a strong letter of support for Dr. Nikolova from Professor Manuel Blum, one the most influential computer scientists in the world, a member of the National Academy of Science, and a recipient of the Turing Award, the highest distinction in computer science, regarded as "the Nobel Prize for computing."

23.    Professor Blum wrote that Dr. Nikolova "is highly regarded in her field. . . . Her research has been published in both high impact journals and peer reviewed conference proceedings. . . . You could not find a better role model for your students."

24.    UT Austin's ECE Department Budget Council also regarded Dr. Nikolova as outstanding in the area of teaching.

25.    The Budget Council report on teaching found that:

> "Dr. Nikolova is passionate about teaching, which comes across to her students and results in a highly effective style. Her teaching record clearly exceeds the expectation for an Assistant Professor in the Department of Electrical and Computer Engineering."

26.     The Budget Council report favorably discussed Dr. Nikolova's "team effort" to improve a "high-demand undergrad course" and found that her undergraduate teaching scores were in line with others who had taught the course.

27.     The Budget Council report on teaching also found that "Dr. Nikolova has contributed in many other ways to the department's teaching mission, including reaching newly enrolling students through Camp Texas and teaching future students through the Edison Lecture Series."  The Edison Lecture Series is a program for high school and middle school students of all backgrounds to help expose them to the fields of engineering and science, as well as to UT Austin.

28.     The teaching report also found that Dr. Nikolova had introduced "two much needed graduate courses . . . filling a . . . gap in formal algorithm instruction in the ECE department."  The report stated that Dr. Nikolova's student teaching evaluation scores in the graduate courses she taught were high.

29.     UT Austin's ECE Department Budget Council also issued a strong report regarding Dr. Nikolova's service to the university and the academic community, stating that, "Prof. Nikolova has made immense contributions to the Department and the University serving in various roles."

30.     The Budget Council found that Dr. Nikolova has "been extraordinarily engaged in professional service to the international academic community via organization of many prestigious workshops."

31.     This professional service included Dr. Nikolova's high-profile role as co-organizer of the Simons Institute's semester on Real-Time Decision Making at the University of California at Berkeley.

32.     Ultimately, the Budget Council stated that "[i]n summary, Prof. Nikolova has performed service to the University and the professional community that is significantly above the

level of an assistant professor."

33.     UT Austin's Chair of the ECE Department also recommended that Dr. Nikolova be granted tenure, stating that, "I strongly endorse her promotion to associate professor with tenure."

34.     The UT Department Chair noted that Dr. Nikolova compared very favorably "to her most prominent peers at the first-tier departments in Electrical and Computer Engineering."

35.     UT Austin's entire ECE Department Budget Council voted almost unanimously in favor of Dr. Nikolova's promotion and tenure, 32 voting "Yes," one voting "No," and two abstentions.   The ECE Department's associate professors (tenured professors who are not full professors) voted unanimously in favor of Dr. Nikolova's tenure with all ten voting "Yes."

36.     After a tenure candidate is reviewed by her or his individual department, the assistant professor is then considered for tenure and promotion by a faculty committee representing the entire "school" in which the department is located. The ECE Department is within UT Austin's Cockrell School of Engineering.

37.     The Cockrell School of Engineering's Tenure and Promotion Committee also unanimously voted in favor of tenure and promotion, with all seven voting "Yes."

38.     After the school's tenure and promotion committee considers a tenure candidate, the dean of the school considers the candidate and makes a recommendation on tenure and promotion.

39.     In spite of the overwhelming support for Dr. Nikolova from the ECE Department and the School of Engineering's Tenure and Promotion Committee, on or about November 20, 2018, UT Austin's Dean of the School of Engineering, Sharon Wood, recommended against what she referred to as Dr. Nikolova's "early promotion" for tenure.

40.     In a written assessment, the Dean stated that "[i]f this were an up-or-out case, I

would likely agree with the recommendation of the Promotion and Tenure committee.  However, Dr. Nikolova is being considered for promotion at UT Austin two years early."

41.     The Dean's referral to Dr. Nikolova's tenure and promotion as "early" was based in part on Dr. Nikolova's probationary extension for her pregnancy, which is not supposed to be used against assistant professors during the tenure review process.

42.     Although taking the probationary extension for childbirth is not supposed to be used against the faculty member, in fact UT applied an even higher standard to Dr. Nikolova because she had taken the additional year during her first pregnancy.

43.     In the Dean's assessment of Dr. Nikolova, the Dean specifically mentioned that Dr. Nikolova became pregnant during the 2015 Fall semester and used this fact in a negative manner as part of the Dean's assessment recommending the denial of tenure.

44.     The probationary extension, the MID policy and other policies and practices applied by UT Austin have the effect of discriminating against female assistant professors and/or those who become pregnant during their tenure review time period compared with other assistant professors.  UT Austin's promotional processes that purport to be facially neutral have been applied in a manner that has resulted in a disparate impact against female faculty and/or pregnant faculty in favor of male or non-pregnant faculty.

45.     Dr. Nikolova also became pregnant with her second child during the 2017 Fall semester. She did not take a probationary extension for the birth of her second child.  Dr. Nikolova did take her one-semester MID for this pregnancy.

46.     The Dean's statement that Dr. Nikolova's application for tenure was "early" also ignored the fact that the UT Austin ECE Department Chair had specifically told Dr. Nikolova at the time she was applying for the position that her prior service as an assistant professor at Texas

8

A&M would be counted towards her tenure and that she would go up for tenure on a normal tenure clock after her fifth academic year.

47.     Dr. Nikolova had completed her seventh academic year as an assistant professor when she went through the tenure review process, two years after most assistant professors are normally considered for tenure.

