EXHIBIT B

United States District Court
Southern District of Texas
FILED

MAR 2 7 2015

David J. Bradley, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

Juan Espinoza, Omar Garza, Antonio Naranjo,　§
Roel Olivares and Alberto Reyes　　　　　　　§
　　　　Plaintiffs　　　　　　　　　　　　　§
　　　　　　　　　　　　　　　　　　　　　§
VS.　　　　　　　　　　　　　　　　　　　§　　CIVIL ACTION NO. 1:14-cv-00115
　　　　　　　　　　　　　　　　　　　　　§
San Benito Consolidated Independent School　§
　　　　Defendants　　　　　　　　　　　　§

## PLAINTIFFS' FIRST AMENDED COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COME** Juan Espinoza, Omar Garza, Antonio Naranjo, Roel Olivares and Alberto

Reyes, Plaintiffs, complaining of and about San Benito Consolidated Independent School

District, SBCISD, and for cause of action show unto the Court the following:

## A. PARTIES

1.　Plaintiff, Juan Espinoza, hereinafter Espinoza, is a citizen of the United States and the

State of Texas and resides in Cameron County, Texas.

2.　Plaintiff, Omar Garza, hereinafter Garza, is a citizen of the United States and the State of

Texas and resides in Cameron, Texas

3.　Plaintiff, Antonio Naranjo, hereinafter Naranjo, is a citizen of the United States and the

State of Texas and resides in Cameron County, Texas.

4.　Plaintiff, Roel Olivares, hereinafter Olivares, is a citizen of the United States and the

State of Texas and resides in Cameron County, Texas.

5.　Plaintiff, Alberto Reyes, hereinafter Reyes, is a citizen of the United States and the State

of Texas and resides in Cameron County, Texas.

6.     Defendant, San Benito Consolidated Independent School District, hereinafter SBCISD, has appeared and answered.

## B. JURISDICTION

7.     The claims asserted in this suit arise under the rights guaranteed by the Fair Labor Standards Act (FLSA}, 29 U.S.C. §201, the Equal Pay Act 29 U.S.C. §206(d), 29 U.S.C. §215, 29 U.S.C. §216, 29 U.S.C. §541.3(b)(1), 29 U.S.C. §541.3(b)(2),  29 U.S.C. §541.3(b)(3),  29 U.S.C. §541.3(b)(4),  42 U.S.C. §1983, 1st Amendment of the U.S. Constitution,  Article 3 of the U.S. Constitution, the Texas Whistleblower Act, the Texas Constitution, and rights arising under Texas law. Therefore, this Court has jurisdiction because the claims asserted involve Federal Questions, pursuant to 28 U.S.C. §1331.

8.     This Court has supplemental jurisdiction over state law claims discussed below under 28 U.S.C. Section 1367(a) because they arise out of the same operative facts, case or controversy.

## C.  VENUE

9.     Venue is proper in this district under 28 U.S.C. §1391(b), because SBCISD resides in Texas and the events complained of occurred in San Benito, Cameron County, Texas.

## D. FACTS

### *Plaintiff Backgrounds*

10.     Plaintiffs are each employees as defined by 29 U.S.C. §203(e)(1).  SBCISD is an employer as defined by 29 U.S.C. 203(d).

11.     Plaintiffs Espinoza, Garza, Naranjo, Olivares and Reyes work for SBCISD as police officers as non-exempt salaried employees regularly working more than forty (40) hours a week, yet they receive *less* than half of their pay for overtime hours rather time and one-half.

2

12.     Plaintiff Espinoza has worked for SBCISD as a police officer for eleven (11) years and his salary is $32,962.00.

13.     Plaintiff Garza has worked for SBCISD as a police officer for fourteen (14) years and his salary is $33,308.00.  Garza has been a Sergeant for seven (7) years, an investigator for twelve (12) years and a firearms instructor for twelve (12) years.  He receives no additional pay or stipends for any of these titles.

14.     Plaintiff Naranjo has worked for SBCISD as a police officer for twelve (12) years and currently makes $33,308.00.

15.     Plaintiff Olivares has worked for SBCISD as a police officer for thirteen (13) years and his salary is $33,308.00.

16.     Plaintiff Reyes has worked for SBCISD as a police officer for thirteen (13) years and his salary is $34,550.00.  He has been a Sergeant for ten (10) years and an investigator for approximately seven (7) years.

17.     Plaintiffs perform numerous tasks, including but not limited to the following:

   a.  Patrol assigned campuses and routes (walking or driving) within district jurisdiction;

   b.  Respond to all calls from campuses concerning crisis situations, accidents and reports of crime

   c.  Investigate all criminal offenses that occur within the jurisdiction of the district

   d.  Collect and preserve evidence for criminal investigations including witness statement and physical evidence

   e.  Arrest perpetrators, file appropriate charges and ensure placement in jail or junvenile detention centers for law violations as necessary

f.  Write effective, legal incident reports

g.  Testify in court as needed and

h.  Provide security at any events required on the weekends such as football games, parades and other school activities

### *Complaints to United States Department of Labor*

18.     All Plaintiffs always questioned how they were being paid.  On multiple occasions, Plaintiffs formally complained to Police Chief Santiago R. Garcia, hereinafter Chief Garcia, and SBCISD Superintendent Antonio Limon, hereinafter Superintendent Limon, about how SBCISD was improperly paying them for overtime, how they were misclassified and how they were not being given credit for the amount of years they were employed with SBCISD.  Plaintiffs finally filed a formal complaint, once they realized neither Superintendent Limon nor Chief Garcia intended on doing anything about the situation.

19.     In March, 2012, on behalf of all Plaintiffs, Olivares and Reyes formally complained to the United States Department of Labor, regarding the fact that Plaintiffs were being paid incorrectly.  They informed the Department of Labor that they were receiving less than half time pay for overtime work, rather being paid time and one half.  They also complained about the way SBCISD misclassified them as exempt, that they were not being given credit for the amount of years they were employed with SBCISD, they were required to be on call twenty-four (24) hours a day and that they did not get a work free lunch.

20.     On or about June 1, 2012, Plaintiffs Olivares and Reyes notified Chief Garcia and Superintendent Limon that they collectively filed a complaint against SBCISD with the United States Department of Labor for being paid incorrectly because they were receiving less than half

time pay for overtime work, rather time and one half, for being misclassified as exempt, for not being given credit for the amount of years they were employed with SBCISD, for requiring them to be on call twenty-four (24) hours a day and for not getting a work free lunch. Although Superintendent Limon and Chief Garcia admitted that Plaintiffs were not being paid properly, they told Plaintiffs to deal with it and that the "system" is "the way it is" because it was devised by former CFO Lorenzo Sanchez.

