UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| EVDOKIA NIKOLOVA,  §<br>　　*Plaintiff*　　　　　　　　§<br>　　　　　　　　　　　　　　§<br>**v.**　　　　　　　　　　　　§<br>　　　　　　　　　　　　　　§<br>THE UNIVERSITY OF TEXAS　§<br>AT AUSTIN,　　　　　　　　§<br>　　*Defendant*　　　　　　　§ | CIVIL NO. 1:19-CV-00877-RP |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

**TO: THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE**

Before the Court are Defendant's Motion to Partially Dismiss Plaintiff's First Amended Complaint for Lack of Subject Matter Jurisdiction and for Failure to State a Claim (Dkt. 22), filed July 15, 2020; Plaintiff's Response (Dkt. 24), filed July 29, 2020; and Defendant's Reply (Dkt. 25), filed August 5, 2020. On November 2, 2020, the District Court referred the motion and related filing to the undersigned Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

### I.　　General Background

In January 2014, The University of Texas at Austin ("UT Austin") hired Plaintiff Evdokia Nikolova, Ph.D.[1] as a tenure-track assistant professor in the Electrical and Computer Engineering Department ("ECE Department") in the Cockrell School of Engineering. Nikolova's academic focus includes "examining how human risk aversion transforms traditional computational models

---

[1] Nikolova has a Bachelor of Arts in Applied Mathematics with Economics from Harvard University, a Master of Science in Mathematics from Cambridge University, and a Doctor of Philosophy in Computer Science from Massachusetts Institute of Technology.

and solutions." Nikolova's First Amended Complaint, Dkt. 21 ¶ 8. Before working at UT Austin, Nikolova was an assistant professor at Texas A&M University.

Tenure-track assistant professors at UT Austin generally are considered for tenure in their sixth year of service. Assistant professors, however, are permitted to apply for an extension of their tenure track probationary period for certain personal circumstances, such as illness, disability, pregnancy and childbirth, and childcare issues. If granted, the probationary extension adds an additional year to the tenure review period.

During the 2015-16 academic year, Nikolova gave birth to her first child. She applied for and was granted a probationary extension to her tenure review period. She also applied for and was granted a modification of instructional responsibilities, allowing her not to teach in the classroom for one semester. Nikolova gave birth to her second child in the 2017-18 academic year, and applied for and was granted a one-semester modification of her instructional responsibilities. Nikolova, however, did not seek an extension of her tenure track probationary period.

In the 2018-19 academic year, UT Austin considered Nikolova for tenure and promotion. Nikolova alleges that the ECE Department "voted almost unanimously in favor of tenure and issued reports that described Dr. Nikolova as an outstanding professor." *Id.* ¶ 21. Nikolova further alleges that the Cockrell School of Engineering's Tenure and Promotion Committee also unanimously voted in favor of tenure and promotion, with all seven members voting "Yes." *Id.* ¶ 37. Nevertheless, on November 20, 2018, UT Austin's Dean of the School of Engineering "recommended against what she referred to as Dr. Nikolova's 'early promotion' for tenure." *Id.* ¶ 40. Nikolova alleges that the Dean stated that "[i]f this were an up-or-out case, I would likely agree with the recommendation of the Promotion and Tenure committee. However, Dr. Nikolova is being considered for promotion at UT Austin two years early." *Id.* ¶ 41. Nikolova contends that

2

the Dean's referral to her tenure and promotion as "early" was based in part on Nikolova's probationary extension for her pregnancy, "which is not supposed to be used against assistant professors during the tenure review process." *Id.* ¶ 42. Nikolova further avers that the Dean's recommendation "specifically mentioned that Dr. Nikolova became pregnant during the 2015 Fall semester as part of her reasoning to deny tenure to Dr. Nikolova." *Id.* ¶ 44.

On February 18, 2019, UT Austin's President, Gregory Fenves, notified Nikolova that she had been denied tenure. After the denial of tenure, Nikolova alleges that the Dean advised her not to apply for tenure again for another two years, "meaning that she would be in her 10th academic year (after completing nine years as an Assistant Professor) by the time she would be considered for tenure again, a time frame in which many faculty are promoted to full professors." *Id.* ¶ 50.

Nikolova alleges that UT Austin's probationary extension and modification of instructional responsibilities polices "have the effect of discriminating against female assistant professors and/or those who become pregnant during their tenure review time period compared with other assistant professors." *Id.* ¶ 45. Nikolova further avers that UT Austin treated her differently and subjected her to a higher level of scrutiny than it did male assistant professors, as well as female assistant professors who had not become pregnant and had not taken probationary extension leave for pregnancy. Nikolova complains that UT Austin also awarded tenure to other male professors in the ECE Department who had less time as working as assistant professors than Nikolova, and applied more lenient and favorable standards to those male professors.

Nikolova emphasizes that UT Austin has 53 tenured faculty members within the ECE Department: 49 men (92.5 percent) and four women (7.5 percent). She alleges that since 2014, nine male assistant professors have been reviewed for tenure, and all were granted tenure. During the same time period, Nikolova contends, only two women in the ECE Department – including

Nikolova – were candidates for tenure, and both were denied tenure. Nikolova further alleges that, among the six candidates for promotion in the ECE Department during the 2018-19 academic year, she was the only woman and the only one denied tenure.

