IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| EVDOKIA NIKOLOVA, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No.: 1:19-CV-00877 |
| | § | |
| UNIVERSITY OF TEXAS AT AUSTIN, | § | |
| *Defendant.* | § | |

## APPENDIX TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT PART I OF II

<u>**DESCRIPTION**</u>                                                                                          <u>**APPX.**</u>

<u>Policies & Guidelines:</u>

HOP 2-2010. Academic Titles & Tenure ................................................................0004–0005

HOP 2-2010. Extension of the Tenure Track Probationary Period (Depo. Ex. 52) ............0006–0007

HOP 2-2240. Modified Instructional Duties (Depo. Ex. 74) ...................................0008–0009

General Guidelines for Promotion & Tenure AY 2018–19 (Depo. Ex. 38) .........................0010–0030

Cockrell School of Engineering Dossier-Promotion Checklist ................................0031–0041

2018–19 Evaluation Template P&T Committee (Depo. Ex. 3) ...............................0042–0043

<u>Contemporaneous Evidence (minus Nikolova's dossier, which is included in Part II):</u>

05/22/2013. Hiring committee emails .......................................................0044–0046

05/28/2013. Emails re hiring committee vote, extending offer ..............................0047–0048

06/07/2013. Signed offer letter ...........................................................0049–0052

10/08/2015. Nikolova's MID memoranda (Depo. Ex. 75) ..................................0053–0056

11/20/2015. Nikolova probationary extension docs (Depo. Ex. 20) .....................0057–0060

11/20/2015. Letter approving probationary extension signed by Nikolova .........................0061–0062

04/13/2018. Nikolova MID memoranda (Depo Ex. 76) ......................................0063–0069

05/06/2018. Budget Council (first) vote on Nikolova promotion .........................0070–0074

**DESCRIPTION**                                                                                            **APPX.**

05/31/2018. Nikolova's Revised Third-Year Review and transmission email......................0075–0078

07/28/2018. Email thread regarding students, fiancé working on dossier (1) ......................0079–0080

08/02/2018. Email thread regarding students, fiancé working on dossier (2) ......................0081–0083

08/03/2018. Email thread regarding students, fiancé working on dossier (3) ......................0084–0085

09/10/2018. Budget Council (second) vote on Nikolova promotion....................................0086–0088

09/10/2018. Budget Council comments on Nikolova promotion .........................................0089–0091

10/26/2018. Email thread re P&T Committee question (1)...................................................0092–0093

10/26/2018. Email thread re P&T Committee question (2) (Depo. Ex. 24) ........................0094–0096

10/29/2018. Chair's letter in support of promoting Nikolova (Depo. Ex. 6) ......................0097–0101

11/14/2018. Email re P&T evaluation of Nikolova & evaluation (Depo. Ex. 37) ...............0102–0106

11/20/2018. Dean's Assessment of Nikolova (Depo. Ex. 2)..................................................0107–0111

Texts between Tewfik & Nikolova (Nov. 2018–March 2019) (Depo. Ex. 30) ....................0112–0120

03/01/2019. Email re unsolicited recommendation letter (Depo. Ex. 48)...........................0121–0123

03/25/2019. Nikolova letter to CCAFR (Depo. Ex. 83) ......................................................0124–0141

03/25/2019. Nikolova final argument letter to Fenves (Depo. Ex. 84).................................0142–0162

03/26/2019. Nikolova email submitting final argument letter ............................................ 0163

03/26/2019. Nikolova email submitting CCAFR letter ..................................................... 0164

04/24/2019. Reminder email regarding peer teaching evaluation ..........................................0165–0166

04/25/2019. Emails reassigning Nikolova's peer teaching evaluation ...................................0167–0168

04/28/2019. CCAFR's sub-committee letter re Nikolova (Depo. Ex. 26)............................0169–0186

04/30/2019. CCAFR sub-committee submission email ..................................................... 0187

05/07/2019. Email thread between Nikolvoa & Julien regarding teaching evaluation ........0188–0200

05/07/2019. Emails submitting teaching evaluation...............................................................0201–0202

05/10/2019. Letter submitting EEOC Charge & Charge........................................................0203–0205

**DESCRIPTION**                                                                      **APPX.**

05/13/2019. President's letter responding to CCAFR sub-committee letter........................0206–0210

06/13/2019. EEOC's right-to-sue letter................................................................................. 0211

09/05/2019. Emails regarding senior design supervision (1) (Depo. Ex. 57).....................0212–0216

09/06/2019. Emails regarding senior design supervision (2) (Depo. Ex. 88).......................0217–0218

09/06/2019. Emails regarding senior design supervision (3) (Depo. Ex. 58).......................0219–0223

09/06/2019. Emails regarding senior design supervision (4) ...................................0224–0228

09/16/2019. Nikolova's MID memoranda (Depo. Ex. 77)......................................0229–0234

09/20/2019. Nikolova's probationary extension docs (Depo. Ex. 79) .................0235–0236

05/13/2020. Emails regarding missing FARs ...................................................0237–0239

05/17/2020. Orshansky's rating for Nikolova (Depo. Ex. 17) ........................................ 0240

05/17/2020. Caramanis's rating for Nikolova (Depo. Ex. 16)........................................ 0241

Case 1:19-cv-00877-RP　　Document 39-1　Filed 08/29/21　Page 4 of 241




The University of Texas at Austin
University Policy Office

Handbook of Operating Procedures 2-2010

# Academic Titles and Tenure

The University of Texas at Austin
Executive Sponsor: Executive Vice President and Provost
November 1, 1982

---

Academic titles in The University of Texas System are listed and defined in the Rules and Regulations of the Board of Regents, **Rule 31001** (http://www.utsystem.edu/board-of-regents/rules/31001-faculty-appointments-and-titles).

Regulations concerning academic tenure are provided in the Rules and Regulations of the Board of Regents, **Rule 31001** (http://www.utsystem.edu/board-of-regents/rules/31001-faculty-appointments-and-titles). Particular attention should be given to the mandatory notification requirement detailed in the regulations. The following interpretation and expansion of these regulations apply to The University of Texas at Austin.

Tenure denotes a status of continuing appointment as a member of the faculty at a component institution. Only members of the faculty with academic titles of Professor and Associate Professor may be granted tenure after September 1, 1980. Tenure may not be granted to any individual holding a professorial rank carrying the description "visiting," "clinical," or "adjunct." Tenure may be granted at the time of appointment or withheld pending satisfactory completion of a probationary period of faculty service. Appointments to the title Professor or Associate Professor shall be with tenure.

No nontenured member of the faculty should expect continuing appointment beyond the term of his or her current appointment. Any commitment to employ a nontenured member of the faculty beyond the term of his or her current appointment shall have no force and effect until approved by the Board of Regents.

Only full-time service in the academic rank of Instructor or Assistant Professor, or any combination thereof, shall be counted toward fulfillment of a required probationary period related to the acquisition of tenure. Full-time service is defined as holding a 100% time appointment in the University for both the fall and spring semesters of an academic year on faculty salaries and/or on any other funds administered by the University, and being in full compliance with Regental standards pertaining to the minimum faculty teaching requirements. Periods during which a faculty member is on leave of absence without salary from the University or is serving in the rank of Lecturer, Senior Lecturer, Specialist or any rank carrying the description "visiting," "clinical," or "adjunct," or periods of prior academic service at any institution other than The University of Texas at Austin shall not be counted toward fulfillment of a required probationary period related to the acquisition of tenure. The title Visiting Assistant Professor is not used at UT Austin.

1. Instructors

**Appx.0004**
**UT Austin_00762**

The maximum probationary period that may be served in the rank of Instructor is four years. Not later than an instructor's third year of full-time service, the budget council and chairman of his or her department shall recommend to the administration: (a) that he or she be promoted to assistant professor; or (b) that he or she be placed on terminal appointment for the next (i.e., fourth) year. The instructor should be informed not later than August 31 of his or her third year of full-time service of the final decision regarding his or her status. Nothing, however, shall preclude a review of a decision to place an instructor on terminal appointment during the year in which the individual is serving under terminal appointment.

An instructor who, for any reason, has been continued beyond the four-year probationary period is not eligible for tenure as an instructor nor will promotion to assistant professor automatically result. A review of the status of any instructor in these circumstances will be mandatory as soon as possible following discovery.

2. Assistant Professors

The maximum probationary period that may be served as an assistant professor is seven years. If the individual has held the rank of Instructor, the maximum period that may be served in any combination in rank of Instructor and Assistant Professor shall not exceed seven years.

Not later than an individual's sixth year of full-time service as an assistant professor, or of combined service as instructor and assistant professor, the budget council and chairman of his or her department shall recommend to the administration: (a) that he or she be promoted to associate professor with tenure; or (b) that he or she be placed on terminal appointment for the next (i.e., seventh) year.

An assistant professor who, for any reason, has been continued beyond the seven-year probationary period is not eligible for tenure as an assistant professor nor will promotion to associate professor automatically result. A review of the status of any assistant professor in these circumstances will be mandatory as soon as possible following discovery.

Previously HOP 3.15

Appx.0005

UT Austin_00763

Case 1:19-cv-00877-RP   Document 88-1   Filed 09/29/21   Page 6 of 241





The University of Texas at Austin
**University Policy Office**



Exhibit
Carmen Shockley

**52**

05/28/2021 JL

Handbook of Operating Procedures 2-2020

# Extension of the Tenure Track Probationary Period

The University of Texas at Austin
Executive Sponsor: Executive Vice President and Provost
September 1, 1997

Regents' Rules and Regulations **Rule 31007** (http://www.utsystem.edu/board-of-regents/rules/31007-tenure), provides for the extension of the tenure track probationary period for faculty under certain circumstances. An extension of the probationary period is never automatic but is granted in the best interest of The University of Texas at Austin and its faculty to promote and tenure faculty of the highest quality, based on a process and procedures that are fair, equitable, and humane.

A tenure track faculty member who determines that certain personal circumstances may impede his or her progress toward achieving demonstration of eligibility for recommendation of the award of tenure may make a written request for extension of the probationary period specifying the reasons for the requested extension. Personal circumstances that may justify the extension include, but are not restricted to: disability or illness of the faculty member; status of the faculty member as the principal caregiver of a preschool child; or, status of the faculty member as a principal caregiver of a disabled, elderly, or ill member of the family of the faculty member. It is the responsibility of the faculty member to provide appropriate documentation to adequately demonstrate why the request should be granted. The documentation should include substantiation of why the circumstance placed an unreasonable burden upon the ability of the faculty member to meet progress expectations.

Requests for an extension must be submitted to the department chair (or dean in non departmentalized colleges/schools). The request should be made during or in advance of the academic year or semester in which the extension is justified and shall not be made later than the end of the spring semester before the faculty member's sixth year of full-time probationary service ('up-or-out year"). Faculty members should not wait to request an extension but should make the request whenever it becomes clear that circumstances consistent with the policy may warrant it. Also, department chairs who recognize the possible need for a faculty member to request an extension are encouraged to discuss this policy with him or her. The request for an extension shall be limited to one academic year. In exceptional circumstances, a second academic year of extension may be requested and granted. However, the maximum duration of extension, whether consecutive or nonconsecutive, shall be two academic years.

The Executive Vice President and Provost shall decide whether to grant the extension based upon review and consideration of the faculty member's written request and the recommendation of the budget council, department chair, and dean. One consideration will be the faculty member's annual evaluations and record of progress toward eligibility for recommendation of award of tenure prior to the occurrence or circumstance that may justify the extension. The decision of the Executive Vice President and Provost will be made within

**Appx.0006**

**UT Austin_00764**

30 days of his or her receipt of the request and all appropriate documentation unless exceptional circumstances mandate additional time for consideration.

The approval of an extension will be documented in writing and include the reason(s) for the extension, the period of the extension and its effect upon the length of the probationary period, and the plan for the faculty member to meet his or her instructional and other academic responsibilities during the period of the extension. The faculty member will sign this document prior to implementation of the extension. The denial of the extension may be appealed through regular faculty grievance procedures.

Questions regarding this policy may be directed to the Office of the Executive Vice President and Provost 512-232-3320.

Previously HOP 3.11

Exhibit
Evdokia Nikolova

74
06/29/21   DC




The University of Texas at Austin
University Policy Office

Handbook of Operating Procedures 2-2240
# Modified Instructional Duties
The University of Texas at Austin
Executive Sponsor: Executive Vice President and Provost
July 6, 2005

## A. Policy Statement

It is the policy of The University of Texas at Austin to modify the classroom instructional responsibilities of faculty members and allow for equivalent academic service when certain personal circumstances prevent them from being able to perform their classroom teaching duties, and when such modifications are found to be in the best interest of the University's instructional programs.

## B. Scope

This policy applies to all members of the faculty who are appointed full-time on the instructional budget in a long-session semester.

## C. Definition

An **Instructional Budget** is the budgeted account(s) from which faculty salaries for the academic unit(s) are paid.

## D. Eligibility Requirements

Faculty members who may apply for modified instructional responsibilities are those who are a principal caregiver of a healthy pre-school child (or children), or who are required to care for or assist a member or members of their immediate family, who although not ill or disabled, needs the help and attention of the faculty member*.

## E. Application Requirements

The faculty member must submit a written request for a modification of instructional responsibilities to the appropriate department chair or the dean in non-departmentalized colleges/schools. When possible, the request should be submitted prior to the semester in which the modification is needed. The request must include the following information:

1. A statement explaining the need for modified instructional responsibilities; and

2. A proposal describing the work to be done in place of the applicant's normal classroom responsibilities. This work may involve significant scholarly research, new course development,

Appx 0008
UT Austin_00780

curriculum development, or other work done in the best interest of the University's instructional program. The proposal must describe the work in detail, define a work product, and include a method for evaluation of the work by the department chair or dean during the semester.

F. Application Review

The chair or dean to whom the written request for modification of instructional responsibilities is submitted shall review it to determine that:

1. The faculty member is eligible to apply for modified instructional duties;

2. The request contains a sufficiently detailed description of the work to be done in place of the applicant's normal classroom responsibilities, that it defines a work product, and that it states an adequate method for evaluation of the work by the department chair or dean during the semester;

3. The proposal is in the best interest of the department's or the program's instructional program; and

4. The full range of the department's or the program's instructional responsibilities can be met without additional resources during the period of modification.

Within thirty (30) days of receipt of the request, the chair or dean shall submit it and the results of his or her review, in writing, to the Office of the Executive Vice President and Provost. Upon final review, the Provost will communicate his or her written decision to the applicant and the appropriate dean and/or department chair. The decision of the Provost is final.

All teaching load modifications will be granted in compliance with the equivalencies set out in Series 31006, Academic Workload Requirements, of The University of Texas System Board of Regents' Rules and Regulations: **Rule 31006** (http://www.utsystem.edu/board-of-regents/rules/31006-academic-workload-requirements)**.**

G. Period and Scope of Modification

Modifications to instructional duties shall be for the period of one long session semester (i.e., fall or spring). Faculty members whose requests for modified
instructional responsibilities are granted are not removed from the instructional budget and are expected to continue to fulfill all of their other duties as members of the faculty during the period of modification.

**For Assistance:** Questions regarding this policy should be directed to the Office of the Executive Vice President and Provost at (512) 471-4363 or at its website: **http://www.utexas.edu/provost/** (http://www.utexas.edu/provost/).

*This policy is not intended to apply to situations where use of sick leave is appropriate.

Source: Regents' *Rules and Regulations* **Rule 31006,** (http://www.utsystem.edu/board-of-regents/rules/31006-academic-workload-requirements)

Previously HOP 5.B.1

# GENERAL GUIDELINES

## FOR PROMOTION AND TENURE OF ALL FACULTY RANKS

### EXCLUDING THE MEDICAL SCHOOL

**2018-19 ACADEMIC YEAR**

<u>CONTENTS</u>                                                                                                    <u>Page</u>

<u>Section A</u>          <u>Overview</u>                                                                    2

A.1     Introduction
A.2     Areas of Contribution Applicable to all Faculty
A.3     Recommendations for Tenure
A.4     Associate Professors (with Tenure)
A.5     Instructors in a Probationary Status
A.6     Non-tenure Track Ranks

<u>Section B</u>          <u>Roles and Responsibilities</u>                                          5

B.1     Procedural Responsibilities of Department Chair or Dean
B.2     Candidate's Rights and Responsibilities
B.3     Assessments and Recommendations

<u>Section C</u>          <u>Dossier Assembly</u>                                                       9

C.1     Recommendations
C.2     Curriculum Vitae, and Other Information
C.3     Teaching
C.4     Research/Scholarship/Creativity
C.5     Academic Advising, Counseling, and Other Student Services
C.6     Service to the University and to the Nation, State and Community
C.7     Honors and Other Evidence of Merit or Recognition, Including Contracts and Grants
C.8     Letters of Reference/Recommendation/Evaluation
C.9     Additional Statements
C.10    Supplemental Materials

<u>Section D</u>          <u>Outcomes</u>                                                                  16

D.1     Announcement of Decisions
D.2     Final Arguments for Terminal Appointment Pending Cases
D.3     Request for Review by Committee of Counsel on Academic
        Freedom and Responsibility (CCAFR)
D.4     Reconsideration of a Promotion and Tenure Decision in the
        Terminal Year
D.5     Grievances
D.6     Resources

Appendix A: Summary of Dossier Preparation                                         19
          and UT Box PDF File Names and Contents

Exhibit
Gregory Fenves

**38**

05/27/2021 DC

**GENERAL GUIDELINES 2018-19**

**Section A      Overview**

A.1      INTRODUCTION

The goal of the promotion process is to provide a thorough and objective review of the substance and merits of each faculty member's case following customary methods.  The review must be sufficient in its depth and character to support action in the best interests of the university, whatever the decision reached.   To accomplish this, the evaluation process comprises an independent review at multiple levels: budget council/executive committee, department chair, college/school, dean, and central administration. The recommendations at each level reflect the professional judgment of each of those involved, with the president making the final decision.

The following General Guidelines describe the promotion process for tenured, tenure-track and non- tenure-track candidates, and are provided to assist both candidates and academic units with preparation of supporting materials and management of candidate files for promotion.   The dean may distribute additional written procedural guidelines and information for preparation of candidate dossiers in his or her college/school and will deliver one copy of any additional guidelines or information distributed to the candidates to the Provost's Office along with the dossiers from his or her college/school.  It is recognized that variation in requirements is possible among disciplines and departments.  Such variations are considered both appropriate and healthy.  Candidates should check with their department chairs or, in non-departmentalized colleges/schools, with their dean regarding the requirements and practices in their area.


A.2      AREAS OF CONTRIBUTION APPLICABLE TO ALL FACULTY:

As described in the Handbook of Operating Procedures (HOP) 2-2160, recommendations for tenure and recommendations for promotion in rank of all faculty are to be based on excellence in performance pursuant to an evaluation of the faculty member's contribution in the following areas:

- Teaching at both undergraduate and graduate levels.

- Research, creative activities, and other scholarly effort.

- Academic advising, counseling, and other student services.

- Administrative and committee service to the department, college, and university and professional public service to the nation, state, and society.

- Other evidence of merit or recognition, such as fellowships, grants, and special honors.


A.3    RECOMMENDATIONS FOR TENURE:

   a.   The granting of tenure has consequences of great magnitude and long life and must be considered especially carefully.   Tenure should be awarded only when there is a clear case that the best interest of the university is served by doing so.  In the review process, the candidate's record should be examined for:
   - Evidence that contributions of appropriate magnitude and distinction in teaching, research, and service have been made, AND
   - Evidence that such contributions can be sustained through an extended career with the university.

2

GENERAL GUIDELINES 2018-19

    b.  <u>Assistant to Associate Professor</u>:
A recommendation for promotion to associate professor normally is considered in the sixth year of the individual's service as assistant professor (or combined service as instructor and assistant professor).   Cases considered before the sixth year in rank are accelerated and must be explained in the department chair's and dean's statements.

An assistant professor must be reviewed no later than the sixth year of the probationary period and be either promoted to associate professor with tenure or placed on terminal appointment for the next year.   A year in which a faculty member has been on leave without pay or claimed an extension in accordance with <u>HOP 2-2020</u> does not count toward the probationary period.

Candidates whose probationary period has been extended under <u>HOP 2-2020</u> or due to leave without pay in accordance with university family and medical leave policies shall be evaluated as if the work were done in the normal period of service.

    c.  <u>Associate Professor or Professor Without Tenure</u>:
The tenure status of individuals appointed to the associate professor or professor ranks without tenure must be reviewed no later than the third year of probationary service.   Associate professors without tenure may be considered either for tenure in the rank of associate professor or for tenure and promotion to full professor simultaneously.

A.4  <u>ASSOCIATE PROFESSORS (with tenure)</u>:

Associate professors with tenure may be considered for promotion to professor during any year deemed appropriate by the budget council/executive committee and department chair.   Promotion before six years in rank have elapsed is considered accelerated and must be explained.

<u>Right of Consideration</u>.   As provided in <u>HOP 2-2160</u>: a faculty member in the rank of associate professor has the right to be considered for promotion to professor in his or her tenth year of service as an associate professor.   To invoke this right of consideration, the associate professor must advise his or her department chair no later than February 1 of his or her ninth year of service of the desire to be considered for promotion to professor. The case shall be considered at all administrative levels, including the president. Should the associate professor not be promoted, he or she may be considered during any year thereafter at the discretion of the budget council/executive committee and department chair or may invoke his or her right to be considered during the end of the subsequent five years of service.

A.5  <u>INSTRUCTORS IN A PROBATIONARY STATUS</u>:

Instructors in their second or third year in rank who become eligible for promotion to assistant professor as a result of obtaining their Ph.D. must be forwarded for review at all levels.   The dossiers should demonstrate satisfactory progress while in the rank of instructor.   All instructors in their third year of probationary service require formal review regardless of whether they have received the Ph.D.

Instructors who complete the Ph.D. during the first year of academic service do not require review. Formal documentation that the degree has been awarded should be submitted to the Provost's Office and the title will be changed to assistant professor effective September 1 of the second year.

A.6  <u>NON-TENURE TRACK RANKS</u>:

Non-tenure track faculty members assist the institution in meeting a variety of critical needs related to the university's overall mission. Performance expectations for these faculty, however, are not as encompassing in scope as those for tenure-track faculty.   Although all contributions and accomplishments of non-tenure track candidates should be evaluated where applicable, special emphasis is to be given to teaching performance and at least one other area of contribution for faculty in lecturer, clinical, and adjunct titles, and to research activity and other academic

3

**GENERAL GUIDELINES 2018-19**

contributions for faculty in research professor titles.

a. <u>Lecturer Titles</u>
Recommendations for promotion of lecturer or senior lecturer may be considered in the sixth year (or later) of an individual's service in his or her current rank at the university. Cumulative service in rank may be either full time or part time. Recommendations for accelerated promotion must be explained and justified.

The principal role of faculty in the lecturer titles is providing instructional service that augments and complements that of the tenured and tenure-track faculty. Thus, <u>exceptional teaching performance is expected</u> and a <u>well-documented record of teaching excellence is required</u> for all such candidates for promotion. The budget council statement/executive committee for each department or academic unit should describe the local rating criteria and service norms for teaching and demonstrate that the candidate's level of teaching service is above the departmental average. In addition, <u>an adequately documented record of significant accomplishment in at least one of the other areas of contribution consistent with the terms of employment is required for promotion to senior lecturer.</u>

<u>The title of distinguished senior lecturer is reserved for individuals who, in addition to teaching excellence, have a sustained record of significant accomplishment adequately documented in at least one of the other areas of contribution consistent with the terms of employment.</u>

b. <u>Clinical and Adjunct Titles</u>
Recommendations for promotion of adjunct assistant professor, adjunct associate professor, clinical instructor, clinical assistant professor, clinical associate professor, instructor of clinical nursing, assistant professor of clinical nursing, and associate professor of clinical nursing, may be considered in the sixth year (or later) of an individual's service in his or her current rank at the university. Cumulative service in rank may be either full time or part time. Recommendations for accelerated promotion must be explained and justified.

The principal role of faculty in the clinical and adjunct titles is providing instructional service that augments and complements that of the tenured and tenure-track faculty. Thus, <u>exceptional teaching performance is expected</u> and a <u>well-documented record of teaching excellence is required</u> for all such candidates for promotion. The budget council statement should describe the local rating criteria and service norms for teaching and demonstrate that the candidate's level of teaching service is above the departmental average. In addition, a <u>record of accomplishment in at least one of the other areas of contribution consistent with the terms of employment is required and must be documented in appropriate ways.</u>

c. <u>Research Professor Titles</u>
Recommendations for promotion of research assistant and research associate professors may be considered in the sixth year (or later) of an individual's service in his or her current rank at the university. Cumulative service in rank may be either full time or part time. Recommendations for accelerated promotion must be explained and justified.

The contribution of faculty appointed as research assistant and research associate professors is principally in the area of research. A well-documented record of research excellence is required. In addition, a record of active contribution to the academic enterprise in other ways is required and must be adequately documented.

d. <u>Instruction and Practice Titles</u>
Effective September 1, 2018, UT Austin will begin using two new faculty title series; 1.) assistant, associate, and full professor of instruction and 2.) assistant, associate, and full professor of practice. For the 2018-19 promotion review cycle, faculty members laterally moved into one of these new series effective September 1, 2018, will be evaluated for promotion using the criteria of their previous title.

4

**GENERAL GUIDELINES 2018-19**

**Section B          Roles and Responsibilities**

B.1   <u>PROCEDURAL RESPONSIBILITIES OF DEPARTMENT CHAIR OR DEAN</u>

Department chairs, or deans in a non-departmentalized college, are responsible for preparing the candidate's file for review and should familiarize themselves with these Guidelines and any other written guidelines provided by the department and/or college. In the spring semester before a faculty member is to be considered for promotion, the department chair, dean, or their designee shall meet with the candidates to explain the process and advise them to become familiar with the applicable guidelines, discuss relative responsibilities for compiling dossier information, and discuss candidate access to materials as detailed in section B.2.

a.   <u>Selecting Referees</u>. The department is responsible for developing a list of peer reviewers with input from the candidate (see Section C.8.d). The reviewers should be from peer institutions/programs and must be at arm's length from the candidate (e.g., not former dissertation chairs/advisors, postdoctoral mentors, coauthors, and/or collaborators). Prior to sending out the solicitation letter to the referees, the chair or dean <u>shall ask the candidate to review the list</u> of individuals to be contacted. After considering concerns that may be expressed by the candidate, the department has final say over reviewer selection. The candidate may place a statement in the file to document any concerns he or she may have about reviewer selection (see Additional Statements, section C.9). The dean (or designee) must approve the final list of letter writers <u>before</u> the solicitation letter is sent.

b.   <u>Review of Materials.</u> Before the departmental committee considers a case, the chair or dean <u>shall ask the candidate to check the materials</u> in the promotion dossier. The purpose of this review is to ensure that all candidate materials are enclosed in the dossier as submitted by the candidate. If the candidate believes that the file is incomplete or includes inappropriate material, or if the candidate has any other objection to the process, the chair, dean, or their designee shall either correct the problem or include a statement in the file about the problem and why it was not addressed as the candidate requested. The candidate may also place a statement in the file about the problem or other aspects of the case.

c.   <u>Additions to the Dossier</u>. All factual information relied upon in the promotion and tenure decision process shall be included in written form in the promotion dossier. All information in the curriculum vitae is considered to be included in the dossier by reference. When such information is added to the promotion dossier after the department chair has asked the candidate to check the materials in the promotion dossier, it shall be date stamped and placed in a separate folder labeled Additional Statements (see section C.9). The candidate shall be informed of its inclusion and permitted an opportunity to place a statement in the file addressing this addition. All administrative parties (budget council/executive committee, department chair, college/school advisory committee, ORU director or dean) having already reviewed the dossier will also be notified of the inclusion of the additional materials. Notification is not necessary for the addition of <u>required statements</u> to the promotion dossier during the regular review process by a budget council/executive committee, department chair, ORU director or dean.

d.   <u>Issues Beyond the Scope of the Promotion and Tenure Process</u>. In rare cases, a tenure or promotion review may raise issues that the tenure and promotion process is not well suited to resolve. For example, an accusation about academic integrity may be relevant to a decision about tenure or promotion, but may be difficult to resolve adequately in the tenure and promotion process. In such cases, the chair or dean, in consultation with the provost and president, may delay the tenure and promotion process until the matter is resolved by an appropriate body separate from the tenure and promotion process.

B.2   <u>CANDIDATE'S RIGHTS AND RESPONSIBILITIES</u>

a.   <u>Dossier Preparation</u>. Candidates should familiarize themselves with these Guidelines and any other written guidelines provided by the department and/or college with respect to the promotion process and dossier assembly. Consult with the department chair (or designee) about the

5

**GENERAL GUIDELINES 2018-19**

relative responsibilities for compiling the information.

b. <u>Supplemental Materials</u>.   Candidates have the discretion to include any materials that they believe are relevant to the promotion or tenure decision (see section C.10).

c. <u>Review Referee List</u>.  The candidate shall provide the chair/budget council/executive committee with a list of recommended individuals to provide peer review letters (see section C.8.d).  The candidate shall review the list of individuals selected prior to the chair or dean sending out the solicitation letter. Concerns about any reviewers on the list may be expressed to the department chair, but the department has final say over reviewer selection.  The candidate may place a statement in the file to document any concerns he or she may have about reviewer selection (see Additional Statements, section C.9).

d. <u>Access to Promotion File Materials</u>.  Under state law, the university may not keep the contents of the promotion file confidential.  A candidate may request and be allowed to inspect any material in his/her promotion dossier at any time during the promotion process.

   i.  Review of Materials.  The candidate should check the materials in the promotion dossier before the departmental committee considers a case.  The purpose of this review is to ensure that all candidate materials are enclosed in the dossier as submitted by the candidate.  If the candidate believes that the file is incomplete or includes inappropriate material, or if the candidate has any other objection to the process, the chair, dean, or their designee shall either correct the problem or include a statement in the file about the problem and why it was not addressed as the candidate requested.  The candidate may also place a statement in the file about the problem or other aspects of the case (see Additional Statements, section C.9).

   ii.  Informal Access.  At any point in the process informal access to the promotion file is available to a candidate upon request as soon as is feasible, but not later than three (3) business days.  Requests for informal access are to be addressed to the department chair, dean, or provost, as appropriate, and no formal open records request is required.  Candidates shall be allowed to inspect/review their promotion files at each level with adequate supervision.  Copying or photographing materials is not permitted, and no materials may be removed from the promotion files.

   iii.  Formal Access.  If the candidate wishes to obtain copies of any materials in the file, the candidate must make a request in writing to the Office of the Executive Vice President and Provost, which may be sent via email to evpp.aps@utlists.utexas.edu. Candidates should call (512) 232-3323 with any questions.

**B.3 <u>ASSESSMENTS AND RECOMMENDATIONS</u>**

a. <u>Conflict of Interest</u>.  A budget council/executive committee or college/school advisory committee member with a potential or real conflict of interest related to a candidate (e.g. spouse, Ph.D. advisor, etc.) is responsible for absenting him/herself from the room during the review and discussion of, and vote on, that candidate.

b. <u>Non-departmentalized College/School</u>

   1) <u>Budget Council/Executive Committee Assessment</u>.   The budget council or executive committee shall assess the record and prepare a <u>separate statement</u> for each area of contribution listed in section A.2 that is applicable to the candidate.  Consideration should be given to the impact of a recommendation to promote, in particular how it would strengthen the college/school.  Areas of distinction and potential weaknesses in the record should be identified, as well as the standards of the field. All votes (i.e., for, against, and abstentions) are to be recorded on the Recommendation for Change in Academic Rank/Status form

6

Appx.0015
UT Austin_00740

GENERAL GUIDELINES 2018-19

along with the number ineligible to vote and absent.   In keeping with the tradition of academic integrity, the vote is taken after the evidence is compiled, not before, and 'follow-on' voting to achieve unanimity is not endorsed. As stipulated in HOP 2-1310, associate and assistant professors are not eligible to vote on any matters affecting promotion from or continued appointment in their own rank or higher ranks, including the decision whether to develop a case for consideration (or reconsideration).

2) Dean's Assessment and Recommendation.   The dean is to be present for the budget council/executive committee discussion of each case but does not vote.  The dean is to provide his or her own assessment of the candidate's teaching, research/scholarly activity, and service, as applicable, and has the responsibility to describe fairly the rationale for the budget council/executive committee's recommendation, including a summary of the views of both opponents and proponents.  Characterization of these discussions is neither to identify colleagues by name, nor otherwise impair the voting process.  If the candidate is being reviewed for tenure, the dean must reflect on the mid-probationary review that must be included in the dossier.  (If the written review is not included or available, that must be addressed in the dean's statement.)  An effort should be made to explain negative votes and abstentions. The President's Committee will interpret unexplained abstentions as weak negative votes.  The dean's statement should identify the candidate's strengths and weaknesses, provide context as needed, and address whether and how the candidate's promotion would improve the quality of the college/school.   The signed statement is to accompany the dossier to the next level.

c. Departmentalized College/School:

1) Budget Council/Executive Committee Assessment.   The budget council or executive committee shall assess the record and prepare a separate statement for each area of contribution listed in section A.2 that is applicable to the candidate.  Consideration should be given to the impact of a recommendation to promote, in particular how it would strengthen the department.  Areas of distinction and potential weaknesses in the record should be identified, as well as the standards of the field. All votes (i.e., for, against, and abstentions) are to be recorded on the Recommendation for Change in Academic Rank/Status form along with the number ineligible to vote and absent.  In keeping with the tradition of academic integrity, the vote is taken after the evidence is compiled, not before, and 'follow-on' voting to achieve unanimity is not endorsed.  As stipulated in HOP 2-1310, associate and assistant professors are not eligible to vote on any matters affecting promotion from or continued appointment in their own rank or higher ranks, including the decision whether to develop a case for consideration (or reconsideration).

2) Department Chair's Assessment and Recommendation.  The department chair is to be present for the budget council/executive committee discussion of each case but does not vote. The chair is to provide his or her own assessment of the candidate's teaching, research/scholarly activity, and service and has the responsibility to describe fairly the rationale for the budget council/executive committee's recommendation, including a summary of the views of both opponents and proponents.   Characterization of these discussions is neither to identify colleagues by name, nor otherwise impair the voting process. If the candidate is being reviewed for tenure, the department chair must reflect on the mid-probationary review that must be included in the dossier.  (If the written review is not included or available, that must be addressed in the department chair's statement.)  An effort should be made to explain negative votes and abstentions.  The President's Committee will interpret unexplained abstentions as weak negative votes.  The department chair's statement should identify the candidate's strengths and weaknesses, provide context as needed, and address whether and how the candidate's promotion would improve the quality of the department. The signed statement is to accompany the dossier to the next level.

3) College Advisory Committee.  The college advisory committee members should review dossiers before they meet, determine if any required materials are missing or incorrectly prepared, and, as necessary, notify the departments and candidates giving them a

7

GENERAL GUIDELINES 2018-19

reasonable opportunity to address any problems or concerns before the meeting to vote on the case. All votes (i.e., for, against, and abstentions) are to be recorded on the Recommendation for Change in Academic Rank/Status form along with the number ineligible to vote and absent.

4) <u>Dean's Assessment</u>. The dean is to be present for the discussions of the college advisory committee but does not vote. The dean is to provide his or her own assessment of the candidate's teaching, research/scholarly activity, and service and has the responsibility to describe fairly the rationale for the college advisory committee's recommendation, including a summary of the views of both opponents and proponents. Characterization of these discussions is neither to identify colleagues by name, nor otherwise impair the voting process. An effort should be made to explain negative votes and abstentions. The President's Committee will interpret unexplained abstentions as weak negative votes. The dean's statement should identify the candidate's strengths and weaknesses, provide context as needed, and address whether and how the candidate's promotion would advance the quality of the department and college/school. The signed statement is to accompany the dossier to the next level.

d. <u>Other Affiliations:</u>

1) <u>Joint Positions</u>. For faculty members with joint positions, each department is to submit forms and assessments and vote on the case, cross-referencing the other position. The departments involved are to share materials collected in support of the case. Where only one college is involved, the dossier is consolidated, with one college advisory committee vote and one dean's statement. Where <u>two or more colleges/schools</u> are involved, forms must be reviewed and acted upon by all deans concerned.

2) <u>Courtesy Positions</u>. Where a faculty member holds a courtesy position and has significant involvement in another department or center, that department chair or director is to provide a letter commenting on the involvement and contributions of the candidate to the programs of the department or center. The letter is included in the dossier following the dean's and the chair's statements.

3) <u>Academic/Research Center, Laboratory, Bureau or Institute</u>. If a faculty member is significantly engaged in the unit's activities but does not hold a courtesy position, the director may comment on the candidate's contributions to the unit. The commentary is included in the dossier following the dean's and chair's statements.

4) <u>Research Faculty</u>. For faculty in the research assistant and research associate professor titles, the director of the bureau, academic/research center, laboratory, or institute where the faculty member holds a position <u>must</u> provide an assessment of the candidate's research performance and other academic and professional contributions. The director's statement is to be provided to the department chair (dean in non- departmentalized colleges/schools) for consideration by the budget council/executive committee in its deliberations and a copy included in the dossier along with the statements of the department chair and dean.

e. <u>Central Administration</u>

1) <u>Presidential Conferences</u>. The dossiers will be discussed with the President's Review Committee at scheduled times in January and February. Each dean will attend the conference for his or her school or college. In particularly difficult cases, in order to make a determination in the best interest of the university, the president may request that formal assessments of a candidate's contributions and achievements be sought from additional experts in the field, or that key stakeholders be invited to address questions not resolved by the record presented or in the conference with the dean. See section D for announcement of decisions.

8

**GENERAL GUIDELINES 2018-19**

**Section C        Dossier Assembly  (See Appendix A for a summary)**

To facilitate the review process and to ensure completeness and consistency, the dossier is to be assembled in the order and with the supporting documentation specified in this section.

C.1    RECOMMENDATIONS

This section includes the supporting documents related to departmental and college recommendations as described in section B.3  They are to be placed in the following order:

- Recommendation for Change in Academic Rank/Status form
- Dean's statement
- Department chair's statement
- Copy of the mid-probationary review (only applicable for tenure candidates)
- Joint department chair's statement (if applicable)
- Courtesy department chair or center director's statement(s) (if applicable)
- Other academic program and/or research center director's statement(s) (if applicable)


C.2    CURRICULUM VITAE AND OTHER INFORMATION

This section includes the supporting documentation related to the curriculum vitae.

a. Curriculum Vitae.  The candidate's dossier is to include a curriculum vitae (as opposed to a continuous faculty record), containing, among other things, a list of:

- degrees, fields of study, and dates awarded
- professional registrations, licensures, certifications (as applicable)
- all professional appointments
- complete publications record with:
  - publications and other evidence of scholarship/creativity listed according to the kind of entry (e.g., books, chapters, articles, reports, proceedings, and other materials)
  - refereed works identified as such
  - the names of the co-authors listed in the order in which they appear in the publication
  - clear designation of the faculty member's role if it is not author (e.g., editor, compiler, translator, or some other role)
  - works that are in preparation, submitted, under review, accepted, under contract or in press clearly labeled accordingly (for works under contract and/or in press, include tentative publication date)
  - beginning and ending page numbers for articles and total number of pages for books
- scholarly presentations
- research contracts/grants/gifts and proposals submitted with:
  - sponsor name
  - project title
  - project/funding period
  - co-PIs and relative effort of each, where appropriate
  - funding amounts (by academic year and amount under candidate's supervision)
  - for proposals, an indication of the status of each (e.g., submitted, approved, funding pending)
- patents issued (as applicable)
- all advising and related student service
- administrative and committee service, and academic-related professional and public service
- other evidence of merit or recognition

Do  not duplicate sections from the CV  in other parts of the dossier unless specified  in these guidelines.

9

GENERAL GUIDELINES 2018-19

   b.   Complete list of publications and scholarly/creative works.  Provide a separate document, using
        the template provided by the Provost's Office, listing all publications and scholarly/creative work
        published (or in an equivalent status) in reverse chronological order.

        All candidates for tenure must list their dissertation/thesis title and dissertation/thesis advisor's
        name on the document (if applicable).

        Works should be grouped into four sections as applicable and co-authors who were in a student
        or other trainee status at the time of submission should be noted in *italics*:
           1.  Works published (or in equivalent status), in press, accepted, or under contract while in
               current rank at UT Austin
           2.  Works published (or in equivalent status) while in current rank at other institutions
           3.  Works published (or in equivalent status) while in previous ranks at UT Austin
           4.  Works published (or in equivalent status) while in previous ranks at other institutions

        Co-authored works listed in section 1 should indicate who the co-authors are and their status at
        the time of submission (e.g., current or former students, peers or faculty colleagues at UT Austin
        or at another institution).  Include a brief qualitative statement of contribution for each co-authored
        work.

        Forthcoming works that are in press, accepted, or under contract should be listed in section 1 and
        clearly labeled.   Each forthcoming work should be supported by clearly labeled letters of
        acceptance or copies of contracts from editors, publishing houses, producers, galleries, or other
        conduits for scholarly and/or creative work.  Include reviews, where available.

C.3   TEACHING

   a.   Budget Council/Executive Committee Statement.  The budget council/executive committee must
        provide a separate document assessing teaching performance that includes both the signatures
        and typed names of those responsible for preparing it.   The statement is required for all tenured,
        tenure-track, lecturer, clinical and adjunct faculty, as well as research professor faculty that have
        been assigned a teaching role.   The document is to provide an explanation of the evaluation
        procedures and measures used and the assessment should:

           •  discuss both student course/instructor evaluations and peer observation reports
           •  discuss the candidate's willingness to teach courses for which there is strong student
              demand
           •  describe the balance between undergraduate and graduate teaching, as applicable
           •  discuss relevant evidence of merit or recognition for teaching excellence
           •  describe and provide documentation of organized service learning instruction, as
              applicable
           •  reflect familiarity with the teaching portfolio
           •  describe participation on graduate committees
           •  describe supervision of postdoctoral students, as applicable
           •  consider any special circumstances concerning the faculty member's teaching
              performance, including any innovative contributions described (e.g., innovative teaching
              methods,  use  of  instructional  technology,  interdisciplinary  teaching,  innovative
              curriculum  development  activities,  supervision  of  undergraduate  special  project
              courses)

        In addition to the budget council/executive committee assessment, the teaching section of
        each candidate's dossier must contain the following supporting documentation:

   b.   Teaching Statement.  The candidate must provide in four (4) pages or less a personal statement
        of teaching philosophy, educational goals for the courses taught and how they were

GENERAL GUIDELINES 2018-19

accomplished, description of any innovations or unique methods, specific areas of demonstrated improvement, and other material in a manner that will provide colleagues with a context for interpreting other evaluative information.

c. <u>Course Rating Averages</u>. Each department or college should prepare a report of course rating averages using the Provost's Office template. Classes should be grouped by course and listed in chronological order. The class size, number of Course-Instructor Survey (CIS) responses, instructor rating, and course rating should be provided for each class taught.

d. <u>Candidate's Instructional Activities</u>. Each department or college/school will need to download a <u>Summary of Recent Course-Instructor Survey Results</u> through the Spring 2018 term for each faculty member being considered for promotion as reported by the dean. This download is available in the university's Faculty Information System. The summary will be based on the basic and expanded CIS forms and will include the applicable period for each candidate.

| | |
|---|---|
| Candidates for tenure and instructors to assistant: | Entire probationary period |
| All other candidates: | Previous three years (i.e., 2015-16 through 2017-18) |

The deans and department chairs should download this information in early June and in early September, and use the summary to comply with this requirement, where possible. This report can be used to complete the Course Rating Averages chart (see section C.3.c).

If the dean chooses not to use the downloaded summary, or candidates did not use the basic or expanded form, then the dean is responsible for developing a format for college-wide use.

e. <u>Peer Classroom Observation Reports</u>. These reports are broad observations of the candidate's effectiveness as a teacher at the graduate and/or undergraduate levels by those faculty members conducting the in-class observations. The reports should cover such elements as presentation, course content, organization, clarity of written materials, rigor and fairness of written examinations, appropriateness of methodology, and student outcomes.

Peer observations of classes should be carried out repeatedly in the evaluation period of the candidate, ideally in the same class over the course of multiple semesters. Particular attention should be paid to giving constructive advice during early observations, then following up with specific progress reports in subsequent semesters observing the same class. Include in the dossier all reports of in-class observations conducted while in rank. Observation reports for the fall semester during which the candidate for promotion is expected to be reviewed (i.e., Fall 2018) should not be used unless absolutely necessary (i.e., this is the only semester for which the observation is possible). The budget council/executive committee is to consider the peer observations in their assessment of the candidate's teaching service record. Each peer observation report is to include:

- number and title of course observed
- date of report
- date of classroom observation
- description of methods by which instructor engages students in learning
- date on which the observation was discussed with the candidate
- constructive advice
- any specific improvement from previous peer observation reports
- name and signature of observer(s)

UT Austin's Faculty Innovation Center has resources regarding Peer Review of Teaching: https://facultyinnovate.utexas.edu/opportunities/prof-dev/peer-observation

f. Report of graduate student supervision as provided by the Graduate School via the <u>Committee</u>

11

**GENERAL GUIDELINES 2018-19**

<u>Report on Masters and Doctoral Theses</u>.  The Provost's Office will distribute this report to the deans and department chairs in early September for each faculty member being considered for promotion as reported by the dean.  If none were supervised, insert separate page with the statement, "No graduate students were supervised."

g.   <u>Postdoctoral Fellows Supervised.</u>  Provide a list of postdoctoral fellows supervised with name, institution awarding the Ph.D., and date conferred.  If none were supervised, insert separate page with the statement, "No postdoctoral fellows were supervised."

h.   <u>Originals of all Students' Written Comments</u> for the last three years (i.e., 2015-16 through 2017-18) are to be included with Supplemental Materials (See section C.10).  The Course Instructor Survey Summary evaluation page should be included as a coversheet for each class.  Candidates who have taught at other institutions during the last three years may submit evaluations from those courses.

i.   <u>Teaching Portfolio</u>.  The candidate (including research faculty whose assigned duties include teaching) is to develop an extensive teaching portfolio for department or college/school review.  The portfolio does not accompany the dossier beyond the dean's office.

For information on compiling a teaching portfolio, candidates for promotion should consult with their department chairs and dean's office.  The following items are examples of materials appropriate for a portfolio:  syllabi, handouts, problem sets, and other written materials developed for courses; computer-assisted instructional aids; examinations.

UT Austin's Faculty Innovation Center has resources available on their website at: https://facultyinnovate.utexas.edu/opportunities/prof-dev/portfolio

C.4   <u>RESEARCH/SCHOLARSHIP/CREATIVITY</u>

a.   <u>Budget Council/Executive Committee Statement</u>.  The budget council/executive committee is to summarize research/scholarly/creative contributions in a <u>separate document</u> that includes the typed names and signatures of the members responsible for preparing the statement.  The statement is required for all tenured, tenure-track, and research professor faculty as well as faculty in lecturer, clinical and adjunct titles for whom this is one of the areas of performance excellence selected for review.  The summary statement should:

- describe which area(s) of the field is the focus of the faculty member's work
- identify and comment on those items that are considered to be of major significance or outstanding quality while in rank at UT Austin or since the most recent promotion, as appropriate.
- describe how the budget council/executive committee evaluators conducted their review, including the standards used
- be clear about the norms of the field and indicate, for example, the quality of the outlets for a candidate's work (i.e., journals, presses, art galleries, performance venues, etc.)
- explain the norms of co-authorship, where applicable, and whether a peer review was involved
- explain, where applicable, reasons for counting non-traditional outlets favorably for research/scholarly/creative activity, (e.g., textbooks, continuing education presentations, governmental or industrial service, etc.)
- describe how the candidate's research fits within the context of their field and explain it in a way that is accessible to those outside of their field
- for tenure-track candidates, assess the level of independent scholarly activity while at UT Austin
- for tenure-track candidates with a book publication, indicate whether the book is derived from the doctoral dissertation, and if so, to what extent it has been expanded or modified

12

GENERAL GUIDELINES 2018-19

    b.  <u>Scholarly Works.</u> Copies of scholarly works must accompany the dossier as far as the Dean's Office.  The dean is responsible for ensuring that the scholarly works correspond to the vitae.

- Candidates being considered for tenure include all scholarly works.
- Other candidates include all scholarly works produced while in rank.

    c.  <u>Five Most Significant Works</u>.  The internal and external review may concentrate on a smaller set of publications that are considered to be the most significant.  The candidate is to make the selection of the five most significant works.  Tenured associate professor candidates for promotion to full professor should select the five most significant works <u>while in their current rank</u>.  Include a listing of the five works in the dossier.

       <u>One set</u> of the five most significant works should accompany the dossier as far as the central administration.  Include reviews, when available.  Place them with the other supplemental materials (see section C.9), <u>not</u> in the dossier.

    d.  <u>Research Statement</u>.  The candidate must provide in four (4) pages or less a statement of accomplishments, goals, and future plans in the area of research, scholarship, and creativity. Candidates for promotion to the rank of associate professor should focus primarily on accomplishments since first appointment as assistant professor (which may include work as an assistant professor at another institution), and are encouraged to articulate a plan for sustaining their program. All other candidates should focus primarily on accomplishments while in rank and future plans.

C.5    <u>ACADEMIC ADVISING, COUNSELING, AND OTHER STUDENT SERVICES</u>

    a.  <u>Budget Council/Executive Committee Statement</u>.  The budget council/executive committee is to summarize academic advising responsibilities in a <u>separate document</u> that includes the signatures and typed names of those preparing it.  The statement is required for all tenured, tenure-track, and research professor faculty as well as faculty in lecturer, clinical and adjunct titles for whom this is one of the areas of performance excellence selected for review.  The statement should describe and assess responsibilities at both the undergraduate and graduate levels during at least the last three years of service (where applicable) and describe other activities in support of the instructional process.  Items to be considered in the assessment:

- how the candidate has assisted in advising undergraduate, graduate and postdoctoral students
- service as undergraduate adviser or graduate adviser is especially noteworthy and deserves particular attention
- individual instruction
- advising majors for registration
- orientation activities for new students
- offering advice to students considering advanced degrees
- offering help with internships and job placement
- advising student organizations
- student recruitment and retention activities

C.6    <u>SERVICE TO THE UNIVERSITY AND TO THE NATION, STATE AND COMMUNITY</u>

    a.  <u>Budget Council/Executive Committee Statement</u>.  The budget council/executive committee is to summarize service in a <u>separate document</u> that includes the signatures and typed names of those preparing it. The statement is required for all tenured, tenure-track, and research professor faculty as well as faculty in lecturer, clinical and adjunct titles for whom this is one of the areas of performance excellence selected for review.  The statement should address the candidate's contributions in the two broad service areas during at least the last three years, describe the nature of activities cited in support of the recommendation, and assess the quality

13

GENERAL GUIDELINES 2018-19

of the service contributions.

    1) <u>Administrative and Committee Service</u>. Positions of leadership,  such as chairing a committee, are to be noted in particular.

    2) <u>Academic and Professionally Related Public Service</u>.  Outstanding service in scholarly or professional organizations, in particular, and its significance should be noted, for example, whether an editorship is of a highly respected refereed journal, or whether an elected office is in a significant scholarly organization. A distinction is to be made between editorship of a journal and membership on a large editorial board.

    <u>Note:</u>  Significant administrative and committee service to the department, college, or university along with academic or professionally  related public service activities is to be listed in the curriculum vitae (see section C.2).

## C.7   <u>HONORS AND OTHER EVIDENCE OF MERIT OR RECOGNITION, INCLUDING CONTRACTS AND GRANTS</u>

    a. <u>Budget Council/Executive Committee Statement</u>.  The budget council/executive committee is to summarize honors in a <u>separate document</u> that includes the signatures and typed names of those preparing it.  The statement is required for all tenured, tenure-track, and research professor faculty as well as faculty in lecturer, clinical and adjunct titles for whom this is one of the areas of performance excellence selected for review.   The statement should describe and assess the relevant evidence of exceptional academic or professional merit, as manifested by contracts and grants, medals, fellowships, invitations to speak (e.g., at other universities, at professional society meetings, and in other venues), election to office in scholarly or professional organizations, or other honors received.

    1) <u>Special Honors</u>. Departmental statements on special honors should note the relative prestige of any honors or other professional recognition that the candidate may have received. It is important to distinguish between those awards made on the basis of promise and those awarded on the basis of accomplishment.

    2) <u>External Funding</u>. Actively seeking and successfully obtaining external funding is a consideration for promotion in those departments where external funding is the norm.  If external funding is not the norm, a comment to that effect should be part of the department's statement.

## C.8   <u>LETTERS OF REFERENCE/RECOMMENDATION/EVALUATION</u>

    a. <u>Tenured and Tenure-Track Titles</u>. A <u>minimum</u> of <u>five external review letters</u> must be compiled that evaluate the contributions and accomplishments of the candidate. All letters must come from external reviewers from peer institutions/programs who have an understanding of the academic setting and the standards against which the area benchmarks itself.  The emphasis of the review is to evaluate the research/scholarly/creative contributions and other accomplishment of the candidate, and to summarize his or her professional standing.

    b. <u>Non-Tenure Track Titles (except Research Titles)</u>. A <u>minimum</u> of <u>four review letters</u> must be compiled that evaluate the contributions and accomplishments of the candidate. All four letters may come from internal reviewers unless research/scholarly/creative contribution is one of the areas selected for review, in which case two of the four letters must be from external reviewers. All contributions and accomplishments of these candidates should be evaluated where applicable, but special emphasis should be given to teaching performance and the other principal contribution area(s) selected.

    c. <u>Research Professor Titles</u>. A <u>minimum</u> of <u>four review letters</u> must be compiled that evaluate

14

**GENERAL GUIDELINES 2018-19**

the contributions and accomplishments of the candidate. At least three of the four letters must come from external reviewers. The emphasis of the review is on research performance and the candidate's overall academic- related service.

d.  Responsibility for finalizing a list of appropriate external reviewers rests with the department chair/budget council/executive committee. The <u>candidate</u> and the <u>chair/budget council/executive committee</u> shall <u>separately</u> develop a list of arm's length external reviewers using the following considerations:

- seek out credible reviewers knowledgeable about the scholarly expectations of a peer research university
- avoid conflicts of interest, e.g., dissertation chairs, postdoctoral mentors, co-authors, co-principal investigators, and collaborators
- use recognized experts at peer institutions
- letters solicited from collaborators must be placed in a separate section (e.g. Supplemental Materials, see section C.10.b) and will not count toward the minimum number of letters that are required
- explanation for any deviations from these considerations (e.g., why a letter writer from a non-peer institution was chosen, etc.) must be provided on the Chart of Reviewers (see section C.8.e)

The candidate must be given the opportunity to review the list of outside reviewers and then the dean (or designee) must approve the final list of letter writers <u>before</u> the solicitation letter is sent (see sections B.1.a and B.2.c).

<u>Solicitation Letter</u>.  Sample letters for departments and schools to use in soliciting letters from reviewers are available from the Provost's Office. Departments and colleges/schools may tailor these letters to their individual circumstances. However, all referees must be informed that, under Texas law, we cannot ensure the confidentiality of letters from reviewers.  Letter writers also must be informed of any extension to the probationary period.

e.  <u>Chart of Reviewers.</u> All solicited review letters received concerning a candidate must be included in the candidate's dossier.  The department is to prepare chart of all reviewers solicited using the template provided by the Provost's Office.  Group by Received, Declined, and No Response, and list in alphabetical order by last name within each group providing the following information:

- name and rank or title of reviewer
- name of institution (including the department) or other agency with which the reviewer is affiliated
- brief statement about why the individual was selected
- other relevant information about the reviewer that would assist those involved in the process who are not practitioner's in the candidate's field
- indicate whether selected by department or candidate
- indicate date received for letters and declinations
- include the reason for declination, if provided
- explanation for any deviations from those considerations listed in section C.8.d.

f.  <u>Sample Letter</u>.  Insert a sample of the solicitation letter(s) sent to the reviewers, including a list of the five most significant works <u>and any other materials</u> that were sent for evaluation.

g.  <u>Letters Received</u>.  The majority of the received review letters should be from reviewers nominated solely by the department.  Place the letters in alphabetical order by last name. Make note in the upper right-hand corner of the first page of each letter whether the budget council/executive committee, candidate, or both, nominated the letter writer.  This notation should match the information provided on chart of reviewers.

All solicited letters received must be included in the candidate's dossier.  A short version of the referee's CV or résumé is to be included behind each letter.

15

GENERAL GUIDELINES 2018-19

    h.   Declinations.  (If applicable.) Place declination correspondence in alphabetical order by last name behind the letters received.  A CV is not required.

    i.   Unsolicited letters.  (If received.) Place the letters in alphabetical order by last name. A CV is not required.

C.9    ADDITIONAL STATEMENTS

Any additional, non-required statements added to the file as a result of the candidate's review before budget council/executive committee deliberations (sections B.1.b and B.2.d.i) or received after the candidate's review (section B.1.c) shall be date stamped and placed in a separate folder.

C.10    SUPPLEMENTAL MATERIALS

Supplemental materials shall accompany the promotion file at each level of review and be made available to all internal parties to whom its content is relevant for their review, deliberations and/or vote.  Supplemental materials should be submitted to the central administration electronically in UT Box.  (The Dean's Office should consult with the Provost's Office before making an exception to this requirement.)

    a.   Student Written Comments.  As stated in section C.3.h, include originals of all students' written comments for the last three years (i.e., 2015-16 through 2017-18). The Course Instructor Survey Summary evaluation page should be included as a coversheet for each class. Candidates who have taught at other institutions during the last three years may submit evaluations from those courses.

    b.   Letters Solicited from Collaborators.  The department is to prepare a separate chart of reviewers for letters solicited from collaborators, listed in alphabetical order by last name, using the template provided by the Provost's Office.  Letters solicited from collaborators must be placed behind the chart of reviewers in a section separate from those solicited from arm's length reviewers and will not count toward the minimum number of letters that are required (see section C.8.d). A CV is not required.

    c.   Other Supplemental Materials.  In addition to the required materials described in these Guidelines, candidates have the discretion to include any materials that they believe are relevant to the promotion or tenure decision.  Provide a table of contents as a coversheet to the other supplemental materials.

    d.   Five Most Significant Works.  As stated in section C.4.c, one set of the five most significant works should accompany the dossier as far as the central administration.

**Section D       Outcomes**

D.1    ANNOUNCEMENT OF DECISIONS

The Office of the President will formally notify deans of the results of the spring promotion conferences, including those pending cases where an action of terminal appointment is being considered.  Every effort will be made to do so no later than Friday, February 15, 2019.  Deans shall ensure that candidates are informed of the decisions made about their cases within three (3) business days of receiving notification from the president.

The President's Committee will revisit all terminal appointment pending cases in April. Final arguments (see section D.2), if submitted, will be considered at this time.  The president will endeavor to notify deans of the final action on Terminal Appointment Pending cases by Friday, April 12, 2019.

16

**GENERAL GUIDELINES 2018-19**

D.2   FINAL ARGUMENTS IN TERMINAL APPOINTMENT PENDING CASES

A candidate whose case is Terminal Appointment Pending may present further arguments to the president before the case is decided. Address final arguments to the president and deliver (hard copy) to the Provost's Office, Main Building 201, or electronic copy to evpp.aps@utlists.utexas.edu by Monday, March 25, 2019. The president will refer the written arguments to the department and college/school for additional comment before reaching a final decision.

D.3   REQUEST FOR REVIEW BY COMMITTEE OF COUNSEL ON ACADEMIC FREEDOM AND RESPONSIBILITY (CCAFR)

The candidate or the president may request a review of the case by the Committee of Counsel on Academic Freedom and Responsibility (CCAFR). Such a review is limited to one or both of the following: 1) to determine whether, in its judgment, the procedures followed in the candidate's case accorded with both the university's and commonly accepted professional standards for promotion and tenure; and 2) whether the decision was based upon a violation of the faculty member's academic freedom. CCAFR shall not review disputes about professional judgments on the merits of the faculty member's record.

A request for review shall describe the procedural irregularity being asserted and/or the alleged violation of academic freedom being asserted and how it impacted the decision. Candidates have until Monday, March 25, 2019, to submit a request for review to CCAFR (Office of the General Faculty, WMB 2.102, F9500) and provide a copy to the provost (MAI 201, G1000 or evpp.aps@utlists.utexas.edu). The provost's office will distribute copies of the request to the dean and department chair.

CCAFR may delegate its work to a subcommittee of no fewer than three members. CCAFR shall report to the president, with a copy to the candidate, by Friday, April 19, 2019. The president will consider the subcommittee's report and advise CCAFR of the outcome of the case. The president may extend the time for the subcommittee to perform its work.

D.4   RECONSIDERATION OF A PROMOTION AND TENURE DECISION IN THE TERMINAL YEAR

The university has no obligation to provide a faculty member with reconsideration of a tenure decision during the terminal year, however, a department may request it based on submission of substantial new evidence by the candidate. The department is responsible for assessing whether new evidence of productivity presented by a candidate is substantial in nature and sufficiently compelling to merit reconsideration of the decision. Such a review is to examine any new evidence (i.e., evidence not previously considered) to determine whether it clearly demonstrates that the decision made the prior year should be reversed.

If a determination of compelling new evidence is made in a terminal year case, the department will prepare a new promotion file focusing on the new evidence and submit this, along with the previous year's dossier, to each level in the review process. The budget council/executive committee shall prepare an assessment of the new evidence put forward in each area of contribution.

Reconsideration during the terminal appointment year does not entitle a candidate to an additional terminal year.

D.5   GRIEVANCES

a)   Use of Grievance Process. Nothing in this document is intended to alter a candidate's right to use the university's existing grievance processes as described in HOP 2-2310.

b)   Grievance of a Terminal Appointment Decision. An individual who alleges evidence of an infringement of the Constitution or laws of Texas or the United States may present a grievance in person or through a representative, to the provost, who shall meet with the faculty member.

17

**GENERAL GUIDELINES 2018-19**

A faculty member may request a review by a hearing tribunal by submitting a written request to the president describing in detail the facts relied upon to prove that the decision was made for reasons that are unlawful. If the president determines that the alleged facts, if proven by credible evidence, support a conclusion that the decision was made for unlawful reasons, such allegations shall be heard by a hearing tribunal in accordance with procedures in <u>Regent's Rule 31008</u> (see section 6) and the institutional faculty grievance procedure <u>HOP 2-2310</u>.

D.6   <u>RESOURCES</u>

- For assistance with the General Guidelines or the promotion and tenure process generally: Office of the Executive Vice President and Provost at (512) 471-3007 or <u>evpp-aps@utexas.edu</u>
- To speak with a neutral third party about individual concerns:   Faculty Ombudsperson at (512) 471-5866
- For questions about procedural or academic freedom concerns:   Chair of the Committee of Counsel on Academic Freedom and Responsibility (CCAFR) through the Office of the General Faculty at (512) 471-5934

18

GENERAL GUIDELINES 2018-19

**Appendix A**
**Summary of Dossier Preparation and UT Box PDF File Names and Contents**

| Dossier Folder | |
|---|---|
| **PDF File Name in UT Box** | **PDF Document Contents** |
| 01_Change of Rank Form.pdf | Change in Academic Rank/Status Form |
| 02_Dean Statement.pdf | Statement from the Dean |
| 03a_Chair Statement Primary.pdf | Statement form the Chair of the Primary Department |
| 03b_Chair Statement Joint.pdf | Statement from the Chair of the Joint Department (If applicable) |
| 04_Mid-Probationary Review.pdf | Copy of Mid-Probationary Review (Only applicable for tenure candidates) |
| 05a,b,c_Other Statement_CSU Title.pdf | Statement from the Courtesy or Other Department Chair/Center Director (If applicable). Statements from units where the candidate holds a courtesy appointment should appear before statements from other departments. |
| 06_CV.pdf | Curriculum Vitae |
| 07_Scholarly Record.pdf | Complete list of all publications and scholarly/creative works published (or in an equivalent status) in reverse chronological order and grouped into four sections as applicable:

Candidate's dissertation/thesis title and dissertation/thesis advisor's name (Only applicable for tenure candidates)

Co-authors who were in a student or other trainee status at the time of submission should be noted in *italics*.

1. Works published (or in equivalent status), in press, accepted, or under contract while in current rank at UT Austin

2. Works published (or in equivalent status) while in current rank at other institutions

3. Works published (or in equivalent status) while in previous ranks at UT Austin

4. Works published (or in equivalent status) while in previous ranks at other institutions

Co-authored works listed in section 1 should indicate who the co-authors are (e.g., current or former students, peers or faculty colleagues at UT Austin or at another institution). Include a brief qualitative statement of contribution for each co-authored work.

Forthcoming works that are In Press, Accepted, or Under contract should be listed in section 1 and clearly labeled. Include clearly labeled supporting documentation (e.g., contracts from editors, publishing houses, producers, galleries, or other conduits for scholarly and/or creative work, and include reviews, where available). |

19

Appx.0028
UT Austin_00753

**GENERAL GUIDELINES 2018-19**

| Dossier Folder (continued) | |
|---|---|
| **PDF File Name in UT Box** | **PDF Document Contents** |
| 08_Teaching Statements.pdf | Budget council/executive committee statement with typed names and signatures of preparers<br><br>Candidate Statement (four pages or less; does not have to be signed) |
| 09_CIS.pdf | Report of Course Rating Averages<br><br>Summary of Course Instructor Survey Results |
| 10_Peer Teaching Observations.pdf | Peer Observation Reports |
| 11_Graduate Students and Postdocs | Committee Report of Masters and Doctoral Theses<br><br>Listing of Postdoctoral Fellows Supervised |
| 12_Research.pdf | Budget council/executive committee statement with typed names and signatures of preparers<br><br>List of Five Most Significant Works<br><br>Candidate Statement (four pages or less; does not have to be signed) |
| 13_ Advising, Service, and Honors.pdf | Budget council/executive committee statement on advising with typed names and signatures of preparers[*]<br><br>Candidate Statement on Advising (If submitted)<br><br>Budget council/executive committee statement on service with typed names and signatures of preparers*<br><br>Candidate Statement on Service (If submitted)<br><br>Budget council/executive committee statement on honors with typed names and signatures of preparers*<br><br>Candidate Statement on Honors (If submitted) |
| 14_Chart of Reviewers, Sample Letter, Materials Sent.pdf | Chart of Reviewers grouped by Received, Declined, and No Response listed in alphabetical order by last name within each group<br><br>Sample of Solicitation Letter<br><br>List of Five Most Significant Works and any other materials that were sent for evaluation |

---

[*]The budget council/executive committee statements on Advising, Service, and Honors are required for tenured, tenure track, and research professor faculty as well as faculty in lecturer, clinical, and adjunct titles for whom this is one of the areas of performance excellence selected for review.

20

**GENERAL GUIDELINES 2018-19**

| Dossier Folder (continued) | |
| --- | --- |
| **PDF File Name in UT Box** | **PDF Document Contents** |
| 15a,b,c_Ltr_Last name-Institution.pdf | Letters in alphabetical order by last name - coded in upper right-hand corner of the first page of each letter whether the budget council/executive committee, candidate, or both, nominated the letter writer. Must match the information provided on the chart of reviewers.<br><br>Letter writer CV or resume behind each letter. |
| 16_Declinations.pdf | All declinations correspondence in alphabetical order by last name (if received).  No CV required. |
| 17_Unsolicited.pdf | All unsolicited letters in alphabetical order by last name (if received).  No CV required. |

| Additional Statements | |
| --- | --- |
| This is a separate folder that should only be created if applicable. | |
| **PDF File Name in UT Box** | **PDF Document Contents** |
| Additional Statement_ccyy-mm-dd Last name.pdf | Any non-required statements or information added to the file as a result of the candidate's review before the budget council/executive committee deliberations or received afterwards during the course of the review process. |

| Supplemental Materials | |
| --- | --- |
| This is a separate folder and all supplemental materials must be submitted to the central administration electronically in UT Box.  (The Dean's Office should consult with the Provost's Office before making an exception to this requirement.) | |
| **PDF File Name in UT Box** | **PDF Document Contents** |
| 01a,b,c_Student Comments_SEMESTER NAMEYY-Course#.pdf | The Course Instructor Survey Summary evaluation page should be included as a cover sheet for each class. |
| 02_Letters Solicited from Collaborators.pdf | Chart of collaborators listed in alphabetical order by last name.<br><br>All solicited letters in alphabetical order by last name behind the chart (If received). No CV required. |
| 03_Other Supplemental Material.pdf | Items submitted by the candidate - should include a table of contents (If submitted) |
| 04a,b,c_Significant Publication (##-Title).pdf | Significant Publication[*] |
| 05a,b,c_Other Publication (##-Title).pdf | Other Publication submitted by the candidate (Stays in the Dean's Office) |
| 06_Teaching Portfolio.pdf | Teaching Portfolio (Stays in the Dean's Office) |

---

[*]This item is required for tenured, tenure track, and research professor faculty as well as faculty in lecturer, clinical, and adjunct titles for whom research is one of the areas of performance excellence selected for review.

Appx.0030
UT Austin_00755

**THE UNIVERSITY OF TEXAS AT AUSTIN**
**COCKRELL SCHOOL OF ENGINEERING**

**DOSSIER-PROMOTION PACKET-TABBED SECTIONS CHECKLIST**

## General Responsibilities

1. Before a department prepares a candidate's file, the department chair or their designee shall meet with the candidate to explain the promotion process and advise them to become familiar with the applicable guidelines.

2. The dean must approve the list of letter writers and their alternates before sending out the requests. A brief justification on why each person was selected must be provided. (Justification can be provided by completing the template on external referees from the Provost's Office.)

3. Before the budget council considers a case, the chair must ask the candidate to check the materials in the promotion dossier except for the budget council statements, ORU director statement (as appropriate), and the external peer reviews. If the candidate believes that the file is incomplete or includes inappropriate material, the chair or their designee shall either correct the problem or include a statement in the file about the problem and why it was not addressed as the candidate requested. The candidate may also place a statement in the file about the problem or other aspects of the case.

4. All factual information relied upon in the promotion and tenure decision process shall be included in written form in the promotion dossier. When written information is added to the promotion dossier after the department chair has asked the candidate to check the materials in the promotion dossier (other than the budget council statements, the ORU director statement (as appropriate), the external letters, the department chair's assessment, and the dean's assessment), the written information shall be date stamped and placed in a separate folder labeled Additional Statements (see section C.9). The candidate shall be informed of its inclusion and permitted an opportunity to place a statement in the file addressing this addition. All administrative parties (budget council, department chair, school advisory committee, ORU director, and dean) who have already reviewed the dossier will also be notified of the inclusion of the additional materials. Notification is not necessary for the addition of required statements to the promotion dossier during the regular review process by a budget council, department chair, ORU director, or dean.

5. Budget Council members prepare *assessments* for each section.

   - A complete and objective evaluation by faculty of a candidate's case for promotion is essential for maintaining the quality of the University. The Budget Council evaluation is the key step in determining the suitability for promotion based on the record presented in the case and the potential for future growth as a scholar and teacher.
   - Budget Council members' assessments are to evaluate the record **compared to the norms of the field** and a balancing of the good aspects of the candidate's record as well as the not so good. **Departmental and School norms should be cited** so the performance of the candidate against those norms can be understood by the Promotion and Tenure Committee and the President's Committee.
   - The Budget Council members' assessments should be thorough, focusing on the quality of the teaching, the impact and significance of the publications to the candidate's field, the record of external support for research, and the caliber of professional and university service, including whether leadership has been demonstrated in appropriate ways.
   - Members of the Promotion and Tenure Committee should not be involved in the preparation of any Budget Council assessments. If a member of the Promotion and Tenure Committee serves any role in the assessment process, other than conducting a peer review of teaching, the member will be asked to recuse himself/herself from the Promotion and Tenure Committee's discussion of the candidate.

6. When describing work done in collaboration with others, the candidate must delineate in their statement between their contributions and those of the others so that the Budget Council, Promotion and Tenure Committee, and the President's Committee are able to judge the specific achievements of the candidate. The candidate may request letters from senior faculty at UT who are not in their home department, *and from senior collaborators at other universities*, to provide additional input to their contributions to the collaborative work.

CONFIDENTIAL

7.  For faculty being considered for promotion to full Professor, *(a) through (c) apply*:
    (a)  The candidate must limit their statements to their work while in the rank of Associate Professor. Any scholarly materials, graduate student supervisions, and grants/contracts that were not counted in the previous promotion dossier should *be considered* in this promotion *dossier*. This *ensures* that all accomplishments between the submission of the promotion package for associate professor and the official promotion date are considered. Budget Council and Candidate need to be explicit about what *work is being considered as in rank*.
    (b)  *The promotion packets are considered complete at the time of the Budget Council vote. No information may be added to the dossier after this time, unless requested by the P&T Committee, the Dean, or the President's Committee. If additional information is requested, the request will be transmitted in writing to the department chair and the candidate will have the opportunity to review and comment on the new materials (with the exception of additional reference letters).*
    (c)  *The candidate's statements and the Budget Council members' assessments should indicate whether the candidate has achieved an international reputation in their field of expertise.*

8.  For candidates being considered for promotion to Associate Professor, *(a) through (c) apply:*
    (a)  *All work should be documented in the dossier, but work completed in rank at UT must be clearly identified.*
    (b)  *The candidate may update factual information in the dossier (e.g., papers accepted, grants awarded, students graduated) after the Budget Council vote, but the promotion packet is considered complete at the time that the P&T starts its review of that dossier. The candidate should provide the department chair with a brief statement describing the updated information, any supporting documentation, and an updated CV with the additions clearly identified. The department chair will share the updated information with the Budget Council.*
        (i)  *Significant changes may require a new meeting of the Budget Council to discuss the dossier again, and in extreme cases, the Budget Council may decide to take another formal vote. If the Budget Council meets to discuss the dossier again, the department chair must provide an addendum to his/her statement documenting the discussion and her/his assessment of the changes.*
        (ii)  *It is not necessary to update the entire dossier to reflect the changes. The statement from the candidate, updated CV, and addendum to the department chair's statement are sufficient.*
    (c)  The candidate's statements and the Budget Council members' assessments should indicate whether the candidate has achieved a national reputation.

9.  External letters received after the Budget Council vote on a promotion dossier will not be included in the promotion dossier and will not be reviewed by the P&T Committee, the Dean, or the President's Committee (barring extraordinary extenuating circumstances).

10. Departments are expected to find and correct typographical and grammatical errors in the dossier before submitting it to the Academic Affairs Office. They are also expected to ensure that all items *identified in the list beginning on p. 3* are included in the dossier.

---

**Packet Preparation – Information for Departmental Staff**

- Please put items in the order as they appear on this checklist.
- Do not include any coversheets of any kind.
- Please include native PDF files in the uploaded Box files, as opposed to scanned PDF documents, where ever possible. Electronic signatures are permitted in PDF files.

For the first round of review in the dean's office, submit one working copy of the tabbed dossier via hard copy and all of the supplemental materials via UT Box (see below for more information). Staff in the Academic Affairs Office will return this copy to the department, along with a detailed list of changes to make. After reviewing and making the requested changes to your original copy, please return the working copy and the list of changes marked with your initials acknowledging that you made each change on your original dossier. Then upload the updated dossier to your Box folder. For submission to the Provost's Office, submissions will be via UT Box. No additional copies of the supplemental materials are required.

---

CONFIDENTIAL                                                   UT Austin_0026866

## *DOSSIER FOLDER ON BOX*

### 1.  Recommendations

**(01_Change of Rank Form)**
         **Recommendation for Change in Academic Rank/Status**
_____The Provost's Office will complete the top portion of the form and send to AAO.  The remaining portion of the form is to be completed by department
_____Please refer to the provost's Chart of Recommended Actions for use in completing this form, although there will be a drop down box for options
_____If department has more than one candidate, the budget council vote on all of the forms should equal the same total number, please check.  Need to include the number of abstentions and the number of ineligible voters.
_____Do NOT include the chair's vote in the Budget Council vote.  Report the chair as being ineligible to vote.  Members of the Promotion and Tenure Committee are eligible to participate in the Budget Council vote within their respective departments.

**(03a_Chair Statement Primary)**
         **Chair's Statement**
_____include the typed name and the signature of the chair
_____*discuss the* rationale for Budget Council's recommendation
_____*provide a* summary of views of opponents and proponents (discussion of vote/decision to recommend for promotion)
_____*explain negative votes and abstentions (to the extent possible). Unexplained abstentions will be interpreted as negative votes by the President's Committee*
_____explain a case that is being considered for early promotion (less than six years in rank).  If an assistant professor will have served in rank six years, but will have accumulated less than six years of probationary service, justification for early promotion is required.
_____if the candidate is being reviewed for tenure, reflect on changes in the candidate's dossier that were made in response to the mid-probationary review.
_____explain a delayed promotion from associate professor to professor with correlation to new scholarly productivity or sustained record of teaching excellence
_____provide context to the candidate's accomplishments and address whether and how the candidate's promotion would improve the quality of the department
_____if particular groups within the Budget Council (i.e., technical area most closely aligned with the candidate, NAE members) expressed strong views, these should be collectively summarized
_____provide chair's independent assessment of candidate's overall performance and accomplishments as a member of the academic community, which are distinct from the assessment of the Budget Council.  Include a review of the achievements and contributions in the following areas:
        _____teaching, both undergraduate and graduate
             _____If the candidate is being reviewed for tenure, state the teaching policy for assistant professors in the department and explain any departures from the policy for the candidate under consideration.
        _____research, creative, and other scholarly activities, *indicate the norms of the discipline, i.e. conference proceedings are more important than journal papers; authorship norms (does the order indicate importance), etc.*
        _____advising, counseling and other student service
        _____administrative and committee service, public service of an academic or professional nature to the nation, state and local community
        _____other evidence of merit or recognition such as fellowships, grants, disclosures, patents pending, patents awarded, honors, and election to office in scholarly or professional organizations

**(03b_Chair Statement Joint)**
         **Joint Appointment Statements (if applicable)**
_____for those faculty with joint positions (other than 0% courtesy appointments), each department is to submit forms and assessments and vote on the case, with cross-referencing of the other position.
_____*if* only one college is involved, the dossier is consolidated, with one college advisory committee vote and one dean's statement
_____*if* two or more colleges/schools are involved, forms must be reviewed and acted on by all deans concerned --separate dossiers are sent forward concurrently.

CONFIDENTIAL
UT Austin_0026867

**(04_Mid-Probationary Review)**
_____Copy of Mid-Probationary Review (only applicable for tenure candidates)

**(05a,b,c_Other Statement, CSU Title)**
_____**Courtesy Appointment Statement (if applicable)**
_____*If* the faculty member holds a courtesy position and has significant involvement in another department or ORU, that department chair or director is to provide a letter commenting on the involvement and contributions of the candidate and a copy of that commentary is to follow the dean's and chair's statements.

_____**Academic Program/Director Statement (if applicable)**
_____if a faculty member is significantly engaged in the activities of a bureau, academic/research center, laboratory or institute, but does not hold a courtesy position, the director of the unit or another senior faculty member may comment on the candidate's contributions to the unit.
_____statement is to include the typed name and the signature of the director of academic program and/or research center in which the faculty member is actively involved.


## 2. Curriculum Vitae & Complete List of Publications

**(06_CV)**
**Candidate:**
_____**Curriculum vitae (in the Cockrell School of Engineering standard format)**
Candidates for promotion to professor should *clearly identify* all aspects of the dossier that they are counting as "in rank" (since last promotion review) (If an item was counted for promotion to associate professor, it must not be counted as "in rank" for promotion to professor.)

_____list of degrees, fields of study, and dates awarded
_____professional registrations, licensures, certifications (as applicable)
_____listing of all professional appointments
_____complete publications record (Please organize the significant works using the following categories: refereed journal papers, refereed conference papers, non-refereed conference papers, books, reports, chapters, and other materials.  Please list the items in each category in chronological order, and begin numbering each category with 1):
_____names of co-authors listed in the order in which they appear in the publication (italicize the names of UT students and/or post-docs who were supervised or co-supervised by the candidate)
_____beginning and ending page numbers for journal and conference papers *(if available, provide total number of pages in the paper if the pages of the publication are not numbered sequentially)*
_____total number of pages for books
_____clear designation of faculty member's role if it is not author (e.g., editor, compiler, translator, etc.)
_____works that are under review or accepted should be labeled accordingly.  (For works that are under review, include the submission date.  For works that are accepted, include the acceptance date.  *Do not include works that are in preparation.*)
_____list of all scholarly presentations
_____list of external research contracts/grants and proposals submitted and include the following information:
_____sponsor name
_____project title
_____project/funding period
_____complete list of co-PIs and relative effort of each, *as* appropriate
_____total funding amounts: proposal total/total amount under candidate's supervision
_____for candidates for promotion to professor include the following: (1) career total research funding/career research funding under candidate's supervision and (2) total research funding in rank (since last promotion review)/ research funding in rank (since last promotion review) under candidate's supervision (four numbers must be provided)
_____for submitted proposals, indicate the status of each (e.g., under review, approved, pending funding)
_____list of research awards through UT Austin
_____sponsoring group
_____project title
_____project/funding period
_____complete list of co-PIs and relative effort of each, where appropriate
_____total funding amounts: proposal total/total amount under candidate's supervision

CONFIDENTIAL

_____for candidates for promotion to professor include the following: (1) career total research funding/career research funding under candidate's supervision and (2) total research funding in rank (since last promotion review)/ research funding in rank (since last promotion review) under candidate's supervision (A total of four numbers must be provided)

_____list of all advising and related student services (indicate co-supervisions and whether PhD *students have advanced to* candidacy)

_____list of administrative and committee service

_____list of academic-related professional and public service

_____list of honors, awards, and other forms of recognition

_____list of invention disclosures, patents pending, and patents awarded

_____**Summary of Activities Table** (template provided by Cockrell School)

**(07_Scholarly Record)**
_____**Complete list of publications and scholarly/creative works** (template provided by Provost's Office)
A separate document listing all publications and patents published (or in equivalent status) in **reverse chronological order.**
This is defined for CSE as significant publications including refereed archival journal publications, refereed conference proceedings, books, book chapters, and patents awarded. Use the updated template from the Provost's Office website to prepare this document.

_____For tenure candidates only (not needed for associate professors w/tenure), provide the title of the candidate's dissertation/thesis and the candidate's dissertation/thesis advisor's name. (see template)

_____Group works into the following four categories, as applicable:
1. Works published, in press, or accepted while in current rank at UT
   (do not include publications that are currently under review, being revised, or in preparation)
2. Works published while in current rank at another institution
3. Works published while in previous rank at UT
4. Works published while in previous rank at another institution

_____For works that were published or accepted while in rank at UT (#1 above), provide the following additional information:
_____Include the names and affiliations of all co-authors for each co-authored work.
_____Include a brief qualitative statement describing the candidate's contribution to each co-authored work.

_____*Chart of current grant funding (TBD)*

_____Submit copies of **letters of acceptance** or copies of contracts from editors or publishers for scholarly and/or creative works that have been accepted, but are not yet published. Clearly label the letter such that the forthcoming work can be easily identified. Include reviews of books, if available. Page proofs may also be submitted as evidence of acceptance, instead of acceptance letter. Provide only the first page of article to document the publication information (do not include the entire article).

## 3. Teaching

**(08_Teaching Statements)**
**Budget Council:**
_____**Assessment** of teaching performance to include:
_____the typed names and the signatures of those members of the budget council responsible for preparing the statement
_____describe the candidate's principal areas of teaching
_____explain the evaluation procedures and measures used
_____discuss both student course/instructor and peer evaluations
_____discuss balance between undergraduate and graduate teaching
_____discuss relevant evidence of merit or recognition for teaching excellence
_____reflect familiarity with the teaching portfolio (evaluate)
_____indicate candidate's willingness to teach courses having a strong student demand
_____describe participation on graduate committees (when counting graduate supervisions, *do not* use weighting factors, *but discuss sole supervisions and co-supervisions separately*)
_____describe supervision of postdoctoral students, where applicable
_____describe and provide documentation of organized service learning instruction, where applicable

_____discuss any special circumstances concerning the candidate's teaching performance that should be considered and describe any innovative contributions

_____include comparisons with CIS results in the same classes that are taught by other faculty members, as applicable

**Candidate:**

_____**Statement** (Length is limited to four pages, not including the three summary tables required by the Cockrell School). This statement should be a personal statement that reflects on the items listed below. (This should not be a summary of the topics covered in each course.)

_____teaching philosophy

_____educational goals for the courses taught and how the goals were accomplished

_____description of any innovations or unique teaching methods

_____*statement describing how student comments have influenced the candidate's teaching and the impact of those comments*

_____specific areas of demonstrated improvement

_____other material that will provide colleagues with a context for interpreting other evaluative information.

_____Three summary teaching tables (templates provided by the Cockrell School)
      (1) Summary of Course-Instructor Ratings
      (2) Course Schedule by Semester
      (3) Summary of Graduate Students Currently Supervised at UT Austin

**Department or Candidate:**
**(09_CIS)**

_____**Course Rating Averages:** use the information in the CIS results summary to prepare this report. Use the template provided by the ***Dean's*** Office. Courses need to be listed in chronological order. Associate professors must include all courses taught since last promotion review to match the Summary of Recent Course-Instructor Survey Results.

_____**Summary of Recent Course-Instructor Survey Results** - The _Summary of Recent Course-Instructor Survey Results_ will be provided by the Provost's Office to Deans and Department Chairs in early June and should be used to satisfy this requirement. (example attached)

      Assistant professors:     complete list of courses taught during entire probationary period
      Associate professors:    complete list of courses taught since last promotion dossier was submitted

_____Make sure course numbers and course titles match between the above two documents

**(10_Peer Teaching Observations)**

_____**Peer Teaching Observation Reports** (report from peer evaluation team -- need not be budget council members): Peer observations should be conducted annually for all faculty members being considered for promotion. Reports of all in-class observations while in rank are to be included in the dossier. Observation reports conducted during the fall semester that the candidate for promotion is being reviewed (i.e., Fall 2018) should not be used unless absolutely necessary).

_____identify faculty members conducting the peer observation of teaching, observers are to sign their observation reports.

_____the number and title of the course

_____date of classroom observation

_____report is to be dated

_____explain methods of observation and inquiry

_____review lecture style, organization, course content, student satisfaction, clarity of written materials prepared for classes, rigor and fairness of exams, availability and helpfulness of faculty member outside of class, and materials in teaching portfolio

_____description of methods by which instructor engages students in learning

_____any specific improvement from previous peer observation reports

_____date on which the observation was discussed with the candidate

_____constructive advice for improving overall teaching performance

CONFIDENTIAL

**(11_Graduate Students and Postdocs)**
_____**List of Students Supervised or Co-supervised**
　　　The Provost's Office will distribute the list for theses/dissertations and of supervising committee service.  List will be distributed in early September and should be used to comply with this requirement, <u>but it should be reviewed for accuracy</u>.

_____**List of Postdoctoral Fellows Supervised**
　　　List must include the name of the institution that awarded their Ph.D. and the date conferred.  If the candidate did not supervise any postdoctoral fellows, provide a statement to this effect (e.g., No postdoctoral fellows were supervised.)

## 4.  Research, Publications & Other Evidence of Scholarship/Creativity

**(12_Research)**
**Budget Council:**
_____**Assessment** - assessment of research performance to include:
_____the typed names and the signatures of those members of the budget council responsible for preparing the statement
_____describe how the review was conducted, including the standards used
_____describe which area(s) of the field is the focus of the faculty member's work
_____identify and comment on those items that are considered to be of major significance or outstanding quality while in rank at UT Austin or since the most recent promotion, as appropriate
_____evaluate the quantity and quality of research conducted relative to the norms in the field and to peers at research intensive university
_____discuss the relative balance of individual vs. joint research against the norms of the discipline
_____<u>discuss the significance of the candidate's research and its contributions to the discipline</u>
_____discuss research funding generated, discuss uncommon grants
_____provide a brief statement of the basis for qualitative judgments in the area or discipline
_____clearly discuss the norms of the field and indicate, the quality of the outlets for a candidate's work (quality of the journals)
_____discuss the acceptance rates of the publications, as appropriate, but especially if refereed conference proceedings are considered to be important scholarly outlets.
_____explain the norms of co-authorship and whether peer review was involved
_____explain the reasons if non-traditional outlets of research or scholarly/creative activity are to be counted favorably (e.g., textbooks, continuing education presentations, governmental or industrial service, conference proceedings etc.)
_____for tenure-track candidates, the budget council needs to make clear about the candidate's level of independent scholarly activity while at UT
_____for tenure-track candidates with a book publication, indicate whether the book is derived from the doctoral dissertation, and if so, to what extent it has been expanded or modified

**Candidate:**
_____**List** of the **Five Most Significant Works** that are included in the promotion dossier (candidates for promotion to full professor should select the five most significant works that were published in rank). These publications must be published or accepted.  Publications under review must not be included.

_____**Statement** (Length is limited to four pages, not including the two summary tables required by the Cockrell School) This should be a personal statement that reflects on the items listed below.  Assistant professors should focus on accomplishments since first appointment as an assistant professor and may include work completed at another institution.  Associate professors should focus on accomplishments since last promotion review.
_____goals and accomplishments in the area of research, scholarship, and creativity.  Address impact of research.
_____discuss research results being careful to identify the research contributions of the candidate for collaborative research projects.
_____discuss external research funding generated.
_____discuss future research directions and goals, and potential impact of this work

_____**Two summary research tables** (templates provided by the Cockrell School)
　　　(1) Research Summary
　　　(2) External Grants and Contracts Awarded   Identify names and role of all co-investigators, total funding, and funding under supervision of candidate.  For research projects involving faculty colleagues or peers, indicate the relative division of labor for each project.

CONFIDENTIAL                                                                    UT Austin_0026871

_____Printout/screen shot of the first page of the (1) ISI Web of Science and (2) Google Scholar websites for candidate showing the h-index and listing the most highly cited publications.

## 5.  Academic Advising, Counseling and other Student Services

**(13_Advising, Service and Honors)**
**Budget Council:**
_____**Assessment** - assessment of advising performance to include:
_____the typed names and the signatures of those members of the budget council responsible for preparing the statement
_____describe and assess academic advising responsibilities at both the undergrad and grad levels during
_____describe other activities in support of the instructional process
_____consider how candidate assisted in advising undergraduates, graduate students, and postdoctoral fellows
_____especially noteworthy and deserves particular mention if service as Undergrad Advisor or Grad Advisor
_____mention other types of advising, as applicable
_____individual instruction
_____advising majors for registration
_____orientation activities for new students
_____offering advice to students considering advanced degrees
_____offering help with internships and job placement
_____advising student organizations
_____recruitment and retention activities
_____assess the placement of candidate's Ph.D. students
_____***when counting graduate supervisions, do not use weighting factors, but discuss sole supervisions and co-supervisions separately***

**Candidate:**
_____**Statement** describe academic advising responsibilities at both the undergraduate and graduate levels.

_____Two summary advising tables (templates provided by the Cockrell School)
(1) Summary of Academic Advising
(2) Degrees Conferred to Graduate Students Supervised

## 6.  Service to the University and to the Nation, State and Community

**Budget Council:**
_____**Assessment** - assessment of service performance to include:
_____the typed names and the signatures of those members of the budget council responsible for preparing the statement
_____assess (do not list) candidate's administrative and committee service as well as academic and professionally related public service contribution with focus on last three years
_____administrative and committee service- positions of leadership, such as chairing a committee, are to be noted
_____academic and professionally related public service - note any outstanding service as part of a professional organization, but clearly identify their role, and make a distinction between elected office editorship of highly respected journal or a membership on a large editorial board.
_____describe the nature of activities cited in support of the recommendation and assess the quality of the service

**Candidate:**
_____**Statement** describe administrative and committee service within UT and academic/professionally related public service contribution in rank.

CONFIDENTIAL

## 7.  Honors and other Evidence of Merit or Recognition, Including Contracts & Grants

**Budget Council:**

_____**Assessment** - assessment of honors to include:

_____the typed names and the signatures of those members of the budget council responsible for preparing the statement

_____describe success in seeking and obtaining external funding, the sources of that funding, and the relative distribution of funding among those sources (note that funding is **not** discussed here; actual research funding and work are discussed in Section 3)

_____describe and assess the relevant evidence of exceptional academic or professional merit:

____contracts and grants of an honorific nature

____medals

____fellowships

____invitations to speak (at other universities, at professional society meetings, and in other venues)

____election to office in scholarly or professional organizations

____other honors

_____indicate the relative prestige of those honors

_____distinguish between awards made on the basis of promise/basis of accomplishment

**Candidate:**

_____**Statement** discuss honors and recognition; describe success in seeking and obtaining external funding, the sources of that funding, and the relative distribution of funding among those sources.  (Note that research funding is not discussed here; actual research funding and work are discussed in Section 3.)

## 8.  Letters of Reference/Recommendation/Evaluation

**Generating the List of Referees:**

_____promotion dossiers ***must*** contain a minimum of eight reference letters, concentrating on colleagues at peer institutions, who are at arm's length to the candidate. Letters must not be solicited from academic advisers (PhD or post-doc) and UT faculty may not write external reference letters.

_____The department chair and budget council have the responsibility for finalizing a list of appropriate outside reviewers; however, the dean must approve the list before any requests are made. The candidate shall provide the chair/budget council with a list of individuals to be asked to provide peer review letters; and the chair/budget council shall also develop a list of outside reviewers whom they deem to be appropriate.  In developing the list of external evaluators, both the candidate and the department ***must*** avoid conflicts of interest (e.g., co-authors, collaborators) and seek out credible reviewers knowledgeable about the scholarly expectations of a research-intensive university.

_____the majority of the received review letters should be from reviewers nominated solely by the department

_____reviewers should be individuals with an understanding of the academic setting and the standards against which the area benchmarks itself

_____Department chair shall ask the candidate to review the approved list of potential external reviewers **prior** to department sending out solicitation letters to referees

_____Additional letters may be solicited from collaborators, but they must be placed in a separate section within the dossier and they do not count toward the minimum number of required letters (see below)

**Department:**

**(14_Chart of Reviewers, Sample Letter, Materials Sent)**

_____**Chart of Reviewers:** use the template provided by the Provost's Office to prepare a table to identify everyone approached to be a referee.  The statement of expertise and reason for selection is to be BRIEF.  It is not a bio of the person.  Must include reason selected, e.g. NAE member and foremost expert in field.

_____***Be sure the titles of referees match their CV/letterhead***

_____***Be sure the date received on the chart matches date of email or letter submitted***

_____**Sample Letter** sent to referees

_____**List of publications** or other examples of scholarly/creative activities sent to referees

CONFIDENTIAL
UT Austin_0026873

**(15a,b,c_Ltr_Last name-Institution)**
_____**Letters Received:**
_____All solicited letters received must be included in the candidate's dossier.
_____letters from each referee must be in alphabetical order by last name (same order as the Chart of Reviewers)
_____signed PDF version of reference letters are acceptable, but must be accompanied by the cover email sent
_____additional letters received after the Budget Council votes on the promotion package **_must_** not be included in the promotion package (barring extraordinary extenuating circumstances **_and approval by dean_**).
_____Make a note in the upper right-hand corner of the first page of each letter indicating who nominated the letter writer (use BC for budget council, Candidate, or Both–this should match the info provided on the chart of reviewers)
_____**Referee CVs**: include referee's CVs, a short version (preferably no longer than one page) behind each respective letter. If they do not send them, CVs should be printed from the Web and used. If a voluminous CV is sent, replace with a short bio from the Web.

**(16_Declinations)**
_____**Declinations**: place any declination correspondence in alphabetical order by last name (same order as the Chart of Reviewers). A CV is not required.

**(17_Unsolicited)**
_____**Unsolicited Letters**: place any unsolicited letters received in alphabetical order by last name. A CV is not required.


## _ADDITIONAL STATEMENTS FOLDER ON BOX (as applicable)_


## 9. Additional Statements _(as applicable, goes forward to UT Administration)_

**(Additional Statement, ccyy-mm-dd Last Name)**
_____any additional, non-required statements added to the file as a result of the candidate's review before the budget council deliberations or received after the candidate's review shall be date stamped and uploaded to BOX following the prescribed naming scheme.


## _SUPPLEMENTAL MATERIALS FOLDER ON BOX_


## 10. Supplemental Materials

**Department:** (goes forward to UT Administration)

**(01a,b,c_Student Comments, SEMESTER NAMEYY-Course# (in chronological order)**
_____**Originals of all Student Written Comments** - for associate professors, all courses since last promotion dossier was submitted, for assistant professors, all courses in rank. The Course Instructor Survey Summary evaluation page should be included as a coversheet for each class.
_____**_Be sure that the number of surveys returned are the number scanned. Do not submit only those with student comments._**

**(02_Letters Solicited from Collaborators)**
_____Chart of Collaborators: Department is to prepare a separate chart of reviewers for letters solicited from collaborators, listed in alpha order by last name, using the template provided by the provost's office.
_____**Letters Received** (as applicable) A CV is not required.

CONFIDENTIAL

UT Austin_0026874

**Candidate:**

**(03_Other Supplemental Material)**
_____**Other Supplemental Material** (as applicable) (goes forward to UT Administration)
_____any materials that the candidate believes are relevant to the promotion or tenure decision, i.e., additional publications
_____candidate can request internal letters from senior faculty at UT but not within the candidate's home department. This may be especially appropriate for candidates doing interdisciplinary work.
_____provide table of contents

**(04a,b,c_Significant Publication (##-Title)**
_____**Five Most Significant Works** (publications) (goes forward to UT Administration)
_____Candidates for promotion to full professor should select the five most significant works while in their current rank. These publications must be in accepted or published status.

**(05a,b,c_Other Publication)**
_____**Copies of All Publications** (held at Dean's level) (please do not submit paper copies, include links on the CV to where the publication lives or upload to BOX)
_____for Assistant Profs, copies ALL scholarly works
_____for Assoc. Profs, copies of all scholarly works produced since the last promotion review
_____BE SURE THE WORKS MATCH THE LIST IN THE CV (titles and co-author order and page numbers should match CV)
_____publications should be placed in the same order that they appear on the vitae (this makes it easier for the person checking for completeness and accuracy at both the dept. and college levels)

**(06_Teaching Portfolio)**
_____**Teaching Portfolio** (held at Dean's level) For each course taught in rank there should be examples of some of the following items to provide a sense of the unique and important aspects of the course.  An extensive compilation of course materials is not expected.
_____syllabi
_____handouts
_____problem sets
_____other written materials developed for courses
_____computer-assisted instructional aids
_____examinations
_____copies of edited and graded term papers for course with substantive writing component

CONFIDENTIAL                                                                                       UT Austin_0026875

August 2018

2018-19 Evaluation Template
Cockrell School of Engineering
Promotion and Tenure Committee



DEPOSITION EXHIBIT
3

3/18/2021
Tommi Rutledge Gray, CSR, RPR, CRR

Name of Faculty Member:
Department:
Current Rank:

1.0    TEACHING
- Brief assessment of overall teaching based on CIS rankings (highest quartile, above average, below average, lowest quartile) for each type of course taught by faculty member (required undergraduate, undergraduate elective …)
- Short discussion of the student comments.  (Please read <u>all</u> the course evaluations, as Brent Iverson does.)
- Did the faculty member accurately capture the primary concerns raised by the students in their teaching statement?  Did the faculty member implement any changes to address these concerns?  Was the faculty member successful in improving their teaching in rank?
- Did the department providing any mentoring to the faculty member related to teaching?  Did the peer reviewers address any of the primary concerns raised by the students?  Did the peer reviewers provide substantive feedback to the faculty member?
- Is there anything notable in the faculty member's development as a teacher that should be highlighted?

2.0    RESEARCH
- One or two paragraph statement describing the faculty member's research interests, the importance of this area of research to the Cockrell School, and the importance of this area of research to society?
- Does the faculty member outline a sound vision for their future research activities?

A.    <u>Publications</u>
- Among the papers published in rank, determine which are based on work conducted at UT, and which are co-authored with graduate students.
- To what extent has the candidate published with their PhD advisor, post doc advisor and senior colleagues at UT?
- Are the faculty member's papers widely cited and were they based on work conducted at UT?  Are there any trends among the individuals who cite the faculty member's papers?
- Discuss the quality of the journals and/or conferences in which the faculty member has published papers in rank.
- Discuss the relative importance of conference papers in the faculty member's field.

Appx.0042

August 2018

B.  External Letters
- Are the letter writers from peer institutions, and are they full professors?  Are the letters from arm's length reviewers?
- For each letter, list up to three statements that address the strengths of the faculty member and up to three statements that identify concerns or areas for possible improvement.

C.  Research Funding
- Discuss the sources and competitiveness of the external research funding.
- Discuss the independence of the research program and frequent collaborators, especially PhD advisor, post doc advisor, and senior colleagues at UT.
- Is the level of funding sufficient to support a reasonably sized research group?  (Size of group depends on department)
- Is there evidence of continuing funding beyond the current academic year?

D.  Patents
- Are the patents/patent applications based on work conducted at UT?  Are the patents/patent applications based on work conducted in rank?

3.0    ADVISING AND STUDENT MENTORING
- Discuss placement, awards, and co-authorship for supervised graduate students.
- Discuss evidence of commitment to mentoring students.

4.0    UNIVERSITY SERVICE
- Identify the three most impactful service activities within UT.

5.0    PROFESSIONAL SERVICE
- Identify the three most impactful professional service activities.

6.0    AWARDS
- For each of the external awards in rank, address the competitiveness (number of awards given each year and size of eligible community) and provide the citation.
- For editorial board service, provide a discussion of the relative impact of the journal, the size of the board, and the number of members from peer institutions in the US.

7.0    OVERALL
- Identify any issues or concerns that the dean should be prepared to address in the meeting with the President's committee
- If an assistant professor or a tenured associate professor is being considered for promotion before they have accumulated six years in rank, provide a short statement documenting the department's reasons for the accelerated promotion and state if the committee agrees with the department.
- If a tenured associate professor is being considered for promotion after accumulating ten or more years in rank, provide a short statement describing how the committee evaluated the candidate's record.

Message
_____

| | |
|---|---|
| **From:** | Andrews, Jeffrey G [jandrews@ece.utexas.edu] |
| **Sent:** | 5/22/2013 4:31:39 PM |
| **To:** | constantine@utexas.edu |
| **CC:** | DeVeciana, Gustavo A [gustavo@ece.utexas.edu]; DeVeciana, Gustavo A [deveciana@gmail.com]; Sanghavi, Sujay [sanghavi@mail.utexas.edu]; Tewfik, Ahmed H [tewfik@austin.utexas.edu]; shakkott@mail.utexas.edu; rheath@utexas.edu; Vikalo, Haris [hvikalo@ece.utexas.edu]; Ghosh, Joydeep [ghosh@ece.utexas.edu]; Vishwanath, Sriram [sriram@austin.utexas.edu]; ari54 [ari@ece.utexas.edu]; Dimakis, Georgios-Alex [dimakis@austin.utexas.edu] |
| **Subject:** | Re: Xiaoqing Zhu? |

Constantine,

Thanks for this detailed email.  All good stuff.  I'll follow up with you about this negative appraisal of Xiaoqing; at a minimum we should confirm the objectivity of the source and investigate whatever negative comments were made.

I think this appraisal (High risk, high reward) should be made clear and transparent to ECE faculty today.  In particular, it's a good time to raise the point (Ahmed?) that not every single person we hire should probably be tenured.  It's unclear to me that the ECE faculty are capable of voting against anybody for tenure, regardless how weak their record is, or how little support they have from their area.  It's not a good situation, for many reasons, one being that it is a very strong disincentive for us to take such risks in hiring.

best,
Jeff



On 5/22/13 8:42 AM, Constantine Caramanis wrote:

> Hi All (expanding to include those who were in the meeting yesterday)
>
> Specifically about Evdokia and our meeting yesterday: the final feeling at the meeting yesterday was that
>
> -- By many independently corroborating accounts (including at least 3 very well respected people that were not on her letter-writer list), Eddie is at the top of people in related areas, and generally very high. This includes people that have a much better CV and publication record.
>
> -- While her work thus far may not seem that relevant to what we do, she is nevertheless working in an area that could contribute significantly to what we do.
>
> -- Given all the above, while there are concerns about area and productivity thus far, the feeling is that she definitely has the potential to do extremely well. No doubt, there is a general acknowledgment that this is not certain. However the feeling is that there is a chance that she will do extremely well (contrasted to someone who has a very high probability of doing somewhat or fairly well).
>
> In summary, the feeling was that, acknowledging that our tenure bar is only getting higher and that she will have to change her trajectory in order to clear it, we should give her a chance,

**Appx.0044**

because there is good reason to think she has great potential. Also important, was the realization that given our track record in the last 6 years since I have been here, it is not clear that the next 2-3 years would turn up a similarly strong opportunity that we would have high confidence would actually come to UT.

Personally: I agree that we need to have a very high bar. Another thing that Stanford does, though, is to take risks, knowing that the tenure bar is maintained at a high level to correct for risks that didn't work out. Again, personally: I think that this is a risk, but there is a chance that it could work out very well for us. If we do make an offer, and if she does come, I think we need to do our best to help her with understanding the bar, and helping her to clear far above it. I think there is considerably evidence that she has the potential to do so.

Specifically about Xiaoqing:

-- In terms of industry connections, she is definitely extremely strong, and would contribute to WNCG and the department.

-- There was a phone call I received that provided extremely negative feedback -- am happy to share details in person/phone. I discounted this heavily in discussions with the committee since it is only one person, but it did play a role in her not making the interview list.

-- Her publication record since graduation (papers without her advisor) is not that strong. Of course, this is heavily mitigated by the fact that she has been in industry (and doing very well there).

-- Given that she is in Austin, and her husband is here in Physics, the committee decided we would invite her for a talk (after this cycle) and decide at that point on whether to interview her.

Constantine

---
Constantine Caramanis
e-mail: constantine@utexas.edu
web: http://users.ece.utexas.edu/~cmcaram

On May 22, 2013, at 9:59 AM, Gustavo de Veciana <deveciana@gmail.com> wrote:

I agree regarding Xiaoqing -- she is very smart and well respected by her peers at CISCO, her work more on the engineering side.

The informal feedback that was received however was a real set back though I am not familiar with the source.

Gustavo

_____

CONFIDENTIAL                                                                                      UT Austin_0008218

**Gustavo de Veciana** | Professor | Electrical and Computer Engineering | UT Austin
☎ 512-471-1573 | ☽ 512-965-6698 | www: http://www.ece.utexas.edu/~gustavo

On May 22, 2013, at 9:38 AM, Jeff Andrews <jandrews@ece.utexas.edu> wrote:

Constantine and Ahmed,

I'm sorry to micromanage the committee, but I just reviewed her application and see no weaknesses, including no negative recommendation letter.   And I don't recall her ever giving a talk here, despite being in Austin.  (I believe her husband is in Physics?)

I rate her higher than Nikolova based on what I can see of their applications. And Xiaoqing has significant industry experience which is something I really value and would add to our group.

I had dinner with Bernd Girod last night at Stanford which is what triggered my memory of her application.  I also was reminded that it took Stanford 2 years to make up their mind to hire Andrea Goldsmith, which annoyed her at the time but is the way they do things -- no stone unturned.  I wonder if we too should not be more deliberate here, especially since there is no real urgency to making an offer to Eddie.

Jeff

On 5/22/13 6:16 AM, Constantine Caramanis wrote:

    Hi Jeff,

    Xiaoqing was indeed on our short list. She didn't make it to the
    interview list for a few reasons, including a negative
    recommendation letter. The committee decided in the end that
    maybe we could have her give a talk here, which we would make
    sure would be attended by people from across the department (and
    the committee) and then revisit the issue based on that.

    Constantine

    ---
    Sent from my handheld

    On May 22, 2013, at 4:43 AM, "Andrews, Jeffrey G"
    <jandrews@ece.utexas.edu> wrote:

        What was the reason that we didn't interview her, the
        one who is currently at Cisco here in Austin? Girod's
        student.  I might be misspelling her name.

        Jeff

CONFIDENTIAL

Message

| | |
|---|---|
| **From:** | Fenves, Gregory L [fenves@utexas.edu] |
| **Sent:** | 5/30/2013 9:59:19 PM |
| **To:** | Tewfik, Ahmed H [tewfik@austin.utexas.edu] |
| **CC:** | Speitel, Gerald E [speitel@utexas.edu]; Shaffer, Sonya D [shaffer.s@mail.utexas.edu] |
| **Subject:** | Re: Extending an offer to Evdokia Nikolova |

Good. Thanks.

On May 30, 2013, at 4:52 PM, Tewfik, Ahmed H wrote:


Hi Greg


Her 12 months salary is: $121,438.00 or a little over $91k for 9 months. I'll suggest to Jerry and you  a salary next week that puts her in the right range within our scale. I expect it to be within 2-3k of her current. 9 months salary.


regards
Ahmed


_____

Ahmed Tewfik
Cockrell Family Regents Chair in Engineering
Chairman, Department of Electrical and Computer Engineering
The University of Texas at Austin
ENS Room 236
2501 Speedway, C0803
Austin, Texas 78712-0240 USA

Direct: (512) 471-6179
tewfik@austin.utexas.edu

On May 29, 2013, at 2:12 PM, "Fenves, Gregory L" <fenves@utexas.edu> wrote:

> Ahmed,
>
> I approve and authorize you to begin negotiating an offer with Dr. Nikolova.  The salary website for A&M says her salary is $119k.  The methodology is always suspect but this should be total comp including summer.  If she was paid for 11 months, that would imply a nine-month salary of $97k.  Please advise what salary range you are recommending, considering equity and compression in the assistant professor rank of ECE.
>
> Greg
>
> On May 29, 2013, at 10:16 AM, Tewfik, Ahmed H wrote:
>
>
> Hi Greg and Jerry

CONFIDENTIAL                                                                        UT Austin_0020109

I would like to extend an offer to Nikolova. You should have her CV and memo from when we interviewed her. Please let me know if you need more information or need copies of her CV or the presentation we gave to the faculty.

Regards,
Ahmed

---

**From:** Tewfik, Ahmed H
**Sent:** Tuesday, May 28, 2013 11:26 PM
**To:** ece-faculty-a@utlists.utexas.edu (ece-faculty-a@utlists.utexas.edu)
**Cc:** Speitel, Gerald E; Fenves, Gregory L; Bearden, Carole A; Shaffer, Sonya D
**Subject:** Vote on Evdokia Nikolova

Hi everyone

We received 38 valid electronic votes out of 39 attempts plus one vote via email on the question:

ECE should make an offer to Evdokia Nikolova, one of the two candidates recommended by the recruiting committee for our junior at large position.

|         | Percent Answered |
|---------|------------------|
| YES     | (30 votes) 76.923% |
| NO      | (7 votes) 17.948% |
| ABSTAIN | (2 votes) 5.128% |

regards
Ahmed

_____
Ahmed Tewfik
Cockrell Family Regents Chair in Engineering
Chairman, Department of Electrical and Computer Engineering
The University of Texas at Austin
ENS Room 236
2501 Speedway, C0803
Austin, Texas 78712-0240 USA

Direct: (512) 471-6179
tewfik@austin.utexas.edu

CONFIDENTIAL



COCKRELL SCHOOL OF ENGINEERING

THE UNIVERSITY OF TEXAS AT AUSTIN

*Department of Electrical and Computer Engineering • Engineering Science Building*
*1 University Station C0803 • Austin, Texas 78712-0240 • (512) 471-6179 • Fax (512) 471-3652*

June 7, 2013

Dr. Evdokia Nikolova
1210 Winding Road
College Station, TX 77840

Dear Evdokia,

I am pleased to inform you that the Dean of the Cockrell School of Engineering has authorized me to offer you a tenure track appointment to the faculty of the Department of Electrical and Computer Engineering at The University of Texas at Austin, with the rank of Assistant Professor. Your academic appointment will be effective January 16, 2014, with a nine-month academic rate of $93,000. The salary figure represents the gross annual salary and is subject to deductions required by state and federal law and, if permitted by law, such other deductions as you may authorize. Contingent on your being in residence, we will appoint you for the period January 1-15, 2014, at your proposed nine-month academic rate. This will allow time for you to prepare for assumption of your faculty duties in advance of the spring semester. We will also cover a trip to Austin in August 2013 for you to attend the School and University-sponsored orientations on teaching and benefits (discussed below).

This appointment is subject to review and approval by the Board of Regents of The University of Texas System. All faculty, administrators, and staff are subject to the relevant provisions of the *Rules and Regulations* of the Board of Regents and the *Handbook of Operating Procedures* of The University of Texas at Austin and to applicable state and federal laws.

Your offer package is as follows. Detailed information is contained in the attachment.

| | |
|---|---|
| Nine-month academic rate | $93,000 |
| Start-up Funds | $100,000 |
| Research Initiation | $5,000 |
| Moving Expenses | $7,500 |
| Library Commitment | $1,000 |
| Two-week January appointment | 1/1-15/2014 |

Up to six months of summer salary support to cover the summers of 2014 and 2015
40 hours of graduate research assistant support for two years

We will assist you to transfer your Google award from Texas A&M University to the University of Texas at Austin. In the event that we are unable to secure the transfer of the Google award to UT Austin, we will provide you with $41,000 to enable you to pursue your research program.
You will be expected to develop research programs in conjunction with MS and PhD candidates, and to obtain external financial support for these programs whenever feasible. Instructional assignments

Appx.0049

Page 2 of 4

are determined by the department chair. For each of your first two semesters of employment, you will receive an adjusted workload to allow time to develop instructional materials for courses you teach. As an assistant professor, you will teach three courses in future academic years, one of which being the senior design project class. A faculty member's teaching assignments are typically divided evenly between undergraduate and graduate courses.

The week before classes begin each August, the University's Center for Teaching and Learning offers the UT Austin Faculty Orientation Seminar that covers a broad range of topics. In conjunction with this, the Cockrell School of Engineering will be coordinating engineering specific sessions designed to help you manage your career as an engineering faculty member at UT Austin and become an effective instructor. More information about the New Faculty Orientation will be sent at a later date.

The enclosures cover important information for new faculty members at The University of Texas at Austin, including an overview of retirement and other benefits. You will be entitled to all employee benefits authorized by the state legislature. Human Resource Services will provide you with full information on available University services and resources at the New Employee Welcome/Orientation, which you should attend as soon as possible upon your arrival. As a new employee you have 31 calendar days from the initial date of your appointment (1/1/2014) to enroll for insurance coverages.

This offer is contingent upon satisfactory completion of all pre-employment screening requirements. These include (1) completion of the form and provision of documentation required by the Federal Immigration Reform and Control Act to verify employment eligibility to work in the United States; (2) a background check for security sensitive positions, which include all faculty positions; and (3) satisfaction of a credentialing requirement that is a criterion for institutional accreditation. The first must be satisfied within three working days of the start date of your appointment and will be handled upon your arrival. For the background check, you will receive an email from the Background Check Administration system with a request for authorization to perform the background check. To meet the last requirement, please complete and return the enclosed Official Transcript Authorization for New Faculty Form to the department for handling. The enclosures contain additional information on these requirements.

We are enthusiastic about your proposed appointment and look forward to having you as a member of the faculty. You may contact me at (512) 471-6179 if you have any questions. Please indicate your acceptance of this appointment by signing the original of this letter and returning it to me. The enclosed copy should be retained for your records. I will appreciate having your written acceptance of this offer on or before July 15, 2013.

Sincerely,

Prof. Ahmed H. Tewfik
Cockrell Family Regents Chair in Engineering
Chairman, Department of Electrical and Computer Engineering

CONFIDENTIAL                                                    UT Austin_0007074

Page 3 of 4

cc:   Executive Vice President and Provost Steven W. Leslie
      Dean Gregory L. Fenves

Enclosures:   Attachment A for 2-9991-PM- Information for New Tenured and Tenure-Track
              Faculty Members
              HOP 2-2010 Academic Titles and Tenure
              HOP 2-2160 Recommendations Regarding Faculty Compensation, Faculty Promotion,
                 Tenure, Renewal of Appointment or Non-renewal of Appointment
              Official Transcript Authorization for New Faculty Form
              Moving Expenses, Cockrell School of Engineering Business Affairs Office

I accept this offer of appointment and I attest that the credentials reflected in the curriculum vitae
submitted with my application are correct:

_____        07/18/2013
Evdokia Nikolova                          Date

I decline this offer of appointment.

_____        _____
Evdokia Nikolova                          Date

Appx.0051

Page 4 of 4

## Detailed Information on Offer Package

We are pleased to provide $100,000 to assist you in starting your research program. These funds will be available to you during the first two years of your work at UT. An extension may be granted by the Dean in special circumstances (for example if funds are waiting to be used as a match for outside grants). The funds are intended to help you rapidly develop a research program that is sponsored by external sources. None of your start-up funds may be used for your own salary compensation.

Additionally, it is Cockrell School policy to make available to each new faculty member $5,000 of support for research initiation. These funds are meant to include travel to technical meetings that is otherwise unavailable to first year faculty.

We will reimburse you for moving of household goods on a documented basis and for reasonable expenses necessary for one or more trips to Austin for personal relocation purposes up to a maximum of $7,500. For information about relocation services provided by the University, please visit the Human Resource Services website http://www.utexas.edu/hr/manager/hiring/relocation.html If you wish to take advantage of these services, please contact our Departmental Executive Assistant, Ms. Carole Bearden, cjjp@mail.utexas.edu, (512) 471-4540, and she will assist you with this process. Expenses that meet the criteria set forth in IRS Publication 521 (http://www.irs.gov/publications/p521/index.html ) are non-taxable.

The McKinney Engineering Library has reserved $1,000 to purchase non serial materials in support of your teaching and research. These funds can be used to select materials such as books, conference proceedings, data sources, or video content that will be added to the Library's collection to ensure access to information in your area of expertise. Please contact Susan Ardis at the McKinney Engineering Library (s.ardis@mail.utexas.edu) to begin selecting materials with these funds.

We will provide up to three months of summer salary in each of your first two summers (i.e., six months total) as needed for you to be fully supported for the first two summers. Part of your first summer's salary will come from the University's Summer Research Assignment (SRA) program, which provides salary funds to enable the recipient to concentrate on research and writing during the summer session. To receive the SRA funding, you will have to complete a short web-based application about your research. Information about other internally funded awards programs administered by the Office of Graduate Studies and the Office of the Vice President for Research can be accessed via http://www.utexas.edu/ogs/faculty/funding.html.

The department will make suitable space available for you and your graduate students' research. You are assured 40 hours of Graduate Research Assistant (GRA) support for two years. These funds will expire after your first three years at UT. Each year of GRA support includes 12 months of salary, fringe benefits, and tuition.

CONFIDENTIAL



THE DEPARTMENT OF ELECTRICAL &
COMPUTER ENGINEERING

ML+&L
Cockrell School of Engineering
Academic Affairs Office

October 8, 2015                                 OCT 2 6 2015

### Evdokia Nikolova's memorandum for modified duty during Spring 2016 with regards to new baby expected on March 17, 2016

I am expecting a baby on March 17, 2016 and I would like to have modified duty in the Spring 2016 semester.

As part of the modified duty, I am focusing on enhancement of the course material for my game theory class, which is offered as EE381V to graduate students who take it for graduate credit. My goal for enhancement is two-fold: (1) to improve the class for our UT students; and (2) to develop core materials for an algorithmic game theory class that faculty at other universities can effectively utilize.

My game theory class at UT is (typically) offered every other year during the Spring semester. Last time it was offered, the class had graduate students with diverse backgrounds ranging from very theoretical to very applied. The diverse backgrounds and research interests among the students, all of whom found some application of game theory to the research topic they are pursuing, pose unique challenges in delivering the course material effectively and ensuring all the students are mastering the course material and also benefiting from it in their research. Based on student feedback (formal course evaluations and anonymous written comments in class), I will be working on the following two key enhancements, which I deem are essential for the course to become more effective:

1) Integration of state of the art research material into the course. Specifically, this semester I am organizing a reading group on "Mechanism Design for the Smart Grid" and I am learning and testing brand new material on the topic that can be successfully integrated in my graduate game theory class.

2) The development of new evaluation modules, specifically homeworks and projects. The projects that the students work on throughout the semester are critical for helping them apply the material learnt in the course to their research interests and also develop new research ideas. These projects in the past have led to very innovative interdisciplinary work integrating various topics in Electrical Engineering with Game Theory and now with the new course material the projects will have the potential to be on topics of high potential impact.

I plan to make the instruction and evaluation modules available to colleagues at other universities, both within the US and abroad. My game theory class is the only class on this topic and is relevant to many areas within Electrical and Computer Engineering and beyond, including in Communications, Transportation, Energy, Software, etc. I believe this provides me a unique opportunity to develop course modules that are valuable in



Exhibit
Evdokia Nikolova
Appx.0053  75
06/29/21  DC

– 2 –                                                           October 8, 2015

training skilled researchers, and increasing the potential applicability and impact of their research or consequent work in industry.

Sincerely yours,

Evdokia Nikolova
Assistant Professor
Email: Nikolova@austin.utexas.edu

Appx.0054

CONFIDENTIAL                                                    UT Austin_0007062



**DEPARTMENT OF ELECTRICAL & COMPUTER ENGINEERING,**
COCKRELL SCHOOL OF ENGINEERING

Cockrell School of Engineering
Academic Affairs Office

OCT 2 6 2015

*2501 Speedway · C0803 · Austin, TX 78712-1684 · (512) 471-6179 · FAX (512) 471-3652*
*http://www.ece.utexas.edu ·*

## MEMORANDUM

**TO:**      Gerald E. Speitel, Jr
             Associate Dean, Academic Affairs
             Cockrell School of Engineering

**FROM:**    Ahmed Tewfik
             Chair, Electrical and Computer Engineering

**DATE:**    October 26, 2015

**RE:**      Modified Instructional Duties for Evdokia Nikolova

Evdokia Nikolova has informed me that she is expecting her first child March 17, 2016.  She has requested modified instructional duties for the 2016 Spring Semester.  During this time she plans to enhance her course materials in EE 381V by the integration of state of the art research materials and developing new evaluation modules.

Evdokia normally teaches two courses per academic year plus senior design.  I had approved an unbalanced teaching load this academic year for Evdokia to allow her to participate in most of the activities of the UC Berkeley Mathematical Sciences Research Institute during the Fall of 2015.  As a result, she will not be teaching at all this academic year.

I support Evdokia's request and ask that you approve it.

CONFIDENTIAL                                                                  UT Austin_0007060

*to Janet '*



**THE UNIVERSITY OF TEXAS AT AUSTIN**
COCKRELL SCHOOL OF ENGINEERING, OFFICE OF THE DEAN

*301 E. Dean Keeton Street · Stop C2100 · Austin, TX 78712 · (512) 471-1166*



Associate Dean for Academic Affairs
ECJ 10.322, MC C2100
(512) 471-7995
email:  speitel@mail.utexas.edu

## MEMORANDUM

TO:         Janet M. Dukerich
            Senior Vice Provost for Faculty Affairs

FROM:       Gerald E. Speitel Jr.
            Associate Dean for Academic Affairs

DATE:       October 27, 2015

SUBJECT:    Modified Instructional Duties for Evdokia Nikolova


Attached is a request for modified instructional duties for Dr. Evdokia Nikolova, Assistant Professor in Electrical and Computer Engineering.  Dr. Nikolova is expecting her first child in March 2016.  She is requesting modified instructional duties for the spring 2016 semester.  While on modified instructional duties, Dr. Nikolova will work on enhancing course materials for graduate class EE 381V.

Dr. Nikolova is also electing the automatic extension for reasons of childbirth and wishes to apply the extension to the 2015-16 academic year.

The Cockrell School supports this request.  If you need any additional information, please contact me.


GES:sds

Enclosures:    Approval Memo from Dr. Ahmed Tewfik
               MID Request from Dr. Evdokia Nikolova
               Notification Form of Automatic Probationary Period Extension

CONFIDENTIAL                                                      UT Austin_0007059



**COCKRELL SCHOOL OF ENGINEERING**
Office of the Dean

*301 E. Dean Keeton Street Stop C2104 · Austin, Texas 78712-1180 · 512-471-1166*

Associate Dean for Academic Affairs
ECJ 10.322, MC C2100
(512) 471-7995
email: speitel@mail.utexas.edu

## MEMORANDUM

TO:      Evdokia Nikolova
            Assistant Professor, Electrical and Computer Engineering

FROM:   Gerald E. Speitel Jr.
            Associate Dean for Academic Affairs

DATE:    November 20, 2015

SUBJECT:  Approval of Probationary Period Extension

      This is to let you know that your request for modified instructional duties for spring 2016 has been approved by Senior Vice Provost Janet Dukerich. This approval is granted on the basis that you will be giving birth in March 2016 and will be the primary caregiver of your child during this time.

      Use of available sick leave should be recorded on the Faculty Monthly Report of Sick Leave Taken form and submitted to your department chair's office. Family Medical Leave may be used in conjunction with sick leave and should be recorded when applicable. NOTE: In accordance with HOP 5-4210, sick leave may not be used in conjunction with Parental Leave or Family and Medical Leave once an employee has recovered from the temporary incapacity related to pregnancy. More information can be found at http://bit.ly/HOP5-4210.

      In addition, attached is the approval from the Provost's Office for your request for a one year extension of your probationary period. As noted in the memo, please read and then sign to indicate your understanding of the extension. The signed original should be returned to my office, and we will forward to the Provost's Office for you. You may keep the copy of the approval for your records.

      Please do not hesitate to contact me should you have any questions.

GES:sds

Attachments

c:    Ahmed H. Tewfik, Department Chair, Electrical and Computer Engineering



Exhibit
Evdokia Nikolova
Appx.0057 **78**
06/29/21   DC



**EXECUTIVE VICE PRESIDENT AND PROVOST**
The University of Texas at Austin

_110 Inner Campus Drive, Suite 201 · G1000 · Austin, Texas 78712-0538 · (512) 471-4363 · FAX (512) 475-7385_

November 11, 2015

Dr. Gerald E. Speitel, Jr.
Associate Dean for Academic Affairs
Cockrell School of Engineering
C2100

Dear Jerry:

Please advise Assistant Professor Evdokia Nikolova that the request for a one-year probationary period extension for reason of childbirth has been applied.

Professor Nikolova joined the faculty of the Department of Electrical and Computer Engineering in January of 2014. With this extension, the university will no longer count the 2015-16 academic year toward fulfillment of the required probationary period of service and it is projected that Professor Nikolova's mandatory promotion and tenure review will likely occur in the fall of 2020 per the chart below:

| Academic Year | Probationary Period Status |
|---|---|
| 2013-14 | Partial Year - Does not count toward probationary period |
| 2014-15 | Probation – Year 1 |
| 2015-16 | Extension Year - Does not count toward probationary period |
| 2016-17 | Probation – Year 2 |
| 2017-18 | Probation – Year 3 |
| 2018-19 | Probation – Year 4 |
| 2019-20 | Probation – Year 5 |
| 2020-21 | Probation – Year 6 - Projected year of up/out review |

This approved extension to the probationary period may be rescinded at Professor Nikolova's discretion. A request to rescind an approved probationary period extension should be submitted in writing to the department chair no later than February 1 prior to the fall promotion review. If the approved extension is rescinded, then Professor Nikolova's mandatory promotion and tenure review will occur one year earlier than indicated in the chart above.

Appx.0058

CONFIDENTIAL

Dr. Gerald E. Speitel, Jr
November 11, 2015
Page 2

Please ask Professor Nikolova to sign and return the original of this letter to the Office of the Executive Vice President and Provost, G1000. A copy of this approval should be placed in the departmental and dean's office faculty personnel files.

Sincerely,

Janet M. Dukerich
Senior Vice Provost for Faculty Affairs

JMD /dh

xc:     Dean Sharon L. Wood
        Professor Ahmed Tewfik

**Agreed:**

_____          Date: _____
Dr. Evdokia Nikolova, Assistant Professor

CONFIDENTIAL

Appx.0059

UT Austin_0007055

Cockrell School of Engineering
Academic Affairs Office

OCT 2 6 2015

Attachment A
Policy Number 5.C.1
September 1, 2006

THE UNIVERSITY OF TEXAS AT AUSTIN

## NOTIFICATION/DECLINATION OF AUTOMATIC PROBATIONARY PERIOD EXTENSION FOR REASON OF CHILDBIRTH and/or ADOPTION

Name of faculty member: __Evdokia Nikolova__

Faculty rank: __Assistant Professor__

Department: __Electrical and Computer Engineering__

School/College: __Cockrell School of Engineering__

Date of birth/adoption __03/17/2016__
mm/dd/yyyy
(Actual or expected date, as appropriate.)

### A. NOTIFICATION OF AUTOMATIC EXTENSION

I elect the automatic extension for reason of childbirth ☑ / adoption ☐.

Academic Year to which extension is to apply: __2015-16__          *Sds per Carole Barden 10/26*

*Plan for Instructional and Academic Responsibilities: I will fulfill [did fulfill] my instructional responsibilities as agreed upon with my Department Chair, and I will pursue [did pursue] my research and publication activities to the extent possible during this period.* ☑

### B. DECLINATION OF AUTOMATIC EXTENSION

I decline the automatic extension for reason of childbirth ☐ / adoption ☐.

**Signatures**

| | | |
|---|---|---|
| Faculty Member | _[signature]_ | Date __10/23/2015__ |
| Department Chair | _[signature]_ | Date __10/26/2015__ |
| Director | | Date _____ |
| Dean | _[signature]_ | Date __10/28/15__ |
| Provost | *See approval letter* | Date _____ |

CONFIDENTIAL                                    UT Austin_0007056



**EXECUTIVE VICE PRESIDENT AND PROVOST**
The University of Texas at Austin

*110 Inner Campus Drive, Suite 201 • G1000 • Austin, Texas 78712-0538 • (512) 471-4363 • FAX (512) 475-7385*

November 11, 2015

Dr. Gerald E. Speitel, Jr.
Associate Dean for Academic Affairs
Cockrell School of Engineering
C2100

Dear Jerry:

Please advise Assistant Professor Evdokia Nikolova that the request for a one-year probationary period extension for reason of childbirth has been applied.

Professor Nikolova joined the faculty of the Department of Electrical and Computer Engineering in January of 2014. With this extension, the university will no longer count the 2015-16 academic year toward fulfillment of the required probationary period of service and it is projected that Professor Nikolova's mandatory promotion and tenure review will likely occur in the fall of 2020 per the chart below:

| Academic Year | Probationary Period Status |
|---|---|
| 2013-14 | Partial Year - Does not count toward probationary period |
| 2014-15 | Probation – Year 1 |
| 2015-16 | Extension Year - Does not count toward probationary period |
| 2016-17 | Probation – Year 2 |
| 2017-18 | Probation – Year 3 |
| 2018-19 | Probation – Year 4 |
| 2019-20 | Probation – Year 5 |
| 2020-21 | Probation – Year 6 - Projected year of up/out review |

This approved extension to the probationary period may be rescinded at Professor Nikolova's discretion. A request to rescind an approved probationary period extension should be submitted in writing to the department chair no later than February 1 prior to the fall promotion review. If the approved extension is rescinded, then Professor Nikolova's mandatory promotion and tenure review will occur one year earlier than indicated in the chart above.

Appx.0061

CONFIDENTIAL                                                                 UT Austin_0006491

Dr. Gerald E. Speitel, Jr
November 11, 2015
Page 2

Please ask Professor Nikolova to sign and return the original of this letter to the Office of the Executive Vice President and Provost, G1000. A copy of this approval should be placed in the departmental and dean's office faculty personnel files.

Sincerely,

Janet M. Dukerich
Senior Vice Provost for Faculty Affairs

JMD /dh

xc:    Dean Sharon L. Wood
       Professor Ahmed Tewfik

**Agreed:**

_____        Date: _____
Dr. Evdokia Nikolova, Assistant Professor

CONFIDENTIAL                                                    UT Austin_0006492



THE DEPARTMENT OF ELECTRICAL &
COMPUTER ENGINEERING

April 13, 2018

**Evdokia Nikolova's memorandum for modified duty during Fall 2018 with regards to new baby expected on June 30, 2018**

I am expecting a baby on June 30, 2018 and I would like to have modified duty in the Fall 2018 semester.

As part of the modified duty, I am focusing on enhancement of the course material for my game theory class, which is offered as EE381V to graduate students who take it for graduate credit. My goal for enhancement is two-fold: (1) to improve the class for our UT students; and (2) to develop core materials for an algorithmic game theory class that faculty at other universities can effectively utilize.

My game theory class at UT was offered once during the Spring 2014 semester. The Algorithmic Game theory research and my own research have involved considerably since then and the course material needs to be significantly revised to incorporate state-of-the-art research and prepare the graduate students for research in the field when it is offered next. In its previous offering, the class had graduate students with diverse backgrounds ranging from very theoretical to very applied. The diverse backgrounds and research interests among the students, all of whom found some application of game theory to the research topic they are pursuing, pose unique challenges in delivering the course material effectively and ensuring all the students are mastering the course material and also benefiting from it in their research. Based on student feedback (formal course evaluations and anonymous written comments in class), I will be working on the following two key enhancements, which I deem are essential for the course to become more effective:

1) Integration of state of the art research material into the course. Specifically, I will include new material on mechanism design, with applications to the electricity grid, and I am learning and testing brand new material on the topic that can be successfully integrated in my graduate game theory class.

2) The development of new evaluation modules, specifically homeworks and projects. The projects that the students work on throughout the semester are critical for helping them apply the material learnt in the course to their research interests and also develop new research ideas. These projects in the past have led to very innovative interdisciplinary work integrating various topics in Electrical Engineering with Game Theory and now with the new course material the projects will have the potential to be on topics of high potential impact.

I plan to make the instruction and evaluation modules available to colleagues at other universities, both within the US and abroad. My game theory class is the only class on



Exhibit
Evdokia Nikolova

Appx.0063 **76**

06/29/21 DC

CONFIDENTIAL                                                                    UT Austin_0007046

April 13, 2018

this topic and is relevant to many areas within Electrical and Computer Engineering and beyond, including in Communications, Transportation, Energy, Software, etc. I believe this provides me a unique opportunity to develop course modules that are valuable in training skilled researchers, and increasing the potential applicability and impact of their research or consequent work in industry.

Sincerely yours,

Evdokia Nikolova
Assistant Professor
Email: Nikolova@austin.utexas.edu

CONFIDENTIAL

UT Austin_0007047



**ELECTRICAL AND COMPUTER ENGINEERING DEPARTMENT**
Cockrell School of Engineering

*2501 Speedway · EER Building · Austin, Texas 78712-0240   (512) 471-6179   Fax (512) 471-3652*
*http://www.ece.utexas.edu*

## MEMORANDUM

| | |
|---|---|
| **TO:** | Gerald E. Speitel, Jr |
| | Associate Dean, Academic Affairs |
| | Cockrell School of Engineering |
| **FROM:** | Ahmed Tewfik |
| | Chair, Electrical and Computer Engineering |
| **DATE:** | April 23, 2018 |
| **RE:** | Modified Instructional Duties for Evdokia Nikolova |

Ahmed Tewfik
Digitally signed by Ahmed Tewfik
Date: 2018.04.23 11:53:21 -05'00'

Prof. Nikolova is expecting her second child in June 2018.  She has requested modified instructional duties for the 2018 Fall Semester.  During that semester, Evdokia will be working on enhancing our graduate course EE381V Game Theory.

The normal teaching load for well-funded research-active faculty members in the department is two courses per academic year, in addition to supervision of a senior design team. One of these courses must be an undergraduate course.

I support Evdokia's request and recommend that you approve it.

CONFIDENTIAL

EN4762



**THE UNIVERSITY OF TEXAS AT AUSTIN**
COCKRELL SCHOOL OF ENGINEERING, OFFICE OF THE DEAN

*301 E. Dean Keeton Street · Stop C2100 · Austin, TX 78712 · (512) 471-1166*

Associate Dean for Academic Affairs
ECJ 10.322, MC C2100
(512) 471-7995
email: speitel@mail.utexas.edu

## MEMORANDUM

TO:         Janet M. Dukerich
            Senior Vice Provost for Faculty Affairs

FROM:       Gerald E. Speitel Jr.
            Associate Dean for Academic Affairs

DATE:       April 26, 2018

SUBJECT:    Modified Instructional Duties Request for Evdokia Nikolova

        Attached is a request for modified instructional duties for Dr. Evdokia Nikolova, Assistant Professor in Electrical and Computer Engineering.  While on modified instructional duties Dr. Nikolova will work on enhancing course materials for her game theory class, EE 381V.

        The Cockrell School supports this request.  If you need any additional information, please contact me.


GES:sds

Enclosures:  Approval Memo from Dr. Ahmed Tewfik
             MID Request from Dr. Evdokia Nikolova


Approved by: _Shockley_ Date _5/15/2018_
Carmen Shockley
Assistant Vice President for Faculty Affairs

EXECUTIVE VICE PRESIDENT
AND PROVOST
APR 26 2018
EN

CONFIDENTIAL

**Subject:** RE: MID for Evdokia Nikolova

**Date:** Friday, April 27, 2018 at 8:39:45 AM Central Daylight Time

**From:** Shaffer, Sonya D <shaffer.s@mail.utexas.edu>

**To:** Harris, Dorothy J <djharris@austin.utexas.edu>

Hi Dorothy.  She will be teaching one course in addition to supervising a senior design course.

Thank you,
Sonya

SONYA SHAFFER | Executive Assistant, Academic Affairs Office
The University of Texas at Austin | Cockrell School of Engineering | 512-471-7995 | shaffer.s@mail.utexas.edu

**From:** Harris, Dorothy J
**Sent:** Friday, April 27, 2018 8:20 AM
**To:** Shaffer, Sonya D <shaffer.s@mail.utexas.edu>
**Subject:** MID for Evdokia Nikolova
**Importance:** High

Good morning, Sonya,

The modified instructional duties request for Dr. Evdokia Nikolova needs the following information: teaching information on  how many she will teach for the academic year in which she will be assigned modified instructional duties.  You can email the information to me.

Thanks.
Dorothy

----
DOROTHY J. HARRIS | Senior Academic Personnel Coordinator
The University of Texas at Austin | Office of the Executive Vice President and Provost | 512-232-3323

CONFIDENTIAL                                                                      UT Austin_0006428

## Shaffer, Sonya D

| | |
|---|---|
| **From:** | Shaffer, Sonya D |
| **Sent:** | Tuesday, May 22, 2018 10:38 AM |
| **To:** | Nikolova, Evdokia |
| **Cc:** | Tewfik, Ahmed H; Erengil, Miriam J |
| **Subject:** | Approval of Modified Instructional Duties for Fall 2018 |
| **Attachments:** | Memo to Nikolova for MID approval 052118.pdf |

Dr. Nikolova,

On behalf of Dr. Speitel, I am transmitting the attached memo regarding approval of your fall 2018 modified instructional duties.

Thank you,
Sonya

**SONYA SHAFFER** | Executive Assistant, Academic Affairs Office
The University of Texas at Austin | Cockrell School of Engineering | 512-471-7995 | shaffer.s@mail.utexas.edu

1

Appx.0068

CONFIDENTIAL

UT Austin_0007041



**THE UNIVERSITY OF TEXAS AT AUSTIN**
Cockrell School of Engineering, Office of the Dean

*301 E. Dean Keeton Street · Stop C2100 · Austin, TX 78712 · (512) 471-1166*

Associate Dean for Academic Affairs
ECJ 10.322, MC C2100
(512) 471-7995
email: speitel@utexas.edu

**MEMORANDUM**

TO:        Evdokia Nikolova
              Assistant Professor, Electrical and Computer Engineering

FROM:     Gerald E. Speitel Jr.
              Associate Dean for Academic Affairs

DATE:     May 21, 2018

SUBJECT:  Request for Modified Instructional Duties

      This is to let you know that your request for modified instructional duties for fall 2018 has been approved by Assistant Vice President Carmen Shockley.

      As applicable, use of available sick leave should be recorded on the Faculty Monthly Report of Sick Leave Taken form and submitted to your department chair's office. Family Medical Leave may be used in conjunction with sick leave and should be also be recorded when applicable. NOTE: In accordance with HOP 5-4210, sick leave may not be used in conjunction with Parental Leave or Family and Medical Leave once an employee or spouse has recovered from the temporary incapacity related to pregnancy. More information can be found at http://bit.ly/HOP5-4210.

      Please do not hesitate to contact me should you have any questions.

GES:sds

c:      Ahmed Tewfik, Department Chair, Electrical and Computer Engineering

CONFIDENTIAL

Message (Digitally Signed)

**From:**      Tewfik, Ahmed H [tewfik@austin.utexas.edu]
**Sent:**       5/6/2018 10:55:14 PM
**To:**          ece-professors@utlists.utexas.edu; 'ece-professors-associate@utlists.utexas.edu' [ece-professors-associate@utlists.utexas.edu]
**Subject:**   [ece-professors] Results of promotion votes
**Attachments:**  smime.p7s

Hi everyone

Here are the results of the votes we conducted this week. We will initiate the promotion processes for Mohit and Evdokia.

### _Faculty Vote:  Mohit Tiwari Promotion - Full Professors_

### Q2 - I approve initiating the promotion to associate professor with tenure process for Mohit Tiwari

| # | Answer | % | Count |
|---|--------|-----|-------|
| 1 | YES | 96.55% | 28 |
| 2 | NO | 3.45% | 1 |
| 3 | ABSTAIN | 0.00% | 0 |
|   | Total | 100% | 29 |

CONFIDENTIAL                                                                                              UT Austin_0008960

**Q3 - Please use the text box below to enter any anonymous comments (optional)**

Please use the text box below to enter any anonymous comments (optional)

Very strong publication and funding record

He is a real winner

Mohit is a great asset for the Department and a rising star in his field.

***Faculty Vote:  Mohit Tiwari - Associate Professors***

**Q2 - I approve initiating the promotion to associate professor with tenure process for Mohit Tiwari**

| # | Answer | % | Count |
|---|--------|---|-------|
| 1 | YES | 100.00% | 12 |
| 2 | NO | 0.00% | 0 |
| 3 | ABSTAIN | 0.00% | 0 |
|   | Total | 100% | 12 |

CONFIDENTIAL

UT Austin_0008961

**Q3 - Please use the text box below to enter any anonymous comments (optional)**

Please use the text box below to enter any anonymous comments (optional)

No doubt

It's always a pleasure to see a junior faculty member developing into a star.

***Faculty Vote:  Evdokia Nikolova Promotion - Full Professors***

**Q2 - I approve initiating the promotion to associate professor with tenure process for Evdokia Nikolova**

| # | Answer | % | Count |
|---|--------|---|-------|
| 1 | YES | 90.00% | 27 |
| 2 | NO | 6.67% | 2 |
| 3 | ABSTAIN | 3.33% | 1 |
|   | Total | 100% | 30 |

CONFIDENTIAL

UT Austin_0008962

**Q3 - Please use the text box below to enter any anonymous comments (optional)**

Please use the text box below to enter any anonymous comments (optional)

Really great colleague!

We are lucky to have her.

***Faculty Vote:  Evdokia Nikolova Promotion - Associate Professors***

**Q2 - I approve initiating the promotion to associate professor with tenure process for Evdokia Nikolova**

| # | Answer | % | Count |
|---|--------|---|-------|
| 1 | YES | 90.91% | 10 |
| 2 | NO | 0.00% | 0 |
| 3 | ABSTAIN | 9.09% | 1 |
|   | Total | 100% | 11 |

CONFIDENTIAL

UT Austin_0008963

**Q3 - Please use the text box below to enter any anonymous comments (optional)**

Please use the text box below to enter any anonymous comments (optional)

I was a bit surprised at the lack of discussion, particularly given the weak teaching record.  Maybe I am just miscalibrated, but I see several areas of potential concern, so hopefully the letters are very strong (and I am wrong).


regards
Ahmed

_____

Ahmed Tewfik
Cockrell Family Regents Chair in Engineering
Chairman, Department of Electrical and Computer Engineering
The University of Texas at Austin
2501 Speedway Ave.
EER 2.876
Austin, TX 78712
USA

Direct: (512) 471-6179
tewfik@austin.utexas.edu

CONFIDENTIAL                                                                    UT Austin_0008964

Message

| | |
|---|---|
| **From:** | Dodabalapur, Ananth [ananth.dodabalapur@engr.utexas.edu] |
| **Sent:** | 5/31/2018 8:50:06 AM |
| **To:** | Tewfik, Ahmed H [tewfik@austin.utexas.edu] |
| **Subject:** | Evdokia 3 rd year review |
| **Attachments:** | Evdodia_3Year-Combined-v4.doc |

Hi Ahmed
Please find attached the revised third-year review for Evdokia.  We have agreed to all the corrections she suggested. At the time the earlier version was written, the committee were not aware that she was to be put up for promotion and tenure. Normally there is enough runway time between the third year review and being put up for promotion that some of the suggestions made in the third year review are met. It was in that spirit that these suggestions (now removed) were made.  I request that you please inform Evdokia of this.  The committee is very supportive of her and her contributions. The new date on the report also reflects the changes made to some of the numbers since the earlier version.

With best regards

ananth


Prof. Ananth Dodabalapur
Cullen Trust Professor of Engineering
Department of Electrical and Computer Engineering
The University of Texas at Austin

CONFIDENTIAL                                                                 UT Austin_0008656

UT CONFIDENTIAL

# Third-Year Review of
# Dr. Evdokia Nikolova
# Assistant Professor of Electrical and Computer Engineering

### May 30, 2018

This third-year review for Prof. Nikolova covers her research, teaching, and service to The University of Texas at Austin during the three academic years from Jan. 2014 to present, inclusive. Prof. Nikolova joined UT Austin as an Assistant Professor of Electrical and Computer Engineering (ECE) in Jan. 2014. Before that, from Aug 2011 – Jan. 2014 she was an Assistant Professor in Computer Science and Engineering at Texas A&M University. Before that she was a postdoc at MIT from 2009-11. Her PhD was from MIT with Prof. David Karger serving as her Advisor.

**Teaching**

Prof. Nikolova has taught the following courses at UT Austin while in rank:

| Semester | Course | # Surveys / Enrollment | Overall Instr. Rating | Overall Course Rating |
|----------|--------|------------------------|-----------------------|-----------------------|
| Spr 2014 | EE381V Game Theory | 14/16 (paper) | 4.1 | 4.1 |
| Fall 2014 | EE360C Algorithms | 42/61 (paper) | 4.0 | 3.7 |
| Spr 2015 | EE381V Advanced Algorithms | 19/22 (paper) | 4.3 | 4.1 |
| Fall 2016 | EE360C Algorithms | 38/82 (paper) | 3.9 | 3.4 |
| Spr 2017 | EE381V Advanced Algorithms | 16/26 (paper) | 3.9 | 3.5 |

Prof. Nikolova has introduced two new graduate courses thus far, both with the placeholder number of EE381V. These are a class on Game Theory, and another on Advanced Algorithms. Her 2017 Advanced Algorithms class had a peer review performed by Prof. Caramanis, that found the class to be taught at a high and challenging level, with effective instruction. The enrollment of 26 students is quite strong for an advanced graduate class of this type.

Prof. Nikolova has been teaching EE360C Algorithms at the undergraduate level, which is a required class for many ECE majors. Her ratings are right around 4.0 which is strong for a required undergraduate class.

She has also supervised Senior Design teams each year, including one team that achieved 3rd place in the annual design competition.

**Research**

Two important measures of an ECE professor's research output are (1) quality and impact of peer-reviewed publications, and (2) quality and impact of PhD students graduated.

UT CONFIDENTIAL

CONFIDENTIAL

UT Austin_0008657

UT CONFIDENTIAL

At UT Austin, since 2014 Prof. Nikolova has published two peer-reviewed journal papers; an additional one is accepted for publication and forthcoming. However, in her research area (algorithms, game theory, etc.), a much bigger emphasis is placed on conference papers; while at UT, she has published ten such conference papers at venues such as ACM EC'15 (33% acceptance rate), IJCAI'16 (24% acceptance rate), AAAI'16 (26% acceptance rage), AAAI'15 (27% acceptance rate) and MobiHoc'18 (17% acceptance rate). Since her PhD in 2009, Prof.Nikolova has three published journal papers[1] and seventeen conference papers. While at UT (Fall 2014-Fall 2017), she has given 23 invited talks and seminars at top universities and research institutes around the world, including 3 keynote talks. Considering her time as an assistant professor at Texas A&M University (Fall 2011-Fall 2017), this total rises to 37 invited talks as an assistant professor.

Once an ECE faculty member has built his/her research group, he/she is expected to graduate about one PhD student each year on average. The table below shows the status of the graduate student pipeline for Prof. Nikolova. She has a full pipeline of PhD-bound students, and appears ready to graduate one or more PhD students per year starting 2018. In addition, she supports one post-doctoral researcher.

| Name | Status | Highest Degree | Years UT | PhD Qual Exam | Co-Advisor (if any) |
|---|---|---|---|---|---|
| Ger Yang | Full-Time | BS | 3 | | |
| Soumya Basu | Full-Time | MS | 3 | | Yes S. Shakkottai |
| Ali Khodabakhsh | Full-Time | MS | 2 | | |
| Eirini Asteri | Full-Time | BS | 1 | | Yes C. Caramanis A. Dimakis |

Research funding enables support of graduate students to conduct research. Prof. Nikolova received the NSF CAREER award in May of 2014. She has also been the PI on two additional NSF awards and the co-PI on yet another. In her time as an assistant professor (since Fall 2011, which includes three years at Texas A&M University), Prof. Nikolova has contributed to the acquisition of $1,526,379 in external research funding; of this her "share" is $1,169,379. This includes three grants from NSF and one from Google Research, all of which are highly competitive.[2]

**Service**

Prof. Nikolova has a solid service record both externally and internally for someone pre-tenure at UT Austin.   Externally, she has served on the program committees for the ACM conference on Economics and Computation as well as the Conference on Artificial Intelligence, amongst several other conferences.  She has been an NSF Panelist 3 times, and helped organize several workshops on real-time decision making and algorithmic game theory.

Within UT, she has co-taught the Edison Lecture on "Computing for Green", as well as serving on several internal committees such as the Junior Faculty Hiring Committee (2015-17), the DICE

UT CONFIDENTIAL

CONFIDENTIAL

UT CONFIDENTIAL

Admissions Committee (every year), and the Women in Engineering Faculty Committee (2015-17).

**Summary**

Dr. Nikolova has established a solid research program in game theory, network optimization, and algorithms. She has achieved notable success at funding, and has the expected productivity in terms of papers and students. Her teaching is valuable to the department and well-rated at both the undergraduatge and graduate levels. Her service record is appropriate for an Assistant Professor. Post-tenure, it would be good for her to become more actively involved in leadership activities internally and externally.

[1] Including her forthcoming paper in Mathematics of Operations Research.
[2] This excludes a new NSF award with a 10/1/17 start date.

Signed on behalf of the 2017-8 ECE Department Peer Evaluation Committee:

Prof. Ananth Dodabalapur (Chair)

Committee:

Jeffrey Andrews, Ray Chen, Lizy John, Christine Julien, Dean Neikirk, Michael Orshansky, Surya Santoso

UT CONFIDENTIAL

CONFIDENTIAL

Message

| | |
|---|---|
| **From:** | Jilda Bolton [jildagayle@gmail.com] |
| **Sent:** | 8/3/2018 4:47:17 PM |
| **To:** | Tewfik, Ahmed H [tewfik@austin.utexas.edu]; Erengil, Jac [jac.erengil@utexas.edu] |
| **Subject:** | FW: Important: Promotion Dossier updates needed |
| **Importance:** | High |

---

**From:** Jilda Bolton <jildagayle@gmail.com>
**Sent:** Friday, August 3, 2018 8:15 AM
**To:** 'A█K██████ <█████@utexas.edu>
**Cc:** Bolton, Jilda <jildagayle@gmail.com>
**Subject:** FW: Important: Promotion Dossier updates needed
**Importance:** High

Hi Ali,
Please ignore this request – you shouldn't have been asked to do this.

Best,
Jilda Bolton
████████████

**From:** Evdokia Nikolova <nikolova2009@gmail.com>
**Sent:** Thursday, August 2, 2018 3:19 PM
**To:** A█K██████ <█████@utexas.edu>
**Cc:** Jilda Bolton <jildagayle@gmail.com>; Jimmy Horn <horn.wind@yahoo.com>
**Subject:** Re: Important: Promotion Dossier updates needed

Hi Ali,
Eddie would like you to work on updating the below info for her Tenure docs.  Please get with myself or Jilda for any questions you have.

Regards,
Jimmy  (Eddie's fiance and temp assistant)

On Sat, Jul 28, 2018 at 10:10 AM, Jilda Bolton <jildagayle@gmail.com> wrote:

> Good morning Eddie,
>
> I hope your summer with your new baby is going well.
>
>
> I've sent you a few requests to update your dossier but I always get your automated message and then I never hear back from you directly.  I'm going to try your UT email address this time.
>
>
> I've attached the emails I've sent describing the additional updates/documents needed for your Promotion Dossier

CONFIDENTIAL                                                                        UT Austin_0008660

Please let me know if I can help or if you have any questions.


Best,

Jilda


--
Evdokia Nikolova
http://users.ece.utexas.edu/~nikolova/

Appx.0080

                                              UT Austin_0008661

Message (Digitally Signed)

| | |
|---|---|
| **From**: | Tewfik, Ahmed H [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=915C4B50497A4B2EAD89250A2B975BE7-TEWFIK AHME] |
| **Sent**: | 8/2/2018 9:44:48 PM |
| **To**: | Erengil, Jac [jac.erengil@utexas.edu] |
| **CC**: | Jilda Bolton [jildagayle@gmail.com] |
| **Subject**: | Re: Critical. Promotions -Please Read this First |
| **Attachments**: | smime.p7s |

Thank you Jac for alerting me. I will email Evdokia.

regards
Ahmed

_____

Ahmed Tewfik
Cockrell Family Regents Chair in Engineering
Chairman, Department of Electrical and Computer Engineering
The University of Texas at Austin
2501 Speedway Ave
EER 2.876
Austin, TX 78712
USA

Direct: (512) 471-6179
tewfik@austin.utexas.edu

On Aug 2, 2018, at 11:16 PM, Erengil, Jac <jac.erengil@utexas.edu> wrote:

> Sanjay serves on the CSE Promotions Rvw Cmtee, so it's best not to involve him at our departmental level--- he should maintain neutrality.  I just talked with him and asked him to simply 'disregard' the email below.
>
> Ahmed, I understand Jilda's concern & frustration.  This case is likely best handled directly by you ---- but let me know of anything you need me to do.
>
> Thanks.
>
> **From:** Jilda Bolton <jildagayle@gmail.com>
> **Sent:** Thursday, August 2, 2018 3:57 PM
> **To:** shakkott@mail.utexas.edu; Tewfik, Ahmed H <tewfik@austin.utexas.edu>
> **Cc:** Erengil, Jac <jac.erengil@utexas.edu>; Bolton, Jilda <jildagayle@gmail.com>
> **Subject:** FW: Important: Promotion Dossier updates needed
> **Importance:** High
>
> Sanjay – I'm very concerned about this.  It seems totally inappropriate for Eddie to ask her student to complete the rest of her Promotion Dossier.  Her fiancé didn't include the documents I need updated (that I attached to the email I sent her) – so I don't see how the student will know how to do anything anyway.
>
> Please advise me on how to handle this.  I have spent the last two months trying to get Eddie to respond to me and finish the work she needs to do on her promotion dossier.  I have only gotten automatic replies that she isn't checking email often because she was on leave.

**Appx.0081**

Please help!
Jilda

Here is the message from a second email from Jimmy (Eddie's fiancé and temp assistant).

Jilda,
Also, Eddie and I will be traveling starting Aug 16 and in mostly bad or no internet zones until mid-Sept.  So if you need any little changes, Eddie says to please ask █ to take care of if he can.

Regard,
Jimmy (for Eddie)


**From:** Evdokia Nikolova <nikolova2009@gmail.com>
**Sent:** Thursday, August 2, 2018 3:19 PM
**To:** █████████████
**Cc:** Jilda Bolton <jildagayle@gmail.com>; Jimmy Horn <horn.wind@yahoo.com>
**Subject:** Re: Important: Promotion Dossier updates needed

Hi ██
Eddie would like you to work on updating the below info for her Tenure docs.  Please get with myself or Jilda for any questions you have.

Regards,
Jimmy  (Eddie's fiance and temp assistant)

On Sat, Jul 28, 2018 at 10:10 AM, Jilda Bolton <jildagayle@gmail.com> wrote:

Good morning Eddie,

I hope your summer with your new baby is going well.


I've sent you a several requests to update your dossier this summer but I always get your automated message and then I never hear back from you directly.  I'm going to try your UT email address this time instead of the google email you have been using on emails you've sent me.


I've attached the emails I've sent describing the additional updates/documents needed for your Promotion Dossier


Please let me know if I can help or if you have any questions.


Best,

Jilda

Appx.0082

--
Evdokia Nikolova
http://users.ece.utexas.edu/~nikolova/

Appx.0083

CONFIDENTIAL

UT Austin_0019105





Evdokia Nikolova <nikolova2009@gmail.com>

---

## Promotion dossier

**Tewfik, Ahmed H** <tewfik@austin.utexas.edu>        Fri, Aug 3, 2018 at 3:14 PM
To: Evdokia Nikolova <nikolova2009@gmail.com>
Cc: "Erengil, Jac" <jac.erengil@utexas.edu>, "jildagayle@gmail.com" <jildagayle@gmail.com>,
"shakkott@mail.utexas.edu" <shakkott@mail.utexas.edu>

Thank you Evdokia. Neither Jimmy nor ▉ should be working on your dossier.

No one would have tried to contact you on your cell if you were replying to your emails. I'm overseas and Jac had to leave the office sick yesterday, vomiting and with a fever. Jilda and others had repeatedly reported getting no answer from you. When I got your automatic response, I asked Jac to call you and **make the seriousness of the situation very clear to you**. She may have called and gotten no answer, or may have been too sick to call and sent you a text. In either case, she went beyond the call of duty to make sure that you got the message in a timely manner despite her condition.

We are entering the most critical phase of the internal process and it's imperative for you to respond in a timely manner to email requests.

 regards
Ahmed

_____
Ahmed Tewfik
Cockrell Family Regents Chair in Engineering
Chairman, Department of Electrical and Computer Engineering
The University of Texas at Austin
2501 Speedway Ave.
EER 2.876
Austin, TX 78712
USA

Direct: (512) 471-6179
tewfik@austin.utexas.edu

On Aug 3, 2018, at 6:10 PM, Evdokia Nikolova <nikolova2009@gmail.com> wrote:

> Hi Ahmed,
>
> I understand. To clarify, Jimmy (my fiancé) has not touched or done anything at all on my Tenure Documents for the records. He finds it offensive when others who have met him do not use his name. He wrote an email to Jilda on my behalf yesterday while I was breastfeeding our 1 month old baby, to help me speed up the communication.
>
> On a different note: I don't know if you are aware, but your EA Jac texted my personal phone at midnight last night over this item. The only time I would ever expect any correspondence from work outside of business hours without an appointment and especially extremely after hours would be for an Emergency. **This is an administrative point and is very very inappropriate to be sent to my**

P002582

**personal cell phone at all and especially at midnight!**  Especially when I have a one month old baby and am extremely sleep deprived, I do not need to lose additional sleep when woken up and made to worry over work items that are not an emergency.  Though even absent of childcare or personal matters, this would still be **extremely inappropriate and unprofessional**.  I expect you will talk to Jac and others in your Admin group to make sure this does not happen again in the future.

Regards,
Evdokia

On Thu, Aug 2, 2018 at 4:50 PM, Tewfik, Ahmed H <tewfik@austin.utexas.edu> wrote:
Hi Evdokia

It has come to my attention that you are having your fiancé and perhaps one of your students work on your promotion dossier. **This will have to stop immediately.**

**You need to take care of your dossier and respond to Jilda's request in a timely manner**. You be may jeopardizing your promotion.

regards
Ahmed

_____
Ahmed Tewfik
Cockrell Family Regents Chair in Engineering
Chairman, Department of Electrical and Computer Engineering
The University of Texas at Austin
2501 Speedway Ave
EER 2.876
Austin, TX 78712
USA

Direct: (512) 471-6179
tewfik@austin.utexas.edu


--
Evdokia Nikolova
http://users.ece.utexas.edu/~nikolova/

Appx.0085
P002583

Message

| | |
|---|---|
| **From:** | ece-professors-request@utlists.utexas.edu [ece-professors-request@utlists.utexas.edu] |
| **on behalf of** | Tewfik, Ahmed H <tewfik@austin.utexas.edu> [tewfik@austin.utexas.edu] |
| **Sent:** | 9/10/2018 2:38:45 PM |
| **To:** | ece-professors@utlists.utexas.edu; ece-professors-associate@utlists.utexas.edu |
| **CC:** | Erengil, Jac [jac.erengil@utexas.edu]; Jilda Bolton [jildagayle@gmail.com]; Wood, Sharon L [swood@utexas.edu] |
| **Subject:** | [ece-professors] Votes on promoting assistant professors to associate professors |

Hi everyone

Here are the results of the votes on promoting Evdokia and Mohit.

In addition to the votes that were submitted through the survey, I received a vote from a professor via email approving both promotions. Therefore, the total number of professor yes votes for each candidate is the number shown below +1.

**Professor votes**

*Faculty Vote:  Evdokia Nikolova Promotion to Associate Professor - Full   Professors*

Q2 - I approve the promotion of Evdokia Nikolova to the rank of Associate Professor

with tenure

| # | Field | Choice | Count |
|---|---|---|---|
| 1 | YES | 91.18% | 31 |
| 2 | NO | 2.94% | 1 |
| 3 | ABSTAIN | 5.88% | 2 |

34

*Faculty Vote: Mohit Tiwari Promotion to Associate Professor -    Full Professors*

Q2 - I approve the promotion of Mohit Tiwari to the rank of Associate Professor

with tenure

| # | Field | Choice | Count |
|---|---|---|---|
| 1 | YES | 91.18% | 31 |
| 2 | NO | 0.00% | 0 |

**Appx.0086**

3    ABSTAIN    8.82%    3

## Associate professor votes

*Faculty Vote:  Evdokia Nikolova Promotion to Associate Professor - Associate   Professors*

Q2 - I approve the promotion of Evdokia Nikolova to the rank of Associate Professor with tenure

| # | Field | Choice | Count |
|---|-------|--------|-------|
| 1 | YES | 77.78% | 7 |
| 2 | NO | 0.00% | 0 |
| 3 | ABSTAIN | 22.22% | 2 |

9

*Faculty Vote:  Mohit Tiwari Promotion to Associate Professor - Associate   Professors*

Q2 - I approve the promotion of Mohit Tiwari to the rank of Associate Professor with tenure

| # | Field | Choice | Count |
|---|-------|--------|-------|
| 1 | YES | 100.00% | 10 |
| 2 | NO | 0.00% | 0 |
| 3 | ABSTAIN | 0.00% | 0 |

10

regards
Ahmed

_____

Ahmed Tewfik
Cockrell Family Regents Chair in Engineering
Chairman, Department of Electrical and Computer Engineering
The University of Texas at Austin
2501 Speedway Ave.
EER 2.876
Austin, TX 78712

CONFIDENTIAL

USA

Direct: (512) 471-6179
tewfik@austin.utexas.edu

Appx.0088

UT Austin_0006410

Message

| | |
|---|---|
| **From**: | Tewfik, Ahmed H [tewfik@austin.utexas.edu] |
| **Sent**: | 9/10/2018 2:44:18 PM |
| **To**: | Wood, Sharon L [swood@utexas.edu] |
| **Subject**: | RE: Votes on promotion candidates |
| **Attachments**: | assoc prof votes.zip; professor votes.zip |

The comments are on p. 2 of each report.

Regards
Ahmed

**From:** Wood, Sharon L
**Sent:** Monday, September 10, 2018 9:43 AM
**To:** Tewfik, Ahmed H <tewfik@austin.utexas.edu>
**Subject:** RE: Votes on promotion candidates

Yes, I would like to see them.  Thanks!

S.L. Wood | Cockrell School of Engineering | UT Austin | (512) 471-1166

**From:** Tewfik, Ahmed H
**Sent:** Monday, September 10, 2018 9:42 AM
**To:** Wood, Sharon L <swood@utexas.edu>
**Subject:** Votes on promotion candidates

Hi Sharon

please let me know if you'd like me to forward you the anonymous comments that we have received on each candidate. The department is no longer forwarding comments about  colleagues to the faculty given some of the incendiary comments that we have received in the past. There are not this time.

regards
Ahmed

_____
Ahmed Tewfik
Cockrell Family Regents Chair in Engineering
Chairman, Department of Electrical and Computer Engineering
The University of Texas at Austin
2501 Speedway Ave.
EER 2.876
Austin, TX 78712
USA

Direct: (512) 471-6179
tewfik@austin.utexas.edu

CONFIDENTIAL

# Initial Report

*Faculty Vote: Evdokia Nikolova Promotion to Associate Professor - Full Professors*
September 6, 2018 11:52 AM CDT

## Q2 - I approve the promotion of Evdokia Nikolova to the rank of Associate Professor with

tenure

| # | Field | | Choice Count |
|---|-------|---|---|
| 1 | YES | 91.18% | 31 |
| 2 | NO | 2.94% | 1 |
| 3 | ABSTAIN | 5.88% | 2 |
| | | | 34 |

Showing Rows: 1 - 4 Of 4

**Appx.0090**

CONFIDENTIAL

Q3 - Please use the text box below to enter any anonymous comments (optional)

Please use the text box below to enter any anonymous comments (optional)

An awesome colleague

She is a winner.

The course rating averages document has mixed up ratings from another professor. Her course ratings for Advanced Algorithms is below the department average, but there is no mention in the BC statement. HICSS has been identified as a premier conference for the power area but no numbers for acceptance rate have been given.

I vote yes, but I'd sure like to see Evdokia become a bit more engaged in the department post-tenure.

I can not support the promotion of Evdokia. This is a difficult case and my decision is borderline. I recognize that we need to increase the diversity in our department. I think though we should ensure a high level of quality. She seems to meet minimum expectations in most cases expect perhaps funding. Her research has not developed much beyond her original directions she was pursuing prior to joining UT. Her publication record is weak. She has not been involved much in the department (not really participating in the WNCG) and has been absent in committees where she was supposed to play an important role. She has minimal collaboration with others in the department. It is overall hard to give strong support.

Showing records 1 - 5 of 5

**End of Report**

CONFIDENTIAL

Message

| | |
|---|---|
| **From:** | Wood, Sharon L [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=C086DBB1CC04492BB96574EB561855BD-WOOD SHARON] |
| **Sent:** | 10/26/2018 4:54:55 PM |
| **To:** | Speitel, Gerald E [speitel@utexas.edu] |
| **Subject:** | RE: question for ECE chair |

I met with the committee yesterday and they had considered the case a normal promotion.  But it is early, and it needs to be justified.  Ahmed not understanding the rules is not justification.

S.L. Wood | Cockrell School of Engineering | UT Austin | (512) 471-1166

---

**From:** Speitel, Gerald E
**Sent:** Friday, October 26, 2018 11:04 AM
**To:** Wood, Sharon L <swood@utexas.edu>
**Subject:** FW: question for ECE chair

I also received this email from Ahmed.  Basically, he seems put out that he is being asked to further justify an early promotion.

---

**From:** Tewfik, Ahmed H
**Sent:** Friday, October 26, 2018 9:00 AM
**To:** Speitel, Gerald E <speitel@utexas.edu>
**Subject:** Re: question for ECE chair

Not to be forwarded

At the September lunch with department chairs, the Provost was very clear that she favors the strategy of recruiting assistant professors on an upward trajectory. The  committee's charter doesn't cover setting strategic direction for the college that contradict directions from the Provost. I also hope that this question isn't a reflection of gender biases.


 regards
Ahmed


_____
Ahmed Tewfik
Cockrell Family Regents Chair in Engineering
Chairman, Department of Electrical and Computer Engineering
The University of Texas at Austin
2501 Speedway Ave.
EER 2.876
Austin, TX 78712
USA

Direct: (512) 471-6179
tewfik@austin.utexas.edu


On Oct 25, 2018, at 8:38 PM, Speitel, Gerald E <speitel@utexas.edu> wrote:

UT Austin_0037789

Ahmed,

Can you provide the requested information.  Thanks.

Jerry

-----Original Message-----
From: Shakkottai, Sanjay
Sent: Thursday, October 25, 2018 5:58 PM
To: Speitel, Gerald E <speitel@utexas.edu>
Cc: Shaffer, Sonya D <shaffer.s@mail.utexas.edu>
Subject: question for ECE chair

Dear Jerry,

The CSE P&T Committee has the following question for the ECE department chair on Dr. Evdokia Nikolova's promotion case.

The committee requests that the ECE chair provide additional justification for the timing of the promotion application. Dr. Nikolova will have accumulated four years of probationary service at UT Austin by September 2019 (whereas the regular number of years for promotion to Associate Professor is six). While the committee acknowledges that she has spent 2.5 years in rank at Texas A&M University, this case is still considered to be technically early at UT Austin. Thus, the committee members would like additional justification for early consideration of this case.


Regards,
Sanjay
--

UT Austin_0037790

Message

| | |
|---|---|
| **From:** | Wood, Sharon L [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=C086DBB1CC04492BB96574EB561855BD-WOOD SHARON] |
| **Sent:** | 10/27/2018 5:24:24 PM |
| **To:** | Tewfik, Ahmed H [tewfik@austin.utexas.edu] |
| **Subject:** | RE: question for ECE chair |

Yes, I am in my office now. You can call my direct line: 1-4558 or my cell.

sharon

S.L. Wood | Cockrell School of Engineering | UT Austin | (512) 471-1166

---

**From:** Tewfik, Ahmed H
**Sent:** Saturday, October 27, 2018 12:08 PM
**To:** Wood, Sharon L <swood@utexas.edu>
**Subject:** Fwd: question for ECE chair

Hi Sharon

Would you have time to chat and provide me with some guidance? Thank you

 regards
Ahmed

_____

Ahmed Tewfik
Cockrell Family Regents Chair in Engineering
Chairman, Department of Electrical and Computer Engineering
The University of Texas at Austin
2501 Speedway Ave.
EER 2.876
Austin, TX 78712
USA

Direct: (512) 471-6179
tewfik@austin.utexas.edu

Begin forwarded message:

> **From:** "Speitel, Gerald E" <speitel@utexas.edu>
> **Date:** October 27, 2018 at 9:15:22 AM CDT
> **To:** "Tewfik, Ahmed H" <tewfik@austin.utexas.edu>
> **Subject: RE: question for ECE chair**
>
> Ahmed,
>
> I recommend that you speak directly with Sharon about this.
>
> Jerry



Exhibit
Ahmed Tewfik

Appx.0094  **24**

03/20/2021 DC

UT Austin_0025607

**From:** Tewfik, Ahmed H
**Sent:** Friday, October 26, 2018 6:31 PM
**To:** Speitel, Gerald E <speitel@utexas.edu>
**Cc:** Wood, Sharon L <swood@utexas.edu>
**Subject:** Re: question for ECE chair

Hi Jerry

I'll give you a call on Monday to discuss and seek your guidance.

I am happy to add an explanation about the two semesters. As you recall, she was given an unbalanced teaching load in the fall '15 to attend a program at the Simons Institute at Berkeley. While away, she got pregnant and was given the spring '16 semester off.

My justification is no different than the justification I gave for Alex four years ago. I don't want to compare the two cases but of course both Bill and Greg separately told me that year that Alex and Deji were the two strongest cases across all of UT that year.


 regards
Ahmed

_____

Ahmed Tewfik
Cockrell Family Regents Chair in Engineering
Chairman, Department of Electrical and Computer Engineering
The University of Texas at Austin
2501 Speedway Ave.
EER 2.876
Austin, TX 78712
USA

Direct: (512) 471-6179
tewfik@austin.utexas.edu


On Oct 26, 2018, at 3:49 PM, Speitel, Gerald E <speitel@utexas.edu> wrote:

> Ahmed,
>
> She is being put up for promotion two years early, and UT requires that all early promotions be justified.  Essentially, you are saying in your letter that it would not be early if we take her service into TAMU into account.  While I agree prior service at another university is a mitigating factor that often comes into play with assistant professors who start elsewhere, it is not in itself a justification for promoting her now.  UT is not obligated to consider her for promotion now, and the question that Sharon will receive from the president's committee is, "Why should we promote her now?"  I especially expect a challenge from Brent Iverson related to her teaching, which you acknowledge to be below the median of the department.  This is in conflict with the general expectation that early promotions be "well above the bar" in all categories.  Thus, we need you to strengthen your letter with respect to why an early promotion is justified.
>
> Jerry

CONFIDENTIAL

P.S.  We also need you to explain the gap in her teaching assignment:  why did she get two semesters of teaching relief (Fall 2015 and Spring 2016) for child birth when one is the norm?

---

**From:** Tewfik, Ahmed H
**Sent:** Friday, October 26, 2018 8:55 AM
**To:** Speitel, Gerald E <speitel@utexas.edu>
**Cc:** Shaffer, Sonya D <shaffer.s@mail.utexas.edu>
**Subject:** Re: question for ECE chair

Hi Jerry

As noted in my letter, and acknowledged by the committee chair, "If [Evdokia is] promoted to associate professor in September of 2019, she will have served as an assistant professor at the University of Texas at Austin for five years. This is therefore technically an early promotion case—particularly because she has received an extension of her probationary period. However, she began her academic career at Texas A&M University as an assistant professor in August 2011. Her case would not be early if these two years of service are taken into account."

All promotion cases should be evaluated by the well established and accepted metrics for judging excellence in teaching and research. Judging this promotion case by an artificial metric that has **zero correlation** with the metrics that the outside world, industry and academia, uses to evaluate impact and excellence in teaching and research, will do irreparable harm to our ability to continue to recruit highly promising assistant or associate professors  from other institutions. It will also negatively impact our ability to retain the star assistant professors that we have recently recruited from top peer departments, such as UIUC,  and who had served 2 to 4 years as assistant professors at their initial home institution.


 regards
Ahmed

---

Ahmed Tewfik
Cockrell Family Regents Chair in Engineering
Chairman, Department of Electrical and Computer Engineering
The University of Texas at Austin
2501 Speedway Ave.
EER 2.876
Austin, TX 78712
USA

Direct: (512) 471-6179
tewfik@austin.utexas.edu

CONFIDENTIAL

UT Austin_0025609



**ELECTRICAL AND COMPUTER ENGINEERING DEPARTMENT**
Cockrell School of Engineering

2501 Speedway · EER Building · Austin, Texas 78712-0240   (512) 471-6179   Fax (512) 471-3652
http://www.ece.utexas.edu

DEPOSITION EXHIBIT
6

3/18/2021
Tommi Rutledge Gray, CSR, RPR, CRR

October 29, 2018

**Chair's letter in support of the promotion of Prof. Evdokia Nikolova to the rank of associate professor with tenure**

Prof. Nikolova joined the Department of Electrical and Computer Engineering in January 2014. If promoted to associate professor in September of 2019, she will have served as an assistant professor at the University of Texas at Austin for five years. This is therefore technically an early promotion case—particularly because she has received an extension of her probationary period. However, she began her academic career at Texas A&M University as an assistant professor in August 2011. Her case would not be early if these two years of service are considered. I also note that when we recruited her, Evdokia requested to be considered for promotion at UT around the time that she would have been eligible for promotion at Texas A&M University. She has also asked to be considered for promotion in the last couple of years and may be seeking opportunities outside UT.

Evdokia is an emerging pioneer studying optimization and game theory applications that involve the human element and risk aversion. The Budget Council recognized her strong accomplishments and potential and determined that she meets all expectations for promotion at the premier departments of Electrical and Computer Engineering in the nation by a vote of 32 YES, 1 NO, 2 ABSTAIN and 2 INELIGIBLE TO VOTE. The ineligible votes are Prof. Mark Smith's and mine. Our associate professors voted 10 YES, 0 NO and 0 ABSTAIN in support of promotion. My colleagues expressed support for Evdokia during the promotion discussion and in the anonymous comments submitted with the vote. A couple of professors raised concerns about her relatively weak engagement in the department and the wireless communications and networking center (WNCG) to which she belongs. I attribute the negative vote and abstentions to these concerns.

**Third Year Review**

Prof. Nikolova's third year review was conducted last year (2017-2018 academic year) because of the extensions to her probationary period. The committee that conducted the review said that she has "a solid research program in game theory, distributed optimization, and algorithms.  She has achieved notable success in funding and has the expected productivity in terms of papers and students.  Her teaching is valuable to the department and well-rated at both the undergraduate and graduate levels.  Her service record is appropriate for an Assistant Professor.  For her promotion case to be as strong as possible, it would be good to graduate a PhD student and slightly increase her publication output.  Post-tenure, it would be good for her to become more actively involved in leadership activities internally and externally."

Given that the third-year evaluation was so close to the submission of her promotion case, it's unrealistic to expect that Evdokia would have addressed some of the suggestions in the third-year review by this time. However, I do note that one of Evdokia's graduate students did successfully

defend his PhD thesis in the spring of 2018 and graduated last month. Three of her conference papers in selective conferences were also accepted for publication after the review.

## Teaching Load of Assistant Professors

The normal teaching load for a tenure-track assistant professor is two courses per academic year plus supervision of a senior design team for two semesters. One of the courses must be an undergraduate course. This requirement is waived only under exceptional circumstances if the department has unmet needs at the graduate level. Faculty in the department are routinely given modified instructional duties upon the birth of a child.

Evdokia was given an unbalanced teaching load in the academic year 2015-2016 to attend the workshop on Economics and Computation at the Simons Institute for the Theory of Computing at UC Berkeley in the fall of 2015. The workshop raised her visibility in the research community and helped her broaden her research portfolio. The workshop also provided her with the experience needed to organize a follow-up workshop on real-time decision-making at the same institute in the spring semester of 2018. Several reference letter writers refer to one or both workshops in their letters. Evdokia became pregnant during the fall of 2015 and was given modified instructional duties in the spring semester of 2016. She therefore didn't teach during the academic year 2015 – 2016.

### Teaching

Evdokia's instructor course evaluation scores don't paint a complete picture of her passion for teaching. Her scores in EE360C: algorithms, an upper division course that roughly 60% of our undergraduate students take, range from a low of 3.7 to a high of 4.0. While these scores are below the median ratings for assistant professors in general, they are in line with the average instructor scores for this course, clearly indicating a need to continue to improve delivery of the material in the course.  Evdokia uses a combination of PowerPoint presentations and whiteboard to present topics in the class. She also alternates between presenting theoretical material and problem solving. Students praise her for being a "good teacher," "easily reachable," and "enthusiastic." Yet other students wished that "she had more office hours" and complained about the lectures not being exciting, ineffective teaching assistants and her whiteboard writing.

It's important to note that Evdokia made some transformative changes to the delivery of EE360C that have had a positive effect on the students that she has taught and those who have had the course from other instructors as these instructors adopted Evdokia's innovations. For example, Evdokia pioneered the use of team teaching in this course, a technique that is used in several of our courses and in which all sections of a given course are delivered in synchrony with the same problem sets and exams. Together with our colleague David Soloveichik, she introduced optional recitation sections that help the students master the material. Furthermore, she introduced the concept of "Lunch with the professors" to break the barrier between students and instructors.

Her graduate courses instructor scores also range from a low of 3.9 to a high of 4.1, again below the median ratings for assistant professors in graduate courses. She earned these scores in two graduate courses that she introduced, which were much needed across all of UT. One of these courses is an advanced algorithm course that covers approximation algorithms. The second course is a game theory course. It's noteworthy that Evdokia made a concerted effort to integrate real-world applications into these two courses that cover extensive abstract topics. It's also interesting to note that student comments in the two courses are somewhat similar to the comments that she has received in EE360C, with many students praising her energy level and

enthusiasm and others complaining about boring classes and solutions to homework not being provided in a timely manner.

I also note that Evdokia has lectured in our Edison lecture series and camp Texas.  The Edison Lecture Series is a program for middle and high school students funded by the department that showcases potential careers in electrical and computer engineering. Through interactive lectures, students learn how electrical and computer engineers make a difference in the world. Since we established this program in 2005, we have reached over 26,000 young people.

As mentioned earlier, Evdokia graduated one PhD student in rank. She has also supervised one post-doctoral researcher while in rank. That researcher is now a lecturer at the National Technical University of Athens.

**Research**

Evdokia's research is unique in that it incorporates human risk aversion into complex optimization problems with deep societal and policy-making impacts. This is an emerging area of research in operations research, electrical and computer engineering and computer science that is gaining importance as more sensors are embedded in infrastructures, mobile devices, humans and means of transportation. Evdokia's research provides alternatives to the solutions provided, for example, by Google maps, Apple maps or Waze to the problem of finding the best path between one's home and the airport. Her solutions take into account the risk tolerance or aversion of the user. For example, her algorithms can provide a suggested route that will guarantee that the user arrives at her destination at a given time as opposed to the solution provided by Google maps which may involve an expected shorter travel time but with a high degree of variability that in a worst-case may lead to the user missing her flight.

Evdokia's work stands out because, unlike most research in optimization and game theory that focuses on computational efficiency issues, she studies how to incorporate risk in deriving the optimal solutions to a given problem, and the impact of risk and incentives on the answer to a given policy question, and on algorithms and their performance.

Evdokia is perhaps best known for her pioneering works on finding shortest paths under uncertainty and with random model parameters and on characterizing the loss of performance in a route network when risk affects the decision-making of individual users of the network. Prof. Goel (Stanford) notes that the work had "the largest influence on" his "own thinking." The work showed how to correctly incorporate risk into an analysis of the algorithms, and in particular incentives. Most importantly, it also quantified the effect of risk on the performance of any network in which individual users independently select their routes in the presence of risk. The work achieved considerable visibility as measured by citation standards in the subarea. Prof. Shmoys (Cornell) states that the work "is technically non-trivial and provides clear insights into the trade-offs exposed by this elegant framing of the question." He also notes that "the modeling aspects and mathematical structure results combined to provide clear insights into a central problem in routing control, and with the rise of at least traffic routing, the importance of these results is ever-increasing."

Her more recent work on setting tolls on road segments has also attracted considerable attention despite its young age. Specifically, Evdokia studied the problem of having multiple independent operators set tolls on the segments they own to maximize their profit. Users select their routes to minimize travel time and costs. Travel times, of course, depend on segment congestion, i.e., utilization by other users. She then proceeds to identify an optimal solution in which no toll operator can gain from changing the toll on a segment it owns given that users try to minimize travel time and cost. The work led to a surprising conclusion: imposing an upper bound on how

much a toll operator can charge on a given link leads to an optimal traffic assignment such that any change in the toll on any given segment will lead to a higher travel time plus cost for at least one user. In fact, with no caps on tolls, the route network will inevitably be utilized in a sub-optimal manner. The work appears to be the first to study this problem in its full generality. Prof. Yannakakis (Columbia) describes the work as "very nice." Prof. Schultz (TU München) notes that the work "shows how proper mathematical analysis may influence policy making."

I also note that Evdokia has begun to investigate the efficiency of the electric distribution grid. This line of work is very timely as more customers install solar panels or generate electricity from renewable sources. She has already produced interesting results on the use of incentives to balance supply and demand, the use of electric vehicles to store energy and rebalance the grid and strategies for upgrading distribution networks. Given her track record, experts expect her to have a deep impact on the field as exemplified by the following statement from Prof. Van Hentenryck (Georgia Tech), "her skills may bring some fundamentally new insights that will help shape the future of electricity networks."

Prof. Nikolova is well funded by highly competitive peer-reviewed grants and industry.

Our department has adopted the practice of comparing each colleague with her or her most prominent peers at the first-tier departments in Electrical and Computer Engineering, such as MIT, Stanford, the University of California Berkeley, the University of Illinois Urbana-Champaign (UIUC), Georgia Tech, Caltech and Princeton. I selected Associate Profs. Seth Pettie (U. Michigan), Anup Rao (U. Washington) and Vineet Goyal (Columbia) to be the peer comparison group for Evdokia. Pettie, Rao and Goyal were promoted to the rank of associate professor with tenure in 2012, 2016 and 2017 respectively. Evdokia compares very favorably to all three associate professors at the time of their promotion. Indeed, we estimate the Google h-indices of all three associate professors at the time of their promotion to be in the 15-16 range. The citation counts for Pettie and Rao at the time of promotion are estimated to be slightly lower than Evdokia's while that of Goyal is substantially lower. All letter writers explicitly mention the high quality of her work. Prof. Van Hentenryck notes that she has "pioneered new concepts and developed their foundations with fundamentally new insights," bridging "different areas of the field." Prof. Jaillet (MIT) summarizes the sentiment of the letter writers when he states that "her record is on par with recently tenured cases that I have been asked to review (at Georgia Tech, USC, MIT and Northwestern.)"

| | PhD | Promoted | Publications in top venues at promotion | H Index | Citations |
|---|---|---|---|---|---|
| Seth Pettie (Michigan) | 2004 | 2012 | 15 | 24 | 2259 |
| Vineet Goyal (Columbia) | 2008 | 2017 | 14 | 17 | 737 |

| | | | | | |
|---|---|---|---|---|---|
| Anup Rao (MIT) | 2007 | 2016 | 14 | 19 | 1490 |
| Evdokia Nikolova (UT Austin) | 2009 | | 16 (in rank) | 17 | 970 |

**Service**

Evdokia has provided reasonable service to the department. As noted by some of my colleagues during the BC discussions, her level of involvement in the department has been lower than average. However, this is not a concern as it's mainly due to her personal circumstances at this stage of her life.

**Summary**

Evdokia is a good teacher who cares about the students and an accomplished researcher who as noted by Prof. Van Hentenryck "is a remarkable scientist with a strong case for tenure and promotion. She would certainly have received tenure at all the institutions I have been affiliated with [Brown, Michigan, Georgia Tech]."  I strongly endorse her promotion to associate professor with tenure.

Sincerely,

Prof. Ahmed H. Tewfik
Cockrell Family Regents Chair in Engineering
Chairman, Department of Electrical and Computer Engineering

Message

**From:**        Shaffer, Sonya D [shaffer.s@mail.utexas.edu]
**Sent:**        11/14/2018 1:29:33 AM
**To:**          Wood, Sharon L [swood@utexas.edu]
**Subject:**     RE: Nikolova
**Attachments:** Nikolova evaluation v1-3.docx

Hi Sharon.

Here you go.

Sonya

**From:** Wood, Sharon L
**Sent:** Tuesday, November 13, 2018 5:53 PM
**To:** Shaffer, Sonya D <shaffer.s@mail.utexas.edu>
**Subject:** Nikolova

Sonya,

I managed to misplace the committee's notes on Nikolova.  Will you please send me a copy?  Thanks.

sharon

--
**SHARON L. WOOD** | Dean, Cockrell School of Engineering
The University of Texas at Austin | 512-471-1166

Exhibit
Gregory Fenves
Appx.0102  **37**
05/27/2021 DC

CONFIDENTIAL

UT Austin_0007550

August 2018

## 2018-19 Evaluation Template
## Cockrell School of Engineering
## Promotion and Tenure Committee

Name of Faculty Member: Evdokia Nikolova
Department: ECE
Current Rank: Assistant Professor

1.0    TEACHING
- Taught one undergraduate course (EE 360C: Algorithms, 60-80 student) and two graduate courses (EE 381V: Advanced Algorithms, ~25 students, EE 381V: Game Theory, ~16 students) while in rank at UT
- Average CIS for undergraduate courses: 3.9 instructor, 3.5 course. Department averages for this course are 3.8 and 3.7
- Average CIS for graduate courses: 4.1 instructor, 3.9 course
- Three separate peer teaching evaluations were positive and pointed out only minor areas for improvement
- Prof Nikolova addressed concerns raised in students' comments and explained that many of the more negative comments were related to issues with the TAs
- Overall, Prof Nikolova seems to be a good teacher who fills important needs for the department
-

2.0    RESEARCH
- Prof Nikolova studies optimization approaches and game theory applications that involve human element and risk aversion. Her work addresses interesting problems in unique ways that have important implications for societal and policy making. An example of this work is the problem of identifying the best path between two locations while also taking into account risk tolerance. For example her work could consider the optimal route to a destination that considers the high degree of variability of a certain route may not be worth the risk associated with taking that route.
- Prof Nikolova is considered a leader in this emerging area of optimization work

A.    <u>Publications</u>
- 3 journal publications published in rank (4 total)
- 18 peer reviewed conference proceedings (30 overall)
- The majority of her work is published in competitive, peer reviewed conference proceedings rather than journal articles. The conferences have acceptance rates around 30% or lower
- 923 citations with an h-index of 17 (google scholar)
- Majority of publications and conference proceedings are with graduate students and postdocs

Exhibit
Gregory Fenves
Appx.0103   36
05/27/2021 DC

CONFIDENTIAL                                                                          UT Austin_0007551

August 2018

- Comparison with peers at top institutions suggests comparable h index and slightly lower total citations thank peers, but this difference is likely due to time effects since Prof Nikolova received her PhD after the peers.

B. <u>External Letters</u>
- 9 letters were requested and all 9 were received. 5 were from the department and 4 were suggested by the candidate. One is NAE & NAS (Yannakakis, Columbia)
- All letter writers are from peer institutions and come from a range of departents including computer science, operations research, industrial engineering, business management, mathematics of operations research and electrical engineering
- All letters are positive and recommend promotion
- Alper Atamturk (Berkeley)
  - "She has raised many new questions and put forth conjectures that have raised the interest in the research community"
- Vincent Conitzer (Duke)
  - "Simply put, Dr Nikolova is one of the world's leading junior researchers working in the intersection of fields including operations research and theoretical computer science and ECE"
  - Her work "has already had significant impact but I think it will have much more impact yet in the future"
- Ashish Goel (Stanford)
  - "Professor Nikolova has a high potential for future professional growth and leadership. One sure sing of this is her mentorship of PhD students. I am very pleased to note that one of her students received a best student paper award for work co-authored with her at a competitive and prestigious conference"
- Patrick Jaillet (MIT)
  - On her research record: "Let me simply mention that this aspect of the portfolio looks very favorable compared to all the cases I have been looking at (at MIT and elsewhere)"
  - On her publications: "I consider these papers to be first-rate and typical of the work published by Prof Nikolova: rigorous and mathematically sound, introducing novel ideas to some classical problems, with the aim to understanding fundamental properties. This is very high-quality work."
  - "Restricting myself to the last few years, I can say that her record is in par with the recently tenured cases that I have been asked to review (at Georgia Tech, USC, MIT and Northwestern). Over a fifteen year period, I would put her in the top 20% of all those I have evaluated and subsequently received tenure"
- Sampath Kannan (U Penn):
  - "I am a fan of this main line of Evdokia's research for a number of reasons: 1) She breaks new conceptual ground in her problem choice. 2) She models a very real situation and does so without oversimplifying the model for the sake of computational tractability …"

2

CONFIDENTIAL

UT Austin_0007552

August 2018

- - "Her rising citation count is a clear signal that her body of work on risk aversion is having a big impact. I strongly recommend her for tenure."
- Andreas Schulz (TU Munich):
  - On her publications: "they are scholarly and eloquently written"
  - "She may not have what one may typically consider a home run paper, but with meticulous work she has certainly helped to bring this research direction forward"
- Shmoys (Cornell)
  - "The impact o fNikolova's body of research is starting to really gain in traction. I expect that the two papers mentioned above, which are quite recent, will generate quite a bit of follow up work by a cross section of researchers"
  - "I expect that her record is roughly consistent with the expected achievements required for tenure"
- Pascal van Hentenryck (Georgia Tech)
  - "She is highly visible in the field and beyond, which is unusual for someone at this stage of her career"
  - "I believe she would have been awarded tenure and promotion easily in all institutions I have been part of. This includes Computer Science at Brown University where I was a professor for 20 years, the IOE and EECS departments of the University of Michigan, and the school of Industrial and Systems Engineering at Georgia Tech"
- Mihalis Yannakakis (Columbia)
  - Refers to one of her recent papers as "a very nice paper"
  - "I recommend her promotion to Associate Professor with tenure"
  - Overall, this letter sounds less enthusiastic than the others. There is nothing negative, but it doesn't include many glowing statements of praise like most others

C. Research Funding
- Total funding in rank: $2.6M, $1.65M share
- Funding at UT: 2 NSF grants including CAREER Award
- One current grant through 2021

D. Patents
- No patents at UT or A&M. 4 from prior work.

3.0    ADVISING AND STUDENT MENTORING
- 1 PhD student graduated, 6 PhDs in progress
- 2 postdocs (1 former, 1 current)
- Undergraduate supervision consists of senior design teams

4.0    UNIVERSITY SERVICE
- DICE area admissions committee
- Department junior faculty hiring committee
- Active participant in Edison Lecture Series at UT

CONFIDENTIAL

UT Austin_0007553

August 2018

5.0   PROFESSIONAL SERVICE
- Active in conference organizing. Served as program chair of the 2014 Winedale workshop, which is by invitation and is prestigious.
- Co-organized workshop at the Simons Institute for the Theory of Computing at Berkeley, which is a prestigious institute that attracts famous scientists and mathematicians. This was noted by several letter writers as a significant honor as well as service.

6.0   AWARDS
- NSF CAREER Award (2014)
- Selected as co-organizer of workshop at the Simons Institute.
- Google faculty award (2013)
- Best student paper award at IEEE international Conference on Acoustics, Speech and Signal Processing in 2018. This is a top conference.

7.0   OVERALL
- Overall, this is a very strong case. Letter writers, department chair, and budget council all praise her innovative research and the significant impact that it has and will have.
- The only minor issue is that her teaching has been adequate but not stellar. However, CIS scores are comparable with departmental averages for these courses, so this is a minor concern.

4

CONFIDENTIAL

UT Austin_0007554

THE UNIVERSITY OF TEXAS AT AUSTIN

**RECOMMENDATION FOR CHANGE IN ACADEMIC RANK/STATUS**

Name:__Nikolova, Evdokia___  EID:__en4762___  Present Rank:__Assistant Professor__

Years of Academic Service (***Include AY 2018-19 in each count***):

At UT Austin since:_1/1/2014_(month/day/year) Total Years at UT Austin:__5.5__

In Present Rank since:_1/1/2014_(month/day/year) Total Years in Present Rank:__5.5__

*Tenure-track only:*
Number of Years in Probationary Status:__4__

Additional information:__Accelerated; Probationary Extension 2015-16__

Primary Department:_Electrical and Computer Engineering__

College/School:_Engineering, Cockrell School of_

Joint Department:__N/A__

College/School:_N/A__

Other Department(s):__N/A__

> Recommendation actions[1]
>
> By Budget Council/Executive Committee:__Promote_____
>
> Vote[2] for promotion _32_;  Against _1_; Abstain _2_; Absent _0_; Ineligible to vote _2_
>
> By Department Chair:__Promote_____
>
> By College/School Advisory Committee:__Promote_____
>
> Vote[2] for promotion _7_;  Against _0_; Abstain _0_; Absent _0_; Ineligible to vote _0_
>
> By Dean:__Do Not Promote_____

Administrative Action:_____

Date Action Effective: September 1, 2019_____
(To be submitted to the Board of Regents as part of the annual budget.)

By:_____ Date:_____
          For the President

---

[1]See "Chart of Recommended Actions" for eligible recommended actions applicable to specific conditions and administrative levels.
[2]Record all votes for and against promotion, abstentions by eligible voting members, and the number of absent eligible voting members. The number of committee members ineligible to vote should also be recorded. Enter zero where it would otherwise be blank.

EVPP/4.15

DEPOSITION EXHIBIT
2

3/18/2021
Tommi Rutledge Gray, CSR, RPR, CRR



The University of Texas at Austin
Cockrell School of Engineering

**Dean's Assessment**
**Evdokia V. Nikolova**
Department of Electrical and Computer Engineering
Cockrell School of Engineering

Dr. Evdokia Nikolova received her BA in applied mathematics with economics from Harvard University in 2002, an MS in computer science from Harvard in 2002, an MS in mathematics from Cambridge University in 2003, and a PhD in electrical engineering and computer science from the Massachusetts Institute of Technology in 2009. She was a post-doc at MIT for two years before joining the faculty in the Department of Computer Science and Engineering at Texas A&M University in September 2011.

In January 2014, she joined the faculty in the Department of Electrical and Computer Engineering (ECE) at UT Austin as an assistant professor. If promoted to associate professor in September 2019, she will have accumulated four years of probationary service at UT Austin. However, Dr. Nikolova will have served a total of eight years in rank as an assistant professor (2.5 years at Texas A&M and 5.5 years at UT Austin). The budget council in the Department of Electrical and Computer Engineering felt that her total time in rank was sufficient to warrant consideration for promotion this year. The Cockrell School's promotion and tenure committee agreed with this assessment.

| 2011-12 | Texas A&M | |
|---------|-----------|---|
| 2012-13 | Texas A&M | |
| 2013-14 | Texas A&M | UT Austin |
| 2014-15 | UT Austin | |
| 2015-16 | Simons Institute (UC Berkeley) | Modified Instructional Duties |
| 2016-17 | UT Austin | |
| 2017-18 | UT Austin | |

Dr. Nikolova's research is at the intersection of operations research, theoretical computer science, and computer engineering. Her recent work has led to refinement of network routing algorithms to include uncertainty and risk aversion, with application to transportation networks and smart grids. Her work is directly related to one of the Cockrell School's crosscutting themes: modeling and simulation of complex systems and networks.

Nine external letters were submitted as part of the promotion dossier, with five letter writers selected by the budget council. All letter writers are current or former faculty members at peer universities in the US. One reviewer is a member of the National Academy of Engineering (NAE). One additional letter was requested, but the individual did not respond.

Teaching
While in rank, Dr. Nikolova taught one core undergraduate course and two graduate electives. During her first three semesters teaching, Dr. Nikolova's instructor ratings were 4.1 and 4.3 at the graduate level and 4.0 at the undergraduate level. These are quite strong for a new assistant professor, and indicated that she has the ability to engage her students in the classroom.

Dr. Nikolova did not teach during the 2015-16 academic year,[1] and since then her instructor ratings have fallen.  In her three most recent courses, her instructor ratings have ranged from 3.7 to 3.9.[2] Dr. Nikolova attributed her reduced scores to the quality of her teaching assistants.  Of particular note, Dr. Nikolova indicated that the teaching assistants are responsible for "creating and grading the homework and programming assignments."  Dr. Nikolova's statement contradicts the philosophy within the Cockrell School that the faculty member is responsible for all aspects of the course, and critical aspects, such as developing assignments, should not be delegated to teaching assistants.

In their comments, the students did complain about grading of the programming assignments, but they also provided extensive comments about how the classes could be improved.  One undergraduate student even provided a comprehensive recommendation for revising the syllabus for EE 360C.  Dr. Nikolova did not address these comments in her teaching statement.

Research
Key metrics documenting Dr. Nikolova's publication and external funding record are summarized below:

- 12 peer-reviewed proceedings at conferences in rank at UT (6 in rank at Texas A&M, 30 total).[3]  She published 10 conference papers with her students/post-docs at UT.
- 3 archival journal publications in rank at UT (4 total).  She published one journal paper with her post-docs at UT.
- She has published papers in highly selective conferences related to algorithmic game theory and artificial intelligence, including ACM Conference on Economics and Computation (ACM EC) and International Joint Conference on Artificial Intelligence (IJCAI).
- She also published in high impact journals related to operations research, most notably *Operations Research* (IF=2.26).
- An h-index of 17 (Google Scholar) and 994 citations.[4]

While in rank at UT Austin, Dr. Nikolova secured two research grants totaling $1.2 million in external funding (her share is $0.9 million) from the National Science Foundation (NSF).  As an assistant professor at Texas A&M, Dr. Nikolova secured three research grants ($1.4 million total, $0.7 million her share) from NSF and industry.

Dr. Nikolova is the sole PI on two grants from NSF and a Faculty Research Award from Google.  Both of the other two awards from NSF include multiple investigators.  Dr. Nikolova is the PI on one, and co-PI on the other.  One of her current awards from NSF extends beyond the end of the 2018-19 academic year.

---

[1] She participated in the Economics and Computation workshop at the Simons Institute for the Theory of Computing at UC Berkeley during the 2015 fall semester, and was scheduled to teach two classes in the 2016 spring semester.  However, she became pregnant during the 2015 fall semester and was assigned modified instructional duties during the 2016 spring semester.

[2] 16.5% of the instructor ratings for T/TT faculty in the Cockrell School are 3.7 or below.

[3] Refereed conference papers in highly selective conferences are the primary mechanism for disseminating research results in the field of computer science.

[4] Dr. Nikolova's most highly cited paper has 132 citations and is based on work completed during her graduate studies at MIT.  Her most highly cited paper based on work conducted at UT Austin has 42 citations.

Appx.0109

UT Austin_00023

While Dr. Nikolova's external funding has come from highly competitive sources, approximately 70% of her funding was awarded during her first three years in rank.  Only one grant has been awarded in the past four academic years.  This raises questions about the sustainability of her research funding.

The letters from the external reviewers were uniformly positive and addressed technical quality of Dr. Nikolova's work, which is described as being rigorous and mathematically sound.  Several referred to her leadership role in organizing the Real-Time Decision Making workshop at the Simons Institute for the Theory of Computing at UC Berkeley during the 2018 spring semester.

Advising and Student Mentoring
Dr. Nikolova graduated one PhD in rank at UT Austin[5] and she mentored one postdoctoral fellow.  She is currently advising six PhD students (two are co-supervised) and one postdoctoral fellow.

University Service
Dr. Nikolova's service to the university has primarily been related to faculty recruiting and graduate student recruiting.

Professional Service
Dr. Nikolova was one of five organizers for the semester-long workshop on real-time decision making at the Simons Institute for the Theory of Computing at UC Berkeley during the 2018 spring semester.[6]  She also was the lead organizer for a week-long program, "Mathematical and Computational Challenges in Real-Time Decision Making," which was part of the workshop.

Dr. Nikolova has also served on thirteen technical program committees for conferences in algorithmic game theory, theoretical computer science, and artificial intelligence.

Other Evidence of Merit or Recognition
Dr. Nikolova received a CAREER award from the National Science Foundation in 2014 and a Faculty Research Award from Google in 2013.[7]  She and a graduate student were recognized with a best paper award at the IEEE International Conference on Acoustics, Speech and Signal Processing in 2018.

Overall Assessment
Dr. Nikolova has a strong publication record, she has received two prestigious awards, and she is actively engaged with the Simons Institute for the Theory of Computing at UC Berkeley.[8]  However, her teaching record is modest and the budget council expressed concerns about her relatively weak engagement in the department.

As noted previously, the Promotion and Tenure committee strongly supported Dr. Nikolova's case.  They noted the uniform support for her innovative research, and felt that her teaching was a minor concern.

---

[5] She did not graduate any PhD or MS students at Texas A&M.
[6] The other four organizers were tenured faculty members at Caltech, Stanford, and UC Berkeley.
[7] Approximately 15% of the proposals are funded by Google.
[8] As noted on their website, "The Simons Institute for the Theory of Computing is the world's leading venue for collaborative research in theoretical computer science."

Appx.0110
UT Austin_00024

If this were an up-or-out case, I would likely agree with the recommendation of the Promotion and Tenure committee.  However, Dr. Nikolova is being considered for promotion at UT Austin two years early.  I do not believe that she has taken responsibility for improving her teaching, and I have concerns about the sustainability of her research program.  These concerns are compounded by the fact that both her teaching and her external funding have dropped since she spent the 2015 fall semester at UC Berkeley.

As such, I do not believe that Dr. Nikolova's performance meets expectations for early promotion to associate professor.

Sharon L. Wood, Dean
20 November 2018



iMessage
Nov 27, 2018, 3:49 PM

Hi Ahmed, it's Evdokia. Further thought on withdrawing vs not. Did you get a feeling whether the Dean's true underlying objection was that I was going up "early" or was it my performance/teaching trend? If the latter, it would not help to withdraw and resubmit next year since due to ▮▮▮▮▮ birth I anticipate a dip in my productivity metrics in this next academic year. While in the past academic year I actually had a peak in performance, with 5 top venue pubs and 7 pubs total, relative to an average of 3-4 in prior years. Also this academic year I will not be teaching an undergrad class—since I taught two



Exhibit
Ahmed Tewfik

30

03/20/2021 DC

exhibitsticker.com



Ahmed >

class—since I taught two undergrad sections last year and will be teaching a grad class this spring.

PS: I have emailed both Christine and Fernanda Leite from Civil Eng regarding their teaching evals. Will let you know if/when I get a response.

Thank you I'll text you during my next break

Nov 28, 2018, 10:48 AM

Please check the instructions on how to ask for access. Carmen is the person in the provost office I had in mind

Brian Evans gave me the instructions and told me my email request wording was fine

iMessage

Verizon 5:21 PM

AT

Ahmed >

Brian Evans gave me the instructions and told me my email request wording was fine. He gave me also that first email address I used last night, which may have been wrong. I resent just now with the email address Jerry Speitel's assistant Sonya gave me. I will follow up with a phone call to Carmen.

Please check the instructions yourself. He may have gotten it wrong

Ok

Nov 29, 2018, 4:04 PM

I'll give you a call in a few hours if it's ok. I'm on eastern time

Yes, any time. I may go to bed

iMessage



Ahmed ›

> Yes, any time. I may go to bed early around 9 pm Central / 10 pm Eastern.

Ok thank you

Feb 16, 2019, 9:14 AM

May I call you in 15 minutes? If you're in California I can call you in an hour

> On my way to the airport in San Diego

> Maybe in 30-45 min

Ok

Call me when you're available. I'll come out of the session.

I'm in Tampa

iMessage

AT

Ahmed >

I'm in Tampa

Is now a good time?

Feb 16, 2019, 3:53 PM

Hi Ahmed, I do not want to meet with the Dean.

Feb 16, 2019, 8:24 PM

That's perfectly ok and I understand. Would it be OK for me to meet with her and debrief her? I need to know what happened in the presidential committee level?

Also, can you please email Carmen and find out if anything was added to your file after you got a copy? If yes, could you please get a new copy? Thank you

iMessage



Ahmed ›

please get a new copy? Thank you

Absolutely yes on you meeting with her. Thank you for understanding. And yes, I'll email Carmen and request an update if there's any.

Thank you

Sure

Feb 21, 2019, 1:36 PM

Please stop by when you have a chance. I have a suggestion

Text Message

Please stop by when you have a chance. I have a suggestion

iMessage









Appx 0117



AT

Ahmed >

iMessage

Teaching until 3:30, will stop by after class. Your 2nd floor office?

Can we do 5?

3:45 would work also

Feb 21, 2019, 3:08 PM

3:45 is great

Your 2nd floor office?

Coming down

Ok

Mar 22, 2019, 5:15 PM

Just landed in DFW and saw your email. Nice work!

iMessage

  

Appx 0118

      

●ıl Verizon 🛜   **5:22 PM**   ■ ▯

‹



AT

Ahmed ›

Just landed in DFW and saw your email. Nice work!

I'll read the attachments on my next flight.

Great, thanks!

Mar 22, 2019, 10:51 PM

Your arguments and case are perfect. I'd start by saying that you're appealing because it seems to you that the same standards aren't being applied to all cases. I would then summarize the other case highlighting the facts that teaching, research and funding appear weaker than your case and yet it was tenured under similar circumstances. I would then detail each point as you did and conclude with the

      iMessage   

                  



AT

Ahmed ›

Mar 22, 2019, 10:51 PM

Your arguments and case are perfect. I'd start by saying that you're appealing because it seems to you that the same standards aren't being applied to all cases. I would then summarize the other case highlighting the facts that teaching, research and funding appear weaker than your case and yet it was tenured under similar circumstances. I would then detail each point as you did and conclude with the different assessments given despite the objective facts.

Mar 23, 2019, 10:49 AM

Thanks Ahmed

Read 3/23/19

Appx 0120

Message

| | |
|---|---|
| **From:** | Shockley, Carmen L [cshockley@austin.utexas.edu] |
| **Sent:** | 3/1/2019 4:25:24 PM |
| **To:** | Evdokia Nikolova [nikolova2009@gmail.com] |
| **CC:** | President Gregory L. Fenves [president@utexas.edu]; Provost Maurie McInnis [provost@utexas.edu]; Dukerich, Janet M [janet.dukerich@austin.utexas.edu]; Wood, Sharon L [swood@utexas.edu]; Speitel, Gerald E [speitel@utexas.edu]; Tewfik, Ahmed H [tewfik@austin.utexas.edu] |
| **Subject:** | Re: Procedural tenure question |

Dear Evdokia,

I'm not able to speak to your first question about the email being read by the recipients.  But I can address your second question.  The university only adds documentation to a promotion dossier that is required as documented in the General Guidelines or explicitly requested to be added to the dossier.

Sincerely,

Carmen

----

CARMEN SHOCKLEY, Assistant Vice President for Faculty Affairs
The University of Texas at Austin  |  Office of the Executive Vice President and Provost  |  512-471-0240

---

**From:** Evdokia Nikolova <nikolova2009@gmail.com>
**Date:** Friday, March 1, 2019 at 10:12 AM
**To:** Carmen Shockley <cshockley@austin.utexas.edu>
**Cc:** "President Gregory L. Fenves" <president@utexas.edu>, Provost Maurie McInnis <provost@utexas.edu>, Janet Dukerich <janet.dukerich@austin.utexas.edu>, Sharon Wood <swood@utexas.edu>, "Speitel, Gerald E" <speitel@utexas.edu>, "Tewfik, Ahmed H" <tewfik@austin.utexas.edu>
**Subject:** Procedural tenure question

Dear Carmen,

I have just learnt that the below letter of support by Prof. Manuel Blum  was submitted in support of my promotion case on January 8, 2019.  Prof. Blum is the 1995 **Turing Award winner** (the equivalent of Nobel Prize winner for Computer Science).  He put notable time in his letter.

Can you please tell me if it was read and considered by the recipients below in the decision on my case?  And why was it not included in my promotion dossier?

Thank you,
Evdokia Nikolova

---

**From:** Manuel Blum <mblum@cs.cmu.edu>
**Date:** Tuesday, January 8, 2019 at 8:11 AM
**To:** President Greg Fenves <president@utexas.edu>



Exhibit
Carmen Shockley

App.0121 48
05/28/2021 JL

UT Austin_0026177

**Cc:** Manuel Blum <mblum@cs.cmu.edu>, Provost Maurie McInnis <provost@utexas.edu>, Vice Provost Janet Dukerich <janet.dukerich@austin.utexas.edu>, "Ms. Carmen Shockley" <cshockley@austin.utexas.edu>, Dean Sharon Wood <swood@utexas.edu>, "Assoc. Dean Gerald (Jerry) Speitel" <speitel@utexas.edu>, "Prof. Ahmed Tewfik" <tewfik@austin.utexas.edu>
**Subject:** Promotion of Assistant Professor Evdokia Nikolova to Associate Professor with tenure

8 January 2019

To: President Greg Fenves <president@utexas.edu>
Cc: Provost Maurie McInnis <provost@utexas.edu>
    Vice Provost Janet Dukerich <janet.dukerich@austin.utexas.edu>
    Ms. Carmen Shockley <cshockley@austin.utexas.edu>
    Dean Sharon Wood <swood@utexas.edu>
    Assoc. Dean Gerald (Jerry) Speitel <speitel@utexas.edu>
    Prof. Ahmed Tewfik <tewfik@austin.utexas.edu>

Dear President Fenves,

I am a university professor of Computer Science at Carnegie Mellon University.  I met Assistant Professor Evdokia Nikolova last spring at the Simons Institute for the Theory of Computing in Berkeley while I was on sabbatical there: she was an organizer of the Real-Time Decision Making program, where she gave two first-rate talks that I attended: the survey talk "A Brief Introduction to Algorithms, Game Theory and Risk-averse Decision Making"  https://www.youtube.com/watch?v=_BOrAoD7FWs, and a research talk on "Risk-averse Selfish Routing" https://www.youtube.com/watch?v=0JdIjgTS9ao.   I understand that she is currently up for promotion to Associate Professor with tenure in the Department of Electrical and Computer Engineering in UT Austin's Cockrell School of Engineering, and that her promotion has been called into question.

Given that Nikolova is highly regarded in her field, that she has excellent recommendations from prominent colleagues at peer institutions, that her department's budget council and the Cockrell School's promotions and tenure committee recommended promotion, I was shocked to hear that her Dean did not agree with these recommendations for promotion.  It is even more shocking given the stellar quality of her background and work.  She was educated at Harvard, Cambridge University and MIT (PhD in electrical engineering and computer science with  PhD advisor the exceptional Professor David Karger).  Her research has been published in both high impact journals and peer reviewed conference proceedings.  She has received several million dollars in funding for her research from NSF and from industry.  In addition, I understand that her research with applications to transportation networks and smart grids is directly related to one of the School's cross cutting themes.  Her service to the university (faculty and graduate student recruiting), service on numerous technical program committees, and help in organizing research programs, go well beyond the call of duty for junior faculty.  She is also the mother of two young children.  You could not find a better role model for your students.  By September 2019, she will be 10 years past her PhD, and will have served as Assistant professor (Texas A&M and Austin) for 8 years.  To deny her a promotion to Associate Professor with tenure would be mystifying to me, a travesty really.

Sincerely,

Manuel Blum
Bruce Nelson University Professor of Computer Science
Carnegie Mellon University

**Appx.0122**

UT Austin_0026178

--
Evdokia Nikolova
http://users.ece.utexas.edu/~nikolova/

Appx.0123

CONFIDENTIAL

UT Austin_0026179



COCKRELL SCHOOL OF ENGINEERING

THE UNIVERSITY OF TEXAS AT AUSTIN

---

*Department of Electrical and Computer Engineering ● Engineering Science Building*
*1 University Station C0803 ● Austin, Texas 78712-0240 ● (512) 471-6179 ● Fax (512) 471-3652*

March 25, 2019

Chairman Brian Evans and                          ***Via Email***
Members of Committee of the Council on Academic
Freedom and Responsibility
University of Texas at Austin
Office of the General Faculty
West Mall Office Building 2.102
Austin, TX 78712

      Re:    Appeal of Evdokia Nikolova, Ph.D.
              Assistant Professor, Department of Electrical and Computer Engineering
              Cockrell School of Engineering

Dear Chairman Evans and Committee Members:

I respectfully appeal the denial of my tenure and promotion. The decision to not promote in my case comes in spite of:

1. A near unanimous vote from the Department of Electrical and Computer Engineering (ECE) Budget Council in favor of my promotion and tenure (32 Yes, 1 No, 2 Abstain);

2. Unanimous vote from the Associate Professors (10 Yes, 0 No, 0 Abstain);

3. Strong support from my Department Chair, Professor Ahmed Tewfik, who "strongly endorse[d]" my promotion and tenure, stating that I compare "very favorably" to my "most prominent peers at the first-tier departments in Electrical and Computer Engineering, such as MIT, Stanford, the University of California Berkeley, the University of Illinois Urbana-Champaign (UIUC), Georgia Tech, Caltech and Princeton."

4. A unanimous vote in favor of tenure from the School of Engineering's Tenure and Promotion Committee (7 Yes, 0 No, 0 Abstain);

CCARF Appeal
March 25, 2019
Page 2 of

5. Strong support from all external reviewers who are prominent professors at other top institutions, including Professor Milhalis Yannakakis, Columbia University and a member of the National Academy of Engineering, (nominated by the ECE Department) ("strong record of solid research results" and a "rigorous approach to model the problems and address them mathematically and algorithmically."), Professor Patrick Jaillet, Massachusetts Institute of Technology, ("over a fifteen-year period, I would put her in the top 20% of all those I have evaluated and subsequently received tenure" and "her record is on par with recently tenured cases that I have been asked to review (at Georgia Tech, USC, MIT and Northwestern.)

6. I am serving in my seventh year as an assistant professor, four and a half of which will have been at UT Austin, two and a half previously at Texas A&M.

7. At the time I was offered a position at UT Austin as an assistant professor, I was unequivocally told by my department chair that my prior in rank experience would count and that I would be able to go up for tenure at or around my normal time clock, which began in Fall 2011. My clear understanding was that I would be evaluated at a normal tenure standard in a normal time (5-6 years) frame, not a different, higher bar, at the time I went up.

8. The dean of the School of Engineering's recommended against what she considered "early promotion" but specifically stated "[i]f this were an up-or-out case, I would likely agree with the recommendation of the Promotion and Tenure committee."

9. Others in my department and the School of Engineering have been held to different, lower standards than I was, including numerous male colleagues and a female colleague who unlike me, has not been pregnant while at UT.

The denial of tenure in my case results from procedural violations and errors (including errors in fact, omission and emphasis) under the University's standards and commonly accepted professional standards for promotion and tenure. It also raises questions of equity and different treatment based on gender and pregnancy. I ask that my case be reviewed consistent with the same standards that are normally applied to other candidates and that the decision to deny tenure and promotion be reversed. The violations and errors in my case include:

**1. The dean's statement that mine would be an "early promotion" and imposing a higher standard than if it were my "up-or-out" year is incorrect and inconsistent with the standard applied to other faculty members in my department and the school of engineering.**

At the time UT Austin made me an offer, I had been working as an assistant professor at Texas A&M for two years, since the fall of 2011. In discussions with ECE Department Chair Dr. Ahmed Tewfik (who remains chair at this time) during my interview and around the time UT

CCARF Appeal
March 25, 2019
Page 3 of

Austin made the offer, I was unequivocally told that my prior in rank experience would count and that I would be able to go up for tenure at or around my normal time clock, which began in Fall 2011.  My absolute and reasonable understanding was that I would be evaluated at a normal tenure standard in a normal time (5-6 years) frame, not a different, higher bar, at the time I went up.

UT Austin offered me the position of assistant professor in the summer of 2013, however, UT gave me a January 2014 start date, not at my request.  Dr. Tewfik explained that since I was already working as assistant professor at Texas A&M, he wanted to be professional and "nice" to A&M and not take me away with too short of a notice.  With the assumption that the timing of my tenure consideration at UT would not be affected, I agreed and began working at UT Austin in January 2014.

This academic year is my eighth year as an assistant professor and marks five and a half years at UT Austin.  If I had started at UT one semester earlier, in Fall 2013, this academic year would have been my "up-or-out" year, for which Dean Wood states she "would likely agree with the recommendation [for tenure] of the Promotion and Tenure committee."[1]  Ultimately, my more advanced standing as an assistant professor for two years, compared for example to my ECE colleague, Dr. Mohit Tiwari, has been used against me.  Dr. Tiwari started at UT one semester earlier than I did, beginning in the fall of 2013 following his postdoctoral fellowship.  Although Dr. Tiwari has two years less experience as an assistant professor than I do, he was considered and approved for tenure this year, his "up-or-out year."  Thus, having higher qualifications with two full years more as an assistant professor, but starting one semester later, ironically put me behind Dr. Tiwari on the UT clock and resulted in Dean Wood using a different, higher bar for my "early" application, whereas she "likely would agree" with my promotion if this were my "up-or-out" year.[2]

Other faculty within the ECE department and the School of Engineering have been held to different more lenient standards and I am being held to a higher bar, even in cases considered "early promotion."

### A.  Dr. Zoya Heidari

In a particularly glaring example within the School of Engineering, last year another professor in a similar situation went up for tenure "early" and was treated completely differently than me.

---

[1] I was also allowed an extension due to my pregnancy and birth of my first child in 2015.  Thus, technically my "up-or-out" year will not occur for two more years.

[2] As discussed further below, a more lenient, lower standard was applied for Dr. Tiwari.  His tenure application presents a less-accomplished record than mine in the area of teaching and he has lower student evaluation scores than mine, which was one of the two stated concerns in recommending denial of my promotion.  Importantly, I mean no disrespect to Dr. Tiwari or any of the other faculty members mentioned in this letter when comparing their tenure applications to mine.  I have great respect for Dr. Tiwari and all other colleagues mentioned, but feel it is important to make comparisons to ensure that my application is considered fairly and accurately.

CCARF Appeal
March 25, 2019
Page 4 of

Dr. Zoya Heidari from Petroleum Engineering was promoted in 2018 to associate professor with tenure.  Dr. Heidari had served as an assistant professor at UT Austin for two years, after working for four years at Texas A&M.  Thus, under the apparent standards of UT Austin and the dean of the College of Engineering, Dr. Heidari's application would be considered "early." If the same standards were applied as in my case, she would be subject to a more rigorous examination and a higher bar.  However, this was not the case.  The Dean's Assessment for Dr. Heidari states:

> One may ask why Dr. Heidari is being considered for promotion at this time, when she has not yet reestablished her research program at UT. A commitment was made when she was recruited from Texas A&M that her promotion case would be considered in a timely manner.

This exact same commitment was made to me when I was recruited to UT Austin.  There was also absolutely no suggestion that a different, higher standard would be applied if I went up for tenure in a timely manner.  Nonetheless, no such recognition was made in the dean's assessment and instead, by the dean's own statement, a higher standard was applied for me.  With Dr. Heidari, however, under the exact same circumstances, a heightened standard was not applied and, in fact, a more lenient standard was.

Regarding teaching, one of the two concerns raised as reasons for the denial of my promotion, the Dean's Assessment for Dr. Heidari concluded she is "a dedicated teacher."  On the other hand, the Dean's Assessment in my case calls my teaching record "modest."  In comparison with Dr. Heidari, however, my teaching record is stronger than Dr. Heidari's.  The Dean's Assessment for Dr. Heidari states that her undergraduate teaching scores are below the median.  As discussed further below, mine are above the median for the undergraduate course I taught.  The Dean's Assessment for Dr. Heidari specifically points out that a peer teaching reviewer offered her very specific feedback regarding areas for improvement.  My peer teaching reviewers stated that I was "an outstanding young professor," they found my "approach, blending intuition, motivation and also rigorous derivation, to be very effective," and my budget council stated my teaching record "clearly exceeds the expectations for an Assistant Professor in the Department of Electrical and Computer Engineering."[3]

With regard to funding, the other area specified as a reason for denial of my "early" promotion, the Dean's Assessment for Dr. Heidari states that "[h]er share of research funding at Texas A&M exceeded $3.4 million, which is a remarkable amount. However, the level of peer-review for these grants is not clear."  In my assessment it was recognized that my funding has come from "highly competitive sources."[4]  The Dean's Assessment further notes that Dr. Heidari "has not

---

[3] As discussed further, the Dean's Assessment does not mention my peer teaching evaluations, the many positive and glowing student comments, the budget council's strong review and endorsement, or my chair's extremely positive assessment of my teaching.

[4] My total funding amount of $1.8 million cannot be compared to Dr. Heidari because the standards for the amount of funding in our different research areas are completely different.  For theoretical research like mine, the standard is generally less than half that of applied areas and as such, my funding record is actually very strong (as mentioned in my external letters).

Appx.0127
UT Austin_00619

CCARF Appeal
March 25, 2019
Page 5 of

received any federal research funding," while I received highly competitive federal funding, including the NSF CAREER award in 2014, which is among the highest honors for assistant professors.  In terms of funding patterns, the Dean's Assessment for Dr. Heidari observes that she has obtained almost all her funding during her prior years at Texas A&M, and only $200,000 (less than 6%) of funding during her past three years at UT Austin.  The Dean's Assessment gives great leniency to Dr. Heidari concerning funding, stating "[t]he global decrease in oil prices has reduced Dr. Heidari's ability to secure research funding from industry at UT . . ." and "[t]he department budget council and I do not believe that the global downturn in oil and gas prices should be the deciding factor in the duration of her probationary period at UT."  The Dean's Assessment in my case, however, penalizes me for having been awarded significant funding before working at UT Austin and raised perceived questions about the sustainability of my funding after coming to UT.  (As discussed below, I have received approximately $1.1 million at UT Austin, almost half (46% of which was obtained in/after 2017, much more recently than Dr. Heidari).

My research record is also stronger than Dr. Heidari's by multiple metrics.[5]  One of Dr. Heidari's external recommenders stated that "[m]y only advice would be for her to consider aiming to publish some work in higher-profile or more general journals with a broader readership: at present most papers are published in somewhat specialist petroleum publications."  In contrast, all of my letters and even the Dean's Assessment speak of my strong publication record in highly selective conferences and high-impact journals, such as Operations Research, which has a very broad readership.  Additionally, some of Dr. Heidari's eight external letters do not appear to be from peer institutions, such as one from the University of Houston.  All nine of my letters are from highly regarded scholars at peer institutions.  Dr. Heidari has an h-index of 11 (Google Scholar) with 372 citations.  I have an h-index of 17 (Google Scholar) and 994 citations.  In spite of our records, the Dean's Assessment for Dr. Heidari called her "an outstanding researcher" while the Dean's Assessment for me generally described me as simply having "a strong publication record."

Ultimately, the same commitments were made to both me and Dr. Heidari to consider our cases for promotion in a timely manner based on our prior years of service as an assistant professor. There was never any indication that a different standard would be applied to me because of this. In spite of these commitments, Dr. Heidari was promoted without regard to a higher standard for "early" promotion and in spite of a demonstratively less-accomplished record.  I was denied promotion, specifically held to a heightened standard, and it was acknowledged that if this were "an up-or-out case," the dean's recommendation would likely have been to promote.

It should be noted that unlike me, Dr. Heidari has no children and has never been subject to pregnancy and tenure clock extension due to childbirth.  My first pregnancy in 2015 and modified instructional duties were specifically noted in the Dean's Assessment.   I became pregnant during the fall of 2015 and was granted an extension to my probationary period for the

---

[5]  Similar to funding, it is perhaps unrealistic to compare absolute numbers in research, but the high-level pattern reflects my stronger research record.

CCARF Appeal
March 25, 2019
Page 6 of

birth of my first child, Julian, in March 2016.  I also became pregnant a second time in the Fall
semester of 2017 and had my daughter, Elitza, in June 2018.

### B.  Dr. Sujay Sanghavi

ECE Professor Sujay Sanghavi went up for promotion in 2013-2014 with one year of prior
assistant professor experience from Purdue (compared to my two years at A&M) and four years
at UT Austin (compared to my four and a half, not including the 2018-19 academic year).  In
spite of the fact that this would be an "early promotion" if the standard applied to me was applied
to Dr. Sanghavi, the Deans Assessment for Dr. Sanghavi (Appendix 5) makes absolutely no
reference to an "early" or "accelerated" promotion or of a different, higher standard being
applied to him.

With regard to teaching, one of two areas cited for denial of my "early" promotion, Dr.
Sanghavi's student evaluation scores across the board were lower than mine, including a 3.37.
Dr. Sanghavi's Dean's Assessment further states that with regard to teaching, the budget council
"recognized the need for improvement at the graduate level."  In my case, the budget council
made no such negative comments for a "need to improve" and instead described me as
"passionate about teaching," that I employ "multiple strategies to increase and improve [my]
already high effectiveness," and stated that my "teaching record clearly exceeds the expectation
for an Assistant Professor in the Department of Electrical and Computer Engineering."  The
Dean's Assessment for Dr. Sanghavi states "his performance as a teacher has been adequate."
The record clearly shows that Dr. Sanghavi's teaching is demonstrably less successful than mine,
yet he was approved for early promotion, whereas I was not and teaching was identified as a
primary reason.

Additionally, in the other area cited as a reason for my non-promotion, funding, Dr. Sanghavi's
total funding (his share) was $2 million.  My total funding was only slightly less, at $1.8 million.
The Dean's Assessment for Dr. Sanghavi also refers to Dr. Sanghavi's "solid commitment to
service both within the University and to the profession."  My level of service to the university is
as high if not higher than was Dr. Sanghavi's.  Like him, I was actively engaged in student
recruiting and admissions, as well as other activities and workshops as part of the University. My
service to the profession is significantly higher that Dr. Sanghavi's was when he was approved
for tenure.  I have served on the technical program committees for numerous leading conferences
and workshops and also have been a co-organizer for multiple professional workshops, including
the very high-profile role as co-organizer of the Simons Institute's semester on Real-time
Decision Making in Spring 2018 at UC Berkeley.  Ultimately, comparing my record and tenure
application to that of Dr. Sanghavi shows that I was scrutinized more harshly and held to a
higher standard than my male colleague in spite of having a comparable record.

### C.  Dr. Alex Dimakis

In the ECE Department, Professor Alex Dimakis, went up and was approved for promotion in
the 2014-2015 academic year, after only one and half years at UT.  Dr. Dimakis had previously
worked three and half years as assistant professor at the University of Southern California, and

CCARF Appeal
March 25, 2019
Page 7 of

only one and half years at UT (compared to my four and a half, not including the 2018-19 academic year). However, the Dean's Assessment for Dr. Dimakis (Appendix 2) discounted the issue of "early promotion" stating "[t]his case is considered to be early if only the time at UT is considered. However, if this case is successful and if his time at USC is considered, Dr. Dimakis will have served as an assistant professor for a total of six years." While one of the two reasons offered for the denial of promotion in my case was my research funding, the Dean's Assessment for Dr. Dimakis notes his share of funding totals $1.8 million – the same as mine. His assessment also positively cites to at least two grants he received prior to coming to UT, including an NSF CAREER award and a Google Research Award – also the same as me. His Dean's Assessment states that his share of funding while at UT Austin was approximately $1.1 million, but does not indicate whether the $1.1 million was initially awarded or more generally received while at UT Austin. My share of grant funding that I have been awarded and received while at UT is comparable, at approximately $1 million.

### D. **Dr. Mohit Tiwari**

As discussed above, my male colleague Dr. Tiwari went up for and was approved for tenure and promotion this year (with two years less experience as an assistant professor) at the same time that I was denied (Dr. Tiwari's record is in Appendix 5a). Regarding teaching, Dr. Tiwari had two of the lowest student teaching scores of 3.57 and 3.50 among faculty who have recently received tenure. Those scores are significantly lower that my two lowest scores of 3.72 and 3.92. The Dean's Assessment for Dr. Tiwari notes that his instructor ratings have "oscillated between 4.5 and 4.6" whereas mine have been much more consistent ranging from 3.7 to 4.3. Additionally, the Dean's Assessment for Dr. Tiwari understandingly offered as an explanation that his low scores (3.57 and 3.50) corresponded to when he had the largest number of students (78) in his class. No similar consideration was acknowledged in my assessment. For the record, my lowest score of 3.7 was received at a time when I was teaching two sections during the same semester with a total of 134 students. Additionally, my class sizes overall were 50% larger than Dr. Tiwari's with a 49 student average versus Dr. Tiwari's 32 student average. Also, it was not recognized that during the semester in which I received a 3.72, I received a rating of 3.92 in the same class taught at the same time. Finally, it was also not considered in my assessment that I was pregnant in that same semester. As recognized by others, pregnancy can and does impact student perceptions of teaching effectiveness and teaching evaluations.

The Dean's Assessment also offers support to Dr. Tiwari stating that he has made changes to improve student satisfaction. In my assessment and it was stated that I do not make such changes to improve. This is simply incorrect. My Teaching Statement clearly states that I attempt to respond to student input. The Budget Counsel's report stated that "the peer observations highlight multiple strategies that Dr. Nikolova has employed (e.g. frequent quizzes, lecture style, etc.) that aim to increase student engagement and improve her already high effectiveness." My chair's letter of support also cites that I made "transformative changes" to the undergrad course I taught which other instructors have adopted.

As discussed above, Dr. Tiwari was considered a normal application and I was considered an "early application" even though I have two more years of service as an assistant professor and

CCARF Appeal
March 25, 2019
Page 8 of

have only one less semester of service at UT.  Nonetheless, the preferential treatment for Dr. Tiwari and the heightened scrutiny I received are not reasonable and cannot be explained by calling mine an "early" application.  Significantly different standards were applied to my male colleague and errors were made in the review of my application.

**3.      The extension for my pregnancy and childbirth has been inappropriately and punitively counted against me.**

In addition to using my prior years of experience (and consequently less time at UT Austin) against me, the fact that I was pregnant and accepted a pregnancy extension has also been counted against me and resulted in the higher standard for "early promotion."  I was granted an extension to my probationary period for the birth of my first child in March 2016.  While an extension allows a tenure track faculty member an additional year before they are required to go up for promotion, it was my understanding that such an extension is intended as an accommodation for the birth of a child (or other qualifying condition).  The extension is meant to help a faculty member and was never intended to create a different standard (essentially a penalty) for faculty members who accept an extension and go up for tenure before their extended "up-or-out" year.  As the Faculty Handbook for the College of Natural Sciences states, "There is no downside to the request and you can decide later to go up for promotion at the earlier time. The extension will not affect the way your file is reviewed during the P&T process."[6]

The dean's comment that "[i]f this were an up-or-out case, I would likely agree with the recommendation of the Promotion and Tenure committee" together with her direction that I not apply again for tenure for two more years reflects that she is considering my extension due to pregnancy and child birth and applied a different, higher standard because my application is "early."  In her letter informing me of her decision, she stated that "[a]lthough promotion was not approved at this time, your case may be considered again in your up-or-out year."  (Appendix 7.) The dean made it clear that this meant I should wait for at least two more years (which would include my pregnancy extension) in a discussion with ECE Department Chair Tewfik. (Appendix 8.)  The clear impact of her combined statements is that my tenure application would be sufficient now if this were my "up or out year," but because I was granted an extension for pregnancy and child birth, I was subjected to different standards and must wait until the extension year has expired before going up for tenure again.

Ultimately, if I were to follow the deans' direction, *I will have served as an assistant professor for nine years* before being potentially considered again for tenure.  Such a prolonged service in

---

[6] https://cns.utexas.edu/images/CNS/Deans_Office/Faculty_Affairs/Faculty_Handbook/05f_Extension_probationary_period.pdf  While the Faculty Handbook for the College of Natural Sciences does not literally apply to the College of Engineering, the handbook's comment that an extension for childbirth will not affect the way a tenure file is reviewed (or be used against an applicant) is based on the exact same UT Austin extension policy and certainly reflects both the spirit and letter of the policy.  Nothing in the policy provides that an extension recipient will be held to a different, higher standard if they go up before their extended "up-or-out" year.  *See* HOP 2-2020; UT System Rules 31107, Sec. 5.1(b).

CCARF Appeal
March 25, 2019
Page 9 of

a tenure track position before a tenure decision is unheard of among my colleagues in ECE, and likely unusual across the university, particularly where, as here, she has been overwhelmingly found deserving of tenure by her department, department chair, budget committee, the school's tenure and review committee, as well as numerous, prominent external reviewers from top tier institutions.[7]

**4.    University policies do not provide a higher standard for "early promotion."**

None of the university's policies provide or even support that a different, higher standard for tenure should be applied if the application is considered "early" or accelerated.  HOP 2-2160 sets forth the standards for promotion, and specifically does not include any notice or provision that the standards are different for "early promotion."  Rather, the rule specifically provides that a faculty member may go up for tenure during any year of their probationary period before their "up-or-out year," but there is absolutely no suggestion that a different or higher standard should be applied.

Section A(3)(b) of the General Guidelines states that a recommendation for promotion to associate professor normally is considered in the sixth year of the individual's service as assistant professor.  While the guidelines state that "[c]ases considered before the sixth year in rank are accelerated and must be explained . . .," nothing suggests that different standards apply in an accelerated case than in an "up-or-out" case.  In my case, my application for tenure before my up-or-out year was thoroughly explained and justified by the department chair, the Budget Committee, the School's Promotion and Tenure Committee, all external reviewers:  *I meet the standards for promotion and tenure.*  Even the dean essentially acknowledged this, saying she would likely agree with promotion – if this were my "up-or-out" year.[8]

**5.    An additional external letter of support was received prior to the decision to deny tenure but was not placed in my tenure file or considered.**

---

[7] Although I understand that it was possible to "rescind" my pregnancy extension, the deadline was February 1, 2019, before I was informed on February 16, 2019 of the decision to not promote.  I would have gladly rescinded the extension year last year but had no idea of the bias against having such a year or that it would ultimately be used as a penalty to apply a higher standard for an "early" application and to prevent me from applying again for tenure until my final/pregnancy extended "up-or-out" year, which again will be after nine years of service in the rank of assistant professor.

[8] Notably, the guidelines do not state that the service as an assistant professor must be at UT Austin. While HOP 2-2010 provides that academic service at other institutions does not count towards a faculty member's probationary period, the rule does *not* provide that UT may not consider a faculty member's academic accomplishments at other institutions. Rather, the rule simply guarantees that normally, a tenure track faculty member at UT Austin will have a minimum of seven years before they can be terminated for failure to obtain tenure.  The rule is clearly intended to benefit faculty members, not to penalize them for service at another institution.

CCARF Appeal
March 25, 2019
Page 10 of

Prof. Manuel Blum, formerly at Carnegie Mellon and UC Berkley, submitted an additional letter of strong support dated January 8, 2019, which should have been included in my promotion dossier. Appendix 1. Professor Blum is one the most influential computer scientists in the world, a member of the National Academy of Science, and a recipient of the Turing Award, the highest distinction in computer science, regarded as "the Nobel Prize for computing."[9]

## 6.    The Dean's Assessment Included Incorrect Information and Assumptions About My Research.

Uniformly, my department chair, the faculty in my department, and all external reviewers overwhelming found that my research merited tenure. The Budget Council in its report stated that:

> Assistant Professor Evdokia Nikolova leads a world-class research program . . . Dr. Nikolova has made foundational contributions in understanding the resulting equilibria, with important implications in many areas, e.g., the design of road tolls. She has a solid publication record, with 30 conference papers and 4 journal papers. Her work has received high recognition in academia (e.g., NSF CAREER Award 2014) and industry (e.g., Google Faculty Research Award 2013). Dr. Nikolova's research accomplishments clearly support her promotion to Associate Professor with tenure. Her publications and awards amply demonstrate that she is deserving of promotion.

The Dean's Assessment also generally acknowledged my successful research and publication record. Nonetheless, the recommendation against "early" tenure was based partially on stated concerns about the sustainability of my research program. These perceived concerns are not accurate or based on correct factual information.

As an assistant professor, I have received four very competitive National Science Foundation (NSF) grants, including NSF CAREER grants, NSF's "most prestigious awards in support of early-career faculty."[10] I was a Principal Investigator (PI) on all but one of these NSF grants. I also received one very competitive Google Faculty Research Award. The total amount of my research funding during as assistant professor to date is $1,808,525.[11] This record is substantially above that of a good number of my research peers who received tenure recently in peer institutions. It also exceeds that of most all of the faculty members of ECE department who have received tenure in the past eight years, including Prof. Ali Yilmaz tenured in 2012 with

---

[9] Dasgupta, Sanjoy; Papadimitriou, Christos; Vazirani, Umesh (2008). Algorithms. McGraw-Hill. ISBN 978-0-07-352340-8., p. 317; Brown, Bob (June 6, 2011). "Why there's no Nobel Prize in Computing." Network World.

[10] https://www.nsf.gov/funding/pgm_summ.jsp?pims_id=503214

[11] In my dossier I inadvertently stated that my total funding received from $1,650,108, however, the correct amount is $1,808,525. The error resulted from an unintentional understatement of my NSF CAREER of $448,123.00 whereas the correct amount is $561,540.00 ($113,417 higher). I also did not include $45,000 of WNCG affiliate funding in annual installments from 2014 until 2018 (since I did not realize it counts towards my total).

CCARF Appeal
March 25, 2019
Page 11 of

$1,116,000 and promoted to full professor this year with $1,833,500 (a *full professor* promoted this year with the same funding as me), Prof. Andreas Gerstlauer tenured in 2014 with $1,385,000 and notably Prof. Alex Dimakis who was tenured "early" in 2015 after 1.5 years at UT, with $1,793,000.  My funding was equivalent to that of Prof. Vijay Janapa Reddi tenured in 2017 with $1,811,000 who works in an applied area with a higher funding standard (versus that of my theoretical research area).

A comparison with the four research peers recently awarded tenure in peer institutions, (the individuals were listed in my department chair's letter of strong support as well as the Budget Council assessment of my research) shows that my funding is higher than all four, and substantially higher than two of the four who only received NSF CAREER grants prior to becoming tenured.  See the table below for a summary and Appendix 11 for more detail.

| Name, University | Year PhD | Year tenured | Grants pre-tenure | Grants total | Notes |
|---|---|---|---|---|---|
| Evdokia Nikolova, UT Austin | 2009 | | NSF CAREER 3 other NSF Google WNCG | $1,809K | |
| Shaddin Dughmi, USC | 2011 | 2017 | NSF CAREER | $  516K | Less than 30% of my funding |
| Vineet Goyal, Columbia | 2008 | 2017 | NSF CAREER 2 other NSF Google, IBM, Adobe | $1,120K | Less than 2/3 of my funding, weaker research record (less publications, less citations) |
| Anup Rao, U Washington | 2007 | 2016 | NSF CAREER 3 other NSF Sloan | $1,514K | significantly smaller research group (2 students, 1 postdoc vs 5 students, 2 postdocs for me) |
| Seth Pettie, Michigan | 2003 | 2012 | NSF CAREER | $  480K | Less than 30% of my funding |

Regarding sustainability of my research funding, Dean Wood's Assessment states that "approximately 70% of her funding was awarded during her first three years in rank" and that "[o]nly one grant has been awarded in the past four academic years."   This is incorrect and distorts both my current and past funding.   In 2017 I was awarded an NSF grant of approximately $480,000.  Additionally, although my NSF CAREER Award was announced in 2014, it was paid out to me (UT) in five installments[12] *over each of the past five academic years*.  This is typical as the purpose of the NSF CAREER is to support one's entire career as assistant professor.  As of yet, I have not started using my 2017 NSF grant (which runs through 2021 and can likely be extended for an additional year through 2022) and I am still spending my NSF CAREER for which I am in the process of obtaining the standard 1-year no-cost extension.  I

---

[12] My NSF CAREER installments were: (May 2014) $ 188,888, (Sep 2015) $ 26,127, (Aug. 2016) $ 131,718, (Jun 2017) $ 101,390, (July 2018) $ 113,417 for a total of $ 561,540.

CCARF Appeal
March 25, 2019
Page 12 of

also have received WNCG affiliate funding[13] in *each of the past five academic years*, which I unknowingly omitted from my promotion record.

From the total $1.8 million of my share of grants, I have spent approximately $1.2 million over the past seven-and-a-half years, averaging much less than $200,000 per year. That is directly in alignment with my current spending. Further, as a theoretical researcher our groups are relatively small, with my average group size being four students.

As all faculty know and appreciate, the funding landscape in academia changes continuously, as the Dean acknowledges and gives leniency and early promotion (3 years early) in Dr. Heidari's case. As a junior faculty I was fortunate to receive significant funding. Junior faculty should be congratulated and not punished for their early success, nor held to an artificial higher standard because of this success. The grants I obtained in my first three years in rank were more than sufficient to support my research agenda for the eight years I have been an assistant professor so far. Nevertheless, I attained further funding in 2017 that I have not yet used and that will sustain my research group for a number of years in the future. As of March 2018, based on my past spending method and projected expenses, I will have about three years left with my current funding alone. Given my 100% success rate so far with NSF and Google grant applications as a lead PI, there is absolutely no reason to doubt that I will be able to obtain additional grants in that time frame to continue sustaining my group once my current grants are spent.

7.    **The Dean's Assessment includes incorrect information about my student evaluation teaching scores, teaching statement and presents an unbalanced, inaccurate description of my teaching record generally.**

My students, my peers who have reviewed me, the faculty in my department on the Budget Committee and my department chair all gave very strong assessments of my teaching, my passion for it and my commitment to my students. Nonetheless, the Dean's Assessment presented incorrect information about student evaluation teaching scores, teaching statement and presents an unbalanced, inaccurate description of my teaching record generally.

A.    **Teaching Scores.**

The dean also referred to a perceived downward trend in my evaluation scores, which is inaccurate. My undergraduate teaching scores for Fall 14, Fall 16 and two Fall 17 sections respectively were 3.95, 3.92, 3.72 and 3.93, in that order. Thus my scores have shown an overall stable trend, which should be expected for an experienced assistant professor (I taught 5 courses at Texas A&M prior to arriving at UT). The only outlier in this group is 3.72, obtained in one section of the class EE360C Algorithms. I taught two sections of that course in one semester (Fall 2017) to a total of 134 students. At the same time and in the same semester that I received the lower rating from one section, I received a parallel rating of 3.93 from the other section. Thus, it is incorrect to suggest a downward trend.

---

[13] My WNCG affiliate funding was: $ 12,000 (Oct. 2014), $ 16,000 (Oct. 2015), $ 7,000 (Jan. 2017), $ 10,000.00 (March 2018) for a total $ 45,000.

CCARF Appeal
March 25, 2019
Page 13 of

It is also important to note that my student evaluation scores for EE360C are actually among the highest in the department of all instructors who have taught the course.  The Budget Committee Report notes that my scores for this course were in line with the averages of all other instructors.  In fact, the data for the course shows I was ranked 3rd out of 10 (8% above the median of 3.69) when all instructor's scores for EE360C are considered since 2011, and 3rd of 6 (5% above the median of 3.69) when only tenured/tenure-track EE 360C instructors since 2011 are considered. I was 3rd out of 13 if all instructors for EE360C since 2005 are considered. Only two full professors that are US-born native English speakers have had higher scores than me.  Overall I had better teaching scores than three senior tenured professors,[14] one junior tenure-track professor and all four senior lecturers.  I am above the median for my course.

In comparison, Dr. Tiwari (who was awarded tenure this year with two less years of service as an assistant professor than me) was 5th out of 8 (3% below median) among all instructors for EE 319K.  Dr. Dimakis (who was promoted five and a half years "early" based on time at UT Austin) was 4th out of 8 (slightly above median).  Dr. Sanghavi (who was promoted one year "early" for time at UT Austin) was 5th out of 8 (1% below median) for EE 351K.  Dr. Heidari in Petroleum and Geosystems Engineering (who was promoted last year and three years "early" for time at UT Austin) was slightly below median in undergraduate courses.  Thus, my student teaching scores were actually better than these peers, including those who were promoted "early," yet teaching and these scores were cited as reasons for my non-promotion.

Additionally, the 134 students that I taught in the two sections of the course in one semester is the largest number students taught in a single semester by any assistant professor who was subsequently tenured in the past seven years, with 73 being the average.  See Appendices 12-15 on teaching data. And, among other instructors, the average drop in score when teaching two parallel sections in a single semester is 7% while mine was 2.5%.  While I absolutely will continue and strive to improve, there is no factual basis to support an inference of a negative trend or a lack of commitment in my teaching.

### B.   Pregnancy Bias Affects Student Teaching Evaluations.

An additional and potentially more serious concern is that of pregnancy discrimination if undue emphasis is given to the single lower EE360C score.  I was pregnant with my second child in Fall 2017 when I received my lowest 3.72 score.  Recent evidence demonstrates that pregnant women tend to receive lower scores compared to their own trend when they are not pregnant. This can be explained via studies on the bias in scores vs physical appearance[15] and is hardly surprising given the often difficult physical ailments that pregnant women go through. At the time of my pregnancy, I was experiencing daily morning sickness and extreme fatigue.  I attach

---

[14] The first two highest ranked were tenured professors who also happen to be US-born native English speakers. While I am fully fluent in English, I was born and grew up in Bulgaria and have a distinct accent.  Studies have shown that students respond less favorably to non-native English speakers.  *See e.g.* https://www.insidehighered.com/news/2017/11/16/study-finds-student-distrust-those-who-are-not-native-speakers-english

[15] John Lawrence.  Student evalutions of teaching are not valid from *Academe*, May-June 2018.

CCARF Appeal
March 25, 2019
Page 14 of

letters from Professor Andrea Liu, University of Pennsylvania (Appendix 18), and Professor Silvana Krasteva, Texas A&M, (Appendix 17) who have also experienced lower teaching scores during their pregnancies.

Additionally, in light of Dean Wood's recommendation to me from Feb.18, 2019 (after the non-promote decision) to wait two more years to improve my teaching scores (see Appendix 8), an especially poignant recent finding pertaining to my case states: "*we find that women receive systematically lower teaching evaluations than their male colleagues. This bias is driven by male students' evaluations, is **larger for mathematical courses**, and **particularly pronounced for junior women**. The gender bias in teaching evaluations we document may have direct as well as indirect effects on the **career progression of women** by affecting junior women's confidence and through the reallocation of instructor resources away from research and toward teaching*"[16] See also letter from Professor Amy Graves on implicit bias.

This naturally begs the question whether I am not unfairly being penalized not only for being a junior woman teaching a mathematical course but in addition for being pregnant?  It also begs the question whether the exact same quality and effectiveness of instruction I offered may have yielded higher scores for me had I not been pregnant.  Therefore such scores should be scrutinized, and certainly not used as a basis for non-promotion, when assessing my teaching effectiveness.  My teaching record based on my student evaluations, peer reviews, the chair's evaluation and the assessment of the budget council, shows my commitment to working with students and providing an excellent learning experience.

### B.  Teaching Statement.

The dean also raised questions about my commitment to the teaching philosophy of the Cockrell School based on two specific comments in my teaching statement.  I respectfully offer that these concerns are inaccurate and misinterpret my Teaching Statement.

The Dean's Assessment focused on two statements in my Teaching Statement in which I discussed teaching assistants.  The assessment does so to the exclusion of all other extremely positive assessments I received from my peer reviewers, the Budget Council, my department chair, and the large number of student evaluations.  The Dean's Assessment suggested that I stated that teaching assistants were responsible for creating and grading homework.  I respectfully state that this perception is incorrect, not based on my actual teaching record, a full and fair reading of my Teaching Statement, or supported by any information in my dossier.  I did discuss teaching assistants in statement because this was a real concern and was also reflected in the student evaluations.  By no means, however, did I intend to suggest that I do not take responsibility for improving my own performance, or for the actual course work performed by teaching assistants.

---

[16] Friederike Mengel, Jan Sauermann, Ulf Zölitz, Gender Bias in Teaching Evaluations, *Journal of the European Economic Association*, Published 10 February, 2018, jvx057, https://doi.org/10.1093/jeea/jvx057. https://academic.oup.com/jeea/advance-article-abstract/doi/10.1093/jeea/jvx057/4850534?redirectedFrom=fulltext

CCARF Appeal
March 25, 2019
Page 15 of

In my Teaching Statement, in addition to discussing my passion for teaching, I also explained that "I have continued looking for ways to address . . . challenges," that I "pay close attention" to the reactions of students, and that I find "soliciting direct feedback" is "an invaluable way of being on top of the needs of individual students and my overall effectiveness."   I outlined specific steps I had taken to improve my undergraduate course.  I also discussed in my response or rebuttal to the Dean's Assessment, including Appendix B at the end of the rebuttal (included here as Appendix 9), how I have addressed specific comments on student evaluations for improvement. Without question, I care very much about my students, my teaching, and I will always strive to continue improving.  The budget council's assessment, peer reviews and the department chair's letter all support this conclusion.

As I explained in my response to the Dean's Assessment (Appendix 9), I and my fellow instructor co-developed course content and co-supervised the teaching assistants for both sections of the course EE360C Algorithms, a large and difficult course that many upper-level undergraduates are required to take.

I frequently solicited and followed advice from Prof. Christine Julien, another instructor of the same course who won the UT Regents Outstanding Teaching Award (2015) and the Lepley Teaching Award (2014-2015), on what to delegate to teaching assistants and how to run the course overall. I and my fellow instructor provided goals for the assignment, the topic, and the high-level structure.  From there, with multiple exchanges, iterations and discussions between me, my fellow instructor and teaching assistants, the assignment was refined down to an explicit set of tasks.  My fellow instructor and I reviewed and were responsible for the final assignment. On the homework assignments, I and my fellow instructor provided the goals for the assignment, invited suggestions on sample homework problems from the teaching assistants, and reviewed and finalized the selection and problem details on each assignment.  I was highly involved with the student's homework and programming assignments, take responsibility for them, and did not mean to suggest otherwise.

Without question, I care very much about my students, my teaching, and the dean's mistaken inference taken from two statements is incorrect and not supported by my teaching record.

### C.  Omission of Information From Dean's Assessment

As discussed above, the Dean's Assessment presented an inaccurate assessment of my teaching. The assessment made negative presumptions about my teaching without mentioning my strong peer teaching evaluations, the many positive and glowing student comments on my student evaluations, the budget council's strong review and endorsement, or my chair's extremely positive assessment of my teaching.

**8.  My teaching scores from Texas A&M where I had been assistant professor from Aug. 2011 to December 2013 were erroneously omitted from my promotion file.**

CCARF Appeal
March 25, 2019
Page 16 of

My department chair indicated to me that the department would request my teaching scores from A&M but that request apparently did not happen or the information was otherwise not included.

### 9.  **The Dean's Assessment includes incorrect information about my service.**

In the Dean's Assessment, it was stated that the Budget Council expressed concerns about "relatively weak engagement in the department."  This is incorrect and the budget council's assessment makes absolutely no statement to this effect, and does not include *any* negative concerns whatsoever.  Additionally, the Budget Council voted 9-0 in favor of tenure.  The Budget Council Assessment on my service stated that "Prof. Nikolova has made immense contributions to the Department and the University serving in various roles" and goes on to identify my strong record of service and concluded "[i]n summary, Prof. Nikolova has performed service to the University and the professional community that is significantly above the level of an assistant professor."

The dean's comment apparently was based on Department Chair Tewfik's letter of support, which mentioned that that some colleagues had "noted . . . her level of involvement in the department had been lower than average.  However, ***this is not a concern*** as it's mainly due to her personal circumstances at the stage of her life."  As discussed above, I have been pregnant twice in the last three years and am attempting to raise with the help of my husband my two young children.  I also spent a semester away from UT at the Simons Institute at UC Berkley.  Neither my department chair nor the Budget Council regarded my level of involvement in the department as a "concern." To the contrary, the chair specifically stated "this is *not* a concern" and the Budget Council stated that "Prof. Nikolova has made immense contributions to the Department and the University."

### 10. **Denial of My Tenure Raises Concerns Relating to Gender and Pregnancy.**

UT Austin has made a gender equality, diversity and inclusion a goal.  The denial of my tenure is inconsistent with those goals and raises questions about whether women, and in particular women who become pregnant and wish to have a family, are treated consistent with those goals.

As a baseline for this discussion, there are 53 tenured faculty members within the ECE Department.  49 of those are men, or 92.5 percent, and only four are women.  Since 2014 when I arrived, seven male assistant professors have gone up for tenure and promotion, and all have been approved.  Three women, including myself, have gone up for tenure over this same five period, and *all* have been *denied* promotion.  This year, I was the only woman among the six promotion candidates from the ECE department.  All male candidates advanced and I was the only (female) candidate the university did not advance.

Regarding the suggestion that I did not advance because mine was would have been an early promotion, I believe I have the longest time in the rank of assistant professor of any faculty member considered for tenure or promotion within our department.  As discussed above in section 1 of this appeal, numerous male faculty members and another female faculty member

CCARF Appeal
March 25, 2019
Page 17 of

who has not been pregnant or received an extension on account of childbirth were treated more favorably than I have been.

**11.** **Requests for Relief:**

**A.** **Reconsideration Next Year or in Two Years Is Not an Appropriate or Acceptable Remedy**

Requiring me to do more and holding me to a higher standard than all my colleagues who have been promoted after four or five years in the department amounts to inequality in treatment and advancement. Moving the goal posts by an additional two years (or even one year) raises the bar even more. The Dean's Assessment this year essentially recognized that I meet the standards for promotion on a normal tenure clock. In recommending against tenure, the assessment appeared to infer that further upward trends were necessary in funding and research. If I am already performing at a level that merits tenure even by the dean's acknowledgement if this were my "up-or-out" year, asking me to wait and further increase my performance over the next year or two years will even further raise the bar and with higher expectations that no faculty member in my department have ever been asked to meet. Understandably, I also have real concerns that the different, subjective criteria applied to me this year will resurface in unpredictable ways incarnations in the future. I have already spent seven years in rank, and have accomplishments comparable to or better than many colleagues that have been promoted, and being asked to wait for nine (or even eight) years before being potentially considered again is not an appropriate or acceptable remedy.

**B.** **Clarification of Procedures.**

I respectfully request creating a new procedure for a candidate with a "do not promote" decision to submit Final Arguments to the President in the year of the decision.

**C.** **Engineering Faculty Handbook**

A "Faculty Handbook" appears to be missing for the School of Engineering. Even though there is a university-wide document "Handbook of Operating Procedures", I believe it is helpful to have, and respectfully request, creation of such a specific "Faculty Handbook" document for Engineering, similarly to the one for CNS here (or adopt and approve the same CNS document for the School of Engineering):
https://cns.utexas.edu/images/CNS/Deans_Office/Faculty_Affairs/FacultyHandbook.pdf

**D.** **Notice To Current and Potential Faculty Of Different Standards.**

I respectfully request mandatory language be added to UT Contract Offers to Assistant Professors, especially those with prior experience, to clarify how the tenure clock is to be applied. If the tenure process remains as it has in my case and my tenure is not approved, notice should be given that the tenure clock specified is mandatory for consideration with a normal tenure bar and earlier consideration for promotion comes with a significantly higher tenure bar.

CCARF Appeal
March 25, 2019
Page 18 of

**E. Notice To Faculty Regarding Tenure Extensions For Childbirth.**

If the tenure process remains as it has in my case and my tenure is not approved, I respectfully request mandatory language be added to the form for tenure clock extension (due to childbirth, etc.) to the effect that earlier consideration for promotion comes with a significantly higher tenure bar and that rescinding the extension needs to be done prior to a date in the year of going up for tenure.   Additionally, the deadline for rescinding approved extensions is currently February 1 before fall promotion review.  In fairness to candidate this should be made after the February 15 notification deadline of current promotion review year.  I was explicitly told that childbirth extension year will not harm me, however, it clearly has harmed me in the current decision claiming I am early.  If I had known the importance, I would have rescinded it. Additionally, I need to have the possibility to rescind it now for going up this year if I wish. However having learnt of the "do not promote" decision on February 15, 2019 after the deadline for rescinding the childbirth year, I cannot re-apply for tenure this year as an up-or-out candidate and would presumably be held again to a higher bar.

**Conclusion:**

In the event this appeal is not successful, it will affect not only me but other junior faculty and candidates in the same situation – those with prior faculty experience, women, and those thinking of starting a family.  It will weaken the ECE Department and the Cockrell School of Engineering which already have very small numbers of women faculty, below that of the national average.  I have presented factual, clear evidence of errors and different standards in the decision to deny my tenure and promotion.  My hope is that the additional information and clarification will aid in a holistic evaluation of my case and the tenure process generally.  I respectfully request that the decision in my case be reversed and that I be recommended for tenure and promotion to an associate professor.

Sincerely,

Evdokia Nikolova



COCKRELL SCHOOL OF ENGINEERING

THE UNIVERSITY OF TEXAS AT AUSTIN

*Department of Electrical and Computer Engineering ● Engineering Science Building*
*1 University Station C0803 ● Austin, Texas 78712-0240 ● (512) 471-6179 ● Fax (512) 471-3652*

March 25, 2019

Gregory Fenves, Ph.D.                    ***Via Email***
President
The University of Texas at Austin
MAI 400
Austin, TX 78712

    Re:   Request for Reconsideration of Tenure Decision/Final Arguments[1]
            Evdokia Nikolova, Ph.D.
            Assistant Professor, Department of Electrical and Computer Engineering
            Cockrell School of Engineering

Dear President Fenves:

I had the privilege of interviewing with you in the summer of 2013 while you were Dean of Engineering. Following my interview, the University of Texas at Austin (UT Austin) extended me an offer to work as an assistant professor in the Department of Electrical and Computer Engineering (ECE). At the time UT Austin made the offer, I had been working as an assistant professor at Texas A&M for two years, since the fall of 2011.[2] In discussions with ECE Department Chair Dr. Ahmed Tewfik (who remains chair at this time) during my interview and around the time UT Austin made the offer, I was unequivocally told that my prior in rank experience would count and that I would be able to go up for tenure at or around my normal time clock, which began in Fall 2011. My absolute and reasonable understanding was that I would be

---

[1] The UT Austin Handbook of Operating Procedures (HOP) 2-2160 specifically provides that a request for reconsideration of a tenure decision may be made to the president and the president has the authority to make decisions and modifications in such cases. The General Guidelines For Promotion And Tenure for the 2018-19 Academic Year ("General Guidelines") refer to Final Arguments for terminal tenure decisions, but do not address decisions before a faculty member's terminal year and in no way restrict Final Arguments to only terminal decisions. There are no other rules, guidelines etc. prohibiting a request for reconsideration or Final Arguments in a non-terminal situation and the president clearly has authority to make decisions (including reconsideration) of all tenure decisions.

[2] Before working as an Assistant Professor, I received a BA and a MS from Harvard in 2002, a MS from Cambridge University in 2003, and a PhD from MIT in 2009. I then was as a Post-Doc at MIT for two years before joining TAMU in Sept. 2011.



Exhibit
Evdokia Nikolova

84

06/29/21   DC

Gregory Fenves, Ph.D.
March 25, 2019

evaluated at a normal tenure standard in a normal time (5 or 6 years) frame at the time I went up, not a much longer 8 (or now 10 year) timeframe.  I refer to Dr. Zoya Heidari's case below who was given a similar verbal reassurance and was granted tenure last year, three years "early" with a weaker record than mine.

In keeping with what I had been told and my own expectations, this past fall 2018, the faculty of the UT ECE department considered me for promotion and tenure in my eighth academic year as an assistant professor, five and a half of which will have been at UT Austin.  The Budget Council voted almost unanimously in favor of my promotion and tenure, with 32 voting to promote, one against, and two abstentions.  The ECE associate professors voted unanimously in favor of my tenure (10 Yes, 0 No, 0 Abstain). The ECE Department Chair, Professor Ahmed Tewfik, also "strongly endorse[d]" my promotion and tenure, stating that I compare "very favorably" to my "most prominent peers at the first-tier departments in Electrical and Computer Engineering, such as MIT, Stanford, UC Berkeley, UIUC, Georgia Tech, Caltech and Princeton."  The School of Engineering's Tenure and Promotion Committee also unanimously voted in favor of tenure and promotion (7 Yes, 0 No, 0 Abstain).

Additionally, all my external letters of recommendation from prominent professors at other top institutions also strongly supported my case for tenure.  For example, Professor Patrick Jaillet of Massachusetts Institute of Technology (MIT) stated "over a fifteen-year period, I would put her in the top 20% of all those I have evaluated and subsequently received tenure" and "her record is on par with recently tenured cases that I have been asked to review (at Georgia Tech, USC, MIT and Northwestern.)"[3]  Professor Milhalis Yannakakis, Columbia University and a member of the National Academy of Engineering, (nominated by the ECE Department), wrote that I have a "strong record of solid research results" and a "rigorous approach to model the problems and address them mathematically and algorithmically."   Professor Pascal Van Hentenryck (nominated by the department), Georgia Tech wrote that I was a "remarkable scientist with a strong case for tenure and promotion" and "[s]he would certainly have received tenure easily at all the institutions I have been affiliated with . . ."

A very strong external letter of support for my promotion was submitted on January 8, 2019 by Prof. Manuel Blum, one the most influential computer scientists in the world, a member of the National Academy of Science, and a recipient of the Turing Award, the highest distinction in computer science, regarded as "the Nobel Prize for computing."[4]  This letter should have been included in my promotion dossier but was excluded presumably because of an oversight.  The letter is attached as Appendix 1.

---

[3] Other external reviewers included Professor Alper Atamturk (nominated by the department), University of California, Berkley and a National Security Fellow, US Department of Defense, who stated that I was a "leader in algorithmic research" and was "pleased to recommend …promotion."  Professor Ashish Goel of Stanford also wrote I had a "[s]trong tenure case."   Professor Vincent Conitzer, Duke University, stated that he "[v]ery strongly recommend[s] promotion" and that I was "one of the world's leading junior researchers."

[4] Dasgupta, Sanjoy; Papadimitriou, Christos; Vazirani, Umesh (2008). Algorithms. McGraw-Hill. ISBN 978-0-07-352340-8., p. 317; Brown, Bob (June 6, 2011). "Why there's no Nobel Prize in Computing." Network World.

Appx.0143
UT Austin_00257

Gregory Fenves, Ph.D.
March 25, 2019

While Dean Sharon Wood ultimately recommended against what she referred to as my "early promotion," she stated that **"[i]f this were an up-or-out case, I would likely agree with the recommendation of the Promotion and Tenure committee."**

With due respect for Dean Wood, I respectfully present to you that the recommendation she made is in error and I respectfully request reconsideration of the decision not to promote. **This request for reconsideration or Final Arguments is respectfully made to you as president to bring these important issues to light and seek redress in the most constructive and professional way possible.**[5]

In addition to going against the overwhelmingly positive recommendations to promote from all levels of review both internal and external (other than the dean),[6] the decision to deny promotion is incorrect and should be reversed because:

1. A different and higher standard was applied in the Dean's Assessment to my tenure application on account of my "early application" than has been applied recently to other faculty within the ECE Department and the School of Engineering;

2. My research record, which traditionally is of key importance, is highly accomplished and merits tenure. Additionally, errors in my funding record in my promotion file merit reconsideration;

3. Contrary to apparent misperceptions, my teaching record exceeds expectations of an assistant professor and exceeds that of some of my peers, including other colleagues granted "early" tenure;

4. Additional errors in fact, errors in omissions, and errors in emphasis such as in my service record paint an incorrect image of my promotion case;

5. The decision to not promote goes against UT Austin's goals of gender equality, diversity and inclusion, and raises concerns of different treatment based on gender and pregnancy.

---

[5] In the event you decline to reverse the decision to not promote, I respectfully request that this Request for Reconsideration/Final Arguments be considered to invoke all other grievance or appeal procedures available under UT policies and procedures, including but not limited to those under HOP 2-2310(IV)(C)(1)(b) for review by a hearing panel.

[6] When a dean's recommendation goes against all other levels of review which strongly supported a tenure application, including large numbers of tenured faculty who have worked directly with the applicant, the department chair, the college's tenure and promotion committee, and renowned experts in the applicant's field, I respectfully submit that the president's review should include a heightened level of scrutiny to the dean's decision.

Appx.0144
UT Austin_00258

Gregory Fenves, Ph.D.
March 25, 2019

Additionally, for reasons stated below, I specifically request that the decision to deny tenure be reversed this year, rather than a reconsideration in two years (as the dean has directed) or even in one year. The decision this year amounts to unequal treatment. Moving the goal posts by an additional two years (or one) amounts to further unequal treatment, raises the bar even higher, would require me to present evidence of even higher standard of performance (when my current performance has been acknowledged to be sufficient for tenure) in future years, and would open the door to additional uncertainties and subjective considerations.

1.    **Different, Higher Standards: "If This Were An Up-Or-Out Case, I Would Likely Agree" Versus "Early Promotion."**

UT Austin offered me the position of assistant professor in the summer of 2013, however, UT gave me a January 2014 start date, not at my request.  Department Chair Tewfik explained that since I was already working as assistant professor at Texas A&M, he wanted to be professional and "nice" to A&M and not take me away with too short of a notice.  With the assumption that the timing of my tenure consideration at UT would not be affected, I agreed and began working at UT Austin in Jan. 2014.

This academic year is my eighth year as an assistant professor and marks five and a half years at UT Austin.  If I had started at UT one semester earlier, in Fall 2013, this academic year would have been my "up-or-out" year, for which Dean Wood states she "would likely agree with the recommendation [for tenure] of the Promotion and Tenure committee."[7]  Ultimately, my more advanced standing as an assistant professor for two years, compared for example to my ECE colleague, Dr. Mohit Tiwari, has been used against me.  Dr. Tiwari started at UT one semester earlier than I did, beginning in the fall of 2013 following his postdoctoral fellowship.  Although Dr. Tiwari has two years less experience as an assistant professor than I do, he was considered and approved for tenure this year, his "up-or-out year."  Thus, having higher qualifications with two full years more as an assistant professor, but starting one semester later, ironically put me behind Dr. Tiwari on the UT clock and resulted in Dean Wood using a different, higher bar for my "early" application, whereas she "likely would agree" with my promotion if this were my "up-or-out" year.[8]

My expectation that I would be considered for tenure this year was confirmed when observing that a colleague in the ECE Department, Professor Alex Dimakis, went up and was approved for promotion in the 2014-2015 academic year, after only one and half years at UT.  Dr. Dimakis

---

[7] I was also allowed an extension due to my pregnancy and birth of my first child in 2015.  Thus, technically my "up-out" year will not occur for two more years.

[8] As discussed further below, a more lenient, lower standard was applied for Dr. Tiwari.  His tenure application presents a less-accomplished record than mine in the area of teaching and he has lower student evaluation scores than mine, which was one of the two stated concerns in recommending denial of my promotion.  Importantly, I mean no disrespect to Dr. Tiwari or any of the other faculty members mentioned in this letter and have great respect for Dr. Tiwari and all colleagues mentioned.  Nonetheless, I feel it is important to make comparisons to ensure that my application is considered fairly and accurately.

4 | P a g e

Gregory Fenves, Ph.D.
March 25, 2019

had previously worked three and half years as assistant professor at the University of Southern California.  Also, ECE Professor Sujay Sanghavi went up for promotion in 2013-2014 after four years at UT Austin and with one year of prior assistant professor experience from Purdue. Additionally, ECE Professor Deji Akinwande was also promoted in 2014-2015 after four years at UT Austin (and no other teaching experience).   There are likely other faculty in the ECE department from previous years, and many throughout UT Austin that have gone up for and received tenure before their "up-or-out year."

### A. The case of Dr. Zoya Heidari, promoted to associate professor with tenure in 2018, three years "early."

Within the School of Engineering, for example, last year another professor in a similar situation went up for tenure "early" and was treated completely differently than me.  Dr. Zoya Heidari from Petroleum Engineering was promoted in 2018 to associate professor with tenure (see Appendix 4).  Dr. Heidari and I started as assistant professors at Texas A&M at the same time in fall 2011.  Dr. Heidari had served as an assistant professor at UT Austin for two years, after working for four years at Texas A&M.  Thus, under the apparent standards of UT Austin and the dean of the College of Engineering, Dr. Heidari's application would be considered "early." If the same standards were applied as in my case, she would be subject to a more rigorous examination and a higher bar.  However, this was not the case.  The Dean's Assessment for Dr. Heidari states:

> One may ask why Dr. Heidari is being considered for promotion at this time, when she has not yet reestablished her research program at UT. A commitment was made when she was recruited from Texas A&M that her promotion case would be considered in a timely manner.

This exact same commitment was made to me when I was recruited to UT Austin.  There was also absolutely no suggestion that a different, higher standard would be applied if I went up for tenure in a timely manner.   Nonetheless, the record establishes that under the exact same circumstances, a heightened standard was not applied to Dr. Heidari and, in fact, a more lenient standard was applied.

Regarding teaching, one of the two concerns raised as reasons for the denial of my promotion, the Dean's Assessment for Dr. Heidari concluded she is "a dedicated teacher."  On the other hand, the Dean's Assessment in my case calls my teaching record "modest."  In comparison with Dr. Heidari, however, my teaching record is stronger than Dr. Heidari's.   The Dean's Assessment for Dr. Heidari's states that her undergraduate teaching scores are "slightly below the median."  As discussed further below, mine are above the median for the undergraduate course I taught. The Dean's Assessment for Dr. Heidari specifically points out that a peer teaching reviewer offered her very specific feedback regarding areas for improvement.  My peer teaching reviewers stated that I was "an outstanding young professor," they found my "approach, blending intuition, motivation and also rigorous derivation, to be very effective," and the budget

5 | P a g e

Gregory Fenves, Ph.D.
March 25, 2019

council stated my teaching record "clearly exceeds the expectations for an Assistant Professor in the Department of Electrical and Computer Engineering."[9] In keeping with this assessment, I was nominated for the Dean's Award for Outstanding Engineering Teaching by Assistant Professor.[10] See Appendix 10.

With regard to funding, the other area specified as a reason for denial of my "early" promotion, the Dean's Assessment for Dr. Heidari states that "[h]er share of research funding at Texas A&M exceeded $3.4 million, which is a remarkable amount. However, the level of peer-review for these grants is not clear."  In my assessment it was recognized that my funding has come from "highly competitive sources."[11]  The Dean's Assessment further notes that Dr. Heidari "has not received any federal research funding," while I received highly competitive federal funding, including the NSF CAREER award in 2014, which is among the highest honors for assistant professors.  In terms of funding patterns, the Dean's Assessment for Dr. Heidari observes that she has obtained almost all her funding during her prior years at Texas A&M, and only $200,000 (less than 6%) of funding during her past three years at UT Austin.  The Dean's Assessment gives great leniency to Dr. Heidari concerning funding, stating "[t]he global decrease in oil prices has reduced Dr. Heidari's ability to secure research funding from industry at UT . . ." and "[t]he department budget council and I do not believe that the global downturn in oil and gas prices should be the deciding factor in the duration of her probationary period at UT."  The Dean's Assessment in my case, however, penalizes me for having been awarded significant funding before working at UT Austin and raised perceived questions about the sustainability of my funding after coming to UT.  (As discussed below, I have received approximately $1.1 million at UT Austin, almost half (46%) of which was obtained in/after 2017, much more recently than Dr. Heidari).

My research record is also stronger than Dr. Heidari's by multiple metrics.[12]  One of Dr. Heidari's external recommenders stated that "[m]y only advice would be for her to consider aiming to publish some work in higher-profile or more general journals with a broader readership: at present most papers are published in somewhat specialist petroleum publications." In contrast, all of my letters and even the Dean's Assessment speak of my strong publication record in highly selective conferences and high-impact journals, such as Operations Research, which has a very broad readership.  Additionally, some of Dr. Heidari's eight external letters do not appear to be from peer institutions, such as one from the University of Houston.  All nine of

---

[9] As discussed further, the Dean's Assessment does not mention my peer teaching evaluations, the many positive and glowing student comments, the budget council's strong review and endorsement, or my chair's extremely positive assessment of my teaching.

[10] In consultation with two senior colleagues, I ultimately decided not to pursue the nomination since it required considerable amount of work at a time that conflicted with a very important research deadline.

[11] My total funding amount of $1.8 million cannot be compared to Dr. Heidari because the standards for the amount of funding in our different research areas are completely different.  For theoretical research like mine, the standard is generally less than half that of applied areas and as such, my funding record is actually very strong (as mentioned in my external letters) and *substantially* stronger than research peers recently tenured in top institutions (see below).

[12]  Similar to funding, it is perhaps unrealistic to compare absolute numbers in research, but the high-level pattern reflects my stronger research record.

Gregory Fenves, Ph.D.
March 25, 2019

my letters are from highly regarded scholars at peer institutions.  Dr. Heidari has an h-index of 11 (Google Scholar) with 372 citations.  I have an h-index of 17 (Google Scholar) and 994 citations.  In spite of our records, the Dean's Assessment for Dr. Heidari called her "an outstanding researcher" while the Dean's Assessment for me generally described me as simply having "a strong publication record."

Ultimately, the same commitments were made to both me and Dr. Heidari to consider our cases for promotion in a timely manner based on our prior years of service as an assistant professor.  There was never any indication that a different standard would be applied to me because of this.  In spite of these commitments, Dr. Heidari was promoted without regard to a higher standard for "early" promotion and in spite of a demonstratively less-accomplished record.  I was denied promotion, specifically held to a heightened standard, and it was acknowledged that if this were "an up-or-out case," the dean's recommendation would likely have been to promote.

### B.  Pregnancy and tenure clock extension counted against me.

In addition to using my prior years of experience (and consequently less time at UT Austin) against me, the fact that I was pregnant and accepted a pregnancy extension has also been counted against me and resulted in the higher standard for "early promotion."  As mentioned in the Dean's Assessment, I became pregnant during the fall of 2015.  I was granted an extension to my probationary period for the birth of my first child, Julian, in March 2016.[13]  While an extension allows a tenure track faculty member an additional year before they are required to go up for promotion, it was my understanding that such an extension is intended as an accommodation for the birth of a child (or other qualifying condition).  The extension is meant to help a faculty member and was never intended to create a different standard (essentially a penalty) for faculty members who accept an extension and go up for tenure before their extended "up-or-out" year.  As the Faculty Handbook for the College of Natural Sciences states, "There is no downside to the request and you can decide later to go up for promotion at the earlier time.  The extension will not affect the way your file is reviewed during the P&T process."[14]

The dean's comment that "[i]f this were an up-or-out case, I would likely agree with the recommendation of the Promotion and Tenure committee" together with her direction that I not apply again for tenure for two more years reflects that she is considering my extension due to pregnancy and child birth and applied a different, higher standard because my application is "early."  In her letter informing me of her decision, she stated that "[a]lthough promotion was not

---

[13] I also became pregnant for a second time in the Fall semester of 2017 and had my daughter, Elitza, in June 2018.

[14] https://cns.utexas.edu/images/CNS/Deans_Office/Faculty_Affairs/Faculty_Handbook/05f_Extension_probationary
_period.pdf   While the Faculty Handbook for the College of Natural Sciences does not apply to the College of Engineering, the handbook's comment that an extension for childbirth will not affect the way a tenure file is reviewed (or be used against an applicant) is based on the exact same UT Austin extension policy and certainly reflects both the spirit and letter of the policy.  Nothing in the policy provides that an extension recipient will be held to a different, higher standard if they go up before their extended "up-or-out" year.  *See* HOP 2-2020; UT System Rules 31107, Sec. 5.1(b).

7 | P a g e

Gregory Fenves, Ph.D.
March 25, 2019

approved at this time, your case may be considered again in your up-or-out year."  See Appendix 7.  The dean made it clear that this meant I should wait for at least two more years (which would include my pregnancy extension) in a discussion with ECE Department Chair Tewfik on February 18, 2019 (see Appendix 8).  The clear impact of her combined statements is that my tenure application would be sufficient now if this were my "up or out year," but because I was granted an extension for pregnancy and child birth, I was subjected to different standards and must wait until the extension year has expired before going up for tenure again.

Ultimately, if I were to follow the deans' direction, *I will have served as an assistant professor for nine years* before being potentially considered again for tenure.  Such a prolonged service in a tenure track position before a tenure decision is unheard of among my colleagues in ECE, and likely unusual across the university, particularly where, as here, I have been overwhelmingly found deserving of tenure by my department, department chair, budget committee, the school's tenure and review committee, as well as numerous, prominent external reviewers from top tier institutions. [15]

## C. <u>University Policies Do Not State A Heightened Standard Is Applied In An "Early" Tenure Case.</u>

Finally, it should be noted that none of the university's policies provide or even support that a different, higher standard for tenure should be applied if the application is considered "early" or accelerated. HOP 2-2160 sets forth the standards for promotion, and specifically does not include any notice or provision that the standards are different for "early promotion."  Rather, the rule specifically provides that a faculty member may go up for tenure during any year of their probationary period before their "up-or-out year," but there is absolutely no suggestion that a different or higher standard should be applied.

Section A(3)(b) of the General Guidelines states that a recommendation for promotion to associate professor normally is considered in the sixth year of the individual's service as assistant professor.  While the guidelines state that "[c]ases considered before the sixth year in rank are accelerated and must be explained . . .," nothing suggests that different standards apply in an accelerated case than in an "up-or-out" case.  In my case, my application for tenure before my up-or-out year was thoroughly explained and justified by the department chair, the Budget Committee, the School's Promotion and Tenure Committee, all external reviewers:  *I meet the*

---

[15] Although I understand that it was possible to "rescind" my pregnancy extension, the deadline was February 1, 2019, before I was informed on February 16, 2019 of the decision to not promote.  I would have gladly rescinded the extension year last year but had no idea of the bias against having such a year or that it would ultimately be used as a penalty to apply a higher standard for an "early" application and to prevent me from applying again for tenure until my final/pregnancy extended "up-or-out" year, which again will be after nine years of service in the rank of assistant professor.

Appx.0149
UT Austin_00263

Gregory Fenves, Ph.D.
March 25, 2019

*standards for promotion and tenure*.  Even the dean essentially acknowledged this, saying she would likely agree with promotion – if this were my "up-or-out" year.[16]

### 2.  My Research Record Warrants Tenure and Promotion. Additionally, Errors in My Funding Record in My Promotion File Merit Reconsideration

I have always been told that in general, the most important factor in a tenure portfolio in a Tier 1 research university would be my research accomplishments as evidenced by top-tier publications, citations, and external letters.[17]  These accomplishments as detailed in my case seem to have been downplayed in the Dean's Assessment and the decision to not promote.

Uniformly, all external reviewers, my department chair, and the faculty in my department overwhelming found that my research merited tenure.  The Budget Council in its report stated that:

> Assistant Professor Evdokia Nikolova leads a world-class research program . . . Dr. Nikolova has made foundational contributions in understanding the resulting equilibria, with important implications in many areas, e.g., the design of road tolls. She has a solid publication record, with 30 conference papers and 4 journal papers. Her work has received high recognition in academia (e.g., NSF CAREER Award 2014) and industry (e.g., Google Faculty Research Award 2013). Dr. Nikolova's research accomplishments clearly support her promotion to Associate Professor with tenure.  Her publications and awards amply demonstrate that she is deserving of promotion.

The Dean's Assessment also generally acknowledged my successful research and publication record.  Nonetheless, the recommendation against "early" tenure was based partially on stated concerns about the sustainability of my research program.  These perceived concerns are not accurate or based on correct factual information.

As an assistant professor, I have received four very competitive National Science Foundation (NSF) grants, including the NSF CAREER award, NSF's "most prestigious award in support of early-career faculty."[18]  I was a Principal Investigator (PI) on all but one of these NSF grants.  I

---

[16] Notably, the guidelines do not state that the service as an assistant professor must be at UT Austin. While HOP 2-2010 provides that academic service at other institutions does not count towards a faculty member's probationary period, the rule does *not* provide that UT may not consider a faculty member's academic accomplishments at other institutions.  Rather, the rule simply guarantees that normally, a tenure track faculty member at UT Austin will have a minimum of seven years before they can be terminated for failure to obtain tenure.  The rule is clearly intended to benefit faculty members, not to penalize them for service at another institution.

[17] I fully understand and appreciate that there are other important criteria, as well.  I have worked hard to meet and exceed those expectations, as discussed in this letter and evidenced by my tenure application and the overwhelming positive assessment from my department, the college, and others.

[18] https://www.nsf.gov/funding/pgm_summ.jsp?pims_id=503214

Appx.0150
UT Austin_00264

Gregory Fenves, Ph.D.
March 25, 2019

also received one very competitive Google Faculty Research Award. The total amount of my research funding during as assistant professor to date is $1,808,525.[19] This record is substantially above that of a good number of my research peers who received tenure recently in peer institutions. It also exceeds that of multiple faculty members of ECE department who have received tenure in the past eight years, including Prof. Ali Yilmaz tenured in 2012 with $1,116,000 and promoted to full professor this year with $1,833,500 in rank of associate professor (a *full professor* promoted this year with about the same funding as me), Prof. Andreas Gerstlauer tenured in 2014 with $1,385,000 and notably Prof. Alex Dimakis who was tenured "early" in 2015 after 1.5 years at UT, with $1,793,000. My funding was about the same as that of Prof. Vijay Janapa Reddi tenured in 2017 with $1,811,000 who works in an applied area with a higher funding standard (versus that of my theoretical research area).

A comparison with four research peers recently awarded tenure in peer institutions, (the individuals were listed in my department chair's letter of strong support as well as the Budget Council assessment of my research) shows that my funding is higher than all four, and substantially higher than two of the four who only received NSF CAREER grants prior to becoming tenured. See the table below for a summary and Appendix 11 for more detail.

| Name, University | Year PhD | Year tenured | Grants pre-tenure | Grants total | Notes |
|---|---|---|---|---|---|
| Evdokia Nikolova, UT Austin | 2009 | | NSF CAREER 3 other NSF Google, WNCG | $1,809K | |
| Shaddin Dughmi, USC | 2011 | 2017 | NSF CAREER | $ 516K | Less than 30% of my funding |
| Vineet Goyal, Columbia | 2008 | 2017 | NSF CAREER 2 other NSF Google, IBM, Adobe | $1,120K | Less than 2/3 of my funding, weaker research record (less publications, less citations) |
| Anup Rao, U Washington | 2007 | 2016 | NSF CAREER 3 other NSF Sloan | $1,514K | significantly smaller research group (2 students, 1 postdoc vs 5 students, 2 postdocs for me) |
| Seth Pettie, Michigan | 2003 | 2012 | NSF CAREER | $ 480K | Less than 30% of my funding |

Regarding sustainability of my research funding, Dean Wood's Assessment states that "approximately 70% of her funding was awarded during her first three years in rank" and that

---

[19] In my dossier I inadvertently stated that my total funding received from $1,650,108, however, the correct amount is $1,808,525. The error resulted from an unintentional understatement of my NSF CAREER of $448,123.00 whereas the correct amount is $561,540.00 ($113,417 higher). I also did not include $45,000 of WNCG affiliate funding in annual installments from 2014 until 2018 (since I did not realize it counts towards my total).

Gregory Fenves, Ph.D.
March 25, 2019

"[o]nly one grant has been awarded in the past four academic years."   This is incorrect and distorts both my current and past funding.   In 2017 I was awarded an NSF grant of approximately $480,000.   Additionally, although my NSF CAREER Award was announced in 2014, it was paid out to me (UT) in five installments[20] *over each of the past five academic years*. (I unknowingly omitted the last installment of $113,417 from my promotion record as I had not yet received it at the time of preparing my documents and am thereby providing the correct higher amount here.)   This is typical as the purpose of the NSF CAREER is to support one's entire career as assistant professor.   As of yet, I have not started using my 2017 NSF grant (which runs through 2021 and can likely be extended for an additional year through 2022) and I am still spending my NSF CAREER for which I am in the process of obtaining the standard 1-year no-cost extension.   I also have received WNCG affiliate funding[21] in *each of the past five academic years*, which I unknowingly omitted from my promotion record.

From the total $1.8 million of my share of grants, I have spent approximately $1.2 million over the past seven-and-a-half years, averaging much less than $200,000 per year.   That is directly in alignment with my current spending.   Further, as a theoretical researcher our groups are relatively small, with my average group size being four students.

As all faculty know and appreciate, the funding landscape in academia changes continuously, as the Dean acknowledges and gives leniency and early promotion (3 years early) in Dr. Heidari's case.   As a junior faculty I was fortunate to receive significant funding.   Junior faculty should be congratulated and not punished for their early success, nor held to an artificial higher standard because of this success.   The grants I obtained in my first three years in rank were more than sufficient to support my research agenda for the seven-and-a-half years I have been an assistant professor so far.   Nevertheless, I attained further funding in 2017 that I have not yet used and that will sustain my research group for a number of years in the future.   As of March 2018, based on my past spending method and projected expenses, I will have about three years left with my current funding alone.   Given my 100% success rate so far with NSF and Google grant applications as a lead PI, there is absolutely no reason to doubt that I will be able to obtain additional grants in that time frame to continue sustaining my group once my current grants are spent.

3. **My Teaching Record "Clearly Exceeds" The Standards For Tenure And Inferences To The Contrary Are Not Supported By The Record.**

I cannot emphasize enough how important teaching is to me.   My students, my peers who have reviewed me, the faculty in my department on the Budget Committee and my department chair have all given very strong assessments of my teaching, my passion for it and my commitment to

---

[20] My NSF CAREER installments were: (May 2014) $ 188,888, (Sep 2015) $ 26,127, (Aug. 2016) $ 131,718, (Jun 2017) $ 101,390, (July 2018) $ 113,417 for a total of $ 561,540.
[21] My WNCG affiliate funding was: $ 12,000 (Oct. 2014), $ 16,000 (Oct. 2015), $ 7,000 (Jan. 2017), $ 10,000.00 (March 2018) for a total $ 45,000.

Appx.0152
UT Austin_00266

Gregory Fenves, Ph.D.
March 25, 2019

my students. Additionally, I was nominated for the Dean's Award for Outstanding Engineering Teaching by Assistant Professor by the ECE department in Fall 2017. I am fully committed to teaching and providing an excellent learning experience for my students, as well as continually improving and responding to suggestions for improvement. The Budget Council's Assessment of my teaching performance states:

> Dr. Nikolova is passionate about teaching, which comes across to her students and results in a highly effective style. Her teaching record clearly exceeds the expectation for an Assistant Professor in the Department of Electrical and Computer Engineering.

Similarly, my department chair discussed my "passion for teaching" and stated that I have made "transformative changes" to a difficult and large undergraduate course I have taught and that other instructors have "adopted Evdokia's innovations." The department chair discussed specific technical aspects of my teaching, but on a personal level, he noted that I introduced the concept of "Lunch with the professors" to break the barrier between students and instructors and my participation in Camp Texas and the Edison Lecture Series. I also have received numerous glowing student evaluations. Nonetheless, in raising concerns about my teaching, the Dean's Assessment does not mention my peer teaching evaluations, the many positive student comments, the budget council's strong review and endorsement, or my chair's extremely positive assessment of my teaching.

### A. My Teaching Statement Supports My Commitment To Teaching.

In spite of my overall strong teaching record, the dean raised questions about my commitment to the teaching philosophy of the Cockrell School. I respectfully offer that these concerns are inaccurate and misinterpret my Teaching Statement. The Dean's Assessment identified two comments from my Teaching Statement and inferred that these show I do not take responsibility for all aspects of my courses or for improving my teaching and responding to student evaluations. I respectfully state that this perception is incorrect, not based on my full and fair reading of my Teaching Statement, my actual teaching record, or supported by any information in my dossier. I do take full responsibility for all aspects of my courses and for improvement as a teacher. I also take full responsibility for any clumsy wording in my Teaching Statement that might suggest otherwise.

As noted in the Dean's Assessment, I did discuss issues with Teaching Assistants in my Teaching Statement, because this was a real concern and was also reflected in the student evaluations. By no means, however, did I intend to suggest that I do not take responsibility for improving my own performance, or for the actual course work performed by teaching assistants. The Dean's Assessment suggested that I stated that teaching assistants were responsible for creating and grading homework. As I explained in my response to the Dean's Assessment (see Appendix 9), I and my fellow instructor co-developed course content and co-supervised the teaching assistants for both sections of the course EE360C Algorithms, a large and difficult course that many upper-level undergraduates are required to take.

12 | P a g e

Gregory Fenves, Ph.D.
March 25, 2019

I frequently solicited and followed advice from Prof. Christine Julien, another instructor of the same course who won the UT Regents Outstanding Teaching Award (2015) and the Lepley Teaching Award (2014-2015), on what to delegate to teaching assistants and how to run the course overall.  I and my fellow instructor provided goals for the assignment, the topic, and the high-level structure.  From there, with multiple exchanges, iterations and discussions between me, my fellow instructor and teaching assistants, the assignment was refined down to an explicit set of tasks.  My fellow instructor and I reviewed and were responsible for the final assignment. On the homework assignments, I and my fellow instructor provided the goals for the assignment, invited suggestions on sample homework problems from the teaching assistants, and reviewed and finalized the selection and problem details on each assignment.  I was highly involved with the student's homework and programming assignments, take responsibility for them, and did not mean to suggest otherwise.

The Dean's Assessment also stated that I did not respond in my Teaching Statement to comments in student evaluations regarding how the undergraduate course could be improved, suggesting that I am unresponsive to student concerns.  While I did not discuss or attribute in my Teaching Statement my specific responses to specific student suggestions, it is completely inaccurate to suggest from this that I do not respond to student evaluations and input.   In fact, in my Teaching Statement, I explained that "I have continued looking for ways to address . . . challenges," that I "pay close attention" to the reactions of students, and that I find "soliciting direct feedback" is "an invaluable way of being on top of the needs of individual students and my overall effectiveness."   One of my (multiple) biggest improvements was to introduce recitations/problem solving sessions, which was suggested in a student comment, as well as the initiative "Lunch with a professor" to better connect with students.  I also provide a detailed list of student comments and improvements I made in response to them, in Appendix B of my rebuttal (included here as Appendix 9).  Without question, I care very much about my students, my teaching, and I will always strive to continue improving.  The budget council's assessment, peer reviews and the department chair's letter all support this conclusion.  Any suggestion to the contrary has no factual basis.

     **B.**     **My Student Teaching Evaluations Are Strong and Do Not Support Denial Of Tenure.**

The dean also referred to a perceived downward trend in my evaluation scores, which is inaccurate.  My undergraduate teaching scores for Fall 14, Fall 16 and two Fall 17 sections respectively were 3.95, 3.92, 3.72 and 3.93, in that order. Thus my scores have shown an overall stable trend, which should be expected for an experienced assistant professor (I taught 5 courses at Texas A&M prior to arriving at UT).  The only outlier in this group is 3.72, obtained in one section of the class EE360C Algorithms.  I taught two sections of that course in one semester (Fall 2017) to a total of 134 students. At the same time and in the same semester that I received the lower rating from one section, I received a parallel rating of 3.93 from the other section. Thus, it is incorrect to suggest a downward trend.

It is also important to note that my student evaluation scores for EE360C are actually among the highest in the department of all instructors who have taught the course.  The Budget Committee Report notes that my scores for this course were in line with the averages of all other instructors.

13 | P a g e

Gregory Fenves, Ph.D.
March 25, 2019

In fact, the data for the course shows I was ranked 3rd out of 10 (8% above the median of 3.69) when all instructor's scores for EE360C are considered since 2011, and 3rd of 6 (5% above the median of 3.69) when only tenured/tenure-track EE 360C instructors since 2011 are considered. I was 3rd out of 13 if all instructors for EE360C since 2005 are considered. Only two full professors that are US-born native English speakers have had higher scores than me. Overall I had better teaching scores than three senior tenured professors,[23] one junior tenure-track professor and all four senior lecturers since 2011. I am above the median for my course.

In comparison, Dr. Tiwari (who was awarded tenure this year with two less years of service as an assistant professor than me) was 5th out of 8 (3% below median) among all instructors for EE 319K. Dr. Dimakis (who was promoted four years "early" based on time at UT Austin) was 4th out of 8 (slightly above median). Dr. Sanghavi (who was promoted one year "early" for time at UT Austin) was 5th out of 8 (1% below median) for EE 351K. Dr. Heidari in Petroleum and Geosystems Engineering (who was promoted last year and three years "early" for time at UT Austin) was slightly below median in undergraduate courses. Thus, my student teaching scores were actually better than these peers, including those who were promoted "early," yet teaching and these scores were cited as reasons for my non-promotion.

Additionally, the 134 students that I taught in the two sections of the course in one semester is the largest number of students taught in a single semester by any assistant professor who was subsequently tenured in the past seven years, with 73 being the average. See Appendices 12-15 on teaching data. And, among other instructors, the average drop in score when teaching two parallel sections in a single semester is 7% while mine was 2.5%. While I absolutely will continue and strive to improve, there is no factual basis to support an inference of a negative trend or a lack of commitment in my teaching.

### C.   Pregnancy bias affects teaching evaluations.

Finally, an additional and potentially more serious concern is that of pregnancy discrimination if undue emphasis is given to my single lower EE360C score. I was pregnant with my second child in Fall 2017 when I received my lowest 3.72 score. Recent evidence demonstrates that pregnant women tend to receive lower scores compared to their own trend when they are not pregnant. This can be explained via studies on the bias in scores vs physical appearance[24] and is hardly surprising given the often difficult physical ailments that pregnant women go through. At the time of my pregnancy, I was experiencing daily morning sickness and extreme fatigue. I attach letters from Professor Andrea Liu, University of Pennsylvania (Appendix 18), and Professor

---

[23] The first two highest ranked were tenured professors who also happen to be US-born native English speakers. While I am fully fluent in English, I was born and grew up in Bulgaria and have a distinct accent. Studies have shown that students respond less favorably to non-native English speakers. *See e.g.* https://www.insidehighered.com/news/2017/11/16/study-finds-student-distrust-those-who-are-not-native-speakers-english
[24] John Lawrence. Student evalutions of teaching are not valid from *Academe*, May-June 2018.

Gregory Fenves, Ph.D.
March 25, 2019

Silvana Krasteva, Texas A&M, (Appendix 17) who have also experienced lower teaching scores during their pregnancies.

Additionally, in light of Dean Wood's recommendation to me from Feb.18, 2019 (after the non-promote decision) to wait two more years to improve my teaching scores (see Appendix 8), an especially relevant recent study pertaining to my case states: "*we find that women receive systematically lower teaching evaluations than their male colleagues. This bias is driven by male students' evaluations, is* **larger for mathematical courses**, *and* **particularly pronounced for junior women***. The gender bias in teaching evaluations we document may have direct as well as indirect effects on the* **career progression of women** *by affecting junior women's confidence and through the reallocation of instructor resources away from research and toward teaching*"[25] See also letter of support from Professor Amy Graves discussing implicit bias (Appendix 16).

This naturally begs the question whether I am not unfairly being penalized not only for being a junior woman teaching a mathematical course but in addition for being pregnant?  It also begs the question whether the exact same quality and effectiveness of instruction I offered may have yielded higher scores for me had I not been pregnant.   Therefore such scores should be scrutinized, and certainly not used as a basis for non-promotion, when assessing my teaching effectiveness.   My teaching record based on my student evaluations, peer reviews, the chair's evaluation and the assessment of the budget council, shows my commitment to working with students and providing an excellent learning experience.

### D.      Teaching: additional new information.

My understanding is that an important aspect of the teaching portfolio for promotion from assistant to associate professor with tenure is graduating a PhD student, and for promotion from associate to full professor it is placement of students and postdocs.  My PhD student Ger Yang who received his PhD in August 2018, received his top choice position of software engineer at Google.  My postdoctoral associate Manolis Pountourakis has just accepted a faculty position to start as assistant professor of Computer Science in Drexel University in September 2019. Thus I have not only satisfied qualifications for promotion to associate professor with tenure but am already satisfying qualifications for promotion to full professor, along with other international recognition such as three keynote addresses I gave in Switzerland (2014), Greece (2017) and Canada (2017), not mentioned in the Dean's Assessment for my case while a single keynote address was mentioned in the Dean's Assessment for Prof. Alex Dimakis's case.  I believe that no other tenure candidates in my department from the past 5 years have placed a member of their research group into a tenure-track faculty position prior to receiving tenure.

---

[25] Friederike Mengel, Jan Sauermann, Ulf Zölitz, Gender Bias in Teaching Evaluations, *Journal of the European Economic Association*, Published 10 February, 2018, jvx057, https://doi.org/10.1093/jeea/jvx057.
https://academic.oup.com/jeea/advance-article-abstract/doi/10.1093/jeea/jvx057/4850534?redirectedFrom=fulltext

15 | P a g e

Appx.0156
UT Austin_00270

Gregory Fenves, Ph.D.
March 25, 2019

**4.**    **Additional errors in fact, errors in omission and errors in emphasis, such as in my service record paint an incorrect image of my promotion case.**

The ECE Budget Council Assessment on my service stated that "Prof. Nikolova has made immense contributions to the Department and the University serving in various roles."   The assessment recognized my service multiple times on the junior faculty hiring committee, which involves a significant time commitment.  I have served as a member of the Graduate Students Admissions Committee since 2014 and an external member of the ORIE junior faculty hiring committee.  The assessment noted I had have "taken a leadership role in organizing workshops" including serving as program co-chair of the Winedale workshop.  The workshop involved a significant time commitment, drew more than 200 attendees from the Texas region, and brought recognition to the university.  I have also participated in the Edison Lecture Series and Camp Texas.

The Budget Council also stated that I have "been extraordinarily engaged in professional service to the international academic community via organization of many prestigious workshops."  This included the very high-profile role as co-organizer of the Simons Institute's semester on Real-Time Decision Making in Spring 2018 at UC Berkeley.  I also have served on review panels for the US National Science Foundation and a panel member for the NSF equivalent in Chile.  I have also given lectures at the Samos Summer School on Algorithmic Game Theory.

Ultimately, the Budget Council stated that "[i]n summary, Prof. Nikolova has performed service to the University and the professional community that is significantly above the level of an assistant professor." In the Dean's Assessment in my case, it was stated that the Budget Council expressed concerns about "relatively weak engagement in the department."  This is incorrect and the council's assessment makes no statement to this effect, and does not include *any* negative concerns whatsoever.  The dean's comment apparently was based on Department Chair Tewfik's letter of support, which mentioned that that some colleagues had "noted . . . her level of involvement in the department had been lower than average.  However, this is not a concern as it's mainly due to her personal circumstances at the stage of her life."   As discussed above, I have been pregnant twice in the last three years and am attempting to raise with the help of my husband my two young children.  I also spent time away from UT at the Simons Institute at UC Berkeley during which I continued doing departmental service without been seen or physically present. [26]    Neither my department chair nor the Budget Council regarded my level of

---

[26] A recent study on service "*examined how institutional gender biases impact the visibility and evaluation of faculty service across the tenure-track career trajectory. Our findings reveal how task-oriented forms of service tend to be more visible and valued than relationally oriented service.*" Hanasono, L. K., Broido, E. M., Yacobucci, M. M., Root, K. V., Peña, S., & O'Neil, D. A. (2018, August 2). Secret Service: Revealing Gender Bias in the Visibility and Value of Faculty Service. *Journal of Diversity in Higher Education*, Advance online publication. http://dx.doi.org/10.1037/dhe0000081**.**  The following link needs to be manually copied and pasted into a browser:
https://www.dickinson.edu/download/downloads/id/9401/secret_service_revealing_gender_biases_in_the_visibility_and_value_of_faculty_service.pdf

16 | P a g e

Gregory Fenves, Ph.D.
March 25, 2019

involvement in the department as a "concern." To the contrary, the chair specifically stated "this is *not* a concern" and the Budget Council stated that "Prof. Nikolova has made immense contributions to the Department and the University." Finally, as discussed below, the Dean's Assessment is more negative regarding my service than that of my male colleagues who have gone up for tenure in recent years.

**New information on service:**

I have been serving as an Associate Editor for the top journal Mathematics of Operations Research since January 1, 2019. I am also currently serving as program co-chair of the 15th Conference on Web and Internet Economics (WINE 2019), the second major conference in the field of computational economics. These are both highly visible service roles that entail great responsibility, are rarely given to a junior professor, and speak of my professional standing in my research community.

## 5.   Denial of My Tenure Raises Concerns Of Gender and Pregnancy Bias.

UT Austin has made a gender equality, diversity and inclusion a goal. The denial of my tenure at this time is inconsistent with those goals and raises questions about whether women, and in particular women who become pregnant and wish to have a family, are treated consistent with those goals.

As a baseline for this discussion, there are 53 tenured faculty members within the ECE Department. 49 of those are men, or 92.5 percent, and only 4 are women (7.5 percent). Since 2013-2014 when I interviewed, nine male assistant professors have gone up for tenure and promotion, and all but one have been granted tenure. Two women, including myself, have gone up for tenure over this same six-year period, and *both* have not been successfully promoted. (Dr. Miryung Kim subsequently left the department.) This year, I was the only woman among the six promotion candidates from the ECE department. All male candidates advanced and I was the only (female) candidate the university did not advance.

Regarding the suggestion that I did not advance because mine would have been an early promotion, I believe I currently have the longest time in the rank of assistant professor of any faculty member considered for tenure or promotion within our department. As discussed above, I am aware of at least three male ECE faculty members, Sujay Sanghavi, Alex Dimakis, and Deji Akinwande[27] that in recent years were approved for tenure "early" before their "up-or-out" year at UT Austin. A comparison of my case against theirs reveals different and higher standards were applied to me.

### A.   Dr. Sujay Sanghavi.

---

[27] I have not obtained the tenure application dossier for Deji Akinwande and thus am unable to make detailed comparisons between his application and mine.

Gregory Fenves, Ph.D.
March 25, 2019

Dr. Sanghavi had one prior year of teaching experience (compared to my two and a half years) and four years at UT Austin (compared to my four and a half) at the time he was considered and approved for tenure.  In spite of this, the Dean's Assessment for Dr. Sanghavi (Appendix 5) makes absolutely no reference to an "early" or "accelerated" promotion or of a different, higher standard being applied to him.

With regard to teaching, one of two areas cited for denial of my "early" promotion, Dr. Sanghavi's student evaluation scores almost across the board were lower than mine, including a 3.37. Dr. Sanghavi's Dean's Assessment further states that with regard to teaching, the budget council "recognized the need for improvement at the graduate level."  In my case, the budget council made no such negative comments for a "need to improve" and instead described me as "passionate about teaching," that I employ "multiple strategies to increase and improve [my] already high effectiveness," and stated that my "teaching record clearly exceeds the expectation for an Assistant Professor in the Department of Electrical and Computer Engineering."

The Dean's Assessment for Dr. Sanghavi also shows more favorable treatment in the area of service than I received. As a comparative example, the Dean's Assessment of Prof. Sujay Sanghavi's tenure case on University service states:

> *"Dr. Sanghavi has served on several committees within the Department of Electrical and Computer Engineering. He has been actively engaged with graduate student recruiting and admissions and he has been the faculty organizer for the weekly seminar series within the Wireless Communications Group, which hosts approximately 20 invited speakers each year."*

On professional service for Dr. Sanghavi, the Dean's Assessment states

> *"Dr. Sanghavi has served on the technical program committees for numerous technical conferences and workshops, including the 2014 top conference in the field of networks."*

In contrast, the Dean's Assessment of my tenure case on service states:

> *"University Service*
> *Dr. Nikolova's service to the university has primarily been related to faculty recruiting and graduate student recruiting.*
>
> *Professional Service*
> *Dr. Nikolova was one of five organizers for the semester-long workshop on real-time decision making at the Simons Institute for the Theory of Computing at UC Berkeley during the 2018 spring semester. She also was the lead organizer for a week-long program, "Mathematical and Computational Challenges in Real-Time Decision Making," which was part of the workshop.*
>
> *Dr. Nikolova has also served on thirteen technical program committees for conferences in algorithmic game theory, theoretical computer science, and artificial intelligence."*

18 | P a g e

Gregory Fenves, Ph.D.
March 25, 2019

My university service record includes all of the activities listed for Dr. Sanghavi above, and much more. Like him, I was actively engaged in student recruiting and admissions, serving on three very time-consuming faculty recruiting committees. I also served as a co-chair for the Winedale workshop, and served in outreach activities such as being a three-time speaker at Camp Texas and speaker at the Edison Lecture Series. My service to the profession is significantly higher that Dr. Sanghavi's was when he was approved for tenure. I have served on the technical program committees for numerous leading conferences and workshops and also have been a co-organizer for multiple professional workshops, including the very high-profile role as co-organizer of the Simons Institute's semester on Real-time Decision Making in Spring 2018 at UC Berkeley.

In spite of the fact that I have a better teaching record and a higher level of service than Dr. Sanghavi at the time he went up for tenure, the Dean's Overall Assessment states about Dr. Sanghavi:

> *His performance as a teacher has been adequate, and he has demonstrated a solid commitment to service both within the University and to the profession.*"

The Dean's Overall Assessment in my case states:

> *However, her teaching record is modest and the budget council expressed concerns about her relatively weak engagement in the department.*

In the other area cited as a reason for my non-promotion, funding, Dr. Sanghavi's total funding (his share) was $2 million. My total funding was only slightly less, at $1.8 million. Ultimately, comparing my record and tenure application to that of Dr. Sanghavi shows that I was scrutinized more harshly and held to a higher standard than my male colleague in spite of having a comparable, and in some areas, more positive record.

**B.   Dr. Alex Dimakis.**

A review of Dr. Dimakis's tenure application also supports that different standards were applied to my male colleague. Dr. Dimakis's promotion in the 2014-2015 academic year came after only one and half years at UT. However, the Dean's Assessment for Dr. Dimakis (Appendix 2) discounted the issue of "early promotion" stating *"[t]his case is considered to be early if only the time at UT is considered. However, if this case is successful and if his time at USC is considered, Dr. Dimakis will have served as an assistant professor for a total of six years.*" While one of the two reasons offered for the denial of promotion in my case was my research funding, the Dean's Assessment for Dr. Dimakis notes his share of funding totals $1.8 million – the same as mine (in fact his share was $1,793K slightly below my share of $1,809K). His assessment also positively cites to at least two grants he received prior to coming to UT, including an NSF CAREER award and a Google Research Award – also the same as me. His Dean's Assessment states that his share of funding while at UT Austin was approximately $1.1 million, but does not scrutinize or indicate whether the $1.1 million was initially awarded or more generally received while at UT Austin. My share of grant funding that I have been awarded and received while at UT is comparable, at approximately $1.1 million, with almost half of that amount awarded as a 4-year grant in 2017 the year before I went up for promotion and the

19 | P a g e

Gregory Fenves, Ph.D.
March 25, 2019

other half (from NSF CAREER and WNCG affiliate funding) paid out in 5 installments over each of the past 5 years.

### C.   Dr. Mohit Tiwari.

As discussed above, my male colleague Dr. Tiwari went up for tenure and was approved for promotion this year at the same time that I was denied (Appendix 5a).  Regarding teaching, Dr. Tiwari had two of the lowest student teaching scores of 3.57 and 3.50 among faculty who have recently received tenure.  Those scores are significantly lower that my two lowest scores of 3.72 and 3.92.  The Dean's Assessment for Dr. Tiwari notes that his instructor ratings have "oscillated between 3.5 and 4.6" whereas mine have been much more consistent ranging from 3.7 to 4.3. Additionally, the Dean's Assessment for Dr. Tiwari understandingly offered as an explanation that his low scores (3.57 and 3.50) corresponded to when he had the largest number of students (78) in his class.

No similar consideration was acknowledged in my assessment.  For the record, my lowest score of 3.7 was received at a time when I was teaching two sections during the same semester with a total of 134 students.  Additionally, my class sizes were on average 50% larger than Dr. Tiwari's with my 49 student average versus Dr. Tiwari's 32 student average.  Also, it was not recognized that during the semester in which I received a 3.72, I received a rating of 3.92 in the same class taught at the same time.  Finally, it was also not considered in my assessment that I was pregnant in that same semester.  As recognized by others, pregnancy can and does impact student perceptions of teaching effectiveness and teaching evaluations.

The Dean's Assessment also offers support to Dr. Tiwari stating that he has made changes to improve student satisfaction.  In my assessment it was stated that I do not make such changes to improve.  This is simply incorrect.  As discussed above, my Teaching Statement clearly states that I attempt to respond to student input, the Budget Counsel's report stated that "the peer observations highlight multiple strategies that Dr. Nikolova has employed (e.g. frequent quizzes, lecture style, etc.) that aim to increase student engagement and improve her already high effectiveness."  My chair's letter of support also cites that I made "transformative changes" to the undergraduate course I taught which other instructors have adopted.  Nonetheless, the Dean inferred and suggested that I have not responded to suggestions for improvement and do not take responsibility for improving my teaching, which is inaccurate.  The Dean's Assessment on Prof. Towari's service is also skewed more favorably than mine in spite of comparable service.

As discussed above, Dr. Tiwari was considered a normal application and I was considered an "early application" even though I have two more years of service as an assistant professor and have only one less semester of service at UT.  Nonetheless, the preferential treatment for Dr. Tiwari and the heightened scrutiny I received are not reasonable and cannot be explained by calling mine an "early" application.  Significantly different standards were applied to my male colleague and errors were made in the review of my application.

### D.   Dr. Zoya Heidari.

Appx.0161
UT Austin_00275

Gregory Fenves, Ph.D.
March 25, 2019

Finally, as discussed above, the Dean's Assessment for Dr. Heidari, who was awarded "early" tenure with no heightened scrutiny and, in fact, more lenience than was applied to me raises concerns about pregnancy.  Dr. Heidari has no children and has never been subject to pregnancy and tenure clock extension due to childbirth.  My first pregnancy and modified instructional duties were specifically noted in the Dean's Assessment.

**Conclusion and Relief Requested:  Reconsideration Next Year or in Two Years Is Not an Appropriate or Acceptable Remedy**

I want to be in a growing department, college and university that has clear and transparent policies and that nourishes and promotes their junior female faculty.  I have incredibly strong support from my departmental colleagues, my department chair, and the college Tenure and Promotion committee in my tenure and promotion case.  The Dean's Assessment notes my strong publication record, international recognition, prestigious research awards, highly competitive NSF grants, and uniformly positive external letters.

Requiring me to do more work and achievements than all my colleagues who have been promoted after four or five years in the department amounts to inequality in treatment and advancement.  Moving the goal posts by an additional two years (or even one year) raises the bar even more.  The Dean's Assessment this year essentially recognized that I meet the standards for promotion on a normal tenure clock.  In recommending against tenure, the assessment appeared to infer that further upward trends were necessary in funding and research.  If I am already performing at a level that merits tenure even by the dean's acknowledgement if this were my "up-or-out" year, asking me to wait and further increase my performance over the next year or two years will even further raise the bar and with higher expectations that no faculty member in my department has ever been asked to meet.  Understandably, I also have real concerns that the different, subjective criteria applied to me this year will resurface in unpredictable ways in the future.   I have already spent seven and a half years in rank, and have accomplishments comparable to or better than many colleagues that have been promoted, and being asked to wait for nine (or even eight) years before being potentially considered again is not an appropriate or acceptable remedy.

In the event this appeal is not successful, it will affect not only me but other junior faculty and candidates in the same situation – those with prior faculty experience, women, and those thinking of starting a family.  It will weaken the ECE Department and the Cockrell School of Engineering which already have very small numbers of women faculty, below that of the national average.  I have presented factual, demonstrative and clear evidence of errors and different standards in the decision to deny my tenure and promotion.  My hope is that the additional information and clarification that I have provided will aid in a holistic evaluation that will reach a recommendation of "promote."  I respectfully request that the decision be reversed and that I be recommended for promotion to an associate professor with tenure.

Sincerely,

Evdokia Nikolova

Appx.0162
UT Austin_00276

Message

| | |
|---|---|
| **From:** | Evdokia Nikolova [nikolova2009@gmail.com] |
| **Sent:** | 3/26/2019 4:18:15 AM |
| **To:** | President Gregory L. Fenves [president@utexas.edu]; Shockley, Carmen L [cshockley@austin.utexas.edu]; EVPP Academic Personnel Services [evpp-aps@utexas.edu]; evpp.aps@utlists.utexas.edu |
| **CC:** | Provost Maurie McInnis [provost@utexas.edu]; Dukerich, Janet M [janet.dukerich@austin.utexas.edu]; Tewfik, Ahmed H [tewfik@austin.utexas.edu]; Evans, Brian L [bevans@ece.utexas.edu] |
| **Subject:** | Nikolova - Final Arguments letter |
| **Attachments:** | Nikolova-Final-Arguments.pdf; Dossier_02-20-2019_Engineering_Nikolova, Evdokia_REDACTED-selection.pdf; Nikolova-Appendices-abridged.pdf |

Dear President Fenves:

Attached please find my Final Arguments letter.  For ease of reference, I also attach appendices with explanatory information, and a relevant selection of my tenure dossier.

I respectfully request reconsideration of my case on the basis of important new and corrected information from my tenure dossier, included in this Final Arguments letter.

Sincerely,
Evdokia Nikolova

PS: The UT Austin Handbook of Operating Procedures (HOP) 2-2160 specifically provides that a request for reconsideration of a tenure decision may be made to the president and the president has the authority to make decisions and modifications in such cases.  The General Guidelines For Promotion And Tenure for the 2018-19 Academic Year ("General Guidelines") refer to Final Arguments for terminal tenure decisions, but do not address decisions before a faculty member's terminal year and in no way restrict Final Arguments to only terminal decisions. There are no other rules, guidelines etc. prohibiting a request for reconsideration or Final Arguments in a non-terminal situation and the president clearly has authority to make decisions (including reconsideration) of all tenure decisions.  Thus, I respectfully request reconsideration of my case on the basis of important new and corrected information from my tenure dossier, included in this Final Arguments letter.

CONFIDENTIAL

Message

| | |
|---|---|
| **From:** | Evdokia Nikolova [nikolova2009@gmail.com] |
| **Sent:** | 3/26/2019 4:51:20 AM |
| **To:** | EVPP Academic Personnel Services [evpp-aps@utexas.edu]; evpp.aps@utlists.utexas.edu; Shockley, Carmen L [cshockley@austin.utexas.edu]; Evans, Brian L [bevans@ece.utexas.edu] |
| **CC:** | Tewfik, Ahmed H [tewfik@austin.utexas.edu] |
| **Subject:** | Nikolova - Request for CCAFR Review |
| **Attachments:** | Nikolova-CCAFR-letter.pdf; Nikolova-Final-Arguments.pdf; Dossier_02-20-2019_Engineering_Nikolova, Evdokia_REDACTED-selection.pdf; Nikolova-Appendices-abridged.pdf |

Dear Carmen and members of the CCAFR committee:

Attached please find my request for CCAFR review of my tenure case.
I plan to send additional supporting information in the next few days.

Sincerely,
Evdokia Nikolova

CONFIDENTIAL

UT Austin_0008358

Message

| | |
|---|---|
| **From:** | Sanghavi, Sujay [sanghavi@mail.utexas.edu] |
| **Sent:** | 4/24/2019 4:49:27 PM |
| **To:** | Erengil, Jac [jac.erengil@utexas.edu]; Tewfik, Ahmed H [tewfik@austin.utexas.edu]; Nikolova, Evdokia [nikolova@austin.utexas.edu]; Evans, Brian L [bevans@ece.utexas.edu] |
| **Subject:** | Re: Peer Evaluations Overdue |

Hi Jac, Ahmed, Brian,

I am to write a peer evaluation for Eddie (cc-ed). However, she is teaching an advanced grad class. It being at this stage of the semester, the class now has students giving project presentations and answering questions.

So I feel it may be better to do Eddie's evaluation in a future semester, maybe when she is doing the teaching and it is an undergrad class. Thoughts ?

Thanks
Sujay

---

**From:** Erengil, Jac
**Sent:** Wednesday, April 24, 2019 10:40 AM
**To:** Baccelli, Francois; Dimakis, Georgios-Alex; Shakkottai, Sanjay; Ghosh, Joydeep; Julien, Christine L; Evans, Brian L; John, Lizy K; Neikirk, Dean P; deveciana@utexas.edu; Chen, Ray T; ari54; Pan, David; Nur Touba; Vishwanath, Sriram; Yerraballi, Ramesh; Sanghavi, Sujay; Michael Orshansky; Abraham, Jacob A; Caramanis, Constantine; Khurshid, Sarfraz; Akinwande, Deji; Valvano, Jonathan W; eswartzla; rheath@utexas.edu; Register, Leonard Franklin; Ranjit Gharpurey; nansun@mail.utexas.edu
**Cc:** Tewfik, Ahmed H
**Subject:** Peer Evaluations Overdue

Faculty,

If you are receiving this email, your peer evaluation due 4/15/19 has not been submitted.
For your reference, below is the link to the 'live' status document on sharepoint (updated by Brian Evans as submissions are received).
Please submit your evaluations to Brian Evans (cc Ahmed Tewfik and Jac Erengil) *as soon as possible*.

Thank you.

https://sharepoint.engr.utexas.edu/ece/faculty/Document%20Repository/Faculty%20Peer%20Reviews/Forms%20and%20Assignments/Schedule%20of%20Peer%20Evaluations%202018-2019.xlsx

---

Best Regards and Hook 'em,

CONFIDENTIAL                                                                     UT Austin_0026709



**Jac Erengil** | Executive Assistant
Jac.erengil@utexas.edu | 512-471-4540
**Department of Electrical and Computer Engineering**
2501 Speedway | EER 2.872 (C0803) | Austin Tx 78712
**The University of Texas at Austin:** What Starts Here Changes the World

CONFIDENTIAL

UT Austin_0026710

Message

| | |
|---|---|
| **From:** | Christine Julien [c.julien@utexas.edu] |
| on behalf of | Christine Julien <c.julien@utexas.edu> [c.julien@utexas.edu] |
| **Sent:** | 4/26/2019 1:36:15 PM |
| **To:** | Evdokia Nikolova [nikolova2009@gmail.com] |
| **Subject:** | Re: peer teaching evaluation |

Eddie--

I put next Tuesday from 2-3:30 on my calendar. Where is class?

It looks like I'm completely swamped Monday during the day. I could do a call Monday at 3:30, but I need to leave by 4:30. Alternatively, I'm available Tuesday morning before 9:30 (I usually get in around 8).

Thanks,
Christine



On Fri, Apr 26, 2019 at 7:15 AM Evdokia Nikolova <nikolova2009@gmail.com> wrote:
Hi Christine,
Any of the next three classes work. I am currently traveling but will call you to discuss the details. Monday early evening on the phone?
Thanks,
Eddie

On Thursday, April 25, 2019, Christine Julien <c.julien@utexas.edu> wrote:
Eddie--

Since we only have four class periods left, I'll leave it up to you as to which you prefer for me to attend. Does one or another make more sense? I am available on any of the four days.

I see that your course is scheduled on TTh from 2-3:30, but I don't see a location. Would you mind sharing it with me? I myself teach from 12:30-2 in Calhoun hall, so I might be ducking into your class at the last minute or even a little late.

Finally, when I do these observations, I like to use the form and process that Brian has shared with us. This includes meeting ahead of time to discuss what is likely to happen in class, etc. I've attached the form (which has the process on the first page). Given the limited time until the end of the semester, a pre-meeting might be more difficult, but if you let me know your availability, we could try to fit it in.

Thanks!
Christine


---------- Forwarded message ---------
From: **Tewfik, Ahmed H** <tewfik@austin.utexas.edu>
Date: Thu, Apr 25, 2019 at 11:53 AM
Subject: peer teaching evaluation
To: Evdokia Nikolova <eddie.nikolova@gmail.com>, Nikolova, Evdokia <nikolova@austin.utexas.edu>,

CONFIDENTIAL

Julien, Christine L <c.julien@mail.utexas.edu>
Cc: Evans, Brian L <bevans@ece.utexas.edu>


Dear Evdokia


I've asked Christine to do your teaching evaluation instead of the colleague who was initially assigned to do it.
Can you please coordinate with Christine and make sure that she can visit one of your classes this coming
week? Thank you very much for your assistance.


regards

Ahmed


_____

Ahmed Tewfik
Cockrell Family Regents Chair in Engineering
Chairman, Department of Electrical and Computer Engineering
The University of Texas at Austin

2501 Speedway Ave.

EER 2.876

Austin, TX 78712

USA


Direct: (512) 471-6179

tewfik@austin.utexas.edu


--
Evdokia Nikolova
http://users.ece.utexas.edu/~nikolova/

CONFIDENTIAL                                                        UT Austin_0006175



**Committee of Counsel on Academic Freedom and Responsibility · Office of the General Faculty**
# THE UNIVERSITY OF TEXAS AT AUSTIN

West Mall Building 2.102
306 Inner Campus Drive, MS F9500 • *Austin, TX 78712-1135* • *(512) 471-5934* • *Fax (512) 471-5984*

April 28, 2019

To:      President Gregory L. Fenves, University of Texas at Austin
From:   CCAFR Subcommittee to investigate the complaint of Assistant Professor Evdokia  Nikolova,
         Department of Electrical and Computer Engineering, Cockrell School of Engineering
Subject: Claim of procedural violations in the consideration of Professor Nikolova for tenure and promotion

## I. Initiation of Inquiry

On March 29, 2019, Professor Brian L. Evans, in his capacity as Chair of the Committee of Counsel on Academic
Freedom and Responsibility (hereinafter "CCAFR") appointed the three undersigned members of CCAFR as a sub-
committee (hereinafter "we") to investigate the complaint of Dr. Evdokia Nikolova, Assistant Professor (hereinafter
"Candidate") in the Department of Electrical and Computer Engineering (hereinafter "ECE") in the Cockrell School
of Engineering (hereinafter "CSE") that the decision in her consideration for tenure and promotion to the rank of
Associate Professor was flawed by procedural errors.

## II. Our Procedure of Inquiry

The Candidate learned on February 16, 2019 that the outcome of her tenure and promotion case was "Do Not
Promote." CCAFR's initial contact concerning the outcome of the Candidate's tenure and promotion case came
earlier, on November 27, 2018, when the Candidate first contacted Professor Evans upon learning of the negative
recommendation from the Dean of the CSE. Professor Evans communicated with the Candidate multiple times
through email prior to the submission of her appeal. The Candidate sent her Appeal for CCAFR review to the
CCAFR Chair on March 25, 2019.

The Provost Office gave CCAFR access to the Candidate's promotion dossier on March 29, 2019. On that same
date, the CCAFR Chair sent the Candidate's formal request for procedural review to the CCAFR subcommittee. We
met with Professor Nikolova on April 8, 2019 for about 90 minutes (see Appendix I). We then met with the Chair of
the Department of Electrical and Computer Engineering, Dr. Ahmed H. Tewfik, through Zoom on April 10, 2019,
for approximately 60 minutes (see Appendix II). (Dr. Tewfik was at an international conference.) Following this, we
met for 60 minutes on April 17, 2019, with Dr. Sharon L. Wood, Dean of the Cockrell School of Engineering (see
Appendix III). The Chair and Dean were both forthcoming and answered all of our questions fully. The
Subcommittee discussed the case with the entire Committee of Counsel on Academic Freedom and Responsibility
on April 24, 2019, and herein present our findings and recommendations.

## III. Basis of the Case

Professor Nikolova was appointed as an Assistant Professor at the University of Texas at Austin (hereinafter UT
Austin) on January 1, 2014. She has served 5.5 total years at UT Austin, having previously served for 2.5 years at
Texas A&M University (hereinafter TAMU). The Candidate received a Probationary Extension for pregnancy and
childbirth in 2015-16. The number of years counted toward probationary status is thus 4 years, making this an
"Accelerated" case.

The Candidate received a decision in February 2019 by President Fenves of "Do Not Promote," subject to the
outcome of any appeals. The outcome of "Do Not Promote" is not termination; the Candidate can apply again during
her "up-or-out" year. Since she is not in her terminal year, she is not eligible for Budget Council Reconsideration.
Since the outcome was not "Terminal Appointment Pending," the Candidate does not have the option of filing Final
Arguments to the President. Her remaining appeal options are to file a CCAFR appeal and/or a faculty grievance.



Exhibit
Ahmed Tewfik
26
03/20/2021 DC

Appx.0169
UT Austin_00696

As per institutional practice, the reasons for the decision of "Do Not Promote" were not given in writing, but instead passed orally from the President's Promotion Committee to the Dean, then from the Dean to the Department Chair, and finally from the Department Chair to the Candidate.

The core concern expressed by the Candidate is that the CSE Dean and the President's Promotion Committee applied a higher standard because her case was Accelerated, which neither she nor her department expected. The Candidate maintains that she was highly qualified for promotion, pointing to external letters, the ECE Chair's letter, the near unanimous departmental vote, and the unanimous college vote.

The Candidate raises the following procedural concerns:

1. **Ramifications of Prior Service at a Peer Institution and Application of a Higher Standard.** The Candidate believes that a different, higher standard was inappropriately applied by the CSE Dean and the President's Promotion Committee because her case was considered to be Accelerated. She states that, when she was recruited, she was "unequivocally" assured by her department chair that her time in rank at her previous institution would count towards eligibility for tenure, and that she would only be "technically early." She states that this remained her understanding throughout her tenure at UT Austin. As evidence of a different, higher standard being applied in her case, the Candidate notes that the CSE Dean's letter states: "if this were an up-or-out case, I would likely agree with the recommendation of the Promotion and Tenure Committee." She also notes the cases of several colleagues—Dr. Zoya Heidari, Dr. Sujay Sanghavi, Dr. Alex Dimakis, Dr. Mohit Tiwari—whom she believes were held to lower standards than she was, even in a case of early promotion.

2. **Inadequate Notice of Ability to Rescind Probationary Extension** (#3 on the Candidate's CCAFR Appeal; there is no #2). The Candidate believes that the extension for her pregnancy and childbirth was inappropriately and punitively counted against her, because it resulted in her being considered an early case, leading to a higher standard being applied. She reports that she was encouraged by the ECE Chair to take the extension and was not notified of the possibility of rescinding it until it was past the Provost's deadline. If the extension had been rescinded, she believes she would have been promoted, because she would have had 5 years in probationary status (with an additional .5 years in rank at UT Austin).

3. **University Policies Do Not Provide a Higher Standard for Early Promotion.** The Candidate notes that none of UT Austin's written policies provide or support a higher standard being applied if the application is considered early or accelerated. HOP 2-2160 sets forward the standards for promotion and does not include any provision for different standards. The rule specifically provides that a faculty member may go up for tenure during any year of their probationary period before their "up-or-out" year, without any indication that a different or higher standard may be applied. Section A(3)(b) of the General Guidelines state that "Cases considered before the sixth year in rank are accelerated and must be explained." The Candidate notes that her application for tenure before the sixth year in rank was thoroughly explained.

4. **External Letter of Support Not Placed in Tenure File.** The Candidate expresses concern that an external letter that she solicited was missing from her tenure file.

5. **Misinterpretation by Dean of Information in Dossier Regarding Research.** The Candidate expresses concern that the CSE Dean misinterpreted her research record. In her letter, the Dean expressed concern about the sustainability of the Candidate's research, pointing to a lack of funding obtained while at UT. The Candidate rebuts that this is incorrect; she was awarded an NSF grant of approximately $480,000 while at UT Austin (in 2017); she has not yet started using it because it runs through 2021 and she has been relying on other, prior funding. She received an NSF CAREER Award of $448,123 in 2014, which has been paid out in 5 installments over each of 5 academic years, while she has been at UT Austin. She has also received UT Austin WNCG affiliate funding in each of the past 5 academic years, totaling $45,000 (she inadvertently neglected to include this in her promotion materials). From the total $1.8 million of her share of grants, she has spent $1.2 million over the past 7.5 years. As of March 2018, she expects to have approximately 3 years of funding remaining. The Candidate reports a 100% success rate with NSF and

Google grant proposals as a lead PI, indicating that she will be able to obtain additional grants to sustain her research group.

6. **Misinterpretation by Dean of Information in Dossier Regarding Teaching.**

   a. **Misinterpretation of Trend in Quantitative Scores.** In her letter, the CSE Dean refers to a downward trend in evaluation scores. The Candidate notes that her undergraduate Instructor scores for Fall 2014, Fall 2016, and two Fall 2017 sections were 3.95, 3.92, 3.72, and 3.93, respectively. She states that this shows an overall stability in her teaching, not a downward trend. She notes that her evaluation scores for EE360C Algorithms, in which she received the 3.72 score, are above the median of 3.69 for the course.

   b. **Pregnancy Bias Affected Student Evaluations.** The Candidate was pregnant in Fall 2017 when she received her lowest teaching score of 3.72. She believes she was subject to pregnancy bias, and points to evidence showing that female faculty tend to receive lower scores while pregnant (J. Lawrence, *Academe,* May-June 2018). She also points to research showing gender bias in teaching evaluations against junior women teaching mathematical courses (Mengel *et. al.* , *J of the European Economic Assoc,* 10 Feb 2018).

   c. **Misinterpretation of Teaching Statement.** The Candidate claims that the CSE Dean's assessment regarding her use of teaching assistants to create and grade homework does not reflect her teaching record or the whole of her teaching statement. In response to the Dean's statement that she was inattentive to student responses to her teaching, the Candidate points out that she has continued to look for ways to address teaching challenges, as noted in her teaching statement and departmental assessment. She also provides additional information on her supervision of teaching assistants, and refers to seeking advice from her award-winning colleague Professor Christine Julien on her use of teaching assistants.

   d. **Omission of Information from the Dean's Assessment.** The Candidate states that the Dean's assessment of her teaching is selective, neglecting positive aspects of student and faculty evaluations of her teaching. She points to strong assessments of her teaching by students, peers, faculty on the departmental Budget Committee, and the ECE Chair.

7. **Omission of Teaching Scores from Previous Institution in the Dossier.** The Candidate expresses concern that her teaching evaluations from TAMU were not included in her dossier. This surprised her because she had been told by the department Chair that they would be requested from TAMU.

8. **Misinterpretation by Dean of Information in Dossier Regarding Service.** The Dean's assessment states that the ECE Budget Council expressed concern about "relatively weak engagement in the department." The Candidate states that the Budget Council makes no such statement, and points instead to the statement that her service is "significantly above the level of an assistant professor." The Dean's comment is apparently based on the Chair's letter of support, referring to comments by certain faculty members about "below average" engagement in the department. The Candidate explains these perceptions as related to her pregnancy and childbirth as well as a semester in residence at the Simons Institute at the University of California, Berkeley. She quotes the Chair as saying that "this is not a concern as it's mainly due to her personal circumstances at the stage of her life."

9. **Denial of Tenure Raises Concerns Related to Gender and Pregnancy.** The Candidate states that the denial of tenure raises questions about whether women, and particularly women who become pregnant and give birth, are treated consistently with the goals of gender equality, diversity, and inclusion. Of the 53 tenured faculty members within ECE, 49 (92.5%) are men, and only 4 are women. This is below the national average. During her tenure in the department, 7 male assistant professors have gone up for tenure and promotion, and all were approved. Three female assistant professors, including herself, have gone up during the same five-year period, and all have been denied. The Candidate states that she has the longest

time in rank as Assistant Professor (including time at TAMU) of any faculty member considered for tenure or promotion within the department.

The Candidate makes the following requests for relief. Regarding her own case, she (a) requests that the decision not to promote be reversed. She maintains that she should not be held to a higher standard than her colleagues, as this results in inequality of treatment and advancement. She states that reconsideration next year or in two years is not an appropriate remedy. Regarding general processes, the Candidate makes the following requests: (b) She requests a change in procedures such that a candidate with a "Do Not Promote" decision be allowed to submit final arguments to the President. (c) The Candidate requests that the Cockrell School create an Engineering faculty handbook similar to that for the College of Natural Sciences. (d) The Candidate requests that written notice be sent to current and potential faculty regarding how the tenure clock is applied and what standards will hold for faculty with previous experience at other institutions. (e) The Candidate requests that written notice be sent to affected faculty regarding extensions for childbirth informing them that early promotion cases are held to a higher standard and that rescinding the extension must be done by a date prior to the submission of the tenure packet; she further requests that the deadline be pushed forward so that faculty can more readily rescind the extension.

## IV. Facts and Findings

In the deliberations about her promotion case, the Candidate received a near unanimous vote in favor of promotion from her Department (32-1-2) and a unanimous vote from the CSE Tenure and Promotion Committee (7-0-0). The Department Chair supported the Candidate's promotion case, as evidenced by the promotion dossier cover sheet and by his letter in the promotion dossier. The Dean's decision, in contrast, was "Do Not Promote". The President's decision, after consultation with the other members of the President's Promotion Committee (Provost Maurie McInnis, Dean of Undergraduate Studies Brent Iverson, Dean of Graduate Studies Mark Smith, and Vice President of Research Daniel Jaffe) was "Do Not Promote." A letter to the candidate from Dean Wood, dated February 15, 2019 and included in the Appeal, gives two reasons for this decision: "the sustainability of your research funding" and "your commitment to the teaching mission of the Cockrell School." A subsequent email from the ECE Chair, included in the Appeal, states that the Dean advises "waiting for at least one more year to take care of the research sustainability issue and improve teaching scores," and to "establish collaborations" with other UT researchers.

Below, we give our findings for each numbered claim in Section III, based on our review of the documentary evidence; interviews with the Candidate, the ECE Chair, and the CSE Dean; and consultation with the Committee of Counsel on Academic Freedom and Responsibility.

1.  **Ramifications of Prior Service at a Peer Institution and Application of a Higher Standard.** The Subcommittee is troubled by Dean Wood's statement that "if this were an up or out case, I would likely agree with the recommendation of the Promotion and Tenure Committee." This implies that the Dean is indeed applying higher standards in this case. In our view, different standards are not justified in this case, if ever, since this is not an early case—all of Dr. Nikolova's 7 years in rank as Assistant Professor are taken into account (including her 2.5 years at TAMU and excluding 1 year for which she was granted a Probationary Extension; without the extension she would have 8 years in rank). When asked, Dean Wood confirmed that the engineering program at TAMU should be recognized as a peer program. Additionally, Dr. Nikolova was led to believe that, upon taking a position at UT Austin, the years in rank at TAMU would count towards promotion. The ECE Chair confirmed that this was the department's assumption as well, and that her case was only "technically early" (that is, on time if prior time in rank is considered).

    The Subcommittee notes that the 2018-19 General Guidelines for Promotion and Tenure of All Faculty Ranks Excluding the Medical School (hereinafter "Promotion Guidelines") do not specify a minimum probationary period but do define a maximum probationary period. Section A.3.b of the Promotion Guidelines indicate that the "up-or-out" year is the sixth year of the tenure probationary period. Also, according to Section A.3.b, "Cases considered before the sixth year in rank are accelerated and must be explained in the department chair's and dean's statements." The Department Chair's letter clearly explains why the Candidate's case was being accelerated: "If promoted to associate professor in September of 2019, she will have served as an assistant professor at the University of Texas at Austin for five years. This is therefore technically an early promotion case—particularly because she has received an extension of her

Appx.0172

UT Austin_00699

probationary period. However, she began her academic career at Texas A&M University as an assistant professor in August 2011. Her case would not be early if these two years of service are considered. I also note that when we recruited her, Evdokia requested to be considered for promotion at UT around the time that she would have been eligible for promotion at Texas A&M University."

2. **Inadequate Notice of Ability to Rescind Probationary Extension.** The Subcommittee disagrees with the Candidate's statement that she was not notified of the possibility of rescinding the extension. We requested and received from the Provost's office a copy of the letter approving the extension dated November 11, 2015, which was signed by the candidate on August 8, 2016. That said, we are concerned that the Candidate was not advised that the deadline could be extended, as we learned could be done. Furthermore, the Candidate had no reason to assume that rescinding the extension was important, because she did not know that her case would be considered early and subject to higher standards due to the extension. To avoid such confusion, we recommend that the implications of an extension be explained in writing to all candidates and to administrators at all levels, and included in The Handbook of Operating Procedures (HOP) 2-2020 Extension of the Tenure Track Probationary Period, which concerns extensions to the tenure probationary period due to personal circumstances.

3. **University Policies Do Not Provide a Higher Standard for Early Promotion.** The Candidate is correct that UT Austin's written policies do not support a higher standard being applied for early promotion. Neither do AAUP guidelines. According to Gregory Scholtz, the Director of the Department of Academic Freedom, Tenure, and Governance at AAUP, "The Faculty has 'primary responsibility' for matters of faculty status, which would include setting standards for promotion, including early promotion" (see Appendix V). The Faculty has not considered or approved higher standards for accelerated or early promotion. Therefore, the President and/or the President's Committee has unilaterally changed tenure and promotion standards without faculty discussion. This is a matter of serious concern.

4. **External Letter of Support Not Placed in Tenure File.** According to the ECE Chair, one external letter was received after the dossier left the college, and therefore was not considered in department or college assessments of the case. We raised this issue with the CSE Dean, and she said that the letter was solicited by the Candidate and arrived after the file had been considered and sent forward by the College. It should have been added to the file by the Provost's Office. She also noted that it is not an "arm's length" letter, so its absence is not likely to have adversely affected the case.

5. **Misinterpretation by Dean of Information in Dossier Regarding Research.** We are puzzled by the Dean's concerns about the sustainability of the Candidate's research program. The positive votes of the departmental Budget Council, the Chair, and the School's Advisory Committee reflect satisfaction with the Candidate's research record. Furthermore, the information presented by the candidate speaks to ongoing external support for her research. The Candidate stated, and we agree, that the continuation of the NSF Career Grant while she was at UT Austin should be considered as support for her research group. She has also received additional grants while at UT Austin, including an NSF grant for approximately $480,000. In speaking with the Candidate we learned that she didn't feel it was necessary to immediately apply for additional grants because she had not spent all the funding in hand. If the Cockrell School has expectations to the contrary, they appear not to have been communicated to the Candidate.

6. **Misinterpretation by Dean of Information in Dossier Regarding Teaching.** The Subcommittee is puzzled by disparate assessments of the Candidate's teaching. While the Dean was critical of the Candidate's teaching in her assessment and told the committee that her recommendation of "Do Not Promote" was largely motivated by a desire to see the Candidate improve her teaching, highly respected members of the department's Budget Council state that the Candidate's "teaching record clearly exceeds the expectations for teaching by an Assistant Professor in the Department."

   a. **Misinterpretation of Trend in Quantitative Scores**. While at UT the Candidate has taught 3 courses: EE 360C Algorithms (undergraduate0, EE 381 V Game Theory (graduate), and EE 381 V Advanced Algorithms (graduate). The downward trend in undergraduate Instructor scores that the Dean notes is not clear to the Subcommittee, given that out of four sections, there is one outlier (3.72) in the Instructor rating, while the other three Instructor ratings are quite consistent (between

3.92 and 3.95). (Course ratings range between 3.3 and 3.7.) The Dean does not address the Candidate's graduate scores of 4.1 (instructor) and 4.1 (course) for Game Theory, or the ratings of 4.1 and 3.8, respectively, for Advanced Algorithms. These ratings are also fairly consistent.

b.   **Pregnancy Bias Affected Student Evaluations.** The Subcommittee has no finding on this claim. During Fall 2017, the semester in which the Candidate was pregnant, she taught two sections of the same course. One section was rated 3.93, consistent with her other scores, and the other section was rated 3.72. It is not possible for the Subcommittee to determine whether the lower score is attributable to pregnancy bias among students in that section. We consider this point moot since, as noted above, the 3.72 score is an outlier and should not be taken as establishing a trend.

c.   **Misinterpretation of Teaching Statement.** The Subcommittee disagrees with the Candidate on this point. There appears to be evidence for the Dean's concern about the Candidate's use of teaching assistants to create assignments in the Candidate's "Comments about Student Evaluations" in her teaching statement, where she points to TA responsibilities such as "creating and grading homework and programming assignments."

d.   **Omission of Information from the Dean's Assessment.** The Subcommittee agrees that the Dean's assessment does not point out the positive aspects of the Candidate's teaching as reflected in student and peer evaluations. The Assessment on Teaching Performance of the Candidate states that she "takes her teaching obligation seriously and has strived to improve her teaching effectiveness while addressing the needs of the department and its students." This would seem to contradict the Dean's judgment that the Candidate does not take responsibility for improving her teaching. The Assessment also states that the Candidate "values teaching at all levels," and "has a history of meaningfully weaving research exposure and experience into the classroom even in undergraduate courses." Regarding teaching innovations, the Assessment notes that the Candidate has taught two new undergraduate courses; filled a gap in formal algorithm instruction; put her own stamp on a high-demand undergraduate course while collaborating with her colleagues to improve the course; and introduced lunches with the professors (in a team-taught course) in order to give undergraduates access to informal mentoring. The Candidate provides a summary of negative vs. positive student comments on Course-Instructor surveys, and 53 out of 78 written comments are positive.

7.   **Omission of Teaching Scores from Previous Institution in the Dossier.** The omission of teaching evaluations from TAMU is unfortunate. The Subcommittee discussed this omission with the Chair, who pointed out that the Candidate had the opportunity to review the file before it was submitted. The Subcommittee believes that it is primarily the responsibility of the department, not the Candidate, to ensure that the dossier is complete.

8.   **Misinterpretation by Dean of Information in Dossier Regarding Service.** We agree with the Candidate on this point. We could find no evidence that the Budget Council made a statement regarding "relatively weak" engagement in the department. We do, however, see in the Chair's discussion of this issue his assessment that this is not a concern because of the Candidate's personal circumstances. We would note that a faculty member with a Probationary Extension due to pregnancy and childbirth could be expected to be less engaged in the department during that time period.

9.   **Denial of Tenure Raises Concerns Related to Gender and Pregnancy.** The Subcommittee is concerned about the statistics regarding gender equity, diversity, and inclusion presented by the Candidate. We feel that any department or School with such a track record should also be concerned. We strongly recommend that the ECE department work with Vice Provost Gordon to conduct a substantial review of gender equity, diversity, and inclusion in the department. That could include a review of the comparative materials compiled by the Candidate, which were not possible for the Subcommittee to consider thoroughly in the time available for our review.

Appx.0174

UT Austin_00701

**V. Summary**

The Subcommittee concludes that the decision not to promote the Candidate to the rank of Associate Professor with tenure was flawed by procedural errors, particularly with respect to claims #1, #3, #7, and #8.

Concerning Claim #1 regarding Ramifications of Prior Service at a Peer Institution and Application of a Higher Standard, the Subcommittee finds a procedural violation. The Candidate's service at TAMU was ignored in calculating her years in rank, and she was held to a higher standard than if she had been in an up-or-out year. This calculus is contrary to what she was told when she was hired, and what the department expected in considering her case. Concerning Claim #2 regarding Inadequate Notice of Ability to Rescind Probationary Extension, we do not find a procedural violation, but we are concerned that the Candidate was not notified in a timely matter that not rescinding her probationary extension would adversely affect her case; nor was she told that she could file a request to rescind the extension after the deadline.

Concerning Claim #3, University Policies Do Not Provide a Higher Standard for Early Promotion, we find a procedural violation because the written policy does not provide for a higher standard for early promotion. Concerning Claim #4, External Letter of Support Not Placed in Tenure File, we find a minor procedural error, i.e., one not likely to have adversely affected the case. Concerning Claim #5 on Misinterpretation by Dean of Information in Dossier Regarding Research, we do not find a procedural violation, but we do find inconsistent standards applied at the departmental and School level. Concerning Claim #6, Misinterpretation by Dean of Information in Dossier Regarding Teaching, the Subcommittee does not find a procedural violation, but does find disparate standards applied at the departmental and School levels, selective use of information, and an inappropriate use of one course to establish a trend.

Concerning Claim #7, Omission of Teaching Scores from Previous Institution in the Dossier, the Subcommittee finds a procedural error, one that may have negatively impacted the evaluation of the Candidate's teaching record. Concerning Claim #8, Misinterpretation by Dean of Information in Dossier Regarding Service, we find a procedural error in the Budget Council's assessment being incorrectly quoted. Concerning Claim #9, Denial of Tenure Raises Concerns Related to Gender and Pregnancy, the committee does not find a procedural violation, but believes a review of the climate with respect to gender and inclusion in the ECE Department is warranted.

**VI. Recommendations**

The Candidate makes several requests. With regard to her own case, Dr. Nikolova requests that the decision not to promote be reversed. She says that consideration next year or in two years is an inappropriate remedy. She believes that she should not be held to a higher standard than her colleagues, and that such an action constitutes inequality in treatment and advancement. She points to the Dean's assessment this year as recognizing that she meets the normal standards for promotion, and she asks to be promoted accordingly. With respect to general processes, Dr. Nikolova requests (a) a change in procedures such that a candidate with a "Do Not Promote" decision be allowed to submit final arguments to the President; (b) the creation of an Engineering faculty handbook similar to that for the College of Natural Sciences; (c) that current and potential faculty be informed of how the tenure clock is applied and what standards will hold for faculty with experience at previous institutions; (d) that faculty considering extensions for pregnancy and childbirth be given notice that early promotion cases are held to a higher standard and that rescinding the extension must be done by a date prior to the submission of the tenure packet; she further requests that the deadline for rescinding the extension be pushed forward.

The Subcommittee wishes to express its serious concern over the ramifications of the decision in this case for both the Candidate and the University. The Candidate and the Department proceeded with the usual practice and understanding that service at TAMU would be counted in the promotion and tenure process, only to find out differently very late in the process. This practice had negative impact on the Candidate's career, and could have

Appx.0175

UT Austin_00702

negative impact on the department's ability to address its serious gender imbalance. More broadly, we are concerned about the University's ability to recruit the best, most experienced assistant professors, given that the University is refusing to recognize prior service at peer institutions by considering cases such as this one "early" and then applying a higher standard. We are also concerned over the general implications for diversity and inclusion of such practices, especially given that candidates who diversify their fields are in high demand. For these reasons, we recommend that serious consideration be given to the reversal of this decision.

Regarding the Candidate's more general requests we recommend the following:

    (a) Regarding the request that a candidate receiving a "Do Not Promote" decision should be able to submit final arguments to the President: This is a request that should be concerned through the faculty governance process. Furthermore, the Subcommittee is concerned that candidates receiving a "Do Not Promote" decision are not directly told the basis for the committee's decision. A Candidate who will be considered again in an up-or-out year deserves to know what concerns the President's Committee has. At present the candidate learns about the discussions in the President's Committee only through a  oral communication chain that goes from the Committee to the Dean to the Chair to the Candidate. Ambiguity, misinformation, and gaps in information are likely consequences of such a chain of communication.

    (b) Given the numerous communication difficulties apparent in this case, an annually updated Engineering faculty handbook would seem to be useful. Dean Wood told us that she informs the Chairs every year of changes in Promotion and Tenure procedures; for the sake of transparency it would be good for faculty as a whole to have direct access to that information in writing.

    (c) The University's policy regarding experience at previous institutions needs to be addressed, and in writing. For the sake of the University's ability to attract and retain excellent faculty, we recommend that the University's policy in this regard should more closely adhere to and follow the standards of AAUP, which mandate that up to four years of prior service at a peer institution be counted.

    (d) It is important that the University clarify the ramifications of requesting an extension and rescinding an extension, lest a policy intended to help faculty experiencing pregnancy, childbirth, and other personal issues cause harm instead. These ramifications should be spelled out at the same time as policies are clarified regarding service at previous institutions and the standards applied to early and "technically early" cases.

As was discussed in a previous CCAFR report (re: Professor Blake R. Atwood, 2018), changes in policies regarding "early" and "technically early" promotions must be better communicated and more consistently applied so that individual faculty are not caught between differing interpretations and expectations. This is especially important for faculty who have experience at a prior institution and faculty who request an extension for personal reasons. Neither of these common faculty experiences should cause faculty to be held to higher standards than their peers, as happens when they are told that they have met the criteria for promotion but must wait because they are "early."

Respectfully submitted,


Professor Martha Hilley (Subcommittee Chair)
Department of Music, College of Fine Arts

*Deborah Parra-Medina*

Professor Deborah Parra-Medina
Department of Mexican American and Latino/a Studies, College of Liberal Arts


*Pauline T. Strong*

Professor Pauline Turner Strong
Department of Anthropology, College of Liberal Arts

Appx.0176
UT Austin_00703

Cc:
Assistant Professor Evdokia Nikolova
ECE Chair Ahmed Tewfik
CSE Dean Sharon Wood
Provost Maurie McInnis
Senior Vice Provost Janet Dukerich
Assistant Vice President for Faculty Affairs Carmen Shockley
Ombudsperson Dr. Mary Steinhardt
Faculty Council Executive Assistant Debbie Roberts
CCAFR Chair Brian L. Evans

Appx.0177
UT Austin_00704

APPENDIX I

Notes on CCAFR Interview with Assistant Professor Evdokia Nikolova on April 8, 2019

Present at the interview:

Evdokia Nikolova, Assistant Professor, Department of Electrical and Computer Engineering, Cockrell School of
    Engineering
Martha Hilley (Subcommittee Chair), Professor of Group Piano and Pedagogy, Butler School of Music, College of
    Fine Arts
Deborah Parra-Medina, Professor of Mexican American and Latina/o Studies, College of Liberal Arts
Pauline Turner Strong, Professor of Anthropology, College of Liberal Arts

[This interview was taped using a faulty program, and these notes are based on a garbled transcript. The interview
    did not add information to the extensive written file, but it did convey to the Subcommittee the Candidate's
    strong sense of being subject to unfair and inconsistent standards.]


MH: What are the high points of the case for the committee to consider?
    --EN: I feel like I fell victim to an unstated policy.

MH:  You draw comparisons between yourself and another faculty member in your department with a similar
    experience with transferring time on the tenure clock.
    --EN: That professor went up last year, but wasn't in my department. There were multiple cases—I gave cases
    from the last 5 years in my situation.

 DPM: Your main concern is that the crieteria are not outlined anywhere in writing?
    --EN: I have searched the guidelines. I was surprised to find that there aren't any guidelines specific to
    engineering. My main issue is that I've been given mixed messages [about transferring time from her previous
    institution]. And there is the additional issue of .5 years not counting, so that I'm an additional year early. The
    policies really need to be clarified.

DPM: Do you happen to have the summary sheet in the file that has the votes, and it lists 5.5 years in rank since
    2014? The whole issue for you is how they count in rank, correct?
    --EN: Yes. It's confusing that they list 5.5 years in rank on this sheet but only count 4 because of the
    Probationary Extension and then they round down the .5 semester.

MH: You don't have the first year counted in your clock because you didn't start until January, correct?
    --EN: This was not my choice. They said they wanted to be professional and nice [to Texas A&M] when they
    hired me. They didn't tell me how starting in January would impact my tenure clock. They said that I could go
    up for tenure when I'm ready, and that the expectation is that I would produce what should be produced during
    my time at UT.

PTS: Regarding funding you make the case that you still have money coming in from grants.
    --EN: Yes, that's true, and I've received funding while at UT as well.

MH: Regarding teaching, you say that you think the Dean found a couple of low scores that she considered as
    showing a downward trend.
    --EN: Yes, the factual information to support this trend is not there. And it should be considered that my
    undergraduate scores are for large classes—a core requirement class that people don't want to take.

PTS: Let me summarize the main points you've made and see if I have them correctly. You think that the Dean is
    applying different standards to you than to other assistant professors in your department—that there are no
    significant differences between you and the other cases that were approved. You think that new standards are in
    place and that you are a victim of that. You had a verbal commitment that your time at Texas A&M would be

Appx.0178
UT Austin_00705

considered, and that is not being honored. And you didn't realize that you would be held to a new standard until you had already filed for promotion. Is this correct?

--EN: Yes. If you are going to reset everyone's clock when they come to UT, that's not right. I also am a woman in a male-dominate field, and am concerned that pregnancy discrimination is involved.

Appx.0179
UT Austin_00706

APPENDIX II

Notes on CCAFR Interview with ECE Chair Ahmed H. Tewfik on April 10, 2019

Present at the interview:

Ahmed H. Tewfik, chair, Department of Electrical and Computer Engineering, Cockrell School of Engineering (by Zoom)
Martha Hilley (Subcommittee Chair), Professor of Group Piano and Pedagogy, Butler School of Music, College of Fine Arts
Deborah Parra-Medina, Professor of Mexican American and Latina/o Studies, College of Liberal Arts
Pauline Turner Strong, Professor of Anthropology, College of Liberal Arts


Regarding early promotion
- In the Chair's view, there are 2 types of early promotion
  - inside, less than 5 years, acknowledged in letter
  - outside, people consider it lower risk hiring, can go up when you would have if you started at UT, letter will acknowledge this ("technically early promotion"). This has been done in past. Beyond department it may be considered early, but not within the department. We will need to speak to the Dean.
Regarding the Dean's decision
- The letter from the Dean was a surprise to everyone. The department expected things to be the same this year as in the past. In October (when the case had left the College), he began getting questions about justifying early promotion. He was left with impression that the "technically" was disregarded.
- The Dean's sentence about "if this were an up or out year" is unfortunate. It suggests that different standards were applied, which was not the case. This sends the wrong message to faculty in general and disturbed the Budget Council because of its implications for recruiting. He thinks it may have been motivated by a desire to ensure that the Presidential committee gives the Candidate another chance, given their current dislike for early cases.
Regarding the process
- When he met with the Dean and Associate Dean in the Spring, the issue came up. They didn't spend much time on case then. Main concern then was number of publications. Since then she had 2 additions to her publication/selective conference record, so concern was addressed.
- He shared with the Candidate the concern raised by the Dean about this being treated as an up or out case at the Presidential level; he said he didn't want to lose her but that it was her decision; she decided to go forward; chairs had heard that the Presidential committee doesn't want people to test the water, so she might be at risk of being terminated
Regarding the extension
- He always advises faculty to take a 1-year extension when eligible, as they can always rescind. In past, the Provost has asked for the Candidate to rescind before the case goes forward. In this case he doesn't recall getting such a request.
Regarding other assistant to associate cases
- Previous candidates were well above the bar. This case was closer to the bar. There were several issues, some referenced by the Dean: (1) Not many courses in the teaching record at UT, thus not enough data points to establish trends. Student comments were inconsistent; at both the graduate and undergraduate level, some found the Candidate's teaching exceptional, others found her inattentive to teaching. (2) There was a slow-down in research and publication, a concern raised previously and in the 3rd year review (completed in the same year as the submission of the dossier). Later work doesn't have the same visibility or importance as earlier work. (3) The use of teaching assistants didn't come up in the department.
- He is not familiar with case of Dr. Heidari beyond what the Candidate shared with him before submitting her response. He had a discussion with her when the case "went south"; she didn't want to meet with dean; he explained how teaching and research had been perceived, and advised her to find a

Appx.0180
UT Austin_00707

case of someone promoted with a similar profile under the current administration; it seems the cases are comparable

Regarding teaching evaluations from Texas A&M

- The department usually includes teaching at previous institutions, but not much weight is applied. There is no reason they weren't included in this case; the candidate had access to the dossier and it was her responsibility to make sure it was complete. She worked with a staff member and there were concerns she wasn't paying enough attention to the dossier. Everyone in the department gets the same instructions and support.

Regarding the missing external letter

- The Candidate was aware of which letters came back. The missing letter was not requested by the department; it was  requested in November when the Dean said she was not supporting the case; the Dean said she could withdraw the case at that point so that she wouldn't risk being terminated; he spoke to the Candidate about this and advised her to get a copy of the Dean's letter, she did, and wrote the response included in the dossier; on her own she asked for an additional letter from TAMU; this was not an official request from the department.

Is there anything else the Subcommittee should know?

- No.

Appx.0181
UT Austin_00708

APPENDIX III

Notes on CCAFR Interview with CSE Dean Sharon L. Wood

Present at the interview:

Sharon L. Wood, Dean, Cockrell School of Engineering
Martha Hilley (Subcommittee Chair), Professor of Group Piano and Pedagogy, Butler School of Music, College of Fine Arts
Deborah Parra-Medina, Professor of Mexican American and Latina/o Studies, College of Liberal Arts
Pauline Turner Strong, Professor of Anthropology, College of Liberal Arts

Regarding service in rank
- The Dean was unaware of AAU guidelines regarding previous institutions
- In Cockrell School, common for assistant professors to spend full time in rank at UT, regardless of previous time
- Administration waffles on how years at previous institution are handled; it is not clear; they re-set clock for everyone; you can use entire time, but don't have to; prestige of prior school matters
- Texas A&M is good in Engineering, considered a peer institution

Regarding recruitment (the Candidate having been told Texas A&M years would count)
- There was nothing in writing
- She was not Dean at the time, but when she speaks with candidates she tells them she can't guarantee that time at previous institution will be counted; 2 years at Ut is shortest time to establish teaching record, but otherwise it depends on the vote of the budget council

Regarding "early" vs. "technically early"
- The Cockrell School looks at the entire body of work, including previous institution
- She agrees that his was technically early
- Eddie was not up or out—if so, research would be the highest priority
- The Dean had serious concerns about her teaching statement; she has seen many teaching statements and hers was a real outlier

Regarding the basis of the Dean's assessment
- Budget council was focused on metrics; she considers the teaching statement very important. The University requires a reflective teaching statement, indicating a change in teaching in response to student comments; the Candidate didn't address those questions
- She saw indications of not taking teaching seriously. She saw this as a chance to let the Candidate know that teaching is important and changes needed to be made
- She hadn't changed her teaching according to student comments; other people did the opposite. She went for advice to another assistant professor, not to the best teacher in the department.
- She didn't provide context about what affected her teaching, such as her pregnancy.
- Student comments didn't improve over time.
- She was also a little concerned about the research statement; the Candidate hadn't engaged with other people with similar expertise here at UT. She is not taking full advantage of other faculty. Collaboration is really important in the Cockrell School.

Regarding the sustainability of the Candidate's research
- According to the workload policy (adopted in each department): Tenured faculty should support 2 RAs on external grants, plus summer salary. The Candidate wasn't bringing in enough, if divided by years.
- Assistant profs are exempt from this requirement; they get start-up funds.
- The Candidate had been moving in the right direction, the she took a leave at Berkeley. Productivity was not as strong afterwards. She didn't continue on the same trajectory.

Regarding rescinding the Candidate's extension
- She was disappointed that the Candidate didn't rescind. Provost's office has made it clear that it's necessary. By that time it was past the date. Then she would have been one year early instead of two; committee has been saying the earlier, the higher the expectations. Guidelines say early promotion "must

Appx.0182
UT Austin_00709

be justified," but not defined. Provost's office is waffling on whether higher standard applies to technically early.

- In other cases, Dept chairs have encouraged candidates to rescind.
- If she rescinds now she could go up next year.

Regarding the tenure and promotion process

- There are written guidelines from School says what is expected; the Dean revises these every year.
- At a meeting before the budget council voted to send the case forward, she had a conversation with the Chair and called the case borderline.
- In November, she contacted the Chair to say she was not in support in order to give the Candidate the opportunity to withdraw. The Candidate chose to go forward and file suppplemental documents, and requested more letters, which were sent directly to the Provost's Office. These were not at arm's length assessments.
- The Candidate refused to meet with her after denial; she is the only person who has never met with her in this circumstance

Regarding comparative cases

- She conducts holistic review, not primarily based on metric; decision depends on statements also.

Is there anything else the Subcommittee should know?

- No.

Appx.0183
UT Austin_00710

APPENDIX IV

Email correspondence between Prof. Brian L. Evans and
Gregory Scholtz, Director, Department of Academic Freedom, Tenure, and Governance, American Association of
University Professors

April 21-23, 2019

From: Greg Scholtz <gscholtz@aaup.org>
Sent: Tuesday, April 23, 2019 11:03 AM
To: Evans, Brian
Subject: UT Austin - Brian Evans - Early promotion cases being held to a higher standard at UT Austin

Dear Brian,

Good to hear from you.

With respect to your questions,

1. The AAUP has no policies on early promotion of which any of us are aware.  The quotation from Colleen Flaherty's IHE article that you quote is correct through the word "appointment."  The source is Regulation 2b of the attached Recommended Institutional Regulations on Academic Freedom and Tenure, which, as you will see, says nothing about applying early for promotion or tenure.  What also should be stressed is that, under AAUP-recommended standards of academic governance (particularly as set out in the fifth section of the attached Statement on Government of Colleges and Universities), the faculty has "primary responsibility" for matters of faculty status, which would include setting standards for promotion, including early promotion.

So I think the key issue in this situation, from an AAUP perspective, is the extent to which the faculty has had a role in formulating the early promotion standard.

2. As to legal cases, as the AAUP's defense of academic freedom, tenure, due process, and shared governance is based on academic standards (forming a kind of academic "common law"), not on state or federal laws, this department never applies legal standards to the situations that we handle.

Best regards,

Greg

*************************
Gregory F. Scholtz, Director
Department of Academic Freedom, Tenure, and Governance
American Association of University Professors
1133 Nineteenth Street, N.W., Suite 200
Washington, DC  20036-3655
202.737.5900 (phone)
202.737.5526 (fax)

From: Evans, Brian L [mailto:bevans@ece.utexas.edu]
Sent: Sunday, April 21, 2019 9:52 AM
To: Greg Scholtz <gscholtz@aaup.org>
Cc: Evans, Brian L <bevans@ece.utexas.edu>
Subject: Early promotion cases being held to a higher standard at UT Austin

Dear Greg,

Appx.0184
UT Austin_00711

The UT Austin administration is holding candidates for promotion to a much higher standard if they apply early. The UT Austin administration refers to these cases as "accelerated".

Would you be able to point me to

AAUP policies on the evaluation of early promotion cases, esp. as related to the standard applied for early vs. non-early promotion cases
Legal cases concerning evaluation standards for early vs. non-early promotion cases

At UT Austin, early promotion cases are being held to a much higher standard than those applying in the usual period of time in the same academic year.  This unequal standard shows up in Deans' letters (at end of message), in public statements by the President's promotion committee (at the end of message), and reasons conveyed orally by the President to the Deans in denying early promotion cases.

This morning, while searching online, I found

"(AAUP maintains that tenure candidates should be judged by the criteria and standards articulated at the time of appointment, and can choose to apply for tenure early if they've met those standards -- not that candidates be judged by heightened standards if applying early.)"

https://www.insidehighered.com/news/2013/07/24/colorado-aaup-caucus-adopts-statement-against-changing-tenure-criteria-midstream

From the 2017-2018 Annual Report from the Committee of Counsel on Academic Freedom and Responsibility (CCAFR) at UT Austin:

"During its investigation, the CCAFR subcommittee collected views by the upper administration towards early promotion expressed in public forums, in the hope that the views might be helpful to those who are considering early promotion to Associate Professor or Professor:
Dean Iverson said that the earlier a promotion case is, the more incumbent it is for the academic unit to explain why. He also said that it important not to have an academic unit make a habit of putting people up early.  [President's Promotion Committee, Panel Discussion, April 9, 2018]
Dean Smith said that when too many people go up early, it could become the 'new normal'. [President's Promotion Committee, Panel Discussion, April 9, 2018]
Senior Vice Provost of Faculty Affairs Janet Dukerich said that over the years, UT Austin had become too accommodating of early promotions, according to Dean Diehl who was in attendance.  Now, to be considered early, according to Prof. Dukerich, the applicant must have an unusually strong record.  She said that the record would need to be two standard deviations above the usual successful case for the normal duration in rank from Assistant Professor to Associate Professor or from Associate Professor to Professor. [Provost Office 'Road Show', April 11, 2018]

Dean Brent L. Iverson and Dean Mark J. T. Smith are two of the five members of the President's Promotion Committee.  Senior Vice Provost Janet M. Dukerich coordinates faculty affairs across the university, including promotion processes and procedures."
Here's a quote from a Dean's letter in this 2018-2019 promotion cycle:

"If this were an up-or-out case, I would likely agree with the recommendation of the Promotion and Tenure committee. However, Dr. [DELETED] is being considered for promotion at UT Austin two years early. I do not believe that she has taken responsibility for improving her teaching, and I have concerns about the sustainability of her research program...."

In this particular case, the College P&T Committee voted 7 in favor, 0 against, and 0 abstain to recommend in favor of the faculty member for tenure and promotion.

Much Thanks,
Brian

Brian L. Evans, PhD, IEEE Fellow | Pronouns: He/His
Engineering Foundation Professor, UT Austin
Chair, Academic Freedom Committee, UT Austin
Chair-Elect, Faculty Council, UT Austin

Member, American Association of University Professors
Member, Texas State Employees Union, CWA #6186

Appx.0186
UT Austin_00713

Message

| | |
|---|---|
| **From:** | Strong, Pauline [pstrong@austin.utexas.edu] |
| **Sent:** | 4/30/2019 6:19:28 PM |
| **To:** | Fenves, Gregory L [fenves@utexas.edu] |
| **CC:** | Nikolova, Evdokia [nikolova@austin.utexas.edu]; Tewfik, Ahmed H [tewfik@austin.utexas.edu]; Wood, Sharon L [swood@utexas.edu]; Provost Maurie McInnis [provost@utexas.edu]; Dukerich, Janet M [janet.dukerich@austin.utexas.edu]; Shockley, Carmen L [cshockley@austin.utexas.edu]; Steinhardt, Mary A [msteinhardt@austin.utexas.edu]; Roberts, Deborah L [debbie.roberts@austin.utexas.edu]; Evans, Brian L [bevans@ece.utexas.edu]; Hilley, Martha F [mfhilley@mail.utexas.edu]; Parra-Medina, Deborah M [parramedina@austin.utexas.edu] |
| **Subject:** | CCAFR Report on Dr. Evdokia Nikolova |
| **Attachments:** | CCAFR Report - Nikolova Final.pdf |

April 30, 2019

Dear President Fenves:

Attached please find the final CCAFR report on Dr. Evdokia Nikolova's appeal. This report is signed by Professor Martha Hilley (on page 8); otherwise it is the same as the report sent to you on April 28. Thank you for your patience and your consideration of this report.

Sincerely,

Pauline Strong, for the CCAFR Subcommittee
(Martha Hilley, Chair; Deborah Parra-Medina; Pauline Strong)

PAULINE TURNER STRONG, PhD
Director, Humanities Institute
Professor, Anthropology and Gender Studies
Affiliate, Native American and Indigenous Studies
Affiliate, Human Dimensions of Organizations
College of Liberal Arts | 512.471.8524
University of Texas at Austin
2201 Speedway Ave., C3200, Austin, TX 78712

CONFIDENTIAL

UT Austin_0007999

Message

| | |
|---|---|
| **From:** | Evdokia Nikolova [nikolova2009@gmail.com] |
| **on behalf of** | Evdokia Nikolova <nikolova2009@gmail.com> [nikolova2009@gmail.com] |
| **Sent:** | 5/7/2019 1:24:19 AM |
| **To:** | Christine Julien [c.julien@utexas.edu] |
| **Subject:** | Re: Peer Teaching Evaluation |

Christine,

I am attaching the completed form.

Thanks for your time and feedback,

Eddie

On Mon, May 6, 2019 at 3:27 PM Christine Julien <c.julien@utexas.edu> wrote:
  Eddie--

  I made the two factual corrections (attached). I think the remaining components are best suited for the pre-observation information and the instructor reflection.


  Let me know if you want to chat in person.

  Christine


On Mon, May 6, 2019 at 3:17 PM Evdokia Nikolova <nikolova2009@gmail.com> wrote:
  Christine,

  Thanks for the revisions, I do appreciate it.

  **A couple of factual corrections:**
  1) The only prior time I taught Game Theory at UT was in Spring 2014 (listed as EE 381V).  At that time the course was completely different: it had entirely different content (more introductory) and entirely lecture based by me with homeworks, a midterm and a final project.  This time I deliberately wanted to teach a more advanced class and a different topic focus (mechanism design), in part for my own students to get training in mechanism design research and in part for others to get a more advanced look into the state-of-art research in game theory and mechanism design.

  The courses that you refer to for 2017 and 2015 happen to have the same course number EE 381V, however those offerings were for a completely course "Advanced algorithms".  So these need to be removed from the form.

  2) Another correction is that 30% of the grade is submitting paper summaries of the paper to be covered, at the beginning of class. (in the syllabus, I wrote "paper summaries and class participation").

  **One note on your suggestions for improvement:**
  I do feel that, for students to understand a paper with difficult mathematical material, an in-depth presentation of that technical content is important and it definitely cannot be attained in a shorter conference-length time frame.  Understanding and gaining the mathematical expertise is critical for doing research in this area and a frequent concern I hear from my theoretical colleagues is that they cannot gain much from 20-min conference

**Appx.0188**

CONFIDENTIAL

UT Austin_0006320

talks since these often do not have time to get into any proofs and only give a very superficial high-level picture of the research.  Reading a paper is also not a guarantee that one would understand the proofs so in my experience such technical papers are best studied in study groups in that same format with one person presenting technical content in depth and for a sufficiently long time.  We have had some more "dynamic" presentations previously where the student alternated between slides and the doc-cam, writing out proof steps on paper.  We covered these different presentation style options and the style was the student's choice.  The student who presented last time got a lower grade since in my and my TA's opinion (Isidoros) the student didn't put enough effort and especially avoided getting into any proofs, that were a key part of the paper.  In that sense, my class format followed the tradition of my field for what is considered to be most effective for someone *motivated* to learn more in-depth about the content of a given research result: typically an hour long talk with questions during or after.  You may be right that alternative class formats may be more effective but I have yet to encounter one that works well for theory.

One thing that *would* have helped in my opinion would have been a smaller class size and a smaller classroom that allows for a more intimate discussion and student engagement but as it turned out 32 people decided to take the class so I had to do the best I can with that number.  Also I had a remote student (that I wasn't even told about ahead of time) and that made many discussions with awkward pauses having to wait for the single mic to be passed around often from one end of the enormous classroom to the other.

**Side note on other ideas for improvement:**
I have explicitly sought student feedback.  Midway through the semester I gave a survey soliciting student feedback and ideas for improvement.  I only received one response and consequently also discussed this verbally in class.  One suggestion was for the written paper summaries to be handed after class rather than beginning of class since students felt that they understood the paper better after the presentation.  However, I was concerned that if the summaries were due after class, the students might not read the paper before hand.  Also apparently 7 of the 32 students in my class were all PhD students of one advisor in Aero-Astro (Ufuk Topku) all working in some aspect of stochastic games and they were wishing to have studied stochastic games as part of the course to help with their own research -- though by that time the syllabus was already fixed: I gave the full list of papers in the very first lecture so it's fair to the students to know what paper they are signing up for to present.  One student comment suggested dedicating the last 15 min to students writing feedback instead of verbal discussion.  My feeling is that that was related to a student being shy to speak up in a class discussion and I felt that having a class discussion would still be valuable.

I'll work on the form and get that back to you.

Thanks,
Eddie

On Mon, May 6, 2019 at 9:46 AM Christine Julien <c.julien@utexas.edu> wrote:
Eddie--

Please see the attached revision. If you note any specific factual errors, please let me know so that I can correct them.

I am sorry that I could not stick around directly after your class to discuss my observations with you. I did need to grab something to eat before more meetings. I do not think that my level of work, sleep, or hunger are reflected at all in my evaluation. And as I said in my email, I'm happy to meet to discuss my observations (and other feedback you might be interested in) at any point.

CONFIDENTIAL

I'm also sorry that we did not get a chance to meet beforehand to discuss the course at length. I didn't have the Pre-Observation form (page three in the attached) filled out before the course, so I didn't have a lot of expectation going in to the observation about what your expectations of the students in the course are. We did chat on the phone late at night the day before class, but this discussion was pretty high level; that was the first time I saw the syllabus, and I recall that at the time of that discussion you said you also needed to refresh yourself on the contents of the paper for discussion in class.

Thanks,
Christine


On Sun, May 5, 2019 at 7:41 PM Evdokia Nikolova <nikolova2009@gmail.com> wrote:

Hi Christine,

I just now read your evaluation.  I feel there is nothing positive in it.  This is the first time I am offering a graduate course in this format [previous course offerings you cite are for a completely different course on advanced algorithms] and, despite some of the challenges, I feel this format has been beneficial for the students in multiple ways.
Also coming during one of the last course lectures does not help, when everyone is tired, students are jaded and less attentive.  I am myself already going through a lot of turmoil this semester and it's been really hard to keep my spirits up and trying to keep a positive attitude in the class.  Especially in light of the Dean's evaluation of my teaching, this comes as just another nail in my coffin as it definitely won't help in a potential future tenure evaluation.
This is a unique format for an advanced graduate class which likely has its pluses and minuses, its emphasis has been on self-motivation and self-independence for students to better prepare them to pursue research as opposed to just learning material from a book as most graduate courses seem to do.
Reviewing multiple fundamental and very mathematical state-of-art research papers in the area of game theory and mechanism design is not easy for a single person and is best done in a format with multiple people where presentation and discussion of the material are a way to better grasp its contents and significance.  Some lectures have higher energy than others, it depends on the paper covered, the interest of the students and the energy of the presenter.  We have had some amazing presentations and on multiple occasions, both verbally and in writing I have discussed with students expectations of a good presentation which is itself a really important skill in research that students don't get exposed to and learn much about until very late in their PhD or postdoc years.  I feel looking at each other's presentations the students have gotten more motivated to do a good job and have learnt a great deal on presenting, in addition to learning about the state-of-art research we have been covering.

I know you were overworked and tired and you hadn't eaten at the end of the lecture so you couldn't stay to discuss your impressions with me after the class before putting them in writing.  Ultimately you can write whatever you think is right but the timing of this does matter considerably.  I do appreciate your comments and want to improve on them but again this is the first time I have offered this course in this format.  If you can add some positive things and tone down some of the negative, I would appreciate it -- again it's all up to you.

Thanks,
Eddie


On Thu, May 2, 2019 at 7:50 PM Christine Julien <c.julien@utexas.edu> wrote:

CONFIDENTIAL

UT Austin_0006322

Eddie--

Attached is the form I filled out for your peer teaching evaluation. It was difficult to do, given the fact that it was a student lecturing and the form isn't really made for that. I tried to provide my feedback in that context as best I could.

There's a first page (pre-observation information) and reflection that should both be written by you (probably sooner rather than later, since these were technically due last week). I'm also happy to meet to discuss my observations; just let me know what time next week might work for you.

Christine


---------------------------------------
Dr. Christine Julien  |  c.julien@utexas.edu  |  512.232.5671
Professor, Annis & Jack Bowen Professorship in Engineering
Department of Electrical and Computer Engineering
The University of Texas at Austin
http://mpc.ece.utexas.edu
---------------------------------------


--
Evdokia Nikolova
http://users.ece.utexas.edu/~nikolova/


--
Evdokia Nikolova
http://users.ece.utexas.edu/~nikolova/

This message is from an external sender. Learn more about why this matters.


--
Evdokia Nikolova
http://users.ece.utexas.edu/~nikolova/

This message is from an external sender. Learn more about why this matters.

CONFIDENTIAL

UT Austin_0006323

## Example Form for Peer Evaluation of Teaching for Spring 2019 (*Version 5.0*)

### Prof. Brian L. Evans, Dept. of Electrical and Computer Engineering, bevans@ece.utexas.edu

Peer teaching evaluation is intended to be part of an on-going constructive dialogue about teaching with faculty colleagues.  The evaluation encourages time for reflection and action.

Perhaps a theme to consider is "teaching for effective learning".  This phrase is a reminder that "actions (teaching and learning) are interlinked and contextually informed by who the students are, the types of skills/knowledge being taught, discipline, etc." [1]

Peer teaching evaluations inform a holistic view of our teaching [2-4] during tenure, promotion [3], post-tenure [4], annual and mid-probationary period review.  They complement one's teaching statement, course information, and course instructor survey results. [5]

Here's the general flow of a peer evaluation of teaching suggested by the Provost Office [2] and each of the following steps has one page of content later in this document:

1. *Pre-Observation Meeting*: The peer evaluator would discuss with the instructor course content and learning objectives as well as outcomes from previous peer evaluations and the class period to be observed. The instructor would write the initial draft of this section.
2. *Classroom Observation*. The peer evaluator would attend the class as an observer and not as a participant or leader, so as to observe the natural flow of the class and respect the peer relationship with and the academic freedom of the instructor. It would help if the evaluator arrived early, sat in the back of the room so as not to disrupt the class, and stayed a few minutes afterwards. The evaluator would take notes on content, student interactions, organization, verbal style, non-verbal cues, and use of media during the class time.
3. *Post-Observation Meeting*: The peer evaluator would identify teaching strengths, offer suggestions, evaluate course instructor survey rating trends and comments, and review the syllabus. The evaluator would meet with the instructor to discuss write-ups for parts 1-3.
4. *Reflective Summary*: When completed regularly, they can help improve one's teaching and form a basis for teaching statements for promotion, annual, or post-tenure review.

Upload the signed report to UT Box and send the link to Prof. Evans at bevans@ece.utexas.edu, Dept. Chair at tewfik@austin.utexas.edu, and Dept. Executive Asst. at jac.erengil@utexas.edu.

**References**

[1] Prof. Katie Dawson, UT Austin Provost Teaching Fellow 2018-19, Personal Correspondence, January 16, 2019.

[2] Peer review of teaching, Faculty Innovation Center, https://facultyinnovate.utexas.edu/peer-observation

[3] *2018-19 General Guidelines for Promotion and Tenure of All Faculty Ranks* (tenured, tenure-track and non-tenure-track), esp. Section C.3.e, available at https://utexas.app.box.com/v/pt-18-19-guidelines

[4] *2018-19 Guidelines for Comprehensive Periodic Review of Tenured Faculty*, https://utexas.app.box.com/v/18-19-guidelines-comprehensive

[5] Prof. Brent L. Iverson, Dean of Undergraduate Studies, UT Austin, one of five voting members of the President's Tenure and Promotion Committee, April 11, 2018, e-mail correspondence:

"I believe the point of the whole exercise of teaching evaluation as part of the promotion process is to put in place a set of easy to follow longitudinal procedures that will assist all faculty in becoming better teachers. The point is not to identify bad teachers and eliminate them, it is to make sure everyone has the support they need to

CONFIDENTIAL

develop into the best teachers they can be after first stepping into the classroom. That is why longitudinal observations followed by frank, honest assessment then reflection by the person being observed is so important."

CONFIDENTIAL

UT Austin_0006325

## 1. Pre-Observation Meeting – Written by the Instructor

**Course Number, Title, Instructor:** _____

**Semester:** _____   **Type of Course:** ___ Required ___ Elective ___ Graduate

**Enrollment**: _____   **Lecture hours/week:** _____   **Lab/Recitation hours/week:** _____

### 1. Pre-Observation Meeting

**Course Content**

- What is the course content?  Where does the course fit into the program of study?

This is an advanced PhD level class focused on preparing students for research in the field of Algorithmic Game Theory and Mechanism Design.  It consists of several introductory lectures on Game Theory and Mechanism Design and 20+ technical research papers in the field ranging from classics that were published several decades ago, to state-of-art research published in the last decade.  Since multiple students both at UT ECE and other Engineering departments (Aero-Astro, Mechanical, Civil) are doing research involving some aspect of game theory and mechanism design, such a course fills an important gap in the students' formal education.  I note that a class on Mechanism Design happened to be taught in the Department of Economics this semester (my understanding is that this is not a regularly occurring class), though courses taught in the Economics department are typically less accessible to Engineering students, do not have a computational/algorithmic component and do not cover engineering applications, which my course included.

**Course Objectives**

- What learning and growth do you want students to experience in the course?
- How are you assessing their learning and growth?

I want students to get exposed to and learn as best they can classic and state-of-art research results in the field along with mathematical techniques for proving such results.  One component of the course was learning how to critically read, understand and assess research papers, including understanding limiting assumptions and coming up with open research questions.  Another important component was learning how to effectively present a theoretical research paper.

The students learning and growth are assessed through written paper summaries that students had to submit summarizing the research paper covered in that class.  Their learning and growth are also assessed through the evolution of research presentations, for which I gave written feedback with suggestions for improvement to the individual presenter and more general presentation guidelines for the entire class.

**Previous Peer Evals**

- What changes did you make based on previous peer evaluations of teaching?

This is the first time I taught the course with this content and format.  As such previous peer evaluations were not available / applicable.  The only prior time I taught Game Theory at UT was in Spring 2014 (listed as EE 381V).  At that time the course was completely different: it had entirely different content (more introductory) and was entirely lecture-based by me with homeworks, a midterm and a final project.  This time I deliberately wanted to teach a more advanced class and a different topic focus (mechanism design), in part for my own students to get necessary training in mechanism design research and in part for others to get a more advanced knowledge in the state-of-art research in algorithmic game theory and mechanism design and inspire students to do further research in the area.

CONFIDENTIAL

**Class Meeting to be Observed**

- What's the context of the class period to be observed?  What has happened before?

During the class observed, a student presented a research paper, which was followed by a class discussion.  The course included several introductory lectures in the beginning and 20+ research papers that were a selection of the classics and state-of-art research papers in the field. Some papers were linked and others were independent.  The particular paper topic covered during the observed class was self-contained and independent of the previously covered material.

Instructor __Evdokia Nikolova_____   Date of Meeting _04_/ 30_/_2019

Appx.0195

CONFIDENTIAL

UT Austin_0006327

**2. Classroom Teaching Observation – Written by the Peer Teaching Evaluator**

*Enrollment:* _____    *Attendance:* _24__    *Class:* ___EE381V__    *Instructor:* __Nikolova__

*Start Time:* _2pm_  *End Time:* _____    *Classroom:* _EER. 1.518__    *Evaluator:* __Julien__

**Introduction**

- How did the introduction review material and give organization/context for the class?

Class began when a student began the presentation of a paper to be discussed for the day (Manipulation of Stable Matchings using Minimal Blacklists). This presentation is 35% of the student's final grade.

**Main Part of Class Meeting**

- What views into the material did students gain? Text, equations, diagrams, visualizations?
- Connections to other material in the course? Connection to current events?
- How did the instructor engage the students? How did the students and instructor respond?

The students were all expected to have read the paper ahead of time (and have submitted a summary of the paper). The instructor interjected during the student presentation for clarifications. After the student's presentation completed (about 40 minutes into class), the TA and instructor asked additional questions. The final 20 or so minutes of class were focused around a discussion of how the presented algorithm relates to modern mobile dating apps.

**Learning Environment    Conclusion**

- How did the instructor or students summarize the main ideas at the end of the class period?


- How open, positive and supportive was the learning environment?
- How did students engage in learning? How could they be more engaged?

The course is structured as a research seminar, so giving the students a chance to present difficult technical material is an important instructional component. The student's presentation was a direct presentation of the paper, the students were expected to have already read the paper, and students did not often interject with questions. Many students were looking at their computers or doing other work.

**Verbal/ non-verbal**

- Understandability of spoken language? Voice volume, voice quality, and rate of delivery?
- Effective body movement, gestures, and eye contact with students?

The student presenter was clear and used clear slides to convey the material from the paper. The instructor's questions were clear and audible, and she used her voice and body language to include the entire classroom even though she was technically interacting with the single speaker.

**Use of Media**

- Marker/chalkboard content clear? Easy to read visuals?
- How effective was the use of electronics by the instructor?

N/A

Peer Evaluator _____    Date of Observation __/__/____

**3.   Post-Observation Meeting with Peer Evaluator and Instructor – Written by Evaluator**

<u>**Instructor Strengths in Teaching for Effective Learning**</u>

The instructor's role in this particular lecture was to foster the discussion since the lecture itself was presented by one of the students. In addition, the instructor has presumably given some guidance or examples of the expectations of the presentation itself.

<u>**Suggestions for Improvement in Teaching for Effective Learning**</u>

In course content, presentation styles, and learning environment.  For ideas on well-being in learning environments: https://www.cmhc.utexas.edu/wellbeing/instructionalpractices.html

To improve the engagement of the students, the instructor could consider alternative formats. While giving the students a chance to present technical material is important, limiting the time to the length (for example) of a conference presentation could be beneficial. There are also additional non-lecture based formats the instructor could consider for engaging the students with the material. For instance, when this presenter brought up a connection of the content to dating apps, the students were much more engaged. However, the student's connection between the algorithm and dating apps was a bit tenuous. I would encourage the instructor to challenge students on these sorts of aspects. This is potential learning opportunity since connecting the material to things the students identify with has the potential for engagement. This kind of discussion could completely replace the presentation of the paper (or fill the class time following a briefer presentation of the paper). Since everyone in the class was expected to have read and already summarized the paper; it's not clear what value there is in having someone present all of the details.

The instructor might also consider alternative mechanisms for conveying the material rather than a static presentation by a student.

<u>**Recent course instructor survey comments to improve the learning environment**</u>

*Previous course instructor survey comments are available at* https://utexas.app.box.com/.

The comments on the previous CIS are not available. Scores (for what they're worth) for the prior offering of this course (Spring 2014) were 4.1/4.1.

<u>**Review of course syllabus**</u>

- Teaching approaches and student assessments match stated goals and outcomes
- Roles and responsibilities of the students in the learning process clearly stated
- Weighting of assignments and context for numeric grades (A, A-, B+, etc.)

This is a seminar course in game theory. The syllabus does not list prior background in game theory as a prerequisite, though the course contains a few introductory lectures at the beginning. Grades are based on the presentation of a research paper, a combination of class participation and paper summaries that are submitted at the beginning of each class, and a research project (with grades evenly weighted across these three categories).

Peer Evaluator _____   Date __/__/____

CONFIDENTIAL

UT Austin_0006329

**4. Reflective Summary Written by the Instructor (based on items 1-3 above)**

**The reflective summary gives the instructor an opportunity to reflect on the feedback from the peer teaching evaluator. The reflection could also be reused in teaching statements for tenure, promotion, annual, post-tenure, and mid-probationary evaluation. Here are example questions to consider in your reflection.**

- What are your strengths in teaching this course? Guiding class activities?

My strengths are in guiding student learning through an appropriate concise selection of the state-of-art research in algorithmic game theory and mechanism design and motivating students to develop critical skills of reading and assessing as well as presenting research papers, which I believe fills an important gap in graduate students' education (especially the presentation part). I concentrate on developing critical paper evaluation and presentation skills in my own PhD students, who have been praised by others for their depth of knowledge, competence and thesis proposal / conference presentations.

- How could you improve this particular course to improve student learning?

I have explicitly sought student feedback. Midway through the semester I gave a survey soliciting student feedback and ideas for improvement. I only received one written response and thus consequently I also sought and discussed student feedback verbally in class. One suggestion was for the written paper summaries to be handed after class rather than beginning of class since students felt that they understood the research paper covered better after the in-class presentation. This justifies that a detailed paper presentation is very beneficial to student learning of the material in addition to the students's requirement to read the paper ahead of time. These are very involved and mathematically strenuous papers that require many hours of dedicated focus for proper understanding and a study group type discussion following a presentation I feel only adds to the individual effort of a person reading a paper by themselves.

One student comment suggested dedicating the last 15 min to students writing feedback instead of verbal in-class discussion. I agree for some students this is useful and I welcomed feedback in office hours for students that prefer this method. I felt that allowing for a class discussion is valuable for everyone present but do understand that written feedback is another valuable addition to the student learning.

- How could you improve the quality and timeliness of feedback on student work?

I made sure to provide very quick feedback to every student presentation personally to the student (usually immediately after lecture) and when I felt it was warranted, with more detailed guidelines to the entire class. I also ensured that my TA gave very prompt feedback to the 30+ written paper summaries (usually within a day) so the students could quickly improve on their written exposition and their critical reading and understanding of the papers. Students have expressed gratitude for the fast feedback and I have not heard any concerns from students on the quality and timeliness of feedback on their work.

CONFIDENTIAL

- What other ways you could help improve well-being in the class learning environment?
  *For ideas, see https://www.cmhc.utexas.edu/wellbeing/instructionalpractices.html*

Pasting from the above website: "One instructional practice that all students can benefit from is knowing what is expected of them by being given a clear framework they can use to anchor their knowledge and progress (Balgopal, Casper, Atadero, & Rambo-Hernandez, 2017)." Without knowing this quote, this was precisely my thinking and goal at the beginning of the semester and for that reason on the first day of class I presented the exact requirements, course content and expectations of the students, as well as giving them a choice to sign up for presenting a research paper of their choice on a date of their choice.

"Finding ways to provide structured, intentional and transparent assessment practices can limit anxiety and improve a student's learning, retention and testing performance (Chiou, Wang, & Lee, 2014; Cross & Angelo, 1988). Encourage them to ask questions and seek help." Without knowing this quote as well, this has been my guiding principle throughout: for every presentation grade I offered in writing detailed feedback to the student presenter listing the positives in their presentation as well as suggestions for improvement that would help their presentation skills in the future.  As part of the course format with class discussion, I was encouraging questions and continued emphasizing my availability in office hours and outside of office hours when needed.

**Reflections on the peer evaluator suggestions for improvement (e.g.,** "Since everyone in the class was expected to have read and already summarized the paper; it's not clear what value there is in having someone present all of the details.")

I do feel that, for students to understand a paper with difficult mathematical material, an in-depth presentation of that technical content is important and it definitely cannot be attained in a shorter conference-length time frame.  Understanding and gaining the mathematical expertise is critical for doing research in this area and a frequent concern I hear from my theoretical colleagues is that they cannot gain much from 20-min conference talks since these often do not have time to get into any proofs and only give a very superficial high-level idea of the research.  Reading a paper is also not a guarantee that one would understand the proofs so in my experience such technical papers are best studied in study groups in that same format with one person presenting technical content in depth and for a sufficient length of time (typically an hour).

In that sense, my class format followed the tradition of my field for what is considered to be most effective for someone *motivated* to learn more in-depth about the content of a given research result: typically an hour long talk with questions during and/or after the presentation.  That said, I am open to considering alternative class formats.

We have had more "dynamic" presentations previously where the presenter alternated between slides and the doc-cam, writing out proof steps on paper.  I covered these different presentation style options and the style was the student's choice.  The student who presented during the evaluated lecture received a lower grade since in my and my TA's opinion the student didn't put enough effort and especially avoided getting into any proofs, that were a key part of the paper.  There were a lot of very strong presentations during the semester and I feel these students

CONFIDENTIAL

increased their own standards based on what they saw were effective presentations prior to theirs.


**Any concerns, recommendations, or suggestions you might make about the process?**

**Yes.  The lecture observed was in the last couple of weeks of class.  This is a time when everyone is tired, students are extremely preoccupied with their final projects and exams and even the most engaged students sometimes are not as engaged at that time of the semester.  Thus, I feel an observation should not be completed in the last weeks of class, which may not be an accurate representation of a typical lecture.  An observation of lecture towards the beginning or middle of the semester would be more beneficial to the instructor in terms of having time to brainstorm on and incorporate suggestions for improvement, as well as more representative of a typical class, especially for a class that is offered once in 2-5 years.**
**I feel the evaluation scheduling is something that needs be acted on at the start of semester and not as an after-thought in light of a deadline at the end of the semester, putting undue strain on both the peer evaluator and the instructor during the end-of-semester time crunch.**


Instructor _____Evdokia Nikolova_____        Date _05_/_06_/_2019___

CONFIDENTIAL                                                                                    UT Austin_0006332

Message

| | |
|---|---|
| **From:** | Evans, Brian L [bevans@ece.utexas.edu] |
| **on behalf of** | Evans, Brian L <bevans@ece.utexas.edu> [bevans@ece.utexas.edu] |
| **Sent:** | 5/7/2019 3:25:44 PM |
| **To:** | Tewfik, Ahmed H [tewfik@austin.utexas.edu]; c.julien@utexas.edu |
| **CC:** | Erengil, Jac [jac.erengil@utexas.edu]; Evdokia Nikolova [nikolova2009@gmail.com]; Evans, Brian L [bevans@ece.utexas.edu] |
| **Subject:** | Re: Peer Teaching Evaluation (Nikolova) |
| **Attachments:** | Nikolova - Teaching Evaluation with Reflective Summary.docx |

Hi Christine and Eddie,

I read your dialog on ideas and practices for effective teaching in its entirety.  Very interesting and informative.

On the top of page 2, I added the information about the course number, title, instructor, enrollment, etc.  I didn't make any other changes.  I've attached the updated form.

Eddie expressed concerned about how late in the semester the classroom observation had occurred.  I had sent the initial assignments to the ECE faculty on Feb. 26th.  In this particular case, there was a late change in the peer teaching evaluator after Spring Break.  Christine graciously volunteered.

Regards,
Brian

Brian L. Evans, PhD, IEEE Fellow | Pronouns: He/His
Engineering Foundation Professor, UT Austin
Chair, Academic Freedom Committee, UT Austin
Chair-Elect, Faculty Council, UT Austin


Member, American Association of University Professors
Member, Texas State Employees Union, CWA #6186

---

**From:** Tewfik, Ahmed H
**Sent:** Monday, May 6, 2019 9:17 PM
**To:** c.julien@utexas.edu
**Cc:** Evans, Brian L; Erengil, Jac; Evdokia Nikolova
**Subject:** Re: Peer Teaching Evaluation (Nikolova)

thank you Christine and very much appreciated!

regards
Ahmed

_____

Ahmed Tewfik
Cockrell Family Regents Chair in Engineering
Chairman, Department of Electrical and Computer Engineering
The University of Texas at Austin

**Appx.0201**

UT Austin_0006245

2501 Speedway Ave.
EER 2.876
Austin, TX 78712
USA

Direct: (512) 471-6179
tewfik@austin.utexas.edu

On May 6, 2019, at 9:37 PM, Christine Julien <c.julien@utexas.edu> wrote:

Ahmed, Jac, and Brian (cc: Eddie)--

Attached is the completed teaching evaluation for Eddie.

Thanks!
Christine

----------------------------------------
Dr. Christine Julien  |  c.julien@utexas.edu  |  512.232.5671
Professor, Annis & Jack Bowen Professorship in Engineering
Department of Electrical and Computer Engineering
The University of Texas at Austin
http://mpc.ece.utexas.edu
----------------------------------------

<Nikolova Teaching Evaluation Form Spring 2019 REVISED-EN.docx>

CONFIDENTIAL

# CREWS LAW FIRM, P.C.
## ATTORNEYS AT LAW

JOE K. CREWS
*Board Certified, Personal Injury Trial Law*
*Texas Board of Legal Specialization*

ROBERT W. SCHMIDT

(512) 346-7077
FAX (512) 342-0007
www.crewsfirm.com

May 10, 2019

Travis Hicks                                  *Via Fax: (210) 281-7606*
Director                                      *and Federal Express*
EEOC
5410 Fredericksburg Road, Suite 200
San Antonio, Texas 78229-3555

      Re:   Evdokia Nikolova, Ph.D. v. University of Texas at Austin

Dear Mr. Hicks:

The Crews Law Firm represents Evdokia Nikolova, Ph.D. regarding her charge of discrimination against the University of Texas at Austin. Attached and enclosed please find Dr. Nikolova's charge for filing today (May 10, 2019) with the EEOC and Texas Workforce Commission ("TWC"). Pursuant to the EEOC's work share agreement, we hereby file and submit this charge as dual-filed with the TWC. Please advise me immediately if there is anything additional that needs to be done regarding this filing.

**Please direct all communications relating to this matter to this firm** at the address below. If you have any questions, please do not hesitate to call me at (512) 346-7077. Thank you for your work on this important matter.

Sincerely,

CREWS LAW FIRM, PC

Robert W. Schmidt

Enclosure

Exhibit
Evdokia Nikolova
85
06/29/21   DC

701 BRAZOS • SUITE 900 • AUSTIN, TEXAS 78701

Appx.0266
UT Austin_00719

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA [X] EEOC | |

**Texas Workforce Commission, Civil Rights Division** and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Evdokia V. Nikolova, Ph.D. | (617) 549-5802 | 1/24/79 |

| Street Address | City, State and ZIP Code |
|---|---|
| 400 East Monroe St., Austin TX 78704 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| University of Texas at Austin | 500 + | (512) 471-1241 |

| Street Address | City, State and ZIP Code |
|---|---|
| 2400 Inner Campus Drive, FAC 438, Austin TX 78713 | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

[ ] RACE  [ ] COLOR  [X] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN
[ ] RETALIATION  [ ] AGE  [ ] DISABILITY  [X] OTHER *(Specify below.)*
Pregnancy

DATE(S) DISCRIMINATION TOOK PLACE
Earliest          Latest
                  2/18/19
[X] CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

The University of Texas at Austin (UT) hired me as a tenure track assistant professor in the Department of Electrical and Computer Engineering (ECE) and I began in January, 2014. Before coming to UT, I was as an assistant professor at Texas A&M for two and a half years, since the fall of 2011. During my interview and around the time I was hired, the ECE Department Chair Dr. Ahmed Tewfik told me that my prior experience as an assistant professor at A&M would count towards my tenure and that I would be able to go up for tenure at or around my normal time clock, which began in Fall 2011. Normally, assistant professors are considered for tenure in their 5th or 6th year of teaching.

In the fall of 2018, the faculty of the ECE department considered me for promotion and tenure. The 2018/19 academic year is actually my eighth academic year as an assistant professor, five and a half of which have been at UT. The ECE Department's Budget Council voted almost unanimously in favor of my promotion and tenure (32 Yes, 1 No, 2 Abstain). The ECE associate professors voted unanimously in favor of my tenure (10 Yes, 0 No, 0 Abstain). ECE Chair Dr. Tewfik, also "strongly endorse[d]" my promotion and tenure, stating that I

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 5-10-19   x *[signature]* Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) 5-10-19 |

DAHLIA LOZANO TREJO
Notary Public
STATE OF TEXAS
ID# 131024885
My Comm. Exp. June 1, 2021

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA [X] EEOC | |

**TEXAS WORKFORCE COMMISSION, CIVIL RIGHTS DIVISION**                And EEOC

*State or local Agency, if any*

THE PARTICULARS ARE (*If additional paper is needed, attach extra sheet(s)*):

compare "very favorably" to my "most prominent peers at the first-tier departments in Electrical and Computer Engineering, such as MIT, Stanford, UC Berkeley, UIUC, Georgia Tech, Caltech and Princeton." The School of Engineering's Tenure and Promotion Committee also unanimously voted in favor of tenure and promotion (7 Yes, 0 No, 0 Abstain). Additionally, all my external letters of recommendation from prominent professors at other top institutions also strongly supported my case for tenure.

Dean Sharon Wood of the School of Engineering recommended against what she referred to as my "early promotion," but stated that "[i]f this were an up-or-out case, I would likely agree with the recommendation of the Promotion and Tenure committee." On or about February 18, 2019, I received notification that the President's Committee voted to not approve my promotion and tenure. I believe the decision to deny me tenure was discriminatory because of my sex (female), including pregnancy. As mentioned in the Dean's Assessment, I became pregnant during the fall of 2015. I was pregnant with my second child in Fall 2017.

I understand there are 53 tenured faculty members within the ECE Department – *49 are men, or 92.5 percent*, and *only 4 are women (7.5 percent)*. Since 2013-2014 when I interviewed, I believe 9 male assistant professors have gone up for tenure, and all but one have been granted tenure. During this same time period, two women in the ECE Department, including myself, were potential candidates for tenure and *both women* were denied promotion. This year, I was the only woman among the 6 promotion candidates from the ECE department. All male candidates advanced and I was the only (female) candidate UT did not advance.

I am aware of male ECE faculty members, including Sujay Sanghavi and Alex Dimakis, that in recent years were approved for tenure "early" at UT Austin. When my case is compared against theirs, I believe UT applied different and higher standards to me. I am also aware that UT awarded tenure to other male professors in my department with less time as a professor than me and I believe applied a more lenient, favorable standard. I am also aware of another female assistant professor in the School of Engineering who had not been pregnant and that UT promoted with "early" tenure with a lower standard than UT applied to my case. Additionally, the reasons UT gave for the denial of my tenure and promotion are false, misleading and/or pretextual. A faculty committee that reviewed my case stated they were concerned and recommended serious consideration of the reversal of my tenure denial as well as the need to "conduct a substantial review of gender equity, diversity, and inclusion in the department." I believe UT discriminated against me in violation of Title VII of the Civil Rights Act, Chapter 21 of the Texas Labor Code, both as amended, and possibly other laws.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the above is true and correct. | SIGNATURE OF COMPLAINANT |
| 5-10-19     x  *Efren[signature]* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)*  5-10-19 |
| *Date*          *Charging Party Signature* | |

EEOC Form 5 (5/01)

DALILA LUEVANO TREJO Notary Public STATE OF TEXAS ID#131151885 My Comm. Exp. June 1, 2021

Appx. 0205
UT Austin_0075



**THE UNIVERSITY OF TEXAS AT AUSTIN**

**Gregory L. Fenves**
110 Inner Campus Drive
Austin, Texas 78712
512-471-1232 | president@utexas.edu

May 13, 2019

Dr. Brian Evans
Chair, Committee of Counsel on Academic Freedom and Responsibility (CCAFR)
Professor, Department of Electrical and Computer Engineering
C0803

Dear Professor Evans:

I write in response to the CCAFR subcommittee's report dated April 28, 2019, regarding Assistant Professor Evdokia Nikolova's complaint(s) that the university's decision not to promote her to the rank of associate professor was flawed by procedural irregularities. After reviewing the file, and the subcommittee's report and advisory opinions, I make the determinations described in the following.

> **Complaint #1 as stated in CCAFR's report:** "Ramifications of Prior Service at a Peer Institution and Application of a Higher Standard."
> **CCAFR's advisory opinion:** The candidate's prior years in rank at a different institution [Texas A&M] were not counted among her years in rank [at UT Austin]. This procedural violation led to the candidate's case being held to a higher standard.

The candidate's prior years of service at Texas A&M were noted, but were not considered for purposes of calculating the candidate's "time in rank" at UT Austin. Board of Regents' Rule 31007 and HOP 2-2010 provide that only full-time service at the university shall be counted toward a candidate's six-year probationary period. At the time of her application for promotion and tenure, the candidate was not in her sixth "up-or-out" year of probationary service. The candidate was reviewed based on her years of service in rank at UT Austin; and she was not held to a higher standard. The candidate's application for tenure and promotion will be assembled and reviewed again when the candidate is in her sixth year of probationary service at UT Austin, and is truly in her up-or-out year. Therefore, I disagree with the CCAFR subcommittee's advisory opinion that this was a procedural violation, or that the candidate was held to a higher standard.

> **Complaint #2 as stated in CCAFR's report:** "Inadequate Notice of Ability to Rescind Probationary Extension."
> **CCAFR's advisory opinion:** CCAFR does not find a procedural violation related to this complaint.

**Exhibit**
**Carmen Shockley**
**51**
05/28/2021 JL
exhibitsticker.com

**Appx.0206**
**UT Austin_00714**

Nikolova Response
May 13, 2019
Page 2 of 5

I agree with the CCAFR subcommittee; there was no procedural violation.

> **Complaint #3 as stated in CCAFR's report:** "University Policies Do Not Provide a Higher Standard for Early Promotion."
> **CCAFR's advisory opinion:** The candidate was held to a higher standard which is not defined in institutional policy. This procedural violation negatively impacted the outcome of the case.

I disagree with the subcommittee's advisory opinion that the candidate was held to a higher standard; and I do not find a procedural violation associated with this complaint. The CCAFR subcommittee makes the conclusory statement that "the President and/or the President's Committee has unilaterally changed tenure and promotion standards without faculty discussion" without any evidence to support such a claim. Board of Regents' Rule 31007 and HOP 2-2010 provide that only full-time service at the university shall be counted toward a candidate's six-year probationary period. The candidate was not held to a higher standard; her application for tenure and promotion simply was not ripe for review. The candidate's application for tenure and promotion will be assembled and reviewed again when the candidate is in her sixth year of probationary service at UT Austin, and is truly in her up-or-out year.

> **Complaint #4 as stated in CCAFR's report:** "External Letter of Support Not Placed in Tenure File."
> **CCAFR's advisory opinion:** This minor procedural violation is unlikely to have impacted the president's decision.

I disagree with the CCAFR subcommittee's advisory opinion that a procedural violation occurred in this instance. Candidates, at their discretion, may add such documents to their promotion and tenure file, or request that the university add such documents to their file. Here, neither was done. In any event, I agree that this did not impact the outcome of the candidate's application for promotion and tenure.

> **Complaint #5 as stated in CCAFR's report:** "Misinterpretation by Dean of Information in Dossier Regarding Research."
> **CCAFR's advisory opinion:** CCAFR is puzzled by the Dean's concerns about the sustainability of the candidate's research program.

This allegation is a dispute about the Dean's professional judgment regarding the candidate's research. CCAFR does not have authority to review disputes about professional judgments regarding the merits of a faculty member's record. As such, the CCAFR subcommittee has no authority to review the matter, yet alone substitute its judgment for that of the Dean's. This

Nikolova Response
May 13, 2019
Page 3 of 5

allegation falls outside the scope of CCAFR's review, and I reject any advisory opinion this CCAFR subcommittee attempts to form on this issue.

> **Complaint #6 as stated in CCAFR's report:** "Misinterpretation by Dean of Information in Dossier Regarding Teaching."
> **CCAFR's advisory opinion:** CCAFR is puzzled by disparate assessments of the candidate's teaching.

This allegation is a dispute about the Dean's professional judgment regarding the candidate's teaching. CCAFR does not have authority to review disputes about professional judgments regarding the merits of a faculty member's record. As such, the CCAFR subcommittee has no authority to weigh in on the matter, yet alone substitute its judgment for that of the Dean's. This allegation falls outside the scope of CCAFR's review, and I reject any advisory opinion this CCAFR subcommittee attempts to form on this issue.

> **Complaint #7 as stated in CCAFR's report:** "Omission of Teaching Scores from Previous Institution in the Dossier."
> **CCAFR's advisory opinion:** The department failed to ensure that teaching scores from the candidate's previous institution were placed in the dossier and this procedural error may have negatively impacted the candidate's case.

The university did not request or review the candidate's previous teaching scores from Texas A&M University because the candidate's prior teaching does not bear on her application for tenure and promotion at UT Austin. Section C.10.a of the *General Guidelines for Promotion and Tenure of all Faculty Ranks Excluding the Dell Medical School* (2018-19) provides that "[c]andidates who have taught at other institutions *during the last three years* may submit evaluations from those courses." (emphasis added). In this case, the last three years of the candidate's teaching has occurred at UT Austin. I reject the CCAFR subcommittee's advisory opinion.

> **Complaint #8 as stated in CCAFR's report:** "Misinterpretation by Dean of Information in Dossier Regarding Service."
> **CCAFR's advisory opinion:** The dean misquoted the budget council statement on service which constitutes a procedural error.

I reject the CCAFR subcommittee's advisory opinion that the Dean's misquote constitutes a procedural violation. In any event, the Dean's (mis)quote did not impact the final decision in this case.

Appx.0208
UT Austin_00716

Nikolova Response
May 13, 2019
Page 4 of 5

**Complaint #9 as stated in CCAFR's report:** "Denial of Tenure Raises Concerns Related to Gender and Pregnancy."
**CCAFR's advisory opinion:** CCAFR does not find a procedural violation related to this complaint.

I agree with the CCAFR subcommittee; there was no procedural violation.

Finally, the CCAFR subcommittee includes in its report five recommendations for the university to consider:

1. Consider reversal of the decision not to promote.
2. Consider allowing final arguments for "do not promote" decisions and directly inform candidates regarding the reasons for a decision not to promote.
3. Develop and annually update a faculty handbook for the Cockrell School of Engineering.
4. Document the university's policy regarding prior service in rank at another institution.
5. Clarify the rules around requesting and rescinding a request for an extension to the probationary period.

I will not reverse my decision in this candidate's promotion and tenure case. The candidate will be reconsidered for promotion and tenure when she has served six years in probationary status at UT Austin. By copy of this letter, I refer the CCAFR subcommittee's recommendations two (2)-five (5) to the Executive Vice President and Provost and the Dean of the Cockrell School of Engineering for further consideration.

I thank the members of the CCAFR subcommittee for their work in considering this case.

Sincerely,

Gregory L. Fenves
President


Nikolova Response
May 13, 2019
Page 5 of 5

cc:   Maurie McInnis, Executive Vice President and Provost
Sharon Wood, Dean, Cockrell School of Engineering
Ahmed Tewfik, Chair, Department of Electrical and Computer Engineering
Evdokia Nikolova, Assistant Professor, Department of Electrical and
  Computer Engineering
Martha Hilley, Professor, Butler School of Music
Deborah Parra-Medina, Professor, Department of Mexican American and Latino/a
  Studies
Pauline Turner Strong, Professor, Department of Anthropology

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To:  Evdokia Nikolova
400 E. Monroe Street
Austin, TX 78704

From:  San Antonio Field Office
5410 Fredericksburg Rd
Suite 200
San Antonio, TX 78229

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 451-2019-02364 | Arlene Williams-Tillman, Investigator | (210) 281-7652 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_____
Travis G. Hicks, Director

6/13/2019
(Date Mailed)

Enclosures(s)

cc:  UNIVERSITY OF TEXAS AT AUSTIN
George A. Brown,
Director of Investigation & Policy
2400 Inner Campus Drive
FAC 438
Austin, TX 78713

Evdokia Nikolova
c/o Robert Schmidt
CREWS LAW FIRM
701 Brazos, Suite 900
Austin, TX 78701

Message

**From**: Speitel, Gerald E [speitel@utexas.edu]
**Sent**: 9/6/2019 12:10:46 PM
**To**: Wood, Sharon L [swood@utexas.edu]
**Subject**: RE: Senior design supervision this semester

Agreed.  I sent him an email to update the discussion that he and I had.

Jerry

**From:** Wood, Sharon L <swood@utexas.edu>
**Sent:** Friday, September 6, 2019 5:36 AM
**To:** Speitel, Gerald E <speitel@utexas.edu>
**Subject:** FW: Senior design supervision this semester

He has to back down on this.   She should not be asked to mentor the student group.

S.L. Wood | Cockrell School of Engineering | UT Austin | (512) 471-1166

**From:** Tewfik, Ahmed H <tewfik@austin.utexas.edu>
**Sent:** Friday, September 06, 2019 2:40 AM
**To:** Wood, Sharon L <swood@utexas.edu>; Speitel, Gerald E <speitel@utexas.edu>
**Subject:** Fwd: Senior design supervision this semester

Sharon and Jerry

Here's the second email I received from her.

 regards
Ahmed

_____

Ahmed Tewfik
Cockrell Family Regents Chair in Engineering
Chairman, Department of Electrical and Computer Engineering
The University of Texas at Austin
2501 Speedway Ave.
EER 2.876
Austin, TX 78712
USA

Direct: (512) 471-6179
tewfik@austin.utexas.edu

Begin forwarded message:

> **Resent-From:** <tewfik@austin.utexas.edu>
> **From:** Evdokia Nikolova <nikolova2009@gmail.com>
> **Date:** September 5, 2019 at 6:40:29 PM CDT
> **To:** "Tewfik, Ahmed H" <tewfik@austin.utexas.edu>
> **Subject: Re: Senior design supervision this semester**



Exhibit
Jerry Speitel
App.0212 **57**
05/28/2021 JL

Hi Ahmed,

I appreciate you getting back to me and letting me know that Alex is on MID this semester and required to supervise senior design also.

I do need to point out though that from a health and medical standpoint, it is very different for Alex to be required to fulfill this part of instructional duties at the department/university than it is for me.  For one, it was Alex's wife and not Alex who gave birth, and additionally their baby was born in mid-July so they have already had some time to recover from the initial very difficult weeks following the birth.

For me, my baby will be born during the semester---some time between now and September 18, 2019.  Therefore, during the semester I will be going through the end of my pregnancy, the unknown timing of the birth, a hospital stay and a lengthy recovery as advised by my doctor, healing from physical pain, bleeding, fatigue, etc. and needing significant rest and recovery not to mention breastfeeding and both current and subsequent tremendous sleep deprivation, and taking care of myself and my newborn baby.  This includes not being able to drive for a period of time, bed rest and other restrictions.  As an additional detail, being over 40 years old, I am considered at higher risk of health complications associated with my pregnancy and delivery and have been going to additional medical appointments and screenings, including the recommendation that I need to be induced at an earlier time than my due date.  These are difficulties and complications that a male faculty member who becomes a parent does not experience at all, much less, in Alex's case now, not during the semester.

So it is very important for me to understand:

1) Has a woman faculty member who has given birth *during* the semester she is on MID ever been required to do any instructional duties such as supervising senior design at our department?

2) Who exactly at the college made that decision and when?

3) When and how was the decision communicated to you?

4) Is this a new written policy and can you please forward it to me?

5) When did Alex get informed that he will need to supervise senior design while on MID this semester?

6) Why was I informed about this after the start of the semester?

7) What am I expected to do while in the hospital giving birth and subsequently on bed rest at home or otherwise medically unable to interact with the students?

I would appreciate responses to these questions so that I can better understand the basis of this new directive and what my options are.

Thank you,
Evdokia

On Wed, Sep 4, 2019 at 4:43 AM Tewfik, Ahmed H <tewfik@austin.utexas.edu> wrote:
>

CONFIDENTIAL

> Evdokia
>
> The college has gotten stricter on MID. Alex and you are on MID and you both will need to supervise/continue supervising senior design teams. Unlike courses, you have flexibility in setting your meeting time with your team.
>
> regards
>
> Ahmed
>
>
>
> _____
>
> Ahmed Tewfik
> Cockrell Family Regents Chair in Engineering
> Chairman, Department of Electrical and Computer Engineering
> The University of Texas at Austin
>
> 2501 Speedway Ave.
>
> EER 2.876
>
> Austin, TX 78712
>
> USA
>
>
>
> Direct: (512) 471-6179
>
> tewfik@austin.utexas.edu
>
>
>
> On Sep 4, 2019, at 12:11 AM, Evdokia Nikolova <nikolova2009@gmail.com> wrote:
>
> Hello Ahmed,
>
> Thanks for the email.  I'm happy to do whatever is needed and that UT asks.
>
> I am a little confused though, because you/UT did not ask me to do this during my last two pregnancies when I was on modified instructional duties.  Is this a new requirement?  You mentioned "the college is insisting on it," who in the college is insisting on it and is there a new policy or procedure?  If so, could you please forward that to me?  It's just very different from how we've done things in the past.  I understood that working with the senior design team was considered part of our instructional duties and was a reason why we teach two courses instead of three.  It seems strange that it is now not part of the MID.
>
> Again, I want to do whatever is needed and I like working with the students on their projects, but are other women who are out actually giving birth being asked to do this?  The reason I ask is

CONFIDENTIAL

that I am scheduled to give birth to my baby on September 18 (unless the baby arrives sooner) and shortly before and for at least several weeks after I give birth, I won't be able to meet with the students.  Giving birth and caring for a newborn is physically very hard, not to mention other considerations like spending time with my newborn baby, breast feeding, and avoiding contagious diseases.  I want the students to get the attention they deserve and there will likely be some real issues about my availability.

> 
> Thank you and please let me know regarding my questions above.
> 
> Regards,
> Evdokia
> 
> 
> On Tue, Sep 3, 2019 at 12:08 PM Tewfik, Ahmed H <tewfik@austin.utexas.edu> wrote:
> > 
> > Hi Evdokia
> > 
> > You have MID this semester. However, you'll need to continue to supervise your senior design team this semester. Others on MID this semester are also supervising senior design teams and the college is insisting on that. Thank you.
> > 
> >  regards
> > 
> > Ahmed
> > 
> > 
> > 
> > _____
> > 
> > Ahmed Tewfik
> > Cockrell Family Regents Chair in Engineering
> > Chairman, Department of Electrical and Computer Engineering
> > The University of Texas at Austin
> > 
> > 2501 Speedway Ave.
> > 
> > EER 2.876
> > 
> > Austin, TX 78712
> > 
> > USA
> > 
> > 
> > 
> > Direct: (512) 471-6179
> > 
> > tewfik@austin.utexas.edu
> > 
> > 
> 
> 
> 

CONFIDENTIAL

UT Austin_0025584

> --
> Evdokia Nikolova
> http://users.ece.utexas.edu/~nikolova/
>
> This message is from an external sender. Learn more about why this matters.
>


--
Evdokia Nikolova
http://users.ece.utexas.edu/~nikolova/

This message is from an external sender. Learn more about why this matters.

CONFIDENTIAL

UT Austin_0025585

Message

| | |
|---|---|
| **From:** | Evdokia Nikolova [nikolova2009@gmail.com] |
| **Sent:** | 9/6/2019 3:05:31 PM |
| **To:** | Tewfik, Ahmed H [tewfik@austin.utexas.edu] |
| **Subject:** | Re: update |

Thank you Ahmed.
Evdokia

On Fri, Sep 6, 2019 at 7:14 AM Tewfik, Ahmed H <tewfik@austin.utexas.edu> wrote:
> Evdokia
>
> I emailed the dean and associate dean and they agreed to my request to relieve you from senior design
> supervision.
>
> Happy to meet when I return.
>
> regards
> Ahmed
>
>
> _____
> Ahmed Tewfik
> Cockrell Family Regents Chair in Engineering
> Chairman, Department of Electrical and Computer Engineering
> The University of Texas at Austin
> 2501 Speedway Ave.
> EER 2.876
> Austin, TX 78712
> USA
>
> Direct: (512) 471-6179
> tewfik@austin.utexas.edu
>
>
> On Sep 6, 2019, at 8:40 AM, Tewfik, Ahmed H <tewfik@austin.utexas.edu> wrote:
>
> > Thank you for alerting me Evdokia. I'm sure the college is aware of this. As far as I can tell,
> > you're treated like everyone else. I'm in Spain and we can chat next week when I am back.
> >
> > regards
> > Ahmed
> >
> >
> > _____
> > Ahmed Tewfik
> > Cockrell Family Regents Chair in Engineering
> > Chairman, Department of Electrical and Computer Engineering
> > The University of Texas at Austin
> > 2501 Speedway Ave.
> > EER 2.876
> > Austin, TX 78712
> > USA



Exhibit
Evdokia Nikolova
Appx.0217  **88**
06/29/21  DC

Direct: (512) 471-6179
tewfik@austin.utexas.edu

On Sep 5, 2019, at 6:44 PM, Evdokia Nikolova <nikolova2009@gmail.com> wrote:

> Hi Ahmed,
>
> As you know, I have made a prior complaint of gender and pregnancy discrimination in my CCAFR request and Final Arguments to the president.
>
> Have you been made aware that I filed a charge of discrimination relating to the tenure decision and that I'm planning on filing a lawsuit also? UT's lawyers are aware of it because my lawyers have talked with them about it.
>
> If you haven't already heard, I didn't want you to be blindsided by it or hear about it through gossip. It has been a difficult decision, but I feel I have to do it and believe very strongly I was treated differently because I am female and because of my past pregnancies.
>
> My hope is to be able to continue working professionally in the department and that I will not be treated adversely going forward (individually or through policy changes) because of standing up for the way I have been treated.
>
> Regards,
> Evdokia
>
> --
> Evdokia Nikolova
> http://users.ece.utexas.edu/~nikolova/

This message is from an external sender. Learn more about why this matters.

--
Evdokia Nikolova
http://users.ece.utexas.edu/~nikolova/

This message is from an external sender. Learn more about why this matters.

CONFIDENTIAL                                                                 UT Austin_0008701

**Message**

**From**:         Speitel, Gerald E [speitel@utexas.edu]
**Sent**:          9/6/2019 12:08:59 PM
**To**:             Tewfik, Ahmed H [tewfik@austin.utexas.edu]
**CC**:             Wood, Sharon L [swood@utexas.edu]
**Subject**:      RE: Senior design supervision this semester

Ahmed,

Based on the circumstances that she outlines below, we need to re-visit the decision that we made in our meeting to ask her to continue with her senior design group.  I realize that this may be disruptive to the group, but please assign her senior design group to another faculty member, so that she has no teaching responsibilities this fall, other than those she outlines in her MID.

Jerry

P.S.  I see no reason to answer the series of questions in her email now that we are relieving her of the senior design group responsibility.

**From:** Tewfik, Ahmed H <tewfik@austin.utexas.edu>
**Sent:** Friday, September 6, 2019 2:40 AM
**To:** Wood, Sharon L <swood@utexas.edu>; Speitel, Gerald E <speitel@utexas.edu>
**Subject:** Fwd: Senior design supervision this semester

Sharon and Jerry

Here's the second email I received from her.

 regards
Ahmed

_____
Ahmed Tewfik
Cockrell Family Regents Chair in Engineering
Chairman, Department of Electrical and Computer Engineering
The University of Texas at Austin
2501 Speedway Ave.
EER 2.876
Austin, TX 78712
USA

Direct: (512) 471-6179
tewfik@austin.utexas.edu

Begin forwarded message:

> **Resent-From:** <tewfik@austin.utexas.edu>
> **From:** Evdokia Nikolova <nikolova2009@gmail.com>
> **Date:** September 5, 2019 at 6:40:29 PM CDT
> **To:** "Tewfik, Ahmed H" <tewfik@austin.utexas.edu>
> **Subject: Re: Senior design supervision this semester**



Exhibit
Jerry Speitel
Appx.02158
05/28/2021 JL

UT Austin_0025586

Hi Ahmed,

I appreciate you getting back to me and letting me know that Alex is on MID this semester and required to supervise senior design also.

I do need to point out though that from a health and medical standpoint, it is very different for Alex to be required to fulfill this part of instructional duties at the department/university than it is for me.  For one, it was Alex's wife and not Alex who gave birth, and additionally their baby was born in mid-July so they have already had some time to recover from the initial very difficult weeks following the birth.

For me, my baby will be born during the semester---some time between now and September 18, 2019.  Therefore, during the semester I will be going through the end of my pregnancy, the unknown timing of the birth, a hospital stay and a lengthy recovery as advised by my doctor, healing from physical pain, bleeding, fatigue, etc. and needing significant rest and recovery not to mention breastfeeding and both current and subsequent tremendous sleep deprivation, and taking care of myself and my newborn baby.  This includes not being able to drive for a period of time, bed rest and other restrictions.  As an additional detail, being over 40 years old, I am considered at higher risk of health complications associated with my pregnancy and delivery and have been going to additional medical appointments and screenings, including the recommendation that I need to be induced at an earlier time than my due date.  These are difficulties and complications that a male faculty member who becomes a parent does not experience at all, much less, in Alex's case now, not during the semester.

So it is very important for me to understand:

1) Has a woman faculty member who has given birth *during* the semester she is on MID ever been required to do any instructional duties such as supervising senior design at our department?

2) Who exactly at the college made that decision and when?

3) When and how was the decision communicated to you?

4) Is this a new written policy and can you please forward it to me?

5) When did Alex get informed that he will need to supervise senior design while on MID this semester?

6) Why was I informed about this after the start of the semester?

7) What am I expected to do while in the hospital giving birth and subsequently on bed rest at home or otherwise medically unable to interact with the students?

I would appreciate responses to these questions so that I can better understand the basis of this new directive and what my options are.

Thank you,
Evdokia


On Wed, Sep 4, 2019 at 4:43 AM Tewfik, Ahmed H <tewfik@austin.utexas.edu> wrote:
>
> Evdokia
>
> The college has gotten stricter on MID. Alex and you are on MID and you both will need to supervise/continue supervising senior design teams. Unlike courses, you have flexibility in setting your

CONFIDENTIAL

UT Austin_0025587

meeting time with your team.
>
> regards
>
> Ahmed
>
>
>
> _____
>
> Ahmed Tewfik
> Cockrell Family Regents Chair in Engineering
> Chairman, Department of Electrical and Computer Engineering
> The University of Texas at Austin
>
> 2501 Speedway Ave.
>
> EER 2.876
>
> Austin, TX 78712
>
> USA
>
>
>
> Direct: (512) 471-6179
>
> tewfik@austin.utexas.edu
>
>
>
>
> On Sep 4, 2019, at 12:11 AM, Evdokia Nikolova <nikolova2009@gmail.com> wrote:
>
> Hello Ahmed,
>
> Thanks for the email.  I'm happy to do whatever is needed and that UT asks.
>
> I am a little confused though, because you/UT did not ask me to do this during my last two pregnancies when I was on modified instructional duties.  Is this a new requirement?  You mentioned "the college is insisting on it," who in the college is insisting on it and is there a new policy or procedure?  If so, could you please forward that to me?  It's just very different from how we've done things in the past.  I understood that working with the senior design team was considered part of our instructional duties and was a reason why we teach two courses instead of three.  It seems strange that it is now not part of the MID.
>
> Again, I want to do whatever is needed and I like working with the students on their projects, but are other women who are out actually giving birth being asked to do this?  The reason I ask is that I am scheduled to give birth to my baby on September 18 (unless the baby arrives sooner) and shortly before and for at least several weeks after I give birth, I won't be able to meet with the students.  Giving birth and caring for a newborn is physically very hard, not to mention other considerations like spending time with my newborn baby, breast feeding, and avoiding contagious diseases.  I want the students to get the attention they deserve and there will likely be some real issues about my availability.

CONFIDENTIAL

>

> Thank you and please let me know regarding my questions above.

>

> Regards,

> Evdokia

>

>

> On Tue, Sep 3, 2019 at 12:08 PM Tewfik, Ahmed H <tewfik@austin.utexas.edu> wrote:

> >

> > Hi Evdokia

> >

> > You have MID this semester. However, you'll need to continue to supervise your senior design team this semester. Others on MID this semester are also supervising senior design teams and the college is insisting on that. Thank you.

> >

> >  regards

> >

> > Ahmed

> >

> >

> >

> > _____

> >

> > Ahmed Tewfik

> > Cockrell Family Regents Chair in Engineering

> > Chairman, Department of Electrical and Computer Engineering

> > The University of Texas at Austin

> >

> > 2501 Speedway Ave.

> >

> > EER 2.876

> >

> > Austin, TX 78712

> >

> > USA

> >

> >

> >

> > Direct: (512) 471-6179

> >

> > tewfik@austin.utexas.edu

> >

> >

> >

> >

> > --

> Evdokia Nikolova

> http://users.ece.utexas.edu/~nikolova/

>

> This message is from an external sender. Learn more about why this matters.

>

CONFIDENTIAL

--
Evdokia Nikolova
http://users.ece.utexas.edu/~nikolova/

This message is from an external sender. Learn more about why this matters.

CONFIDENTIAL

UT Austin_0025590

Message

| | |
|---|---|
| **From:** | Wood, Sharon L [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=C086DBB1CC04492BB96574EB561855BD-WOOD SHARON] |
| **Sent:** | 9/6/2019 9:51:23 AM |
| **To:** | Dukerich, Janet M [janet.dukerich@austin.utexas.edu]; Shockley, Carmen L [cshockley@austin.utexas.edu] |
| **Subject:** | Fwd: Senior design supervision this semester |

I was informed this week that Ahmed wants her to supervise a student team this semester. That seems like a terrible idea.

Sharon L. Wood, Dean
Cockrell School of Engineering
University of Texas at Austin

**From:** Tewfik, Ahmed H <tewfik@austin.utexas.edu>
**Sent:** Friday, September 6, 2019 2:39:48 AM
**To:** Wood, Sharon L <swood@utexas.edu>; Speitel, Gerald E <speitel@utexas.edu>
**Subject:** Fwd: Senior design supervision this semester

Sharon and Jerry

Here's the second email I received from her.

 regards
Ahmed

_____

Ahmed Tewfik
Cockrell Family Regents Chair in Engineering
Chairman, Department of Electrical and Computer Engineering
The University of Texas at Austin
2501 Speedway Ave.
EER 2.876
Austin, TX 78712
USA

Direct: (512) 471-6179
tewfik@austin.utexas.edu

Begin forwarded message:

> **Resent-From:** <tewfik@austin.utexas.edu>
> **From:** Evdokia Nikolova <nikolova2009@gmail.com>
> **Date:** September 5, 2019 at 6:40:29 PM CDT
> **To:** "Tewfik, Ahmed H" <tewfik@austin.utexas.edu>
> **Subject: Re: Senior design supervision this semester**
>
> Hi Ahmed,
>
> I appreciate you getting back to me and letting me know that Alex is on MID this semester and required to supervise senior design also.

**Appx.0224**

CONFIDENTIAL

UT Austin_0025596

I do need to point out though that from a health and medical standpoint, it is very different for Alex to be required to fulfill this part of instructional duties at the department/university than it is for me.  For one, it was Alex's wife and not Alex who gave birth, and additionally their baby was born in mid-July so they have already had some time to recover from the initial very difficult weeks following the birth.

For me, my baby will be born during the semester---some time between now and September 18, 2019.  Therefore, during the semester I will be going through the end of my pregnancy, the unknown timing of the birth, a hospital stay and a lengthy recovery as advised by my doctor, healing from physical pain, bleeding, fatigue, etc. and needing significant rest and recovery not to mention breastfeeding and both current and subsequent tremendous sleep deprivation, and taking care of myself and my newborn baby.  This includes not being able to drive for a period of time, bed rest and other restrictions.  As an additional detail, being over 40 years old, I am considered at higher risk of health complications associated with my pregnancy and delivery and have been going to additional medical appointments and screenings, including the recommendation that I need to be induced at an earlier time than my due date.  These are difficulties and complications that a male faculty member who becomes a parent does not experience at all, much less, in Alex's case now, not during the semester.

So it is very important for me to understand:

1) Has a woman faculty member who has given birth *during* the semester she is on MID ever been required to do any instructional duties such as supervising senior design at our department?

2) Who exactly at the college made that decision and when?

3) When and how was the decision communicated to you?

4) Is this a new written policy and can you please forward it to me?

5) When did Alex get informed that he will need to supervise senior design while on MID this semester?

6) Why was I informed about this after the start of the semester?

7) What am I expected to do while in the hospital giving birth and subsequently on bed rest at home or otherwise medically unable to interact with the students?

I would appreciate responses to these questions so that I can better understand the basis of this new directive and what my options are.

Thank you,
Evdokia


On Wed, Sep 4, 2019 at 4:43 AM Tewfik, Ahmed H <tewfik@austin.utexas.edu> wrote:
>
> Evdokia
>
> The college has gotten stricter on MID. Alex and you are on MID and you both will need to supervise/continue supervising senior design teams. Unlike courses, you have flexibility in

Appx.0225

UT Austin_0025597

setting your meeting time with your team.
>
> regards
>
> Ahmed
>
>
>
> _____
>
> Ahmed Tewfik
> Cockrell Family Regents Chair in Engineering
> Chairman, Department of Electrical and Computer Engineering
> The University of Texas at Austin
>
> 2501 Speedway Ave.
>
> EER 2.876
>
> Austin, TX 78712
>
> USA
>
>
>
> Direct: (512) 471-6179
>
> tewfik@austin.utexas.edu
>
>
>
> On Sep 4, 2019, at 12:11 AM, Evdokia Nikolova <nikolova2009@gmail.com> wrote:
>
> Hello Ahmed,
>
> Thanks for the email.  I'm happy to do whatever is needed and that UT asks.
>
> I am a little confused though, because you/UT did not ask me to do this during my last two pregnancies when I was on modified instructional duties.  Is this a new requirement?  You mentioned "the college is insisting on it," who in the college is insisting on it and is there a new policy or procedure?  If so, could you please forward that to me?  It's just very different from how we've done things in the past.  I understood that working with the senior design team was considered part of our instructional duties and was a reason why we teach two courses instead of three.  It seems strange that it is now not part of the MID.
>
> Again, I want to do whatever is needed and I like working with the students on their projects, but are other women who are out actually giving birth being asked to do this?  The reason I ask is that I am scheduled to give birth to my baby on September 18 (unless the baby arrives sooner) and shortly before and for at least several weeks after I give birth, I won't be able to meet with the students.  Giving birth and caring for a newborn is physically very hard, not to mention other considerations like spending time with my newborn baby, breast feeding, and avoiding

CONFIDENTIAL

contagious diseases.  I want the students to get the attention they deserve and there will likely be some real issues about my availability.
>
> Thank you and please let me know regarding my questions above.
>
> Regards,
> Evdokia
>
>
> On Tue, Sep 3, 2019 at 12:08 PM Tewfik, Ahmed H <tewfik@austin.utexas.edu> wrote:
> >
> > Hi Evdokia
> >
> > You have MID this semester. However, you'll need to continue to supervise your senior design team this semester. Others on MID this semester are also supervising senior design teams and the college is insisting on that. Thank you.
> >
> >  regards
> >
> > Ahmed
> >
> >
> >
> > _____
> >
> > Ahmed Tewfik
> > Cockrell Family Regents Chair in Engineering
> > Chairman, Department of Electrical and Computer Engineering
> > The University of Texas at Austin
> >
> > 2501 Speedway Ave.
> >
> > EER 2.876
> >
> > Austin, TX 78712
> >
> > USA
> >
> >
> >
> > Direct: (512) 471-6179
> >
> > tewfik@austin.utexas.edu
> >
> >
>
>
> --
> Evdokia Nikolova
> http://users.ece.utexas.edu/~nikolova/
>

CONFIDENTIAL

> This message is from an external sender. Learn more about why this matters.
>


--
Evdokia Nikolova
http://users.ece.utexas.edu/~nikolova/

This message is from an external sender. Learn more about why this matters.

CONFIDENTIAL                                      UT Austin_0025600



THE DEPARTMENT OF ELECTRICAL &
COMPUTER ENGINEERING

September 16, 2019

**Evdokia Nikolova's memorandum for modified duty during Spring 2020 with regards to new baby expected on September 17, 2019**

I am expecting a baby on September 17, 2019 and I am hereby requesting to have modified duty in the Spring 2020 semester.

As part of the modified duty, I am focusing on developing the course material for a new graduate course at the intersection of power systems and theoretical computer science. This intersection is a very novel space; its importance has been recognized by funding opportunities emphasizing computational aspects in power systems, two NSF grants in that space that I have been awarded and potential new funding opportunities by ARPA-E. It is a space in which my research group is uniquely an expert and is pioneering with research on computational aspects of the electricity distribution grid, developing novel approximation algorithms fundamental to theoretical computer science as well as new tools for algorithmic mechanism design. As recognized by the national and international importance of grid modernization, education of undergraduate and graduate students with the corresponding knowledge and skills in these two very disparate areas traditionally, who can advance that intersection, will be crucial.

The course would incorporate state-of-art research from relevant power systems, algorithms and mechanism design literature, including my own latest research. It would involve developing course materials such as lecture note, slides, and potential student projects. The projects that the students would work on throughout the semester would be critical for helping them apply the material learnt in the course and also develop new research ideas. These projects would also be on topics of high potential impact.

I plan to make the instruction and evaluation modules available to colleagues at other universities, both within the US and abroad. This class would be the only class on this topic in the university across all departments. In fact, there is no such course offered at any other university that I am aware of. I believe this provides me a unique opportunity to develop course modules that are valuable in training skilled researchers, and increasing the potential applicability and impact of their research or consequent work in industry.

Sincerely yours,

Evdokia Nikolova
Assistant Professor
Email: Nikolova@austin.utexas.edu

Exhibit
Evdokia Nikolova
Appx.0229 **77**
06/29/21 DC

CONFIDENTIAL

UT Austin_0007022

| | |
|---|---|
| **From:** | Tewfik, Ahmed H |
| **To:** | Speitel, Gerald E |
| **Cc:** | Shaffer, Sonya D; Erenoil, Jac |
| **Subject:** | MID for Nikolova |
| **Date:** | Monday, October 21, 2019 5:25:16 PM |

Dear Jerry

Prof. Nikolova was expected to give birth last month. She has requested modified instructional duties for the 2020 Spring Semester. During that semester, Evdokia will be developing a new course on the application of computer science algorithms to power systems. She will also continue to supervise her undergraduate senior design team.

The normal teaching load for well-funded research-active faculty members in the department is two courses per academic year, in addition to supervision of a senior design team. One of these courses must be an undergraduate course. I support Evdokia's request and recommend that you approve it.

regards
Ahmed

---

Ahmed Tewfik
Cockrell Family Regents Chair in Engineering
Chairman, Department of Electrical and Computer Engineering
The University of Texas at Austin
2501 Speedway Ave.
EER 2.876
Austin, TX 78712
USA

Direct: (512) 471-6179
tewfik@austin.utexas.edu

CONFIDENTIAL

UT Austin_0007021

**Shaffer, Sonya D**

| | |
|---|---|
| **From:** | Shaffer, Sonya D |
| **Sent:** | Tuesday, October 22, 2019 9:18 AM |
| **To:** | EVPP Academic Personnel Services |
| **Subject:** | Request for MID - Nikolova Spring 2020 |
| **Attachments:** | Request for MID - Nikolova Spring 2020.pdf |

Good morning.

Attached please find a request for modified instructional duties for Dr. Evdokia Nikolova for spring 2020.

Thank you,
Sonya

SONYA SHAFFER | Executive Assistant, Academic Affairs Office
The University of Texas at Austin | Cockrell School of Engineering | 512-471-7995 | shaffer.s@mail.utexas.edu

CONFIDENTIAL

UT Austin_0007019



**THE UNIVERSITY OF TEXAS AT AUSTIN**
COCKRELL SCHOOL OF ENGINEERING, OFFICE OF THE DEAN

*301 E. Dean Keeton Street · Stop C2100 · Austin, TX 78712 · (512) 471-1166*

Associate Dean for Academic Affairs
ECJ 10.322, MC C2100
(512) 471-7995
email: speitel@mail.utexas.edu

## MEMORANDUM

TO:      Carmen Shockley
           Assistant Vice President for Faculty Affairs

FROM:    Gerald E. Speitel Jr. *Gerald E Speitel Jr.*
           Associate Dean for Academic Affairs

Approved by:
*Carmen Shockley*
Assistant Vice President for Faculty Affairs
Office of the Executive Vice President and Provost

DATE:    October 22, 2019

SUBJECT:    Modified Instructional Duties for Evdokia Nikolova

      Attached is a request for modified instructional duties for Dr. Evdokia Nikolova, Assistant Professor in Electrical and Computer Engineering. Dr. Nikolova had a child last month and is requesting modified instructional duties for the spring 2020 semester. While on modified instructional duties, Dr. Nikolova will work on creating a new graduate course in power systems and theoretical computer science.

      Dr. Nikolova has already been approved for automatic extension of probationary period for reasons of childbirth.

      The Cockrell School supports this request. If you need any additional information, please contact me.

GES:sds

Enclosures:    Approval Memo from Dr. Ahmed Tewfik
               MID Request from Dr. Evdokia Nikolova

EXECUTIVE VICE PRESIDENT
AND PROVOST

OCT 2 2 2019

CONFIDENTIAL        UT Austin_0007017

**Shaffer, Sonya D**

| | |
|---|---|
| **From:** | Lisenbee, Lonnie |
| **Sent:** | Tuesday, December 17, 2019 1:41 PM |
| **To:** | Shaffer, Sonya D |
| **Cc:** | Negron, Erin G |
| **Subject:** | Approved Modified Instructional Duties for Professor Evdokia Nikolova |
| **Attachments:** | Nikolova, Evdokia Request for MID - Spring 2020.APPROVED.pdf |

Dear Sonya,

Please find the attached approved Modified Instructional Duties for Professor Evdokia Nikolova. Please let me know if you have any questions or concerns.

We ask that you notify the faculty member in writing regarding the following:

Use of available sick leave should be entered as an Absence in Workday. View the eLearning guide for Faculty to Request Sick Leave in Workday.  Family Medical Leave may be used in conjunction with sick leave and should be recorded when applicable. NOTE: In accordance with HOP 5-4210, Sick leave may not be used in conjunction with Parental Leave or Family and Medical Leave once an employee has recovered from the temporary incapacity related to pregnancy. More information can be found at http://bit.ly/HOP5-4210 .

Thanks so much,
Lonnie
--
**Lonnie Lisenbee (he/him/his pronouns)** | Senior Academic Personnel Coordinator
The University of Texas at Austin | Office of the Executive Vice President and Provost | 512-232-2724

1

CONFIDENTIAL                                                          UT Austin_0007018



**THE UNIVERSITY OF TEXAS AT AUSTIN**
Cockrell School of Engineering, Office of the Dean

*301 E. Dean Keeton Street · Stop C2100 · Austin, TX 78712 · (512) 471-1166*

Associate Dean for Academic Affairs
ECJ 10.322, MC C2100
(512) 471-7995
email:  speitel@utexas.edu

<u>**MEMORANDUM**</u>

TO:         Evdokia Nikolova
            Assistant Professor, Electrical and Computer Engineering

FROM:       Gerald E. Speitel Jr.
            Associate Dean for Academic Affairs

DATE:       December 17, 2019

SUBJECT:    Request for Modified Instructional Duties

    This is to let you know that your request for modified instructional duties for spring 2020 has been approved by Assistant Vice President Carmen Shockley.

    As applicable, use of available sick leave should be entered as an Absence in Workday. View the eLearning guide for Faculty to Request Sick Leave in Workday.  Family Medical Leave may be used in conjunction with sick leave and should be recorded when applicable. NOTE: In accordance with HOP 5-4210, sick leave may not be used in conjunction with Parental Leave or Family and Medical Leave once an employee has recovered from the temporary incapacity related to pregnancy. More information can be found at http://bit.ly/HOP5-4210.

    Please do not hesitate to contact me should you have any questions.

GES:sds

c:    Diana Marculescu, Department Chair, Electrical and Computer Engineering

CONFIDENTIAL                                                      UT Austin_0007016


The University of Texas at Austin

Office of the Executive Vice President
and Provost

110 Inner Campus Dr. STOP G1000
Austin, Texas 78712-2071
T: 512.471.4363    F: 512.475.7385
provost.utexas.edu

September 20, 2019

Dean Sharon Wood
Cockrell School of Engineering
Mail Code: C2100

Dear Sharon:

Please advise Assistant Professor Evdokia Nikolova that the request for a one-year probationary period extension for reason of childbirth has been applied.

Professor Nikolova joined the faculty of the Department of Electrical and Computer Engineering in the spring semester of 2014. With this extension, the university will no longer count the 2019-20 academic year toward fulfillment of the required probationary period of service and it is projected that Professor Nikolova mandatory promotion and tenure review will likely occur in the fall semester of 2021-22 per the chart below:

| Academic Year | Probationary Period Status |
| --- | --- |
| 2013-14 | Partial Year – Does not count toward probationary period |
| 2014-15 | Probation – Year 1 |
| 2015-16 | Extension Year – Does not count toward probationary period |
| 2016-17 | Probation – Year 2 |
| 2017-18 | Probation – Year 3 |
| 2018-19 | Probation – Year 4 |
| 2019-20 | Extension Year – Does not count toward probationary period |
| 2020-21 | Probation - Year 5 |
| 2021-22 | Probation – Year 6 - Projected year of up/out review |

This approved extension to the probationary period may be rescinded at Professor Nikolova's discretion. A request to rescind an approved probationary period extension should be submitted in writing to the dean no later than February 1 prior to the fall promotion review. If the approved extension is rescinded, then Professor Nikolova's mandatory promotion and tenure review will occur one year earlier than indicated in the chart above.


Exhibit
Evdokia Nikolova
Appx.0235**79**
06/29/21  DC

CONFIDENTIAL

UT Austin_0007024

Please ask Professor Nikolova to sign and return the original of this letter to Lonnie Lisenbee in this office, D7800.  A copy of this approval should be placed in the departmental and dean's office faculty personnel files.

Sincerely,

*Carmen Shockley*

Carmen L. Shockley
Assistant Vice President for Faculty Affairs

CLS/ll

xc: Associate Dean Gerald Speitel
    Professor Ahmed Tewfik

**Agreed:**

Dr. Evdokia Nikolova, Assistant Professor

Date:   10/22/2019

CONFIDENTIAL

Message

| | |
|---|---|
| **From**: | Erengil, Jac [jac.erengil@utexas.edu] |
| **Sent**: | 5/13/2020 5:51:19 PM |
| **To**: | c.julien@utexas.edu; Marculescu, Diana [dianam@utexas.edu] |
| **Subject**: | RE: [ECE Faculty Review] Ratings Spreadsheet |
| **Attachments**: | Faculty Deadline 10/1 and 10/9/19 : Publications, FAR, Resumes |

Just fyi: I checked files (both the CSE-owned box folder & the ECE internal).
3 emails were sent to faculty with instructions and reminders: 9/12/19, 10/3/19, 10/27/19
Attached for reference: 091219 initial email to faculty

I've confirmed that Nikolova, Thomaz-A, Tiwari, and Yerraballi did not submit FARs.

I just now emailed the Dean's Office contact Terri Lavorgna in case she happened to receive anything separately: will update you.

**From:** Christine Julien <c.julien@utexas.edu>
**Sent:** Wednesday, May 13, 2020 12:37 PM
**To:** Marculescu, Diana <dianam@utexas.edu>
**Cc:** Erengil, Jac <jac.erengil@utexas.edu>; constantine@utexas.edu; Michael Orshansky <orshansky@austin.utexas.edu>; Tutuc, Emanuel <etutuc@mail.utexas.edu>; John, Lizy K <ljohn@ece.utexas.edu>; Alex Q. Huang <aqhuang@utexas.edu>
**Subject:** Re: [ECE Faculty Review] Ratings Spreadsheet

Diana--

Sorry for the previous email. Pressed send too soon.

OK.

But we don't know how to do a review without a FAR, and none of these four have submitted a FAR (or at least the committee doesn't have access). Do you know what the advice is in that context?

We considered emailing our colleagues directly to ask for the FARs, but we didn't know if that was "proper" or not. I'm happy to do so, if that's the best course of action. On the other hand, it seems a little off to just use their website or other publicly available information.

Thanks!
Christine

**CHRISTINE JULIEN**
Annis & Jack Bowen Professor in Engineering, Electrical and Computer Engineering
Assistant Dean for Diversity, Equity, and Inclusion, Cockrell School of Engineering
The University of Texas at Austin  |  512.232.5671  |  (pronouns: she/her/hers)

**Appx.0237**

*Please note that I may work flexibly or travel to timezones outside of Austin. While it suits me to email now, I do not expect a response or action from you outside of your own working hours.*

On Wed, May 13, 2020 at 12:31 PM Christine Julien <c.julien@utexas.edu> wrote:

OK. But we don't know how to do a review without a FAR, and none of these four have submitted a FAR (or at least the committee doesn't have access). Do you know what the advice is in that context?

Christine

**CHRISTINE JULIEN**
Annis & Jack Bowen Professor in Engineering, Electrical and Computer Engineering
Assistant Dean for Diversity, Equity, and Inclusion, Cockrell School of Engineering
The University of Texas at Austin  |  512.232.5671  |  (pronouns: she/her/hers)

*Please note that I may work flexibly or travel to timezones outside of Austin. While it suits me to email now, I do not expect a response or action from you outside of your own working hours.*

On Wed, May 13, 2020 at 12:29 PM Diana Marculescu <dianam@utexas.edu> wrote:

Christine,

My understanding is that annual reviews should happen regardless of leave status.

Diana

On 5/13/2020 12:21 PM, Christine Julien wrote:

Diana (cc Jac + committee)--

Attached is the spreadsheet containing the ratings for the full faculty. There are four missing reviews; please advise us on how we should handle them.

1. Evdokia Nikolova -- she was on MID for F18, but there is no FAR for review for Sp19.
2. Andrea Thomaz -- the committee believes she was on leave and therefore a review should not be done. In any case, no FAR was submitted.
3. Mohit Tiwari -- no FAR was submitted. The committee wondered if there was a relationship between this and his promotion?
4. Ramesh Yerraballi -- no FAR was submitted.

Thanks!
Christine

**CHRISTINE JULIEN**

CONFIDENTIAL

Annis & Jack Bowen Professor in Engineering, Electrical and Computer Engineering
Assistant Dean for Diversity, Equity, and Inclusion, Cockrell School of Engineering
The University of Texas at Austin  |  512.232.5671  |  (pronouns: she/her/hers)

*Please note that I may work flexibly or travel to timezones outside of Austin. While it suits me to email now, I do not expect a response or action from you outside of your own working hours.*

CONFIDENTIAL

UT Austin_0025432

---

## Message

| | |
|---|---|
| **From:** | Michael Orshansky [orshansky@austin.utexas.edu] |
| **on behalf of** | Michael Orshansky <orshansky@austin.utexas.edu> [orshansky@austin.utexas.edu] |
| **Sent:** | 5/17/2020 9:59:16 PM |
| **To:** | c.julien@utexas.edu |
| **Subject:** | RE: Additional Review Material |

Christine,

I submitted my rating and comments for Eddie.

Regards,
Michael

**From:** Christine Julien <c.julien@utexas.edu>
**Sent:** Sunday, May 17, 2020 8:30 AM
**To:** constantine@utexas.edu; John, Lizy K <ljohn@ece.utexas.edu>; Alex Q. Huang <aqhuang@utexas.edu>; Michael Orshansky <orshansky@austin.utexas.edu>; Tutuc, Emanuel <etutuc@mail.utexas.edu>
**Subject:** Additional Review Material

All--

We now have FAR for Evdokia and Ramesh. I have just placed them in the shared Box folder. If you were one of the assigned reviewers for one of these two colleagues, could you please complete the review (with rating and comments)? I'll finalize the spreadsheet and resend it for approval before sending it to Diana. Ideally, we could send it back to her by the end of the day Monday.

If we need to set up a quick call to resolve inconsistencies, we can do that tomorrow, too.

Christine

**CHRISTINE JULIEN**
Annis & Jack Bowen Professor in Engineering, Electrical and Computer Engineering
Assistant Dean for Diversity, Equity, and Inclusion, Cockrell School of Engineering
The University of Texas at Austin  |  512.232.5671  |  (pronouns: she/her/hers)

*Please note that I may work flexibly or travel to timezones outside of Austin. While it suits me to email now, I do not expect a response or action from you outside of your own working hours.*



Exhibit
Christine Julien

**Appx.0240** **17**

3/19/2021 DC

CONFIDENTIAL

Message

| From: | Constantine Caramanis [constantine@utexas.edu] |
|---|---|
| on behalf of | Constantine Caramanis <constantine@utexas.edu> [constantine@utexas.edu] |
| Sent: | 5/17/2020 2:01:37 PM |
| To: | Christine Julien [c.julien@utexas.edu] |
| Subject: | Re: Additional Review Material |

Thanks, Christine.

My rating for E Nikolova:

ME: reasonable publication record. Teaching record is also ok. Service to the department is low, but perhaps this is on account of having been on leave for the first semester.

On Sun, May 17, 2020 at 8:30 AM Christine Julien <c.julien@utexas.edu> wrote:
> All--
>
> We now have FAR for Evdokia and Ramesh. I have just placed them in the shared Box folder. If you were one of the assigned reviewers for one of these two colleagues, could you please complete the review (with rating and comments)? I'll finalize the spreadsheet and resend it for approval before sending it to Diana. Ideally, we could send it back to her by the end of the day Monday.
>
> If we need to set up a quick call to resolve inconsistencies, we can do that tomorrow, too.
>
> Christine
>
>
> **CHRISTINE JULIEN**
> Annis & Jack Bowen Professor in Engineering, Electrical and Computer Engineering
> Assistant Dean for Diversity, Equity, and Inclusion, Cockrell School of Engineering
> The University of Texas at Austin | 512.232.5671 | (pronouns: she/her/hers)
>
> *Please note that I may work flexibly or travel to timezones outside of Austin. While it suits me to email now, I do not expect a response or action from you outside of your own working hours.*

--
---
Constantine Caramanis
e-mail: constantine@utexas.edu
web: http://users.ece.utexas.edu/~cmcaram



Exhibit
Christine Julien

Appx.0241 **16**

3/19/2021 DC

CONFIDENTIAL