UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| EVDOKIA NIKOLOVA<br>Plaintiff, | §<br>§<br>§ | |
| V. | § | CASE NO. 1:19-cv-00877-RP |
| UNIVERSITY OF TEXAS AT AUSTIN,<br>Defendant. | §<br>§<br>§ | |

**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

TO THE HONORABLE ROBERT PITMAN:

1. **Defendant Incorrectly Asserts That the Decision To Deny Tenure Was Made By Fenves Alone.**

Defendant falsely asserts (Dkt 47 at 2, 3, 4, 9) that UT President Fenves alone made the decision to deny Dr. Nikolova tenure. Therefore, according to Defendant, there is no evidence of discrimination. The argument is wrong both factually and legally. Factually, Nikolova has presented uncontradicted evidence that Dean Wood was involved in and had influence over the decision-making process. Fenves and the President's Committee met with Wood about the decision, asked her questions, discussed the case with her and why her recommendations differed from the Engineering School's P&T Committee (as well as the ECE Department and Department Chair), she provided clarifications and was in the room and present as the President's Committee's voted. Dkt. 44-1 at 395-96, 400 (Ex. 14, Fenves Dep 101:23-102:9, 121:9-12); Ex. 21, Wood Dep. 271:25-272:1, 273:4-6. Fenves specifically testified he made his decision based in part "on the discussion with the Dean," and "[b]ased on the dossier and the recommendation of Dean Wood to 'do to [sic] not promote,' we agreed with the Dean." [1] Dkt. 44-1 at 395, 440, (Ex. 14, Fenves Dep. 99:7-8; 121:9-16).

[1] Importantly, while Plaintiff has presented evidence raising a fact issue regarding discriminatory animus and actions

Defendant incorrectly claims that Nikolova must show that Fenves "did not conduct his own independent investigation, and instead merely 'rubber stamped' the recommendation of [Wood]," citing *Long v. Eastfield Coll.*, 88 F.3d 300, 307 (5th Cir. 1996). Dkt. 47 at 2. However, under *Long* and other Fifth Circuit cases, a final decision is insulted from discriminatory animus *only if it was actually based on an independent investigation*. *Id.; Haire v. Bd. of Supervisors of La. State Univ.*, 719 F.3d 356, 366 (5th Cir. 2013). Moreover, it is sufficient to avoid summary judgment to show that a party with discriminatory animus "*had influence* … over the official decisionmaker." *Haire*, 719 F.3d at 366 (emphasis original in *Haire*) (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000)). The evidence is clear that Woods had influence over the tenure decision.[2]

**2. UT Misstates The Evidence Regarding UT's Change in Reasons For Denial of Tenure.**

Defendant falsely asserts that the reasons for the denial of tenure have not changed and that the reasons offered by Dean Wood for tenure denial (including teaching) were never the reasons *of UT*. (Dkt. 47 at 4) This is uncontrovertibly false. The letter provided to Nikolova on or about February 19, 2019, informing her that she had been denied tenure and stating the reasons of teaching and sustainability of research funding (Dkt. 44-3, p. 233, Ex. 50), was the official notice provided by the University of Texas and President Fenves, *not* simply Dean Wood speculation of reason or offer of her own personal opinions about the denial of tenure. *Id.* The letter itself clearly states that, "I have been informed by President Fenves that the University has made the decision

of Dean Wood, almost all of the same evidence raises a fact issue regarding discriminatory animus and actions of President Fenves. The evidence is not exclusive.

[2] Additionally, in the 33 Engineering School tenure cases from 2015-16 when Fenves became President of UT through 2018-19 when Nikolova was denied tenure, Fenves *always followed Dean Wood's recommendation*. Ex. 11, Tenure Data XL; Dkt. 44-1 at 372, 384 (Ex. 14, Fenves Dep. 8:21-9:8, 57:3-10). Similarly, in the 21 other Engineering School tenure cases from 2013-14 to 2014-15 when Fenves was a member of the President's Committee and Wood was Dean, the President/President's Committee *also always followed Dean Wood's recommendation*. *Id*.

not to approve your promotion to associate professor at this time. The issues arose related to the sustainability of your research funding and your commitment to the teaching mission of the Cockrell School." *Id.* Additionally, President Fenves testified it is the responsibility of the Dean to convey the decision of the President/President's Committee and the reasons for the decision to the candidate. Dkt. 44-1 at 63 (Ex. 14, Fenves Dep. 63:3-21).

