IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| EVDOKIA NIKOLOVA, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION NO. 1:19-CV-00877-RP |
| UNIVERSITY OF TEXAS AT AUSTIN | § § § § | |
| Defendant. | § § | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE OPINION AND TESTIMONY OF PLAINTIFF'S EXPERT DR. PETER GLICK**

Defendant The University of Texas at Austin ("Defendant" or "UT Austin") files this Reply in support of its Motion to Exclude the Opinions and Testimony of Plaintiff Evdokia Nikolova's Expert Dr. Peter Glick ("Motion").[1]

## I.   INTRODUCTION

Nothing in Nikolova's response to UT Austin's Motion ("Response")[2] transforms Glick's opinions and testimony into admissible expert testimony. Rather than address the reliability standards of Rule 702 and *Daubert*, Nikolova argues that social framework testimony, in general, is admissible by citing to inapplicable and outdated cases from outside the Fifth Circuit.

The case that is on all fours is *Mullenix v. The University of Texas at Austin*, in which a court in this district recently excluded Glick's strikingly similar opinions and testimony in another UT Austin faculty discrimination case. Nikolova attempts to distinguish *Mullenix* by arguing that the court "mischaracterized" the Supreme Court's assessment of social framework testimony in *Wal-mart v. Dukes* and by claiming that Glick's opinions in this case meaningfully differ from those in *Mullenix*

---

[1] ECF 49.
[2] ECF 53.

1

because that case focused on "multiple decisionmakers," rather than the single decision-maker involved in this case. Neither argument holds water or addresses the fundamental lack of reliability of Glick's opinions in this case.

In an effort to salvage some portion of Glick's testimony, Nikolova argues that Glick's summary of research regarding stereotypes and implicit bias should be admissible on its own, even if Glick's opinions regarding the facts of this case are excluded. However, numerous courts have held that such testimony will not assist the trier of fact and will lead to jury confusion.

## II.   ARGUMENTS & AUTHORITIES

### A.   Nikolova's Response fails to address the fundamental flaws in Glick's report.

In its Motion, UT Austin established that Glick's "social framework" testimony fails to meet the "reliable principles and methods" standard for expert testimony under Rule 702 and *Daubert*.[3] Nikolova's Response attempts to sidestep the specific failures in Glick's testimony by arguing that courts have admitted "social science and psychological testimony."[4] Setting aside (for the moment) the admissibility of social framework testimony, in general, Glick's own admission makes it clear that his testimony *about this case* fails the reliability standard in Rule 702.

To qualify as reliable scientific opinion, Glick's opinion must be "derived by the scientific method" and "based on scientifically valid principles."[5] However, Glick acknowledges in his report and deposition that his opinions about the possibility of bias and unintentional discrimination in this case are *not* based on accepted scientific principles and methodology,[6] as they have not been tested, are not subjected to peer review or publication, and are not accepted by the relevant scientific

---

[3] ECF 49 at 8-13.
[4] ECF 53 at 8-13. As discussed further below, Nikolova's Response highlights the potential admissibility of such "social science and psychological testimony," but not *social framework* testimony, which has been subject to far greater judicial scrutiny.
[5] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 & 597-598 (1993).
[6] ECF 49-1, Glick Rpt. at 6.

community.[7] Courts have repeatedly excluded this type of social framework testimony as unreliable under Rule 702 and *Daubert*,[8] including Glick's similar testimony in *Mullenix*.[9]

Nikolova never addresses Glick's admitted lack of scientific methodology to support his opinions in this case. Rather, Nikolova simply claims that "social sciences and psychological expert testimony has been admitted and relied on by courts and juries for many years,"[10] and then proceeds to mischaracterize various cases. None of Nikolova's cited cases supports the conclusion that Glick's testimony is admissible here.

