# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAGUN TULI, M.D.,<br>              Plaintiff<br>v.<br><br>BRIGHAM & WOMEN'S HOSPITAL, INC.,<br>ARTHUR DAY, M.D.,<br>              Defendants | Civil Action No. 1:07-cv-12338 |

## DEFENDANTS' MOTION IN LIMINE
## TO PRECLUDE TESTIMONY OF PLAINTIFF'S EXPERT, PETER GLICK

Now come the defendants, Arthur Day, M.D. and Brigham and Women's Hospital, and hereby move this Court, to enter an order, in limine, precluding plaintiff's expert, Peter Glick from testifying at the trial of this case. The Court must preclude Professor Glick from testifying concerning the "science of sex stereotyping and discrimination" because 1) by his own admission, he has not applied any "scientific, technical or specialized knowledge" to the specific facts of this case (as required under Federal Rule of Evidence 702(3)) and 2) his general, non-case specific testimony will not assist the jury in determining the issues in this case (namely, whether the defendant's discriminated against Dr. Tuli), see Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 584 (1993; Kumho Tire Co. v. Carmichael, 526 U.S. 137, 156 (1999).

### BACKGROUND

The plaintiff has asserted discrimination claims against the defendants. She alleges that the defendants discriminated against her in connection with her employment "on the basis of her color, gender and national origin." See Plaintiff's Complaint, Count I, ¶ 87. To establish a prima facie case for discrimination under a mixed motive framework of liability, Dr. Tuli must prove that discrimination motivated the defendant's employment decisions, even if

discrimination was not the sole reason in those decisions. See Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).

The plaintiff has also identified Professor Peter Glick a Psychology Professor, as an expert who will testify on the "science of sex stereotyping and discrimination." *Ex. 1, Professor Glick's "Report on Sex Stereotyping."* In his report, Professor Glick expressly acknowledged that he has no opinion about whether Dr. Tuli was the victim of sex discrimination. Ex. 1. For example, he stated:

1) "I provide no opinion about whether or not Dr. Tuli specifically was the victim of discriminatory treatment, leaving the decision-makers to render this judgment." *Ex. 1, p. 7;*

2) "I do not draw specific conclusions as to whether Dr. Tuli was the victim of sex discrimination for two reasons. First, making this call is the role of the decision-makers in this case rather than an expert witness who gives social framework testimony. Second, it is not possible to make a judgment with 'scientific certainty' about any 'real world' case . . . . ." *Ex. 1, p. 39; and,*

3) "I do not try to determine the credibility of the allegations nor to render an ultimate conclusion as to whether discrimination occurred." *Ex. 1, p. 29.*

More recently, at his deposition, Professor Glick confirmed that he will not provide opinions or "ultimate conclusions" about whether Dr. Tuli was the victim of discrimination. *Ex. 2, Transcript of Deposition of Professor Glick, p. 15, 62.* He also acknowledged that he cannot testify to a "reasonable degree of scientific certainty" discrimination occurred in this case because he did not perform any scientifically controlled study. *Ex. 2, pp. 59-62.*

2

**ARGUMENT**

I.  **THE COURT SHOULD ENTER AN ORDER PRECLUDING PROFESSOR GLICK FROM TESTIFYING CONCERNING**

In general, in assessing the admissibility of scientific testimony or evidence, the trial judge must act as a gatekeeper "insuring that the fact-finding process does not become distorted by what is popularly called 'junk science.'" Whiting v. Boston Edison, 891 F. Supp. 12, 24 (D. Mass. 1995). In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 584 (1993), the United States Supreme Court designated the trial judge as the "gatekeeper," charging the judge with the responsibility of ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert, 509 U.S. at 589. To aid trial judges in deciding on the admissibility of an expert's testimony, the Daubert Court provided that "[t]he subject of an expert's testimony must be 'scientific knowledge,'" where the adjective "scientific" implies a grounding in the methods and procedures of science. 509 U.S. at 589-90. "In short, the requirement that an expert's testimony pertain to 'scientific knowledge' establishes a standard of evidentiary reliability." Id. at 590.

