UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| EVDOKIA NIKOLOVA<br>    Plaintiff, | §<br>§<br>§ | |
| V. | §<br>§ | CASE NO. 1:19-cv-00877-RP |
| UNIVERSITY OF TEXAS AT<br>AUSTIN,<br>    Defendant. | §<br>§<br>§<br>§ | |

## PLAINTIFF'S PROPOSED JURY CHARGE

TO THE HONORABLE ROBERT PITMAN:

Evdokia Nikolova, Ph.D., ("Dr. Nikolova" or "Plaintiff") submits this proposed jury charge.

Respectfully submitted,

CREWS LAW FIRM, P.C.
701 Brazos, Suite 900
Austin, Texas 78701
(512) 346-7077
(512) 342-0007 (Fax)
schmidt@crewsfirm.com


By:  /s/  Robert W. Schmidt
Robert W. Schmidt
State Bar No. 17775429
Joe K. Crews
State Bar No. 05072500

Robert Notzon
The Law Office of Robert Notzon
Texas Bar No. 00797934
1502 West Avenue
Austin, Texas 78701
(512) 474-7563
(512) 852-4788 facsimile

1

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 2, 2022, this document was served pursuant to Federal Rules of Civil Procedure on counsel for Defendants at the following address:

Benjamin L. Dower
Assistant Attorney General
Office of the Attorney General of Texas
General Litigation Division
P.O. Box 12548
Capitol Station,
Austin, Texas 78711-2548
Fax (512) 320-0667
benjamin.dower@oag.texas.gov

                                       /s/   Robert W. Schmidt
                                        Robert W. Schmidt

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **EVDOKIA NIKOLOVA**<br>    Plaintiff, | §<br>§<br>§ | |
| V. | §<br>§ | CASE NO. 1:19-cv-00877-RP |
| **UNIVERSITY OF TEXAS AT AUSTIN,**<br>    Defendant. | §<br>§<br>§<br>§ | |

**JURY CHARGE**

**MEMBERS OF THE JURY**:[1]

It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

If I have given you the impression during the trial that I favor either party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments. It is important for

---

[1] Fifth Circuit Pattern Jury Instructions §3.1 (2020).

you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence. You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for the plaintiff or the defendant in arriving at your verdict.

## PARTIES

The Plaintiff in this case is Dr. Evdokia Nikolova, who I will refer to as Dr. Nikolova. The Defendant in this case is the University of Texas at Austin, who I will refer to as UT Austin. An entity such as UT Austin can only function through its employees. Actions taken by supervisory employees as part of their employment are considered to be the actions of UT Austin.[2]

## BURDEN OF PROOF: PREPONDERANCE OF THE EVIDENCE[3]

Dr. Nikolova has the burden of proving her case by a preponderance of the evidence. To establish by a preponderance of the evidence means to prove something is more likely so than not so. If you find that Dr. Nikolova has failed to prove any element of her claim by a preponderance of the evidence, then she may not recover on that claim.

---

[2] *See e.g. St. Joseph Hosp. v. Wolff,* 94 S.W.3d 513, 541-542 (Tex. 2002), *GTE Southwest, Inc. v. Bruce,* 998 S.W.2d 605, 618 (Tex. 1999), *Leadon v. Kimbrough Brothers Lumber Co.,* 484 S.W.567 (Tex. 1972).
[3] Fifth Circuit Pattern Jury Instructions §3.2 (2020).

**EVIDENCE[4]**

The evidence you are to consider consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven. Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

**WITNESSES[5]**

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the

---

[4] Fifth Circuit Pattern Jury Instructions §3.3 (2020).
[5] Fifth Circuit Pattern Jury Instructions §3.4 (2020).

relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony given at the trial. A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it. People may forget some things or remember other things inaccurately. If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent mistake. The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail. [6]

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely on it.[7]

Exhibit [specify] is an illustration. It is a party's description used to describe something involved in this trial. If your recollection of the evidence differs from the exhibit, rely on your recollection.[8]

---

[6] Fifth Circuit Pattern Jury Instructions §2.11 (2020).
[7] Fifth Circuit Pattern Jury Instructions §3.5 (2020).
[8] Fifth Circuit Pattern Jury Instructions §2.8 (2020).

## **PLAINTIFF'S CLAIMS FOR UNLAWFUL EMPLOYMENT ACTIONS**

## **SEX AND/OR PREGNANCY DISCRIMINATION**[9]

Plaintiff Dr. Nikolova claims that Defendant UT Austin's denial of her tenure application was motivated by Dr. Nikolova's gender and/or her pregnancies or child births.[10]

Defendant UT Austin denies Dr. Nikolova's claims and contends it denied her tenure application because she did not meet the qualifications for tenure.