48.     On or about February 18, 2019, Dr. Nikolova received notification that UT Austin and its president, Gregory Fenves, decided to not approve her application for promotion and tenure.

49.     After the denial of tenure, the Dean of the School of Engineering recommended that Dr. Nikolova not apply for tenure again for another two years, meaning that she would be in her 10th academic year (after completing nine years as an Assistant Professor) by the time she would be considered for tenure again, a time frame in which many faculty are promoted to full professors.

50.     UT Austin treated Dr. Nikolova differently and subjected her to a higher level of scrutiny than it did for male assistant professors, as well as for female assistant professors who had not become pregnant and had not taken the probationary extension leave for pregnancy.

51.     The UT Austin faculty who were given more favorable treatment include at least two male professors in the ECE Department and at least one female professor (who had not been pregnant) within the School of Engineering who in recent years UT Austin had approved for "early" tenure.

52.     UT Austin also awarded tenure to other male professors in the ECE department with less time as an assistant professor than Dr. Nikolova and applied more lenient and favorable standards.

53.     Upon information and belief, UT Austin has 53 tenured faculty members within the

ECE Department.  Of those, 49 are men or 92.5 percent, and only four (7.5 percent) are women.

54.     Since 2013-2014 when Dr. Nikolova first interviewed at UT Austin, on information and belief, nine male assistant professors have gone up for tenure and UT Austin approved tenure or conditional tenure to all of these male professors.

55.     During this same time period, only two women in the ECE Department, including Dr. Nikolova, were candidates for tenure and both women were not awarded tenure or promotion.

56.     During the 2018-2019 academic year when UT Austin considered Dr. Nikolova for tenure, Dr. Nikolova was the only woman among the six promotion candidates from the ECE department.

57.     UT Austin granted promotion to all of the male candidates within the ECE department but denied promotion to Dr. Nikolova, the only female candidate and the only candidate who was pregnant during the tenure review period.

58.     The reasons UT gave for the denial of Dr. Nikolova's tenure and promotion are false, misleading and pretextual.

59.     Dr. Nikolova appealed UT Austin's decision to deny tenure to CCAFR, a faculty committee that reviews tenure decisions.  After reviewing Dr. Nikolova's case, CCAFR listed its concerns with UT Austin's actions and purported justifications for denying Dr. Nikolova tenure. CCAFR stated they were concerned and recommended serious consideration of the reversal of the tenure denial as well as the need to "conduct a substantial review of gender equity, diversity, and inclusion in the department."

## CAUSES OF ACTION
## SEX/PREGNANCY DISCRIMINATION

60.     Dr. Nikolova reasserts and incorporates the allegations contained in this complaint as if fully stated herein.  Each individual cause of action is pled in addition to or in the alternative

to the other claims in this complaint.

61.    Dr. Nikolova was an employee within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 2000e et seq., as amended ("Title VII").

62.    UT Austin is an employer within the meaning of Title VII.

63.    UT Austin violated federal law, including Title VII by discriminating against Dr. Nikolova because of her sex (female) and pregnancy.  Title VII, 42 U.S.C. § 2000e(k), specifically provides that discrimination because of sex includes, but is not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes.  UT Austin's discrimination included disparate treatment and a disparate impact, including the characterization of Dr. Nikolova's tenure application as "early," the denial of tenure and promotion to Dr. Nikolova, the way UT Austin and the ECE department disparately treat, employ, evaluate, promote, and retain male and female faculty and female faculty that are pregnant, who take a probationary extension or MID for pregnancy during their pre-tenure review period as assistant professors, and in other terms and conditions of employment.

## DAMAGES

64.    As a result of UT Austin's violations of law, including Title VII, Dr. Nikolova has suffered actual damages in the form of lost wages and benefits (past and future).  Dr. Nikolova has also suffered compensatory damages, including loss of standing in the community, damage to reputation, loss of career advancement, emotional pain and suffering, loss of enjoyment of life, mental anguish and other losses.  As a result of UT Austin's violations of law, Dr. Nikolova requests the Court to enter an order for all actual, economic, compensatory, and other damages or remedies, equitable, statutory or otherwise, and attorney fees, expert fees, expenses and costs, that

Dr. Nikolova proves are appropriate.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Dr. Nikolova respectfully prays that UT Austin be cited and called to answer, and that on final judgment Dr. Nikolova be granted relief under Federal law, including:

a)     Damages for lost wages and benefits, past and future;

b)     Compensatory damages;

c)     Damages for damage to reputation, emotional distress and mental anguish, past and future;

d)     Equitable remedies, including tenure and promotion;

e)     Attorney fees, expert fees, expenses and costs of suit;

f)     Interest allowed by law;

g)     General damages;

h)     Special damages;

i)     An order requiring UT Austin to change and cease using its employment and tenure policies to discriminate against female employees generally, as well as those who become pregnant.

i)     Such other and further relief that is proven to be appropriate.

Respectfully submitted,

CREWS LAW FIRM, P.C.
701 Brazos, Suite 900
Austin, Texas 78701
(512) 346-7077
(512) 342-0007 (Fax)
schmidt@crewsfirm.com


By:    /s/   Robert W. Schmidt
Robert W. Schmidt
State Bar No. 17775429
Joe K. Crews
State Bar No. 05072500


        /s/ Robert Notzon
Robert Notzon
The Law Office of Robert Notzon
Texas Bar No. 00797934
1502 West Avenue
Austin, Texas 78701
(512) 474-7563
(512) 852-4788 facsimile

**ATTORNEYS FOR PLAINTIFF**