### *Vacation time/Sick leave violation*

21.    On or about July 15, 2012, while out on vacation, Lieutenant Juan Sosa, hereinafter Lt. Sosa, showed up to Plaintiff Olivares' house. Lt. Sosa told Plaintiff Olivares that Chief Garcia was requiring Plaintiff Olivares to take two extra weeks off during the summer and that Plaintiff Olivares would be forced to make those days up in the 2012-2013 school year, without pay. Plaintiff Olivares told Lt. Sosa he was a salaried employee and did not want to owe eighty (80) hours and therefore would instead use his annual sick time. Lt. Sosa told Plaintiff Olivares he could not do this. Lt. Sosa told Plaintiff Olivares that Chief Garica was ordering him to owe the hours whenever they requested him to do so during the school year. Olivares advised Lt. Sosa that requiring him to owe hours was wrong and he used his sick leave to cover time he did not work, as he did not want to work eighty (80) hours for free during the 2012-2013 year.

22.    In November, 2012, Lt. Sosa advised Plaintiff Olivares that they were not going to require the other officers to make up any hours but that Olivares would *not* get back his sick leave he used but he promised he would talk to Garcia anyway. Lt. Sosa later told Plaintiff Olivares he did not tell Chief Garcia everything Olivares says because Garcia would get mad and

retaliate. Plaintiff Olivares was not reimbursed for the 2 weeks he was forced to use his sick leave.

### *Work days and yearly pay reduced*

23.    On August 1, 2012, each Plaintiff received a letter from Superintendent Limon, advising them that their positions were being changed from a 226 day schedule to a 187 day schedule, and that August 1 was their last day on the 226 day schedule. He told them to report back to work on August 20, 2012.

24.    This salary reduction resulted in a lost of about $8,000 to each Plaintiff's salary. Not only did Superintendent Limon reduce the number of days worked, but he reduced Plaintiffs' hourly rate, which resulted in a bigger deficit. Superintendent Limon did so, even though the new calendar year began on July 1, 2012.

25.    Superintendent Limon informed Plaintiffs that this was done because the SBCISD Board of Trustees wanted him to fire two officers but Superintendent Limon was trying to save their jobs. However, SBCISD Board members informed Plaintiffs that Superintendent Limon was never instructed to fire any officers, that he was never told to make budget cuts, especially to the police department's police officers, and that they never met with Superintendent Limon at all prior to Limon making these changes to Plaintiffs' salaries. Board members confirmed that Superintendent Limon took it upon himself to cut their salaries. During this time, the Board put Superintendent Limon in control and gave him policy-making authority over SBCISD's budget policies, and therefore, he could do as he pleased with complete authority and *without* Board approval.

6

26.     Further, secretary Celina Lopez Gonzalez, hereinafter secretary Gonzalez, informed Plaintiffs that she had informed both Chief Garcia and Superintendent Limon that they were spending $88,000.00 on unnecessary crossing guards and to cut them.  Normally these crossing guards work four (4) hours a day.  However, Chief Garcia was using some of them full-time, even though the majority of them do not speak English and had no degrees, certifications or qualifications to do anything else.

27.     Meanwhile, both Chief Garcia and Lt. Sosa maintained their current salary and schedule. Garcia continued to make $63,489.00 and Sosa continued to make $42,757.00.  It is important to note that Garcia has ten (10) years of experience and Sosa has 14 years experience with SBCISD.  Almost all Plaintiffs earn significantly less and have been employed by SBCISD for a longer period of time.

28.     During this time, Superintendent Limon gave Margarita Greer, the Federal Programs Director, a $12,000.00 pay raise from $77,000.00 to $90,000.00 annually.

29.     In addition, Superintendent Limon authorized the hiring of twenty-six additional security personnel, while simultaneously telling Plaintiffs that he could not afford to pay them.  It is important to note that security personnel are neither authorized nor licensed to carry a weapon and therefore, could not conduct the everyday duties of police officers.

30.     On November 8, 2012, the Board changed local municipal policy to disallow Superintendent Limon from hiring or firing contract employees, but did not alter the his municipal policy-making authority to hire and fire non-contract employees.  A board member confirmed that this was because Superintendent Limon hires his friends and those in his inner

circle but fires those that he no longer likes or who cross his path. This was even conveyed to Plaintiffs by Chief Garcia.

31. On November 29, 2012, the Board voted unanimously to give every employee in the district a $500.00 bonus, due to a surplus in the budget. Plaintiffs were surprised at this "surplus," because of Defendant Limon's contention that Plaintiffs' salaries had to be reduced as there were insufficient funds to pay their salaries.

32. Plaintiffs again complained to both Superintendent Limon and Chief Garcia about the following violations of the FSLA:

   a. Plaintiffs were required to be on call twenty-four hours a day;

   b. Plaintiffs were required to work while on lunch break but were not paid for the hour they worked;

   c. Plaintiffs were required to regularly work more than forty (40) hours a week and were compensated at a rate of half time rather than time and a half for each hour worked over forty in a given work-week and Plaintiffs never agreed to receive half time pay;

   d. Plaintiffs questioned why security was getting time and one-half for overtime when the police officers were getting half-time

   e. SBCISD has misclassified Plaintiffs as exempt, when in reality they are non-exempt; and

   f. Plaintiffs were forced to take off time during the summer, although they did not want to take this time off, and in return they were forced to "owe" Chief Garcia the hours, for free, at any point during the school year, when requested by Chief Garcia. This "policy" had been communicated to Plaintiffs by both Chief Garcia and his right hand man, Lt. Sosa.