Nikolova appealed UT Austin's decision to deny her tenure to the Committee of Counsel on Academic Freedom and Responsibility, a university faculty committee that reviews tenure decisions. Nikolova alleges that after the committee reviewed her case, it "stated they were concerned and recommended serious consideration of the reversal of the tenure denial as well as the need to 'conduct a substantial review of gender equity, diversity, and inclusion in the department.'" *Id.* ¶ 60. UT Austin did not reverse it its decision. Thereafter, Nikolova filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission's Civil Rights Division ("TWC"). Nikolova received her "Notice of Right to Sue" letter from the EEOC on June 19, 2019.

On September 9, 2019, Nikolova filed this employment discrimination suit against UT Austin, alleging (1) sex and pregnancy discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 2000e, and the Texas Commission on Human Rights Act ("TCHRA"), Chapter 21 of Texas Labor Code; (2) retaliation, in violation of Title VII and the TCHRA; and (3) a violation of the Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1).

In its Partial Motion to Dismiss, UT Austin seeks to dismiss Nikolova's TCHRA discrimination and retaliation claims under Federal Rule of Civil Procedure 12(b)(1) based on sovereign immunity, and Nikolova's Equal Pay Act claims for failure to state a plausible claim for relief under Federal Rule of Civil Procedure 12(b)(6).[2]

---

[2] UT Austin has not moved to dismiss Plaintiff's discrimination and retaliation claims under Title VII.

## II.     Legal Standards

**A. Rule 12(b)(1)**

Federal district courts are courts of limited jurisdiction and may exercise only such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States," and over civil cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and in which diversity of citizenship exists between the parties. 28 U.S.C. §§ 1331, 1332.

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject matter jurisdiction as a defense to suit. A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161.

**B. Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up). The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### III.   Analysis

The Court considers in turn UT Austin's arguments under Rule 12(b)(1) and Rule 12(b)(6).

**A. Plaintiff's TCHRA Claims**

UT Austin argues that Nikolova's TCHRA claims are barred by sovereign immunity. Nikolova agrees, and does not object to the dismissal of her TCHRA claims under Rule 12(b)(1). Dkt. 24 at

1 ("Plaintiff does not contest Defendant's motion to dismiss Plaintiff's state claw claims, specifically Plaintiff's claims of discrimination and retaliation under the Texas Commission on Human Rights Act, Chapter 21, Texas Labor Code."). Accordingly, UT Austin's Motion to Dismiss Nikolova's state law claims under the TCHRA should be granted.

### B.  Plaintiff's Equal Pay Act Claims

The Equal Pay Act ensures "the principle of equal pay for equal work regardless of sex." *Corning Glass Works v. Brennan*, 417 U.S. 188, 190 (1974). The act prohibits an employer from paying different wages to employees based on their sex for jobs that require "equal skill, effort, and responsibility" and are "performed under similar working conditions." 29 U.S.C. § 206(d)(1).

> Congress' purpose in enacting the Equal Pay Act was to remedy what was perceived to be a serious and endemic problem of employment discrimination in private industry—the fact that the wage structure of "many segments of American industry has been based on an ancient but outmoded belief that a man, because of his role in society, should be paid more than a woman even though his duties are the same."

*Corning Glass Works*, 417 U.S. at 195 (quoting S. Rep. No. 176, 88th Cong., 1st Sess., 1 (1963)).

To establish a prima facie case under the Equal Pay Act, a plaintiff must show that "(1) her employer is subject to the Act; (2) she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) she was paid less than the employee of the opposite sex providing the basis of comparison." *Badgerow v. REJ Props., Inc.*, 974 F.3d 610, 617 (5th Cir. 2020). Once a plaintiff has made her prima facie case by showing that an employer compensates employees differently for equal work, the burden shifts to the defendant to

> prove by a preponderance of the evidence that the wage differential is justified under one of the four affirmative defenses set forth in the Equal Pay Act: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor than sex.

*Siler-Khodr v. Univ. of Texas Health Sci. Ctr. San Antonio*, 261 F.3d 542, 546 (5th Cir. 2001).

UT Austin argues that Nikolova has failed to allege sufficient facts to meet the second element of her prima facie wage discrimination claim. Specifically, UT Austin argues that Nikolova has alleged only "conclusory" allegations and has failed to provide "any description of her purported comparators roles and responsibilities" or alleged facts "sufficient to create the reasonable inference that she and specific comparators performed jobs with equal skill, effort, and responsibility." Dkt. 22 at 5. Notably, UT Austin does not argue that Nikolova's job is not substantially similar to those of her comparators, but simply that she has failed to allege sufficient facts to support her claim.