Moreover, the reasons for the change and inferences a jury could reasonably make about the change raise a fact issue. In February 2019 letter, UT stated Dr. Nikolova's teaching was a reason for the tenure denial. After this lawsuit was filed, *and* after evidence was raised that student teaching evaluations are known to be biased based on sex, including in the depositions of Dean Wood[3] and Christine Julien[4] in March, 2021 and the expert report of Dr. Peter Glick[5] in April, 2021, UT suddenly *dropped teaching as a reason*, as Fenves testified in his deposition in May, 2021. To bolster his decision, Fenves now newly added Dr. Nikolova's publication record as a reason for the first time. It is up to a jury to determine whether this surprise change in reasons is pretextual evidence to cover up sex and pregnancy discrimination.

### 3. Nikolova Has Presented Abundant Evidence To Establish a Prima Facie Case And Fact Issues On Pretext, Including Comparator Evidence.

Defendant falsely claims that Nikolova's comparator evidence does not satisfy the prima facie case and that it cannot be used to establish pretext. Defendant is incorrect on both counts. First, the Fifth Circuit has repeatedly held that a plaintiff can establish the fourth element of the *McDonald Douglas* prima facie case without even using comparator evidence by presenting evidence that the plaintiff "was otherwise terminated [or here, rejected for tenure] because of a

[3] Dkt. 44-1 at 615-18 (Ex. 21, Wood Dep, 33:8-20; 35:2-21; 41:21-42:3, 43:13-44:5).
[4] Dkt. 44-1 at 296-97 (Ex. 13, Julien Dep 56:21-57:8; 58:1-6).
[5] Dkt. 44-3 at 177-80, 199-201 (Ex. 49, Report on Gender Stereotyping and Bias, p. 21-28, 43-45).

protected characteristic."[6] Additionally, the Fifth Circuit has repeatedly considered comparator evidence as evidence of pretext. *See e.g. EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 624 (5th Cir. 2009); *Robertson v. Greater Tex. Fed. Credit Union*, No. 1:17-CV-1195-DAE, 2019 U.S. Dist. LEXIS 238754, at *18 (W.D. Tex. 2019).[7]

Nikolova has presented abundant evidence of similarly situated male assistant professors and a non-pregnant female assistant professor who were treated more favorably than she was in their tenure decisions on the *exact reasons* used to justify Nikolova's tenure denial. The Fifth Circuit standards for similarly situated employees have all been met in Nikolova's comparator evidence. "Employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, [or] shared the same supervisor or had their employment status determined by the same person …" *Lee v. Kan. City S. Ry. Co*, 574 F.3d 253, 260 (5th Cir. 2009). Additionally, "it is sufficient that the ultimate decisionmaker as to employees' continued employment is the same individual, even if the employees do not share an immediate supervisor." *Id.* at 260-61. If the difference between the plaintiff's situation "and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer," the employees are

---

[6] *Gibson v. Verizon Servs. Org.*, 498 F. App'x 391, 395 (5th Cir. 2012); *Collins v. Saia Motor Freight Lines, Inc.*, 144 Fed. Appx. 368, 372 (5th Cir. 2005) ("otherwise discharged because of age"); *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 575 (5th Cir. 2003) ("The [district] court also erred by holding that Palasota had to show that Haggar had given preferential treatment to a younger employee under "nearly identical" circumstances…." and holding a plaintiff may establish a prima facie case by showing he was *"otherwise discharged because of his age."*) (emphasis original in *Palasota*, citing *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993)).

[7] The Supreme Court as well as the Fifth Circuit have cautioned that "[t]he prima facie case method established in McDonnell Douglas was 'never intended to be rigid, mechanized, or ritualistic." *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983) (citations omitted). The ultimate question to be kept in mind is: is there evidence that the employer is treating an employee less favorably because of … sex …?" *Id.* In *Bosque v. Starr Cty.*, 630 F. App'x 300, 304 (5th Cir. 2015), the Fifth Circuit held in a First Amendment Retaliation case that, "Although this court has occasionally considered evidence in [a] neatly separated manner, attempting to cabin pretext evidence . . . is contrary to other precedent and commonsense. Given that this evidence is relevant to the inquiry, and presented at the summary judgment stage, the district court was required to view it in the light most favorable to the Plaintiffs."

not similarly situated. *Id.* (emphasis original).

*All of the comparators cited by Nikolova had both Dean Wood and Fenves as ultimate decisionmakers.*[8] Defendant contends that Fenves was not a decisionmaker from 2013-14 to 2014-15, but this is incorrect. During that time he was a member of the President's Committee, the university's highest level of review along with the President. Moreover, while serving on the President's Committee Fenves actually signed the "Recommendation for Change in Academic Rank/Status" form memorializing the approval of tenure for all of the comparators. *See e.g.* Dkt. 44-4 at 22, 29, 39 etc.

Defendant also suggests Nikolova cannot compare herself to candidates who were in their "up or out" year and not "accelerated." However, President Fenves' own testimony is incontrovertible that being "accelerated" or "early" was "not part of the discussion" for the decision against Nikolova's tenure at the President's Committee and it was *not* one of the reasons why UT denied tenure. Dkt. 44-1 at 399-400 (Ex. 14, Fenves Dep 117:18-118:3).

Regarding grant funding, it is undisputed that all engineering professors are evaluated on funding. Defendant argues that Plaintiff's comparators who performed "applied" research, which by Fenves' own admission requires *"much higher funding levels"* than Nikolova's,[9] were not similarly situated compared to Nikolova's theoretical research. However, when Fenves (and Wood) allege that Nikolova's "current funding" and "funding trajectory" were a reason for the denial of her tenure, it is absurd and defies logic that this Court and a jury could not at least consider and weigh the evidence that engineering professors *whose research requires more funding* were granted tenure *when they had less funding and a significantly worse "funding trajectory" than*

---

[8] Judge David Ezra applied this principle finding employees were similarly situated where the same person "determined all three employee's employment status." *Robertson v. Greater Tex. Fed. Credit Union*, No. 1:17-CV-1195-DAE, 2019 U.S. Dist. LEXIS 238754, at *18 (W.D. Tex. 2019).

[9] Ex. 14, Fenves Dep 133:16-134:21.

*Nikolova*. Following the Fifth Circuit's holding in *Lee*, this distinction does not "*account for* the difference in treatment" or make a comparison to Nikolova unfair or invalid. Rather, the evidence further illuminates and reinforces the discriminatory difference in treatment.[10]

Defendant's arguments that the comparators are from different departments or have different specific areas of research do not *"account for* the difference in treatment" (as required under *Lee*) between the comparators and Nikolova. It is uncontroverted as Chair Tewfik and UT's own rules provide[11] that all assistant professors are evaluated under the *same categories*, including research (publication and funding), teaching and service. Additionally, all were evaluated and decided on by the *same decisionmakers* of Fenves, Wood, as well as the engineering school-wide P&T Committee, made up of professors from different departments and different fields of study.[12]

Regarding publication records, Nikolova offers comparator evidence only for assistant professors who, like her, were also in the ECE Department and who were evaluated by the same ECE Department Chair and ECE Budget Council. The evidence shows that male assistant professors from her own department had publication records that were less accomplished or very comparable to Nikolova's, yet were awarded tenure. Finally, apart from the comparator evidence, Nikolova has presented abundant other evidence of pretext raising fact issues and has provided compelling evidence that a jury could determine the alleged reasons for denial are false.

---

[10] The Fifth Circuit has found that evidence of more dramatic disparate treatment is relevant and admissible. In *Powell v. Rockwell Int'l Corp.*, 788 F.2d 279, 283 (5th Cir. 1986), the Fifth Circuit found evidence that plaintiff's supervisor had committed more serious violations of company policy was properly admitted and "directly relevant, therefore, to the question of whether Powell was in fact discharged for violation of company policy . . . or whether that reason was a mere pretext for retaliating against Powell for filing his ADEA complaint."

[11] Dkt. 44-1 at 56 (Ex. 7, Rule 2-2160).

[12] Defendant also misstates evidence in its chart (Dkt. 47 at 5-7), including that Heidari had "obtained almost twice Nikolova's total grant funding while in rank at UT." This is completely wrong. On the two factors regarding funding that Nikolova was faulted for, current funding and trajectory of funding, (Dkt. 44-1 at 419 (Ex. 14, Fenves Dep. 196:4-7)), Heidari had obtained *only $200,000* in her years in rank at UT, *compared to $928,108* for Nikolova, and had *no funding at all remaining* and *no future funding*, versus $479,985 remaining for Nikolova and $240,00 projected into the future. Dkt. 44-1 at 62, 64 (Ex. 8 at UT 16917, 17025).

**4. Plaintiff Has Presented Evidence Raising Fact Issues On Retaliation.**

Defendant argues that Nikolova has not shown serious adverse employment actions with respect to her retaliation claims and cites various cases suggesting negative evaluations are not sufficient. However, when determining whether an adverse action would discourage an employee from making a complaint of discrimination, the Supreme Court put it simply: "Context matters." *Burlington Northern. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67, (2006). None of the cases Defendant cites involve assistant professors at a top tier research university putting their entire career on the line in what is for all practical purposes a once-in-a-lifetime opportunity to obtain tenure by opposing discrimination by a university president and their dean. Rather, all involve either lower-level employees or employees who, unlike Nikolova, had a history of prior performance issues and thus were not risking as much by making a complaint of discrimination.

As ECE Professor Yale Pratt explained, he was "not going to put anything negative on paper that will end up in the Dean's inbox. That is true for all of us. I am not often accused of being a nice guy, but I find myself bending over backward to be positive in my Peer teaching evaluation and put nothing in writing that could eventually hurt a colleague's promotion package." Dkt. 44-4 at 135 (Ex. 69 at P 3194). Both President Fenves and Chair Tewfik testified at length about how even the slightest word choice that might not be obvious to a typical person can send "red flags" to the President's Committee reviewing a tenure case. Dkt. 44-1 at 406-11; (Ex. 14, Fenves Dep. 143:4-163:8); Dkt. 44-1 at 177-79, (Ex. 12, Tewfik Dep 117:21-125:4). Fenves claimed that a statement in an external review letter from an MIT Professor that Nikolova's publication record "was very good" was actually a "weak" statement of support. Dkt. 44-1 at 406; (Ex. 14, Fenves Dep 144:22-25). Fenves even interpreted the statement that Nikolova was "in the top 20%" of cases that the reviewer evaluated who subsequently obtained tenure as "not a terribly strong case." *Id.* (145:14-19). Thus, a "Meets Expectations" review describing a "reasonable

publication and teaching record" and a "modestly funded" research group would be considered devastating to an assistant professor going up for tenure. Additionally, performance reviews are taken into account as part of Chair and Dean's determination of merit raises. Dkt. 44-1 at (Ex. 12, Tewfik Dep 244:19-245:23). Finally, the Fifth Circuit has on multiple occasions viewed the claimed retaliatory actions together and not compartmentalized into separate actions. *Haire,* 719 F.3d at 368 ("Collectively, these occurrences rise to the level of a Title VII 'adverse employment action.'"); *Robin v. City of Frisco*, Civil Action No. 4:16-cv-00576, 2017 U.S. Dist. LEXIS 189053, at *21 (E.D. Tex. 2017) ("Plaintiff's PIP and negative performance review can support a retaliation claim"). Taken individually or together, the unfavorable reviews meet the standard for an adverse employment action in a retaliation case.

Defendant makes much about a comment in an email by a colleague, Professor Brian Evans, in which he said that the "I read your dialogue on ideas and practices for effective teaching in its entirety. Very interesting and informative." Doc 44-4 at 114-17, Ex. 66, Email Peer Teaching Evaluation. Evans was referring to the "dialogue" contained in the polite but contentious email exchange between Nikolova and Christine Julien in which Nikolova states she believed the evaluation was not accurate, unfair, and problematic because it was done at the end of the semester *when Nikolova was not actually teaching the course*, as well as Nikolova's attempt to provide substantive information to refute Julian's negative review and the near total absence of positive comments or feedback. *Id.* Evan's simple, polite comment on their "entire dialogue" in no way ameliorated the negative impact of the review on Nikolova's future tenure chances.

Finally, Defendant cites *dicta* from a case that "but-for" causation is a "high burden." Dkt. 47 at 10. The U.S. Supreme Court explained otherwise in *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1739 (2020), stating that "but-for" causation "can be a sweeping standard. Often, events have multiple but-for causes. So, for example, if a car accident occurred *both* because the defendant ran

a red light and because the plaintiff failed to signal his turn at the intersection, we might call each a but-for cause of the collision…. a defendant cannot avoid liability just by citing some *other* factor that contributed to its challenged employment decision."

Dr. Nikolova has presented ample summary judgment evidence that a jury could consider and find that Defendant discriminated against her because of her sex (including pregnancy) and retaliated against her after she opposed discrimination.

Respectfully submitted,

CREWS LAW FIRM, P.C.
701 Brazos, Suite 900
Austin, Texas 78701
(512) 346-7077
(512) 342-0007 (Fax)
schmidt@crewsfirm.com

By: /s/ Robert W. Schmidt
Robert W. Schmidt
State Bar No. 17775429
Joe K. Crews
State Bar No. 05072500

Robert Notzon
The Law Office of Robert Notzon
Texas Bar No. 00797934
1502 West Avenue
Austin, Texas 78701
(512) 474-7563
(512) 852-4788 facsimile

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2021, this document was served pursuant to Federal Rules of Civil Procedure on counsel for Defendant through the Court's electronic filing system at the following address:

Benjamin L. Dower
Amy S. Hilton
Office of the Attorney General of Texas

By: /s/ Robert W. Schmidt