First, Nikolova claims that Glick's testimony is reliable because the Supreme Court "admitted and relied upon" social framework testimony in *Price Waterhouse v. Hopkins*.[11] To be clear, the Supreme Court did not hold social framework testimony was admissible under Rule 702. Rather, the three-member plurality opinion determined that Price Waterhouse's challenge to the social framework testimony was waived because defense counsel did not challenge the expert's testimony at trial.[12] Moreover, Justice Kennedy's dissent made clear the limits of the *Price Waterhouse* decision with respect to social framework testimony by stating: "Today's opinions cannot be read as requiring factfinders to credit testimony based on this type of analysis."[13]

---

[7] ECF 49-2, Glick Dep. 199:23-201:4.
[8] *See, e.g.*, *E.E.O.C. v. Bloomberg L.P.*, No. 07 CIV. 8383 LAP, 2010 WL 3466370, at *15 (S.D.N.Y. Aug. 31, 2010) (rejecting similar social framework testimony where expert "[b]y his own admission . . . did not conduct a scientific study that would meet peer review standards"); *Van v. Ford Motor Co.,* 332 F.R.D. 249, 267 (N.D. Ill. 2019) (excluding social framework expert testimony where "other than citing to the social framework methodology, Plaintiffs do not explain the process by which [the expert] reached her conclusions regarding the prevalence of sexual harassment").
[9] *Mullenix v. The Univ. of Tex. at Austin*, No. 1-19-cv-1203-LY-SH, 2021 WL 4304815, at *4 (W.D. Tex. Sept. 21, 2021) (excluding Glick's testimony where he "acknowledges that his opinions as to specific causation in this case are not scientific conclusions").
[10] ECF 53 at 9.
[11] 490 U.S. 228 (1989), *superseded by statute*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat 1071, *as recognized in Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009 (2020).
[12] *See* 490 U.S. at 255.
[13] *See id.* at 293 n. 5 (Kennedy, J., dissenting).

The Supreme Court later made clear its view by rejecting social framework testimony in *Wal-Mart Stores v. Dukes,* where the plaintiff's expert, like Glick here, could not offer any opinion regarding the likelihood of discrimination with any scientific certainty based on a valid methodology.[14] Indeed, neither the Supreme Court nor the Fifth Circuit has ever ruled that social framework testimony, like that proffered by Glick in this case, can survive a challenge under Rule 702.[15]

Nikolova then cites *United States v. Simmons*,[16] a case in which the Fifth Circuit allowed testimony from a licensed psychologist regarding indicia of rape-victim behavior. But, the Fifth Circuit's holding in *Simmons* (which also pre-dates *Dukes*) is limited to the particular circumstances of rape victims, as the court recognized that "naturally occurring circumstances, such as the social stigma attached to rape, may preclude ideal experimental conditions and controls," and therefore "other indicia of reliability" must be used.[17] Nikolova gives no reason why the unique circumstances and limitations inherent in studying rape victims should be applicable to the employment context, which is unsurprising given that Glick cited dozens of studies analyzing stereotyping and bias in the workplace, but performed no such analysis in this case.[18]

Nikolova's reliance on the Seventh Circuit's decision in *Tyus v. Urban Search Management*,[19] also decided long before *Dukes*, is similarly misplaced. In *Tyus*, the proposed expert was a psychologist testifying on interpretation of advertising, and the court made explicit note of the sufficient materials relied on, the "well known 'focus group' method" used by the expert, and how those applied to the

---

[14] 564 U.S. 338, 354-55 (2011).
[15] As the court in *Mullenix* noted, *Price Waterhouse* is easily distinguishable and, importantly, pre-dates *Dukes*. 2021 WL 4304815, at *6 n.7.
[16] 470 F.3d 1115 (5th Cir. 2006), discussed at ECF 53 at 10.
[17] 470 F.3d at 1123.
[18] See, e.g., ECF 49-1, Glick Rept. at nn. 3, 9, 16, 18-21, 23-26, 30, 33, 35, 38, 53, 56, 57, 59, 60 & 63-64.
[19] 102 F.3d 256 (7th Cir. 1996), discussed at ECF 53 at 12-13.

case at hand.[20] There is little relation between *Tyus* and an employment discrimination case, particularly in light of Glick's admitted failures to utilize a scientifically accepted methodology and his reliance on a limited set of materials chosen by Nikolova's counsel.

Finally, Nikolova cites cases from district courts outside the Fifth Circuit that purportedly admitted social framework testimony similar to Glick's.[21] As an initial matter, Nikolova's own cases recognize that social framework testimony that attempts to apply social science research to the facts of the case (as does Glick's) should be excluded.[22] Furthermore, these cases are similarly unavailing, as they pre-date *Dukes* or cite the same district court cases that pre-date *Dukes*.[23]

To be clear, only one of those cases involved testimony from Glick—*Tuli v. Brigham & Women's Hospital*, a case from the Western District of Massachusetts predating *Dukes*.[24] In the post-*Dukes* era, numerous federal courts have recognized *Tuli*'s limited persuasive value and properly excluded experts purporting to provide "social framework" testimony.[25] In light of Nikolova's reliance on *Tuli*, it is important to understand the critical differences between that case and the issues presented by UT

---

[20] *Id.* at 263-264.
[21] ECF 53 at 12.
[22] *See Chinn v. Whidbey Pub. Hosp. Dist.*, Civ. A. No. C20-995 TSZ, 2021 WL 5200171, at *4 (W.D. Wash. Nov. 9, 2021) ("Dr. Rudman will not be permitted to testify as to whether Dr. Chinn's treatment at Whidbey Health was consistent with any prejudicial treatment and/or backlash effects."); *Maciel v. Thomas J. Hastings Props.*, Civ. A. No. 10-12167-JCB, 2012 WL 13047595, at *5 (D. Mass. Nov. 30, 2012) ("Dr. Harris's opinions regarding bias in this case are too attenuated from the existing data to be reliable.") (emphasis in original).
[23] *See Maciel*, 2012 WL 13047595 at *9; *Apilado v. N. Am. Gay Amateur Ath. All.*, Civ. A. No. C10-0682, 2011 WL 13100729 (W.D. Wash. July 1, 2011); *Chinn*, 2021 WL 5200171, at *3-4 (citing *Apilado*).
[24] 592 F. Supp. 2d 208 (D. Mass., 2009).
[25] *E.g.*, *Van v. Ford Motor Co.*, 332 F.R.D. 249 (N.D. Ill. 2019) (citing *Tuli*, but excluding expert who goes beyond permissible "social framework" testimony to analyze and opine on case-specific facts); *Karlo v. Pittsburgh Glass Works, LLC*, No. 2:10-CV-1283, 2015 WL 4232600, at *5, 8 (W.D. Pa. July 13, 2015) (citing *Tuli*, but excluding expert where the expert "attempts to apply his research to the facts of this case"); *Childers v. Trustees of the Univ. of Pa.*, No. 14-2439, 2016 WL 1086669, at *6 (E.D. Pa. Mar. 21, 2016) (excluding social framework expert because her "analysis of the tenure process at Penn [was] beyond her expertise, unlike the analysis of the expert in *Tuli*, 592 F. Supp. 2d 208, who opined much more generally about stereotyping").

5

Austin's Motion in this case.

In seeking to preclude Glick's testimony, the defendant in *Tuli* filed a roughly 4-page motion making only <u>one</u> argument: that Glick did not apply "any 'scientific, technical or specialized knowledge to the specific facts'" of the case, and therefore would not assist the jury in determining issues in the case.[26] As a result, the court in *Tuli* did <u>not</u> address: (1) whether Glick's opinion was "derived by the scientific method" or "based on scientifically valid principles";[27] (2) whether Glick relied upon sufficient facts or data "of a type reasonably relied upon by experts in the particular field";[28] or (3) whether Glick's opinion was unreliable based on his failure to consider other causes.[29] As UT Austin's Motion seeks to preclude Glick's report and testimony on these precise bases (among others), the narrow holding of the district court in *Tuli* is inapplicable here (as recognized by the court in *Mullenix*) and is neither persuasive nor binding authority in this case.[30]

### B. The court's decision in *Mullenix* is applicable here.

Nikolova attempts to distinguish the decision in *Mullenix* by alleging that Glick's report in that case was "far more fact dependent and considered and opined on the actions of multiple

---

[26] Exh. A, Defendants' Motion in Limine in *Tuli* at 1.
[27] *Daubert*, 509 U.S. at 590, 597.
[28] *Id.* at 595; FED. R. EVID. 703.
[29] *See, e.g.*, *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000) (expert testimony was unreliable because, among other reasons, the expert failed "to consider other variables such as education and experience as explanations for any observed discrepancy between promotion rates").
[30] *Mullenix*, 2021 WL 4304815, at *6 n.7 ("The Court does not find this ruling persuasive because the defendants argued that Glick had not "applied his research to the specific facts" of that case; they did not raise the same objections regarding reliability as Defendant in this case."). In addition, Glick's report in this case differs substantially from the report he provided to the plaintiff in *Tuli* twelve years ago. *Compare* ECF 49-1, *Nikolova* Glick Rept. *with* Exh. B, *Tuli* Glick Rept. Glick's report here includes 21 pages directly attempting to use social science research to analyze and opine on the facts of this particular case, relying on documents provided by Nikolova's counsel (and ignoring deposition testimony from University witnesses. *See* ECF 49-1 at 40-61 (section entitled "Application to Current Case and Opinions). The Glick-*Tuli* Report, on the other hand, described evidence in that case across only five paragraphs, citing only to deposition testimony of other witnesses. Exh. B, *Tuli* Glick Rept. at 40-42.

6

decisionmakers (as opposed to simply Dean Wood in the case at hand)."[31] This characterization of the two reports is incorrect, and it is a distinction without difference.

Glick's report in *Mullenix* was prepared within two months of his report in this case, and large portions of Glick's report in *Mullenix* are copied verbatim from his report here.[32] In both cases, Glick relied solely on documents and information fed to him by the plaintiff's counsel.[33] In addition, Glick admits that the specific causation opinions in both reports are not based on a scientifically valid methodology and do not attempt to rule out or otherwise discuss alternative explanations.[34] Furthermore, both reports impermissibly conflate implicit bias and unintentional discrimination with the type of intentional discrimination prohibited by Title VII.[35] Simply put, Glick's reports in this case and in *Mullenix* are similar in every material respect upon which the court in *Mullenix* excluded Glick's opinions and testimony.

Nikolova also seeks to distinguish *Mullenix* because Glick's report in this case focuses on one decision-maker—Dean Wood—whereas Glick's report in *Mullenix* focuses on multiple decision-makers. Yet, Nikolova offers no authority for why this purported distinction makes any difference with respect to the reliability and admissibility of Glick's report in this case versus *Mullenix*. Moreover,

---

[31] ECF 53 at 16.
[32] *Compare* ECF 49-1, *Nikolova* Glick Rpt. at 3-5, 10-12, 12-18, 35-38 *with* Exh. C, *Mullenix* Glick Rept. at 3-5, 12-14, 23-28, 43-46 (duplicate or near-duplicate sections).
[33] *Compare* ECF 49-2, Glick Dep. 58:11-62:1, *with* ECF 49-1, Glick Rpt. at 9 (section entitled "Documents Reviewed in Preparation of this Report"), *and Mullenix*, 2021 WL 4304815, at *6 ("Glick's expert report is not reliable because it was based on unrepresentative data. By his own admission, Glick's opinions are based on selected documents provided to him by Plaintiff.").
[34] *Compare* ECF 49-2, Glick Dep. 199:23-201:4 (Glick's methodology is not accepted by the relevant scientific community), *and id.* at 69:19-70:14 (Glick is unable to rule out any alternative explanations), *with Mullenix*, 2021 WL 4304815, at *3-4 (Glick's opinions are "not accepted by the relevant scientific community," and are "not based on scientific principles and methodology.").
[35] *Compare* ECF 49-2, Glick Dep. 30:17-33:20 (admitting that his testimony and opinions about bias and discrimination include unconscious or implicit bias, as well as unintentional discrimination), *with Mullenix*, 2021 WL 4304815, at *7 ("The burden is on the Plaintiff to prove that she was discriminated against because of her sex, not just that gender stereotyping or bias exists throughout society.").

Nikolova's Response ignores Glick's failure to address the consultative role of the President's Committee or the ultimate decision-maker in this case, UT Austin President Dr. Gregory Fenves.[36] Indeed, Glick's report fails to consider any alternative explanations other than bias by Dean Wood, despite of Glick's admission that there are any number of potential alternative explanations.[37] As both the Fifth Circuit and the Federal Rules Advisory Committee recognize, the accounting for alternative explanations goes directly to whether an expert is sufficiently reliable under Rule 702, and Glick's failure to do so renders his opinions "essentially worthless."[38] Although Nikolova attempts to distinguish *Munoz* as a disparate impact case, the Fifth Circuit and its district courts have repeatedly cited failure to consider alternative explanations as a reason to exclude expert testimony in a variety of circumstances.[39]

---

[36] UT Austin's Motion inartfully suggested that both Dr. Fenves and the President's Committee were decision-makers regarding Nikolova's early tenure application. (ECF 49 at 16.) To be clear, the President's Committee serves in a consultative role regarding tenure decisions, with the President making the ultimate tenure decision. (ECF 39-2 at App'x 385-86, 741.) As stated in UT Austin's Motion for Summary Judgment, the President was the ultimate decision-maker regarding Nikolova's tenure application in this case, and the President's Committee performed their typical consultative role. (ECF 39 at 12; ECF 39-2 at 398-404, 740-741.)

[37] ECF 49-2, Glick Dep. 69:19-70:14 (agreeing that "alternative explanations offered by defendant to explain their actions cannot be ruled out scientifically"); ECF 49-2, Glick Dep. 165:2-169:7 (Glick admitting "I can't rule out that – that those judgements [made by Dean Wood] are due to other reasons" and "I can't tell . . . with some scientific probability that that was what happened.").

[38] *Munoz*, 200 F.3d at 301; FED. R. EVID. 702 Advisory Committee's Note to 2000 Amendment ("Courts both before and after *Daubert* have found other factors relevant in determining whether expert testimony is sufficiently reliable to be considered by the trier of fact. These factors include: . . . (3) Whether the expert has adequately accounted for obvious alternative explanations.").

[39] *See, e.g., Black v. Food Lion, Inc.*, 171 F.3d 308, 313-14 (5th Cir. 1999) (reversing trial court's admission of expert because he engaged in post-hoc reasoning when establishing cause of injury without eliminating other possibilities); *Lee Green v. LA. Dep't of Pub. Safety & Corr.*, 2:06 CV 1018, 2010 WL 1628769, at *6 (W.D. La. Apr. 20, 2010) ("Corbett's expert report failed to consider alternate causes of Oliver Green's hoarseness and his death; thus, his methodology is flawed and his testimony is unreliable."); *U.S. ex rel. Barron v. Deloitte & Touch, LLP*, Civ. A. No. SA-99-CA-1093-FB, 2008 WL 7136869 at *3 (W.D. Tex. Sept. 26, 2008) (excluding portion of expert report in False Claims Act case where expert "made no attempt to account for obvious alternative explanations"); *Cannon v. BP Prod. N. Am., Inc.*, Civ. A. No. 3:10-CV-00622, 2013 WL 5514284, at *10 (S.D. Tex. Sept. 30, 2013) (excluding mass tort expert testimony where expert failed to account for other causes of damages).

### C. Glick reliance on data chosen by Nikolova's counsel undermines the reliability of his opinions.

Nikolova also argues that despite Glick's reliance on hand-selected documents chosen by Nikolova's counsel, Glick's opinion is admissible because there is no requirement for an expert to "review all documents in a case"[40] Nonetheless, an expert must rely on the kinds of facts or data on which experts in the field would reasonably rely.[41] For this reason, the Fifth Circuit applies "common-sense skepticism" when an expert reviews only a plaintiff's compilation of data.[42] And for the same reasons, courts specifically addressing social framework testimony in employment cases have repeatedly found that a selective review of documents, without any analysis of whether those documents were representative or otherwise reliable, is insufficient under Rule 702.[43] Even Nikolova's own outlier case allowing case-specific social framework testimony did so only after finding the

---

[40] ECF 53, at 17.
[41] Fed. R. Evid. 703; *see also Overcoming Word Praise Cntr., Int'l v. Phila. Indem. Ins. Co.*, No. 7:15-CV-00060-O, 2015 WL 11120668, at *4 (N.D. Tex. Oct. 13, 2015) (expert "meets the factors set forth in Federal Rule of Evidence 702 as reinforced by *Daubert*," because "his testimony is the product of reliable principles and methods used by similar experts in his field.").
[42] *Munoz*, 200 F.3d at 301-02 (affirming district court's exclusion of expert where he "relied on the plaintiffs' compilations of data, which gives rise to a 'common-sense skepticism' regarding the expert's evaluation and did not seek to verify the information presented to him."); *see also Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 372 (5th Cir. 2000) (expert's failure to conduct independent examination of data he was provided was an "insurmountable obstacle[]" under *Daubert*.).
[43] *E.g., Childers,* 2016 WL 1086669, at *5-6 (expert's "methodology of sifting through evidence to find passages that support the Plaintiff's theory of the case," without any review of "data such as information relating to similarly-situated individuals," was insufficient under Rule 702's requirement of reliability); *Karlo*, 2015 WL 4232600, at *7 (excluding social framework expert where expert failed to perform independent, objective analysis to determine if implicit bias played a role when terminating plaintiffs, and did not visit defendant's workplace, speak with any employees, or interview managers involved); *Bloomberg,* 2010 WL 3466370, at *14 (excluding social framework expert for his reliance on insufficient facts and data, because he "only analyzed material provided and selected by the EEOC" and he "made no effort to ensure that the materials that he reviewed were representative.") (internal citations omitted); *Howard v. Cook County Sheriff's Office,* No. 17-CV-8146, 2019 WL 3776939, at *3 (E.D. Ill. Aug. 12, 2019) (excluding social framework expert because "[r]ather than gathering evidence independently through a survey, [the expert] relied on declarations and deposition testimony from the named plaintiffs, as well as declarations by other putative class members and a tour of the jail.").

expert's testimony was "based on sufficient facts and data" because he "was given every deposition taken to date," as well as witness declarations, which were incorporated into his analysis.[44]

Here, Glick performed no such review of depositions and declarations, and as Glick admitted, experts in the field of social psychology do not reasonably rely on the type of cherry-picked documents Glick relied on in this case.[45]

### D. Glick's summary of stereotyping and implicit bias research should be excluded.

Implicitly recognizing the weakness of her arguments, Nikolova requests that, "in the event the Court were to rule that some of Dr. Glick's opinions applying the research to the facts of this case should be excluded," Glick's testimony relating to social science research, in general, should nevertheless be admitted.[46] This request is improper because, as, Glick admits, his report conflates intentional discrimination with unintentional discrimination based on implicit bias and stereotypes.[47]

The *Mullenix* court observed that, "[b]ecause the majority of Glick's expert report focuses on gender stereotyping and bias throughout society, the jury may assume that such stereotyping and bias existed at [the University of Texas]."[48] And because "[t]he burden is on the Plaintiff to prove that she was discriminated against because of her sex, not just that gender stereotyping or bias exists throughout society," the court in *Mullenix* held that Glick's opinions would not assist the trier of fact.[49] No court in the Fifth Circuit has admitted a summary of implicit bias research to educate the jury in a Title VII case. Instead, courts recognize that social framework testimony regarding implicit basis will not assist the trier of fact in cases requiring evidence of intentional discrimination.[50]

---

[44] *Apilado,* 2011 WL 13100729 at *2.
[45] ECF 49-2, Glick Dep. 47:22-48:7, 73:9-18, 181:12-18.
[46] ECF 53 at 4.
[47] ECF 49-2, Glick Dep. 30:17-33:20.
[48] 2021 WL 4304815 at *7.
[49] *Id.*
[50] *Bloomberg*, 2010 WL 3466370, at *17 ("Dr. Borgida's proposed testimony would not assist the trier of fact with respect to EEOC's claims of a pattern or practice of sex/pregnancy discrimination"); *E.E.O.C. v. Wal–Mart Stores, Inc.*, No. 01 Civ. 339, 2010 WL 583681, at *3 (E.D.Ky. Feb. 16, 2010)

### III.     CONCLUSION

The Court should strike Glick's testimony and opinions because they do not satisfy the requirements regarding expert testimony set forth in the Federal Rules of Evidence.

Dated: December 21, 2021                              Respectfully submitted,

                                                      /s/ Darren Gibson
                                                      Darren Gibson
                                                      Texas State Bar No. 24068846

                                                      LITTLER MENDELSON, P.C.
                                                      A Professional Corporation
                                                      100 Congress Avenue, Suite 1400
                                                      Austin, Texas  78701
                                                      512.982.7250
                                                      512.982.7248 (Fax)
                                                      dgibson@littler.com

                                                      **ATTORNEYS FOR DEFENDANT**

### CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2021, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

                                                      /s/ Darren Gibson
                                                      Darren Gibson

---

(excluding social psychologist who opined that gender stereotyping affected decisions because expert did not provide any evidence supporting conclusion that gender stereotyping necessarily includes intentional discrimination); *Childers*, 2016 WL 1086669, at *6 ("Because of these flaws and because stereotypes of women in the workplace are well within a layperson's common knowledge, Dr. Halpert's testimony will not help the trier of fact, and may even cause confusion, given how speculative her conclusions about the tenure process at Penn, in general and as to Dr. Childers, are.").