The Daubert Court also noted that the trial judge is assigned the "task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."Id. at 591; see Kumho Tire Co. v. Carmichael, 526 U.S. 137, 156 (1999) ("The trial court had to decide whether this particular expert had sufficient specialized knowledge to assist the jurors "'in deciding the particular issues in this case.'").

Federal Rule of Evidence 702 (which was amended to codify the Supreme Court's decision in Daubert and Kumho Tire) provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon

3

> sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702; see Alves v. Mazda Motor of America, 448 F. Supp. 285, 299 (D.Mass. 2006).

In the instant case, Professor Glick's proposed testimony concerning the "science of sex stereotyping and discrimination" must be excluded because the plaintiff cannot meet her burden of proving that it is admissible the standards set forth in Daubert, and its progeny. Specifically, Professor Glick's testimony is inadmissible because he has not applied his alleged "expertise" to the specific facts of this case (as required under Federal Rule of Evidence 702(3)). By his own admission, Professor Glick has not applied the "science of sex stereotyping and discrimination" to the facts of this case. In fact, he has repeatedly indicated that he will not provide any specific opinion on the question of discrimination in this case. He cannot testify to a "reasonable degree of scientific certainty" that discrimination occurred in this case.

Moreover, there is no indication that Professor Glick's general testimony concerning stereotyping and discrimination will assist the jury in resolving the issues in this case. His opinions, as a "prejudice researcher," concerning the principles of stereotyping and discrimination within the field of psychology will not be helpful to the jury making the determination of whether Dr. Tuli was a victim of discrimination. His testimony will only confuse the jury and introduce issues or concepts that have no application to the resolution of the issues in this case.

In this regard, a recent decision entitled Chadwick v. Wellpoint, Inc., 550 F. Supp. 2d 140 (D. Me. 2008) is instructive because the court excluded expert testimony concerning the "extent of sex-based stereotyping in the United States and its workplaces." The plaintiff alleged sex discrimination because she was denied a promotion for which she said she was better qualified than her competitor- another woman. Her expert was prepared to testify generally

4

concerning "sex-based stereotyping." The <u>Chadwick</u> Court held that this proposed testimony was not admissible under Rule 702 of the Federal Rules of Evidence. The court concluded that the testimony concerning the prevalence of sex-based stereotypes in America is no substitute for actual evidence of discrimination in the plaintiff's workplace.

## **CONCLUSION**

For the above reasons, the Court should issue and order barring the Professor Glick from testifying at the trial of this case.

                                                            Respectfully submitted,
                                                            Arthur Day, M.D.
                                                            By his attorney,

*/s/ John P. Ryan*

_____
John P. Ryan, BBO #435660
John A. Donovan III, BBO #631110
Sloane & Walsh, LLP
3 Center Plaza
Boston, MA 02108
(617) 523-6010

Respectfully submitted,
Brigham & Women's Hospital
By its attorneys,

*/s/ Matthew Grygorcewicz*

_____
Robert R. Hamel, Jr., BBO #567194
Matthew Grygorcewicz, Esq., BBO #655771
Melick, Porter & Shea, LLP
28 State Street
Boston, MA 02109
(617) 523-6200

5

CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of December 2008, that the within was electronically filed with the Court using the ECF system. The following counsel of record are registered with the Court and will be served electronically through the ECF system and by regular mail, postage prepaid: Margaret M. Pinkham, Brown Rudnick LLP, One Financial Center Boston, MA 02111, mpinkham@brownrudnick; Robert Hamel, Melick Porter and Shea, 28 State Street, Boston, MA and Deborah Thaxter, Nixon Peabody, LLP, 100 Summer Street, Boston, MA 02110-2131

/s/ Debra Ito
_____
Debra L. Ito