It is unlawful for an employer to discriminate against an employee, such as to deny tenure, because of the employee's gender, pregnancy, or child birth. An employer may, however, deny tenure for other reasons, good or bad, fair or unfair.

To prove unlawful discrimination, Dr. Nikolova must prove by a preponderance of the evidence that the denial of tenure was motivated by her sex and/or pregnancies or child births.

Dr. Nikolova does not have to prove that unlawful discrimination was the only reason for UT Austin's denial of her tenure application, but that it was a motivating factor. There may be more than one motivating factor for an employment decision.[11]

In this case, the final decisionmaker in the denial of tenure to Dr. Nikolova was former UT Austin President Greg Fenves. Dr. Nikolova may show that Mr. Fenves's decision to deny tenure was motivated by discriminatory bias because of her gender and/or pregnancies. Dr. Nikolova may also show that even if there is no evidence of discriminatory bias on the part of Mr. Fenves, there is evidence that Mr. Fenves took into account biased negative information provided by Dean Sharon Wood, in deciding to deny tenure to Dr. Nikolova. Dr. Nikolova is not required to prove

---

[9] Fifth Circuit Pattern Jury Instructions §11.1 (Title VII Discrimination) and §11.7 (Cat's Paw) (2020).
[10] The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions. 42 U.S.C.S. § 2000e(k).
[11] Modified to include Title VII language of "motivating factor" 42 U.S.C.S. § 2000e-2(m) and statement that "there may be more than one motivating factor" from Texas Pattern Jury Charge §107.6 (2020).

7

that Mr. Fenves knew or should have known of Dean Wood's discriminatory bias. If you determine there was no bias on the part of Mr. Fenves, Dr. Nikolova must prove that Dean Wood recommended against tenure because of discrimination against Dr. Nikolova, and that her recommendation played a substantial part in Mr. Fenves's decision denying tenure to Dr. Nikolova and was a reasonably probable consequence of Dean Wood's recommendation to deny tenure to Dr. Nikolova.[12]

If you do not believe the reasons given by Mr. Fenves for the decision to deny tenure to Dr. Nikolova or the reasons given by Dean Sharon Wood for her recommendation to deny tenure, you may, but are not required to, infer that the decision or recommendation was motivated by Dr. Nikolova's gender and/or pregnancies.

To succeed on her discrimination claims, Dr. Nikolova must prove by a preponderance of the evidence that Mr. Fenves' decision to deny Dr. Nikolova's tenure application was motivated by Dr. Nikolova's gender or pregnancies.[13] Dr. Nikolova may also succeed on her discrimination claims by proving each of the following by a preponderance of the evidence:

1. Dean Wood was motivated by Dr. Nikolova's gender or pregnancies in recommending to deny tenure to Dr. Nikolova;

2. Dean Wood intended that her recommendation to deny tenure would cause Dr. Nikolova to be denied tenure;[14] and

---

[12] Replaced "proximate cause" in instruction with definition of "proximate cause" (using easier to understand language) from Fifth Circuit Pattern Jury Charge §4.6.

[13] Instructions and questions modified to allow jury to determine if either or both former President Fenves and Dean Sharon Wood had discriminatory bias, as provided by §11.7, footnote one, which states "This instruction will have to be adjusted if there is a factual dispute about . . . whether the decision-maker as well as the immediate supervisor were biased against the plaintiff because of a protected trait."

[14] Replaced term "adverse employment action" with the adverse employment action at issue, "denied tenure," in this case.

3. Dean Wood's recommendation to deny tenure was a motivating factor in Mr. Fenves's decision to deny tenure to Dr. Nikolova.

**QUESTION NO. 1**

Has Plaintiff Dr. Nikolova proved that former President Fenves was motivated by Dr. Nikolova's gender or pregnancies when he denied tenure to Dr. Nikolova?

Answer "Yes" or "No."

_____

**QUESTION NO. 2**

Has Plaintiff Dr. Nikolova proved that Dean Wood was motivated by Dr. Nikolova's gender or pregnancies when Dean Wood recommended denying tenure to Dr. Nikolova?

Answer "Yes" or "No."

_____

**If you answered Question No. 2 "Yes," then answer Question No. 3.**

**QUESTION NO. 3**

Has Dr. Nikolova proved that Dean Wood acted with the intent that former President Fenves would deny tenure to Dr. Nikolova as a result of Dean Wood's recommendation to deny tenure to Dr. Nikolova?

Answer "Yes" or "No."

_____

**If you answered Question No. 3 "Yes," then answer Question No. 4.**

**QUESTION NO. 4**

Has Dr. Nikolova proved that Dean Wood's recommendation to deny tenure was a motivating factor in former UT Austin President Fenves' decision to deny tenure to Dr. Nikolova?

9

Answer "Yes" or "No."

_____

**RETALIATION:**[15]

Plaintiff Dr. Nikolova claims that Defendant UT Austin retaliated against her for engaging in activity protected by Title VII of the Civil Rights Act of 1964. Opposing gender or pregnancy discrimination in tenure decisions, filing a charge of discrimination and a discrimination lawsuit are all activities protected by Title VII. Dr. Nikolova claims that UT Austin retaliated against her by giving her an unfavorable teaching evaluation in May 2019 and an unfavorable annual performance review in June 2020.

Defendant UT Austin denies Dr. Nikolova's claims and contends that Dr. Nikolova's teaching evaluation and annual review were accurate and based on Dr. Nikolova's performance.

It is unlawful for an employer to retaliate against an employee for engaging in activity protected by Title VII. To prove unlawful retaliation, Dr. Nikolova must prove by a preponderance of the evidence that:

1. Dr. Nikolova engaged in protected activity including opposing gender or pregnancy discrimination regarding UT Austin's tenure decisions, filing a charge of discrimination, and/or filing this lawsuit;

2. UT Austin gave Dr. Nikolova an unfavorable teaching evaluation and/or annual evaluation; and

3. UT Austin's unfavorable teaching evaluation and/or annual evaluation were on account of Dr. Nikolova's protected activity.

---

[15] Fifth Circuit Pattern Jury Instructions §11.5 (2020).

You do not have to find that the only reason for UT Austin's unfavorable teaching evaluation or annual evaluation was Dr. Nikolova's opposition to gender or pregnancy discrimination, her filing a charge of discrimination, or filing this lawsuit. But you must find that UT Austin would not have given Dr. Nikolova the unfavorable teaching evaluation and/or the annual evaluation that it gave in the absence of—but for—her opposing gender or pregnancy discrimination, filing a charge of gender or pregnancy discrimination, or filing this lawsuit.

If you do not believe the reasons UT Austin offered for why it gave Dr. Nikolova the unfavorable teaching evaluation and/or annual evaluation, you may, but are not required to, infer that UT Austin would not have given Dr. Nikolova the unfavorable evaluations it did but for Dr. Nikolova engaging in protected activity.

**QUESTION NO. 5:**

Do you find that Dr. Nikolova would not have been given the unfavorable teaching evaluation in May 2019 and/or an unfavorable annual performance review in June 2020 but for her opposing gender or pregnancy discrimination, filing a charge of gender or pregnancy discrimination, or this lawsuit?

Answer "Yes" or "No."

_____

**EQUAL PAY:** [16]

Plaintiff Dr. Nikolova has made a claim under the Equal Pay Act, a statute that prohibits an employer from paying women less than men for jobs that require substantially equal work. Dr. Nikolova claims that she was paid less than male Assistant Professors in the Electrical and

---

[16] Third Circuit Model Jury Instructions (Aug. 2020), Chapter 11.

Computer Engineering Department (referred to in this charge as the "ECE Department") even though she performed substantially equal work.

Defendant UT Austin claims that the difference in pay between Dr. Nikolova and the male Assistant Professors in the ECE Department was based on factors other than sex.

For Dr. Nikolova to prevail on her Equal Pay Act claim against UT Austin, she must prove all of the following elements by a preponderance of the evidence:

**First:** UT Austin has employed Dr. Nikolova and male Assistant Professors in the ECE Department in jobs requiring substantially equal skill, effort and responsibility;

**Second:** Dr. Nikolova's job and the jobs of the other male Assistant Professors in the ECE Department are performed under similar working conditions; and

**Third:** Dr. Nikolova was paid a lower wage than the male Assistant Professors in the ECE Department doing substantially equal work.

When evaluating whether Dr. Nikolova has established these three elements, you must keep in mind that Dr. Nikolova does not have to prove that UT Austin meant to discriminate against her because she was female. In other words, Dr. Nikolova does not have to prove UT Austin had an intent to discriminate against Dr. Nikolova.

In determining whether Dr. Nikolova's job required substantially equal skill, effort, and responsibility as that of the male Assistant Professors in the ECE Department, you must compare the jobs and not the individual Assistant Professors holding those jobs. It is not necessary that those jobs be identical; the Equal Pay Act requires proof that the performance of those jobs demands "substantially equal" skill, effort and responsibility. Insignificant, insubstantial, or trivial differences do not matter and may be disregarded. Job classifications, descriptions, or titles are not controlling. It is the actual work or performance requirements of those jobs that is important.

In evaluating whether the performance requirements of those jobs are substantially equal, you must consider the "skill," "effort" and "responsibility" required for those jobs. I will now tell you what is meant by these terms, "skill," "effort" and "responsibility."

*Skill:*

In deciding whether the jobs require substantially equal "skill" you should consider such factors as the level of education, experience, training and ability necessary to meet the performance requirements of the respective jobs. Jobs may require "equal skill" even if one job does not require workers to use these skills as often as another job. Remember also that you are to compare the jobs, not the employees. So the fact that a male Assistant Professor has a qualification that Dr. Nikolova does not is relevant only if the particular qualification is necessary or useful for performing the job.

*Effort:*

In deciding whether the jobs require substantially equal "effort" you should consider the mental, physical, and emotional requirements for performing the job. Duties that result in mental or physical fatigue or emotional stress, as well as factors that alleviate fatigue and stress, should be weighed together in assessing the relative effort involved. "Equal effort" does not require people to use effort in exactly the same way. If there is no substantial difference in the amount or degree of effort to do the jobs, they require "equal effort." However, if the job of the male Assistant Professors requires additional tasks that consume a significant amount of extra time and effort that would not be expected of Dr. Nikolova, then the jobs do not require substantially equal effort.

*Responsibility:*

In deciding whether the jobs involve substantially equal "responsibility," you should consider the degree of accountability expected by UT Austin for a person filling the jobs, as well

13

as the amount of preparation required to perform the job duties. You should also take into account such things as the level of authority delegated to Dr. Nikolova as compared to the male Assistant Professors, including whether Dr. Nikolova and the male Assistant Professors were equally expected to direct the work of others, or to represent UT Austin in dealing with students or others. Finally, you should consider the consequences to UT Austin of effective performance in the respective jobs.

You should note that "skill," "effort" and "responsibility" constitute separate tests, each of which must be met in order for the equal pay requirement to apply.

***Similar Working Conditions:***

With respect to the second element of Dr. Nikolova's claim, you must find that the jobs are performed under similar working conditions. The conditions need only be similar; they need not be identical. In deciding whether the working conditions of the two jobs are similar, you should consider the surroundings or the environment in which the work is performed.

***Wage Comparison:***

With respect to the third element of Dr. Nikolova's claim, Dr. Nikolova must prove that she was paid a lower wage than (a) male Assistant Professors doing substantially equal work.

UT Austin contends that the difference in pay between those jobs was the result of a factor other than gender. To establish that defense, UT Austin must prove that Dr. Nikolova's gender played no part in the difference in wages.

Dr. Nikolova contends that UT Austin's explanation for the difference in pay is only a pretext, or excuse, for paying higher wages to men for equal work. Remember that Dr. Nikolova does not have to prove that UT Austin intended to discriminate. However, evidence of intent to

discriminate may be considered in determining whether UT Austin's explanation is valid or instead is a cover-up for paying higher wages to men for equal work.

**QUESTION NO. 6:**

Do you find that:

1. UT Austin employed Dr. Nikolova and male Assistant Professors in the ECE Department in jobs requiring substantially equal skill, effort and responsibility;

2. The jobs of Assistant Professors in the ECE Department are performed under similar working conditions; and

3. Dr. Nikolova was paid a lower wage than the male Assistant Professors in the ECE Department doing substantially equal work?

Answer "Yes" or "No."

_____

**If you answered "Yes" to Question No. 6, answer Question No. 7. If you answered "No" to Question No. 6, do not answer Question 7 and continue to the instruction for "DAMAGES."**

**QUESTION NO. 7:**

Do you find that the difference in pay was the result of a factor other than gender?

Answer "Yes" or "No."

_____

**DAMAGES:**

If you found that Defendant UT Austin discriminated or retaliated against Dr. Nikolova or violated the Equal Pay Act, then you must determine whether UT Austin has caused Dr. Nikolova damages and, if so, you must determine the amount of those damages. You should not conclude

15

from the fact that I am instructing you on damages that I have any opinion as to whether Dr. Nikolova has proved liability.

Plaintiff Dr. Nikolova must prove her damages by a preponderance of the evidence. Your award must be based on evidence and not on speculation or guesswork. On the other hand, Dr. Nikolova need not prove the amount of her losses with mathematical precision, but only with as much definitiveness and accuracy as the circumstances permit.

### DISCRIMINATION AND RETALIATION DAMAGES:

You should consider the following elements of actual damages, and no others: (1) the amount of back pay and benefits Dr. Nikolova would have earned in her employment with UT Austin if she had not been denied tenure from the date of September 1, 2019 to the date of your verdict, minus the amount of earnings and benefits that Dr. Nikolova received from employment during that time; (2) the amount of other damages sustained by Dr. Nikolova such as pain, suffering, mental anguish, loss of enjoyment of life, humiliation,[17] damage to reputation,[18] and other noneconomic losses.

Back pay includes the amounts the evidence shows Dr. Nikolova would have earned had she been granted tenure. These amounts include wages or salary and benefits including contributions to retirement. You must subtract the amounts of earnings and benefits UT Austin proves by a preponderance of the evidence Dr. Nikolova received during the period in question. Dr. Nikolova is not seeking back pay for her claim of retaliation.

**Answer Question No. 8 if you answered "Yes" to any of these questions:**

a. **Question No. 1;**

---

[17] "Humiliation" is an element of compensatory damages. *Tureaud v. Grambling State Univ.*, 294 F. App'x 909, 916 (5th Cir. 2008)
[18] "Damage to reputation" is an element of compensatory damages. *Zamora v. City of Hous.*, 798 F.3d 326, 335-36 (5th Cir. 2015).

  b. Questions Nos. 2 through 4; or

  c. Question No. 5.

**QUESTION NO. 8:**

What sum of money, if paid now in cash, would fairly and reasonably compensate Dr. Nikolova for the damages, if any, you have found UT Austin caused Dr. Nikolova?

Answer in dollars and cents for the following items and none other:

1. Past pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, and damage to reputation.

$————

2. Future pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, and damage to reputation.

$————

3. Back pay wages and benefits from September 1, 2019 to today's date.

$————

## EQUAL PAY ACT DAMAGES

If you find that Dr. Nikolova has proved by a preponderance of the evidence that she was paid less than male Assistant Professors in the ECE Department for performing substantially equal work, and if you find that UT Austin has failed to show that the wage differential was based on a permissible factor on which I previously instructed you, then you must award damages to Dr. Nikolova for UT Austin's violation of the Equal Pay Act. Dr. Nikolova has the burden of proving the amount of those damages by a preponderance of the evidence.

In this case, Dr. Nikolova alleges that UT Austin willfully violated the Equal Pay Act. If Dr. Nikolova proves to you by a preponderance of the evidence that UT Austin's violation of the

Equal Pay Act was willful, then this will have an effect on the damages that you must award. I will explain this effect more, but first I will provide you more information on what it means to be a "willful" violation.

You must find UT Austin's violation of the Equal Pay Act to be willful if Dr. Nikolova proves by a preponderance of the evidence that UT Austin knew or showed reckless disregard for whether Dr. Nikolova's underpayment was prohibited by the law. To establish willfulness it is not enough to show that UT Austin acted negligently. If you find that UT Austin did not know, or knew only that the law was potentially applicable, and did not act in reckless disregard for whether its conduct was prohibited by the law, then UT Austin's conduct was not willful.

If you find that UT Austin's violation was willful, then you must award Dr. Nikolova the amount of damages that compensates her for the difference between what she was paid and the average amount of what male Assistant Professors in the ECE Department were paid during the period starting on September 1, 2017 through today's date. However, if you find that UT Austin's violation of the Equal Pay Act was not willful, then you must award Dr. Nikolova the difference between what she was paid and the average amount of what male Assistant Professors in the ECE Department were paid during the period starting September 1, 2018 through the date of your verdict. In other words, Dr. Nikolova is entitled to damages for an extra year if she proves that UT Austin's violation was willful.

**If you answered "Yes" to Question No. 6 and "No" to Question No. 7, then answer Question No. 9.**

**QUESTION NO. 9:**

Was UT Austin's violation of the Equal Pay Act willful?

Answer "Yes" or "No."

_____

**If you answered "Yes" to Question No. 6, "No" to Question No. 7, and "Yes" to Question No. 9, answer Question No. 10.**

**QUESTION NO. 10:**

What sum of money, if paid now in cash, is the difference in pay between Dr. Nikolova and the male Assistant Professors between September 1, 2017 through today?

_____

**If you answered "Yes" to Question No. 6, "No" to Question No. 7, and "No" to Question No. 9, answer Question No. 11.**

**QUESTION NO. 11:**

What sum of money, if paid now in cash, is the difference in pay between Dr. Nikolova and the male Assistant Professors between September 1, 2018 through today?

_____

**DUTY TO DELIBERATE; NOTES**

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do

not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a presiding juror to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous. After you have reached a unanimous verdict, your presiding juror must fill out the answers to the written questions on the verdict form and sign and date it. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the presiding juror should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

You may now proceed to the jury room to begin your deliberations.