*Complaints to the District Attorney's Office, filing of formal grievance and retaliation*

33.    On or about December 1, 2012, Plaintiffs Garza and Reyes spoke to one of the head prosecutors with the District Attorney's Office.   At this time, both Plaintiffs informed this prosecutor that they were being forced to break the law at the request of Chief Garcia and Superintendent Limon.  Plaintiffs complained about the following:

a. Chief Garcia threatened Plaintiff Reyes and told him there would be consequences against him for being a witness in a sexual harassment complaint against Chief Garcia by one of the female security officers.  Plaintiff Reyes notified Chief Garcia that he felt like he could not do his job in taking down reports for anyone who complained against Chief Garcia;

b. Plaintiff Reyes informed Chief Garcia about Superintendent Limon's interference with an investigation regarding drugs, because Limon knew the parents of the juvenile suspect. Chief Garcia told Plaintiff Reyes to file the case away and stop the investigation at the request of Limon.   In a supplemental report, Reyes documented in the file that he was stopping the investigation at the request of Superintendent Limon and Chief Garcia, because he did not want to get in trouble down the road.   A few days after filing the supplement report, Plaintiff Reyes asked Secretary Gonzalez, for a copy of the file, and the supplemental report had been removed.

c. Plaintiff Reyes reported to Chief Garcia that head of security, Alex Zamora, hereinafter Zamora, and was stealing gasoline from the District for his personal use. Chief Garcia told him to take a statement from the employee witness Jeremiah Orta, hereinafter witness Orta. After the statement was taken from witness Orta, Chief Garcia fired witness Orta and

Zamora was neither arrested nor punished. Since then others have reported Zamora stealing gasoline and he remains at the District.

d. Plaintiff Reyes was told to falsely arrest a male student solely because he was Honduran and Chief Garcia did not want him at the district anymore. Plaintiff Reyes reported the case immediately to the District Attorney's Office, and was told not to arrest the student. Superintendent Limon met with then Board Member, Oscar De La Fuente, and they put pressure on Chief Garcia to get Plaintiff Reyes to make the arrest because the student was Honduran. Plaintiff Reyes again advised Chief Garcia that he would not arrest the student as his peace officer's license would be on the line. In retaliation, Chief Garcia transferred Plaintiff Reyes out of investigations and evidence and to the less desirable and less prestigious VMA campus. Chief Garcia told Plaintiff Reyes that in the future he needs to do what he is told and not ask any questions. Lt. Sosa confirmed that Plaintiff Reyes was transferred because he did not agree to break the law.

e. Plaintiff Garza informed prosecutor Sorrell about the presence of band director, a.k.a. "Freddy Love," at the Berta Cabeza campus soliciting children online and that he had already been arrested by Harlingen PD for the same thing on or about September 2012. Ruben Franco, hereinafter Franco, told Garza they had a report of this same teacher soliciting female students at Miller Jordan Middle School. Garza was instructed to take a report and investigate. During his investigation, Plaintiff Garza made contact with the parents of one child in particular, and they informed him they wanted to file charges against this teacher. A few days later, Plaintiff Garza received a call from Chief Garcia notifying him that Superintendent Limon was ordering that the investigation be dropped.

f.  After providing this prosecutor this information, the District Attorney's Office got directly involved and indicted on over one-hundred (100) charges of online solicitation. "Freddy Love" has since passed away from a massive heart attack.  Superintendent Limon and Chief Garcia had actual notice of Plaintiff's reports to the District Attorney's office and said office's subsequent involvement.

34.     Plaintiffs again contacted the United States Department of Labor, around this time, to find out what happened with their investigation.  They were informed that nothing had been done, but that they would begin a formal investigation soon.

### *Retaliation for filing internal FLSA complaints*

35.     In December 2012, Plaintiffs filed an internal DGBA grievance pursuant to the SBCISD policy manual against Superintendent Limon and Chief Garcia.  Chief Garcia and Superintendent Limon do not like Plaintiffs complaining about wage issues and the working conditions.   Prior to Plaintiffs filing their DGBA grievance and in response to Plaintiffs' complaints, Chief Garcia routinely threatened Plaintiffs that they are "at-will employees" and "[they] could get rid of [them] for any reason."  Chief Garcia has specifically told Plaintiffs, "you make waves, we get rid of you." He regularly told Plaintiffs that they were the "bastard children" of the District and they will get whatever "crumbs" the higher administrators do not want.  This is reflected in the way Plaintiffs are paid, because the Police Department's secretary, Celina Lopez Gonzalez, hereinafter Secretary Gonzalez, makes the same amount of money as Plaintiffs, $33,308.00, and she gets paid time and one-half for all over time worked.

36.     Chief Garcia informed Plaintiffs on multiple occasions that they had better listen to him and do (or not do) whatever he tells them or they will suffer retaliation for not abiding by his

threats. Also, Chief Garcia played a game he called "fuck-fuck," and he told Plaintiffs that if any of them did something against him, he would do something in retaliation against them.

**_Retaliation for FLSA complaints at internal grievance hearing_**

37.    On January 22, 2013, Plaintiffs' DGBA grievance against Superintendent Limon and Chief Garcia came to be heard.   During this hearing, Plaintiffs provided evidence of the following:

   a.  Plaintiffs' complaints with the U.S. Dept. of Labor;

   b.  Plaintiffs Reyes' and Garza's reports they made to the District Attorney's Office about how they are being forced to break the law and their oaths as certified peace officers and

   c.  Chief Garcia and Superintendent Limon's interference with Plaintiffs' investigations and every day duties and that both instructed Plaintiffs to "look the other way" when a particular crime was committed.

38.    During that hearing, the attorney for SBCISD, Leslie McCollom, hereinafter McCollom, stated the following on the record:

> "I can assure [you] that San Benito Consolidated ISD does not consider its police officers to be exempt from the FLSA identified in any of the administrative professional exception.   And you are at-will employees.   That is the district's position."

39.    During the grievance, Plaintiff Garza got emotional and choked up a few times. Immediately following grievance, the hearing officer, Celeste Sanchez, hereinafter Sanchez, went to lunch with Franco and Defendant Garcia.   That afternoon, Chief Garcia ridiculed Plaintiff Garza over the police radio, for all to hear, by commenting that he was out buying Kleenex for some officers who can't control their emotions.   The only people present during the grievance were Plaintiffs, hearing officer Sanchez and counsel for Plaintiffs.   SBCISD attorney

McCollom attended via telephone. It is evident, that hearing officer Sanchez notified Chief Garcia of what occurred at the hearing and what was said by Plaintiffs.

40.     Not long after their grievance hearing, SBCISD retaliated again against Plaintiffs Garza, Olivares and Naranjo. Garza was forced out of investigations and evidence and was demoted to a small rural school in the country, which had never required a Police Officer before. Plaintiff Olivares was moved to a rural school as well, to serve as a security guard. Prior to the grievance, Plaintiff Naranjo used to pick up his unit at the River Side School and clock in there, which is less than a quarter mile away from his house. After the grievance, Plaintiff Naranjo was ordered to pick up and drop off the unit at the high school, and drive all the way to the Police Department to clock in, rather clock in at the high school. Plaintiff Naranjo was forced to spend $100.00 of his own money, each month, on fuel, because of this retaliatory rule Garcia created. This also required a lot more work and time he was not being paid to do. This rule was not enforced with any other officer.

41.     Superintendent Limon then gave Officer Norma Martinez, hereinafter Officer Martinez, a raise and increased her salary to $35,808.00 from $33,308.00, even though she had less experience than Plaintiffs and did not hold the job titles possessed by other officers, specifically Plaintiffs Reyes and Garza.

42.     On February 19, 2013, the Board of Trustees voted to reduce Superintendent Limon's municipal purchasing authority from $25,000.00 to $5,000.00. Board member Rodriguez said this was necessary because the Board did not balance the budget at the right time for the 2012-2013 school-year. Board member Aguilera stated to the San Benito Newspaper, "[i]f you have to cut something (from any department), start at the top. As a board member I want budget

13

guidance." She also said, "[t]he budget is ours (board's) to make sure everything is right." Board member Cruz was upset that the Board needed to take on extra responsibilities and quoted to the San Benito Newspaper, "[w]e don't run the district. Mr. Limon does."

### *Internal Grievance process finds noncompliance with FLSA*

43.     On April 12, 2013, hearing officer Sanchez, issued her opinion with regards to Plaintiffs' DBGA grievance. She ruled against Plaintiffs on every issue except one. After reviewing the District's pay records for Plaintiffs for the months of July, August, September and October 2012 (which are the only pay records she pulled and attached to her decision), Sanchez made the finding that Plaintiffs have "raised substantial questions regarding the adequacy of the compensation they have received for overtime work under the FLSA, and may have raised some substantial questions as to whether their time records have been properly adjusted for times they have worked when they had clocked out on the District's time clock, including for lunch periods." Hearing officer Sanchez further held that defendant SBCISD was in violation of requiring Plaintiffs to work through their lunch hour.

44.     Hearing officer Sanchez went on to say that it was not until after the grievance hearing that SBCISD was informed that SBCISD's method of calculating plaintiffs' overtime compensation did not appear to conform to other employment practices of the District and the FLSA.

45.     Hearing officer Sanchez stated that District Staff have been directed by Superintendent Limon to review all police officers' time records, leave and absence records, and pay records, and to assemble this data as requested by District counsel, for the 2010-2011, 2011-2012 and 2012-2013, school years, so that District counsel can get with Plaintiff's counsel and make the

determination as to what back pay is owed. Her conclusion stated that she was granting Plaintiffs this relief and that action will be taken by the District Administration with this decision.

46.     Plaintiffs appealed hearing officer Sanchez's decision on all other matters wherein they were not granted relief. SBCISD and Plaintiffs agreed to postpone the hearing while the U. S. Department of Labor finished its investigation and while the District compiled all the data ordered by Sanchez.

### *SBCISD temporarily removes Superintendent Limon and Chief Garcia*

47.     On May 23, 2013, the SBCISD Board voted to place Limon on administrative leave with pay pending an investigation into some of Plaintiffs' complaints and concerns. They voted to hire Interim Superintendent Alfonso Obregon, hereinafter Interim Obregon.

48.     Interim Obregon moved Plaintiff Garza back to investigations in June, 2013, in response to the District Attorney's Office request that Plaintiff Garza remain on the "Freddy Love" case as lead investigator. As a result, Garza was permitted to work during the summer.

49.     On July 18, 2013, the SBCISD Board approved a $96 million budget with the first employee pay raises in three (3) years. There was a $14.5 million fund balance and $3.8 million in funding came from state. From that money, $3.4 million of that was going to give a 4% raise to teachers and clericals and a 3% to non-teaching professionals. A $1000.00 retention incentive would be paid to 1,708 employees at Christmas. They did not address the decision to cut police department's work days from 226 to 187 which resulted in a $7,000.00 to $8,000.00 slash in Plaintiff's salaries.

50.     Emma McCall, hereinafter McCall informed the Board that non-teaching professionals,

15

which Plaintiffs are considered, would get a raise of about $1,900.00. Plaintiffs never received a raise and are still making the same amount of money. (Plaintiffs complained numerous times to McCall about their wages, classification, raises (or lack thereof), but she never would get back to them with a response or explanation).

51.     On August 20, 2013 Plaintiffs had a hearing in front of the Board in executive session. All issues brought up at the Level III hearing of the DBGA grievance with Sanchez were reiterated to the Board. In addition to this, Plaintiffs brought up the fact that they were still being paid incorrectly and counsel for the District had not provided Plaintiff's counsel the assembled data and had not returned phone calls about paying Plaintiffs what they were owed. To this day, Plaintiffs are still not being paid time and one-half for overtime hours and Plaintiffs have not received this "extensive data excel sheet" counsel Kevin O'Hanlon, hereinafter O'Hanlon, and the District put together, although ordered by the Board.

52.     Obregon refused to help Plaintiffs or address their concerns with Chief Garcia and Superintendent Limon retaliating against them and their grievance issues, as he did not want to get involved in "politics" and did not want to ruin his chances of working elsewhere in the future.

53.     The Board did not take any action that night, and on September 10, 2013, the Board denied Plaintiffs any relief. Furthermore, they did not address the issue of when (or if) Plaintiffs would be paid the money owed, as ordered by Sanchez.

54.     The Board hired an second interim superintendent, Dr. Ismael Cantu, hereinafter Cantu, after Obregon resigned. He began work on or about December 1, 2013 and promised he was going to get SBCISDs to pay what they owed in over-time wages, that the District would start

paying them correctly and that he was going to get their schedules changed back to 226 days.

55. On January 17, 2014, interim Superintendent Cantu demoted Chief Garcia, his reason being that it was for the "safety and security" of the District. That same day, Cantu promoted Plaintiff Naranjo to interim chief and gave him a small stipend, which increased his salary to approximately $49,000.00. Meanwhile, Chief Garcia, who was *officially* demoted, kept his pay of $63,489.00.

56. Shortly after his demotion, Chief Garcia heard over the radio that Plaintiff Garza was at a bus accident scene with another officer. Although Chief Garcia had no business going over there, he did so anyway. He walked up to Plaintiff Garza and threatened him by saying, "This isn't over."

57. Plaintiff Garza received a crime stopper tip regarding employee maintenance director, David Garcia, and another individual in the maintenance department, Juan Gabriel Lopez, who is the brother of Police secretary Gonzalez. Multiple witnesses accused them of stealing cabinets, paint, lumber, tires and welding stuff from the department. Plaintiff Garza began his investigation and interviewed approximately thirteen (13) employees, who all gave statements about the thefts occurring. Garza informed Cantu, who suspended both, pending the investigation.

58. During his tenure, Interim Cantu did everything he could to fix Superintendent Limon's wrongs. He informed Plaintiffs that they were being paid incorrectly and he was working with McCall to get their pay fixed. He also Cantu informed Naranjo that there was no reason for Limon to ever cut the number of days Plaintiffs worked and there was no reason to ever reducing their salary. He stated that police officers are an integral necessity for school districts during the

17

summer *and* that there was plenty of money in the budget to pay their salaries and there was never a fund issue. Because of this, Cantu put Plaintiffs back on a 226 day calendar, effective immediately.

### *SBCISD reinstates Superintendent Limon and Chief Garcia - Retaliation Resumes*

59.     On May 20, 2014, the new Board majority, voted to remove Limon from administrative leave and reinstate him as Superintendent.

60.     Immediately upon his return, on June 4, 2014, Superintendent Limon informed Plaintiff Naranjo would no longer supervise Garcia and that Garcia would be under Limon's sole control, on a "special assignment."

61.     Later that day, Garcia told Naranjo that Superintendent Limon was having Garcia do an internal investigation on the police department. Police secretary Gonzalez told Naranjo that the investigation was going to be from 2009 to present day. Garcia requested all information from January, 2014 to June, 2014. Plaintiff Naranjo instructed secretary Gonzalez to require Garcia to make every request in writing, but Secretary Gonzalez told Plaintiff Naranjo that Superintendent Limon gave her a directive to give Garcia any information he needed.

62.     On June 5, 2014, Garcia began questioning security guards, specifically about Plaintiffs Garza and Olivares.

63.     That same day, Superintendent Limon also instructed Plaintiff Garza to stop the investigation into David Garcia and Juan Gabriel Lopez and the thefts in the maintenance department. Superintendent Limon stated he wanted to "get caught up" on the investigation.

64.     Also, on that same day, Plaintiff Garza was overseeing qualifications for the officers and their weapons, as ordered by TECLOSE. Garcia refused to do his qualifications. Garcia does

not even carry a weapon licensed by the school district and has always refused to do so.

65.     With that being said, on June 10, 2014, Superintendent Limon recommended to the Board that Garcia be placed back as Chief.   The new board majority voted to approve Limon's recommendation.

66.     On June 11, 2014, Superintendent Limon officially reinstated Garcia as Chief of Police. He also officially demoted Plaintiff Naranjo, even though he told him that everyone said what an excellent chief he was and that he had done a very good job *but* he was being moved back down and his salary was going back to $33,308.00.

67.     That same day, Plaintiff Garza asked now Chief Garcia if he could get back to working on the investigation about the maintenance department.   Plaintiff Garza was given a letter by Lt. Sosa, signed by Chief Garcia, informing him that this investigation was going to be handled by "administration."

68.     By June 12, 2014, Juan Gabriel Lopez was brought back to work at the maintenance department and David Garcia was reinstated as Director of Maintenance.   Since being reinstated, David Garcia has retaliated against some employees who gave official statements to Garza. David Garcia is aware of this information because of the fact that he is Superintendent Limon's "compadre" and Limon had the entire file on his desk.   This employee was demoted from master plumber, where he had worked for over fifteen (15) years to a painter, even though he has never been assigned or hired to paint for SBCISD.   Prior to being demoted, employees warned this employee that David Garcia was going to "fuck everyone that gave a report" against him.

69.     Chief Garcia has since then instructed Plaintiff Naranjo to inform Plaintiff Garza to finish up any investigations, because he is going to transfer him out of investigations and to a smaller

19

and less desirable school. Currently, Plaintiff Garza has been re-assigned to Miller Jordan Middle School.

70.     On or about July 2, 2014, Plaintiffs received a memo from Garcia instructing them to turn in all evidence and police reports to secretary Gonzalez. Plaintiff Garza told Lt. Sosa that secretary Gonzalez was not an officer and she has no business handling evidence. Plaintiff Garza also told Lt. Sosa that the chain of custody would be affected and would therefore, taint the evidence and ruin their criminal cases. Lt. Sosa told Plaintiff Garza this was an order from Chief Garcia and that Plaintiff Garza needed to sign off that he received the memo.

*After lawsuit filed, chief Garcia attempts to make amends*

71.     On or about September 11, 2014 at about 8:40 a.m., Plaintiff Naranjo was at Ed Downs Elementary in the school cafeteria, talking to San Benito Police Chief Martin Morales and Plaintiff Olivares. SBCISD Chief Garcia entered the cafeteria and sat at their table. At that time, Chief Garcia told Chief Morales that the officers at SBCISD were still not getting paid time and one-half for overtime hours worked, even though he has spoken to the District about this.

72.     Since the new Superintendent, Dr. Marc Puig, took over in January, 2015, Chief Garcia has conveyed to Plaintiffs on multiple occasions that he has met with Superintendent Puig and will continue to talk with Superintendent Puig regarding the fact that Plaintiffs are not being paid correctly. Chief Garcia even told Plaintiffs, after a police meeting, that he is now willing to testify on their behalf that Plaintiffs are still being paid incorrectly.

## E. CAUSES OF ACTION

## COUNT 1:  Violation of the Fair Labor Standards Act ("FLSA")

73.     Plaintiffs incorporate by reference all factual allegations of paragraphs above as though

fully set forth at length herein and assert that the same are moving factors which have resulted in the violations of the FLSA.

74.     FLSA requires that "no employer shall employ any of his employees…for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified t a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. §207(a)(1); 29 CFR pt 778 (DEA LEGAL).  Plaintiffs performed work for which they were not compensated and Plaintiffs regularly work overtime and are paid less than half-time, rather time and one-half.  SBCISD failed to compensate Plaintiffs for all compensable hours and SBCISD failed to pay overtime at time and one-half. SBCISD's failure to properly administer payroll and failure to properly classify Plaintiffs violates the overtime provisions of the FLSA.  SBCISD's failure to correct the misclassification of Plaintiffs and pay them correctly was done knowingly and willfully in violation of the FLSA.

### a.  _Overtime Wages: Off the Clock Work_

75.     During the period of the plaintiffs' employment with SBCISD, SBCISD has willfully engaged in unlawful conduct by failing to record all of the time that SBCISD has required, suffered, and permitted the plaintiffs to work.  By failing to record all compensable time under the FLSA, SBCISD has failed to pay Plaintiffs required overtime for work in excess of forty hours per week. SBCISD has engaged in this unlawful conduct by requiring employees to work "off the clock" and not record/report their time for such work. All Plaintiffs were required to work during lunch and Plaintiff Naranjo was not allowed to clock in when picking up his police

unit. Plaintiff Naranjo was forced to drive an extra thirty minutes before being allowed to clock in. The same goes for him clocking out.

### b. *Overtime Wages; Employee Misclassification*

76. Unbeknownst to Plaintiffs, and throughout Plaintiffs' employment with SBCISD, SBCISD has wrongfully classified Plaintiffs as exempt from overtime wages for FLSA purposes. Plaintiffs' duties do not qualify under any of the recognized exemptions to the FLSA. Thus, SBCISD has misclassified Plaintiffs and, due to such misclassification, has failed to pay Plaintiffs overtime to which Plaintiffs are entitled for work performed in excess of forty (40) hours each week of his employment.

### c. *Willful Violation of Law*

77. DEA Local Policy for SBCISD acknowledges that the Board of Trustees has delegated to Superintendent Limon the policy making authority to decide compensation, wage, salary, pay increases and that he is the one who classifies whether employees are exempt or non-exempt. Limon acknowledged to Plaintiffs that they were being paid incorrectly as far back as June, 2012. In addition, Superintendent Limon was aware of the grievance, hearing officer Sanchez' findings and McCollom's statement about Plaintiffs not being classified as exempt employees. He purposely disregarded all of this evidence. He not only refused to pay them back-wages *but* he continued to pay Plaintiffs the same way.

78. Plaintiffs can recover three years of unpaid wages for willful violations, pursuant to 29 U.S.C. §255 (a). SBCISD's conduct is willful and SBCISD knew or showed reckless disregard to the fact that paying Plaintiffs' half-time was prohibited by law. *Singer v. City of Waco, Tex.*, 324 F.3d 813 (5th Cir. 2003). SBCISD's failure to pay the plaintiff as required and as specified

above was a willful violation of law, in that SBCISD was aware that its conduct and pay practices violated the Fair Labor Standards Act.  In addition to this, SBCISD's former Counsel, O'Hanlon, told Chief Garcia that SBCISD is paying Plaintiffs and other police officers incorrectly and they should be receiving time and a half.  Garcia brought this up to Superintendent Limon in December, 2012 at a cabinet meeting. Employees of SBCISD within the finance department have admitted that they are unsure of the "method" SBCISD is paying Plaintiffs, especially since security guards were getting paid time and one-half.  In addition, Plaintiffs commented that they do not understand why the secretary of the Police Department, Secretary Gonzalez, is making more money than Plaintiffs, especially due to the time and a half that she gets paid.

### d.  *Violation of FLSA Anti-Retaliation provision 29 U.S.C. 215(a)(3)*

79.    Plaintiffs incorporate by reference all factual allegations of paragraphs above as though fully set forth at length herein and assert that the same are moving factors which have resulted in the violations of the FLSA.

80.    SBCISD violated 29 U.S.C. §215(a)(3), which prohibits an employer to retaliate against any employee who has opposed any unlawful employment practice.  After filing a complaint with the United States Department of Labor, and after Plaintiffs informed Chief Garcia and Superintendent Limon of their complaint, Plaintiffs suffered retaliation.  Plaintiffs suffered constant harassment, trepidation from SBCISD's threats, their salaries were cut, their hourly wage was reduced, their number of days working were reduced, a few of the Plaintiffs suffered demotions, some were placed in less prestigious positions within the department and all of them were passed over for the possibility of a promotion and/or raise.  SBCISD overtly treated

Plaintiffs differently than others in the police department.  In addition, SBCISD blatantly favored others within the District at the same pay grade level, such as the security officers and police department personnel, in both treatment and pay.

81.     Plaintiffs were participating in protected activity under the FLSA; they suffered adverse employment actions; and there is a causal link between the adverse employment actions and Plaintiffs' complaints about SBCISD's violations of the FLSA.  SBCISD had actual notice of Plaintiffs written and oral complaints and assertion of rights under the FLSA.  Plaintiffs seek recovery of all unpaid compensation, liquidated damages, punitive damages, equitable relief, and attorney's fees for SBCISD's violation of the anti-retaliation provision pursuant to 29 U.S.C. §216(b).


## COUNT 2:  Equal Pay Act, 29 U.S.C. §206(d)

82.     Plaintiffs incorporate by reference all factual allegations of paragraphs above as though fully set forth at length herein and assert that the same are moving factors which have resulted, are a moving force and/or producing cause in the violations of Plaintiffs' Constitutional protections.

83.     Throughout their employment at SBCISD, Plaintiffs have performed and continue to perform work equal in skill, effort and responsibility to the work of certain female employees, specifically Martinez.  Garza and Reyes perform work on a higher level than Martinez. Although all three are Sergeants, Garza and Reyes hold additional job titles.  See paragraphs 13 and 16, which details their experience and additional duties.  In addition, Martinez has less experience than Plaintiffs and has been with the District as a police officer for less time than

24

Plaintiffs, yet was promoted to "Sergeant" and given a raise. Plaintiffs Espinoza, Naranjo and Olivares were all passed over for said promotion. Martinez does not perform any tasks or duties different than them, yet makes more money and holds a title. This constitutes a violation of 29 U.S.C. 206(d)(1).

## COUNT 3: 42 U.S.C. 1983

84.     Plaintiffs incorporate by reference all factual allegations of paragraphs above as though fully set forth at length herein and assert that the same are moving factors which have resulted in the violations of Plaintiffs' Constitutional protections.

85.     The Civil Rights Act, codified as 42 U.S.C. § 1983, provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C. § 1983.

86.     During the times and on the occasions described above and herein, employees of SBCISD, those engaged by SBCISD and each member of the SBCISD Board of Trustees acted in their official capacities.

87.     During all times and on the occasions described above and herein, Superintendent Limon, Chief Garcia, Lt. Sosa, Sanchez, Taubert, McCall and each member of the SBCISD Board of Trustees in their official capacities, were acting under color of the laws and regulations of SBCISD and State of Texas.

88.     During all times and on the occasions described above and herein, the SBCISD conspired to deprive Plaintiffs of their respective constitutional and legal rights under the First Amendment to the U.S. Constitution in violation of 42 U.S.C. §1983. See *Waters v. Churchill,* 511 U.S. 661,

667 (1994); *Myers v. Hasara,* 226 F.3d 821, 825-26 (7th Cir. 2000). Each of the aforementioned individuals in Plaintiffs' Complaint, in their official capacities, performed various overt acts, as described above and herein, in furtherance of their conspiracy.

89.     More particularly, but not exclusively, Plaintiffs complained to Superintendent Limon, Chief Garcia, Lt. Sosa, hearing officer Sanchez, McCall and Joyce Taubert of the Human Resources Depart, and eventually to the SBCISD Board of Trustees and the Cameron County District Attorney's office about the harassing, and retaliatory treatment they endured for asserting their First Amendment Right.  Each act described in Plaintiffs' Complaint is a distinct example of harassment and retaliation against Plaintiffs by SBCISD.  And although each act is in and of itself a violation of Plaintiffs' First amendment right as guaranteed by the United States Constitution, together the acts establish a pattern and practice, a custom and policy by SBCISD to harass and retaliate against Plaintiffs. These acts, individually or together, are also prohibited by §1983.

90.     Supervisors, Superintendent Limon and Chief Garcia, were at all relevant times, final policymakers at the SBCISD, with oversight responsibility for the police department, and were personally and directly involved in the violation of Plaintiffs' civil rights.  Said policy making authority was delegated to these individuals by Defendant SBCISD.  These individuals were responsible for municipal policies relating to the hiring, terminating, training, supervision, demotion, transfers, payment and discipline of the Plaintiffs, other officers.  The actions of the foregoing individuals constitute policy.

91.     Each of the aforementioned individuals, therefore, had actual knowledge of the nature of their acts and of their conspiracy. Their acts constituted a persistent, widespread practice of these

officials and employees of SBCISD. This custom, pattern and practice is so common and well-settled as to constitute a policy, practice and custom of SBCISD. These individuals were acting in their official capacities as administrators, directors, and their acts therefore, were performed under color of state law. Therefore, SBCISD had actual or constructive knowledge of the facts comprising Plaintiffs' respective causes of action. Further, SBCISD ratified each of the acts complained of above and herein.

92. The SBCISD is further liable under 42 U.S.C. § 1983 for failing to supervise and train its superintendent and police chief, and for overlooking and covering up the misconduct of these two policy-making individuals. In addition, the SBCISD had a general policy, pattern and/or practice of not disciplining superintendent and police chief for their conduct, thereby sanctioning the actions of these two individuals, which amounted to a departmental policy of overlooking constitutional violations. The SBCISD's failure to supervise and train its superintendent and police chief, and the SBCISD's willful blindness towards the constitutional violations of its these two individuals, constitute deliberate and conscious indifference to Plaintiffs' rights including the right to free speech as applied through 42 U.S.C. Sections 1983 and 1988. .

93. Additionally, SBCISD is liable under 42 U.S.C. § 1983 for constitutional torts that were committed pursuant to a policy, procedure, practice, or custom of the municipality. Even if the SBCISD's practice of overlooking constitutional torts was not authorized by an officially adopted policy, the practice may be so common and well-settled that it fairly represents official policy. *See Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397 62. In the present case, the SBCISD's formal and informal actions in overlooking and/or encouraging the misconduct of its superintendent and its police chief reflect a policy, practice custom and procedure of suppressing

and punishing Plaintiffs' free speech that violated the civil rights of Plaintiffs. Consequently, the City is liable for harm caused to others, such as Plaintiffs, as a result of its policies, practices customs and procedures.

94.     The nature of the policy custom and/or practice developed, fostered and perpetuated within SBCISD discouraged employees from publicly discussing any matter that suggested that the SBCISD was not following State and/or Federal law.  Chief Garcia and Lt. Sosa specifically told Plaintiffs that they were going to be fired for "making waves" and not doing exactly what Garcia wants (¶¶ 21-22).   As Plaintiffs spoke publicly about these public concerns, they were increasingly subjected to harassment and retaliation as set forth above and herein. The exercise of these established policies and customs resulted in the violation of Plaintiffs' right of free speech and of association. See 42 U.S.C. §1983; *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 936-37 (1982).  Harassment, if pervasive and severe, creates an actionable claim.

### a.   *First Amendment Retaliation*

95.      In order for Plaintiffs to establish a claim for retaliation based on the exercise of their First Amendment rights, each Plaintiff herein must prove the following four elements, (1) that she suffered an adverse employment action; (2) that she spoke as a private citizen (as opposed to a public employee) on a matter of public concern; (3) that her interest in the speech outweighed the government's interest in the efficient provision of public services; and (4) that her speech precipitated the adverse employment action. See *Modica v. Taylor,* 465 F.3d 174, 179-80 (5th Cir. 2006).

96.     The facts alleged in Plaintiffs' Original Complaint, although not exclusive, establish each element of Plaintiffs' causes of action for retaliation based on First Amendment speech.

97.     Plaintiffs' actions and statements involved a matter of political, social, or other concern and are constitutionally protected under the First Amendment. Furthermore, Plaintiffs' interest in their respective actions and statements outweighs any interest of SBCISD in promoting the efficient operation and administration of government services. See *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205,* 391 U.S. 563, 568-70 (1968); *Myers,* 226 F.3d at 825-28.}

98.     Plaintiffs' actions and speech were a substantial and motivating factor in SBCISD's decision to harass Plaintiffs. SBCISD acted intentionally and/or with deliberate indifference to chill plaintiff's speech, discredit them by damaging their reputations, and punish them for exercising their free-speech rights. See *Waters*, 511 U.S. at 672-73; *Pickering,* 391 U.S. at 568-70*; Myers,* 226 F.3d at 825-28.

99.     When speaking out on their concerns of SBCISD instructing Plaintiffs to violate the law regarding police investigations and other situations concerning their badge, Plaintiffs were speaking as private citizens.  Plaintiffs have a vested interest in their peace officer certificate and they took an oath when sworn in.  By SBCISD ordering Plaintiffs to violate the law, Plaintiffs had no other recourse but to voice their concerns to a higher authority.

100.     SBCISD has a custom, policy and practice to retaliate against employees who do not obey the rules of Superintendent Limon and Chief Garcia as well as those in their inner circle.

101.     Harassment, ridicule, hostility, threats, demotions, pay cuts, transfers, pay decreases, unpaid overtime work and refusal to promote are all acts of adverse employment action, and SBCISD was aware of both superintendent Limon's and Chief Garcia's behavior and how they retaliate against employees.  Yet, nothing was done to remedy, rectify or even slightly alleviate these adverse employment actions.  In speaking up about problems (some of them legal

problems) that SBCISD was involved in, each Plaintiff was speaking as a private citizen on a matter of public concern. In each instance, Plaintiffs identified, described, criticized and in many instance offered solutions to alleviate the legal and ethical problems that SBCISD was committing, even though Plaintiffs were not required to do so. Plaintiffs' interests in speaking out far outweighs any plausible explanation of SBCISD's interest in the efficient provision of services because the Plaintiffs were going above and beyond their normal job duties and delving into repeated attempts to correct injustices created and perpetuated by SBCISD. Plaintiffs' speech in each instance precipitated the adverse action by SBCISD.

## COUNT 4: CIVIL CONSPIRACY

102. Plaintiffs incorporate by reference all factual allegations of paragraphs above as though fully set forth at length herein and asserts that the same are moving factors which have resulted in, and/or been a moving force or producing cause of, the violations of the Texas Whistleblower Act.

103. Defendant SBCISD is further liable for civil conspiracy. A civil conspiracy is a combination by two or more persons whose goal is to accomplish an unlawful purpose or a lawful purpose by unlawful means. *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996). Plaintiffs have plead sufficient facts to show that (1) two or more persons; (2) with an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) committed one or more unlawful, overt acts; (5) that proximately resulted in damages. See *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005); *Boales v. Brighton Builders, Inc.*, 29 S.W.3d 159, 164 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). The acts and inferences drawn from acts of defendant SBCISD and its policymakers, as described hereinabove, satisfy each of the

evidentiary requirements of law to hold Defendant SBCISD liable for this cause of action.

## COUNT 5:  WHISTLEBLOWER VIOLATION

104.    Plaintiffs incorporate by reference all factual allegations of paragraphs above as though fully set forth at length herein and asserts that the same are moving factors which have resulted in, and/or been a moving force or producing cause of, the violations of the Texas Whistleblower Act.

105.    Plaintiffs would show that the aforementioned conduct constitutes a willful and blatant violation of the Texas Whistleblower Act, Chapter 554, Section 554.001 TEX. GOV'T. CODE, which prohibits a governmental entity from retaliating or otherwise discriminating against a public employee, who in good faith reports a violation of law to an appropriate enforcement authority.

106.    Plaintiffs clearly established rights under the Texas Whistleblower Act were violated by Defendant SBCISD when it took adverse employment actions against them after Plaintiffs reported violations of law to the Cameron County District Attorney's Office.   Plaintiffs complained to the District Attorney that Superintendent Limon and Chief Garcia were violating the criminal laws of the State of Texas in that they were tampering with government records, obstructing justice and tampering with evidence.

107.    Defendant, including Superintendent Limon and Chief Garcia, had actual knowledge of Plaintiffs' actions in reporting violations of law prior to retaliating against Plaintiffs.

108.    As a direct and proximate result of Defendant's wrongful conduct, Plaintiffs have and will continue to suffer economic damages, emotional damages, embarrassment, humiliation, loss of professional opportunities, as well as damage to their reputation, mental anguish, loss of

enjoyment of life, attorney's fees and costs associated with filing suit.

## F. RATIFICATION

109.    Whenever in this complaint it is alleged that SBCISD did any act or thing, it is meant that the SBCISD's officers, agents, servants, employees or representatives did such act and/or that at that time such act was done, it was done with the full authorization or ratification of SBCISD or was done in the normal and routine course and scope of employment of SBCISD's officers, agents, servants, employees, or representatives; and that SBCISD and SBCISD Board of Trustees effectively "rubber-stamped" the actions of the SBCISD officers, agents, administrators and employees. Such is the custom and practice if SBCISD.

## G. DAMAGES

110.    Plaintiffs sustained the following damages as a result of the actions and/or omissions of SBCISD and are entitled to recover the following elements of damages to the fullest extent allowed by law.

  a.      Plaintiffs recover compensatory damages and an equal amount of liquidated damages in an amount equal to the unpaid minimum wages and overtime compensation recovered pursuant to 29 U.S.C. §216(b) and §206(d);

  b.      Plaintiffs seek compensation for all lost wages and benefits, plus prejudgment interest at the prevailing rate;

  c.      Plaintiffs are entitled to post-judgment interest on all sums, including attorney fees and costs awarded in this suit;

  d.      Expert fees as the Court deems appropriate;

  e.      Prejudgment interest;

f.        Appropriate back-pay and other benefits lost;

g.        All reasonable and necessary costs incurred by or on behalf of Plaintiffs and

h.        Attorney's fees, costs and expenses.

## H.  SPECIFIC RELIEF/REQUEST FOR INJUNCTION

111.    Plaintiffs seek the following specific relief which arises out of the actions and/or omissions of SBCISD described hereinabove and also pray that the Court issue a permanent injunction against the SBCISD ordering it to:

a.        Cease engaging in unlawful employment practices;

b.        Promote Plaintiffs to the position and pay grade to which Plaintiffs should have been promoted but for the unlawful employment actions of SBCISD if applicable;

c.        Reinstate Plaintiffs to the position and pay grade which Plaintiffs held but for the unlawful employment actions of SBCISD if applicable;

d.        Provide all benefits to which Plaintiffs were entitled but for the unlawful employment actions of SBCISD if applicable;

e.        Reinstate Plaintiffs to the position of seniority which Plaintiffs held before the unlawful employment actions of SBCISD if applicable;

f.        Institute guidelines, policies and procedures that comply with the Fair Labor Standards Act; and

g.        That the Court issue a declaratory judgment that SBCISD's acts, policies and procedures complained of herein violated provisions of the Fair Labor Standards Act and that SBCISDs be enjoined from further violations of said act.

## I.  ATTORNEY'S FEES

112. Plaintiffs are entitled to attorney's fees and costs pursuant to 42 U.S.C. §1983, 1988, 29 U.S.C. 216

## J. DEMAND FOR JURY TRIAL

113. In the above styled and numbered cause, Plaintiffs demand a jury trial.

## K. PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs respectfully pray that the SBCISD be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiffs against SBCISD, jointly and severally, for damages in an amount within the jurisdictional limits of the Court; exemplary damages, together with interest as allowed by law; costs of court; and such other and further relief to which the Plaintiffs may be entitled at law or in equity.

Respectfully submitted,

**LAW OFFICE OF STAR JONES**

By:     ___/s/ Star Jones_____
        Star Jones
        Attorney-in-charge
        State Bar No. 24062810
        Federal ID No. 964890
        P.O. Box 1179
        Olmito, Texas 78575
        Telephone:    (956) 371-0061
        Facsimile:     (956) 284-0426
        lawofficeofstarjones@gmail.com

**Law Office of Eddie Lucio**

By:     _/s/ Eddie Lucio_____

34

Eduardo 'Eddie' Lucio
State Bar No. 00791145
Federal ID No.
914 E. Van Buren St.
Brownsville, Texas 78520
Telephone:      (956) 546-9400
Facsimile:      (956) 750-8807

ATTORNEYS FOR PLAINTIFFS