As noted, the second element of a prima facie case of wage discrimination requires Nikolova to show that "she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions." *Badgerow,* 974 F.3d at 617. Thus, Nikolova must show that "her job requirements and performance were substantially equal, though not necessarily identical, to those of a male employee." *Reznick v. Associated Orthopedics & Sports Med., P.A.*, 104 F. App'x 387, 390 (5th Cir. 2004) (citing 29 C.F.R. § 1620.13(e)); *see also Hodgson v. Behrens Drug Co.*, 475 F.2d 1041, 1049 (5th Cir. 1973) ("Congress in prescribing 'equal' work intended to codify a remedial measure which requires not that jobs be identical, but only that they must be substantially equal."). The Act "necessarily requires a plaintiff to compare her skill, effort, responsibility and salary with a person who is or was similarly situated." *Jones v. Flagship Int'l*, 793 F.2d 714, 723 (5th Cir. 1986). "Whether two jobs require equal skill, effort, and responsibility, and are performed under similar working conditions is a factual determination." *Connor v. Office of Atty. Gen. of Texas*, No. A-14-CV-961 LY, 2015 WL 1004304, at *2 (W.D. Tex. Mar. 5, 2015) (internal quotation marks omitted). Because job duties vary widely, "[t]hese issues must be decided on a case-by-case basis under the facts of each case." *Hodgson*, 468 F.2d at 1258.

In support of her wage discrimination claim, Nikolova's "Violation of Equal Pay Act" claim in her First Amended Complaint alleges the following:

> In spite of being similarly situated to other male assistant professors in the ECE Department and performing the same job with equal skill, effort and responsibility, Defendant UT Austin compensated Dr. Nikolova less than all other similarly situated male assistant professors.
>
> On information and belief, Dr. Nikolova is the second lowest paid assistant professor in the ECE Department, and has been paid less than all her male colleagues hired at the same time as or before her, and lower than all but one hired after her.

Dkt. 21 ¶¶ 88-89.

In her First Amended Complaint, Nikolova further alleges that she worked as a tenure-track assistant professor in the ECE Department (*id.* ¶ 1); led "a world-class research program" and had "a solid publication record" (*id.* ¶ 21); was an outstanding teacher whose "courses were in line with others who had taught the course" (*id.* ¶ 27); had been compared "very favorably to her most prominent peers at the first-tier departments in Electrical and Computer Engineering" by the Department Chair (*id.* ¶ 35); and was treated differently than "at least two male professors in the ECE Department" (*id.* ¶ 52).

The Court finds that Nikolova's allegations are sufficient to state an EPA wage discrimination claim that is plausible on its face. *Ashcroft*, 556 U.S. at 678. Nikolova has alleged sufficient facts to show that her job duties were substantially similar to male professors in her department and that she was paid less than those professors. That is all that is required to state a prima facie claim for relief for wage discrimination under the EPA at this stage of the proceedings. *Id.*; s*ee also Connor*, 2015 WL 1004304, at *2 (finding that plaintiff's allegations were sufficient to state a prima facie case of wage discrimination where plaintiff alleged that her job duties were substantially similar to male attorneys in her division and that she was paid less than those male attorneys).

Although UT Austin complains that Nikolova has failed to specifically identify a comparator by name, it has not cited any Supreme Court or Fifth Circuit precedent requiring a plaintiff to identify a comparator by name at the pleading stage. In fact, courts in this Circuit have found the opposite, even at the summary judgment stage. *See Dunn v. Apache Indus. Servs.*, No. CV 17-12777, 2020 WL 4674424, at *4 (E.D. La. Aug. 12, 2020) (rejecting defendant's argument that plaintiff failed to adequately identify comparator where plaintiff alleged that she was a painter who was paid less than "other male co-workers (who were also painters)"). In addition, as one district court has noted, "there is nothing about Federal Rule of Civil Procedure 8 which requires the naming of names." *Marziano v. Cty. of Marin*, No. C-10-2740 EMC, 2010 WL 3895528, at *9 (N.D. Cal. Oct. 4, 2010); *see also Frank v. Potter*, No. 1:08-CV-00595, 2009 WL 2982876, at *7 (S.D. Ohio Sept. 15, 2009) (rejecting defendant's argument that plaintiff failed to allege a Title VII discrimination claim where she failed to identify "a single similarly-situated individual" because "the Court does not find a requirement at the pleadings stage that Plaintiff name names").

Based on the foregoing, the Court finds that Nikolova has alleged sufficient facts to state a claim under the Equal Pay Act that "is plausible on its face." *Ashcroft*, 556 U.S. at 678. Accordingly, UT Austin's Motion to Dismiss Plaintiff's Equal Pay Act claim should be denied.

## IV.   Recommendation

The undersigned **RECOMMENDS** that Defendant's Motion to Partially Dismiss Plaintiff's First Amended Complaint (Dkt. 22) is **GRANTED IN PART** and **DENIED IN PART**. The Court **RECOMMENDS** that the District Court **GRANT** Defendant's Motion to Dismiss under Rule 12(b)(1) and **DISMISS** Plaintiff's claims under the Texas Commission on Human Rights Act. The Court **FURTHER RECOMMENDS** that the District Court **DENY** Defendant's Motion to Dismiss Plaintiff's Equal Pay Act claim under Rule 12(b)(6).

**IT IS FURTHER ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Robert Pitman.

## V.     Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on November 13, 2020.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE