UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| EVDOKIA NIKOLOVA | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CASE NO. 1:19-cv-00877-RP |
| | § | |
| UNIVERSITY OF TEXAS AT AUSTIN, | § | |
| Defendant. | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTIONS
TO PLAINTIFF'S COMPARATOR EVIDENCE**

TO THE HONORABLE JUDGE PITMAN:

Defendant objects to Plaintiff's Exhibits 130 and 142 through 180 and asks for a pretrial ruling on these exhibits to help with pretrial preparation. Plaintiff similarly requests a pretrial ruling on these which will also assist both parties in identifying what evidence might be referred to in the parties' opening statements to the jury.

**I.    Plaintiff's Comparator Exhibits All Relate To "Similarly Situated" Assistant Professors In The Cockrell School of Engineering.**

Plaintiff has carefully selected and offered comparator exhibits that consist of evidence related to "similarly situated" and "nearly identical" Assistant Professors, who like Dr. Nikolova were Assistant Professors of Engineering in the Cockrell School of Engineering ("Cockrell School") during academic years 2013-14 through 2019-20. Like Dr. Nikolova, all were considered and evaluated for tenure by Cockrell School Dean Sharon Wood and Greg Fenves, either in his role as UT President or Provost (the second highest position at the university) during Nikolova's employment at UT. All show inconsistent and more favorable treatment to male Assistant Professors and a Female Assistant Professor in the Cockrell School who were not pregnant during their tenure track period before being approved for tenure. Defendant's objections to these exhibits have no merit because Plaintiff has presented abundant evidence that each comparator exhibit is

1

relevant to the case at hand and meets the Fifth Circuit's relatively stringent requirements for "similarly situated" and "nearly identical" employees articulated in cases such as *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). Defendant will certainly be able to argue to the jury that these Assistant Professors' cases were different, which accounts for the difference in treatment.

## II. Whether Employees Are Similarly Situated Presents A Question of Fact For The Jury.

The Fifth Circuit has recently and clearly held that *"whether two employees are 'similarly situated'* ***generally presents a question of fact for the jury****." Wallace v. Seton Family of Hosps.*, 777 F. App'x 83, 89 (5th Cir. 2019) (citations omitted, emphasis added). *Wallace* specifically held that an employer's arguments that employees were not "nearly identical" raised fact issues for the jury. *Id.* at 89-90. Similarly, in *Polanco v. City of Austin*, 78 F.3d 968, 977 (5th Cir. 1996), the Fifth Circuit rejected the employer's argument that evidence of two comparators admitted at trial did not support the verdict, holding that "*a reasonable juror could have disregarded the City's arguments* that the men were not similarly situated . . ." Additionally, the Fifth Circuit has held that a trial court's ruling on relevancy of evidence relating to the admission of comparator evidence "will not be disturbed absent a clear showing of an abuse of discretion." *Powell v. Rockwell Int'l Corp.*, 788 F.2d 279, 283 (5th Cir. 1986).

Defendant incorrectly claims that "if the would-be comparator is not situated similarly to the plaintiff, the evidence is not relevant as a matter of law" (Dkt. 69 at 3), citing to *Perez v. Tex. Dep't of Criminal Justice*, 395 F.3d 206, 210 (5th Cir. 2004) and *Black v. Pan Am. Lab.,* 646 F.3d 254, 262 (5th Cir. 2011). However, *neither* case supports Defendant's claim and *Black* actually supports Nikolova's position. In *Black*, the court upheld a jury verdict for a plaintiff and rejected the defendant's claim that comparator evidence introduced at trial was insufficient to support the

2

verdict because it was not "nearly identical." Instead, *Black* held that there was sufficient evidence that "a jury could conclude that the differences [between plaintiff and a comparator] did not account for their different" treatment. 646 F.3d at 263. *Perez* held that a district court's jury instructions that stated that an employee is "similarly situated" if they engaged in misconduct of "comparable seriousness," without more clarity, was error. The Court did not hold or even consider the question of whether evidence of comparators who were not similarly situated was inadmissible as a matter of law.[1]

### III. All of Plaintiff's Contested Exhibits Meet The "Similarly Situated" and "Nearly Identical" Standard.

Defendant's brief on its Objections (Dkt. 69 at 3) cites to a portion of this Court's order denying Defendant's Motion for Summary Judgement, in which the Court discussed the standard for "similarly situated" employees: "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." (Dkt. #66 at 21) (quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009)). Judge Pitman's Order continued, however, explaining that, "However, the Fifth Circuit has made clear that courts do not "interpret 'nearly identical' as synonymous with 'identical.' This is because, when 'applied to the broader circumstances of a plaintiff's employment and that of his proffered comparator, a requirement of complete or total identity rather than near identity would be essentially insurmountable, as it would only be in the rarest of circumstances that the situations of two employees would be totally identical.'" (*Id.*) (Citations to *Lee* omitted). Importantly, *Lee* further

---

[1] In fact, *Perez* held that the defendant was *not* entitled to judgment as a matter of law ("JMOL") in a case where comparator evidence was introduced at trial that the defendant argued was not sufficiently similar.

explained that an employer must show that *the difference* between the plaintiff's situation "and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer." *Lee,* 574 F.3d 260. In such a circumstance, the employees are not similarly situated. *Id.*

Defendant makes three arguments why Plaintiff's comparators allegedly do not meet the similarly situated/nearly identical standard:

1. They were in a different department within the Cockrell Engineering School than Plaintiff;[2]

2. They were in their "up or out year" versus Plaintiff who was arguably was held to a different standard because she was "technically early" or "accelerated";[3] and

3. Their case was decided when Bill Powers was UT President.[4]

All of UT's arguments fail because they are not supported by the law or facts in this case.

### 1. Being In Different Departments Within The Cockrell School Does Not Mean That Make Plaintiff's Comparator Evidence Irrelevant.

UT cites to *Lee* for the proposition that employees "who work for different divisions of a company . . . generally will not be deemed similarly situated." *Lee,* 574 F.3d at 259. *Lee* cited to *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 302 (5th Cir. 2000) as authority for this

---

[2] Zoya Heidari (Plaintiff's Exhibits 130, 142–43, 175–180); John Foster (Plaintiff's Exhibits 148–49); Brady Cox (Plaintiff's Exhibits 150–51); Navid Saleh (Plaintiff's Exhibits 152–53); Ryosuke Okuno (Plaintiff's Exhibits 154–55); Salvatore Salamone (Plaintiff's Exhibits 156–57); Hsin-Chih Yeh (Plaintiff's Exhibits 158–59); Todd Humphreys (Plaintiff's Exhibits 166–67); Chadi El Mohtar (Plaintiff's Exhibits 168–69); J. Eric Bickel (Plaintiff's Exhibits 170–71); Janeta Zoldan (Plaintiff's Exhibits 174).

[3] Mikhail Belkin (Plaintiff's Exhibits 144–45), Hsin-Chih Yeh (Plaintiff's Exhibits 158–59), Nan Sun (Plaintiff's Exhibits 160–61), Vijay Janapa Reddi (Plaintiff's Exhibits 162–63), Todd Humphreys (Plaintiff's Exhibits 166–67); Chadi El Mohtar (Plaintiff's Exhibits 168–69); J. Eric Bickel (Plaintiff's Exhibits 170–71); Andreas Gerstlauer (Plaintiff's Exhibits 172–73); Janeta Zoldan (Plaintiff's Exhibits 174).

[4] Mikhail Belkin (Plaintiff's Exhibits 144–45); Brady Cox (Plaintiff's Exhibits 150–51); Georgios-Alex Dimakis (Plaintiff's Exhibits 164–65); Todd Humphreys (Plaintiff's Exhibits 166–67); Chadi El Mohtar (Plaintiff's Exhibits 168–69); J. Eric Bickel (Plaintiff's Exhibits 170–71); Andreas Gerstlauer (Plaintiff's Exhibits 172–73).

statement. However, when *Wyvill* is examined, it is clear that whether an employee worked for "different divisions" is not a true, bright-line test. Rather, *Wyvill* involved a case in which anecdotal stories of age discrimination were introduced at trial from employees who worked for a "separately incorporated entity with different management independent from [the plaintiff's employer]. None of the former employee witnesses was supervised by [the plaintiff's] supervisors." (212 F.3d 302).[5] Thus, it was the fact that the employees had different supervisors and worked for a distinct corporate entity different from the plaintiff with different management. This is *not* the case with Nikolova's comparators. *Lee* made clear having the same ultimate supervisor will satisfy this aspect of the similarly situated/nearly identical standard. (574 F.3d at 260-61). Moreover, "even if the employees do not share an immediate supervisor," it is sufficient if the ultimate decisionmakers were the same. (*Id.*).

Defendant's claim that Nikolova cannot use evidence relating to assistant professors from different departments also fails because *all* of the professors at issue went up for tenure in the *Cockrell School of Engineering*, as did Nikolova. *All* were reviewed by and recommended for tenure by *Dean Wood* and *Greg Fenves*,[6] as was Nikolova.  The evidence at trial will show that *all* had the *same job, Assistant Professor of Engineering, all* had the *same responsibilities* and were evaluated on *the same criteria* (teaching, research including publications and grant funding, and service) as Plaintiff Nikolova.[7]  Defendant is free to argue at trial, however, that the

---

[5] *Wyvill*, who was a "branch manager" in Dalton, Georgia, also offered evidence comparing his treatment to that of another employee who was an "area supervisor" in North Carolina who was disciplined by completely different decision makers. (212 F.3d 302) The court held that difference in jobs, decision makers, as well as the specific issues for which the two employees were disciplined "more than account for the difference in treatment." (*Id.*)

[6] A record is not kept of the votes of the President's Committee.

[7] Dkt. 44-1 at 208, Tewfik Dep: "Q: It's accurate that all assistant professors have the same duties and responsibilities and expectations, correct? [Objection "form"] A. That is correct."); Dkt. 44-1 at 381, Fenves Dep: A. . . .The only factors we look at are their qualifications of the faculty member in any promotion case.  Q. I think we may be talking cross purposes. So there's the question of to tenure or not tenure; and that would be where the faculty member's qualifications in all the categories, teaching, research, service, et cetera, are reviewed, correct? A. That's correct.);

5

comparisons are not appropriate because they are from different departments which accounts for the difference in treatment. *Wallace*, 777 F. App'x at 89-90, *Polanco,* 78 F.3d at 977; *Black*, 646 F.3d at 263; *Powell,* 788 F.2d at 283.

2. **It Is For The Jury To Decide If Assistant Professors In Their "Up or Out Year" Are Proper Comparators Because A Fact Issue Exists As To Whether UT Evaluated Nikolova Differently Because She Was "Technically Early."**

Defendant's argument that Dr. Nikolova cannot compare herself to Assistant Professors who were in their "up or out" year also fails and raises a fact issue for the jury. Whether a "different standard" or "higher bar" was applied to Nikolova because she was "technically early" will be one of the hottest issues in this case. The contradictory evidence on that point is striking: Dean Wood wrote, "If this were an up-or-out case, I would likely agree with the recommendation of the Promotion and Tenure committee. However, Nikolova is being considered for promotion at UT Austin two years early." (Dkt. 44-1 at 478). Wood testified in her deposition that because Nikolova was "technically early" or "accelerated" she had to meet a "higher bar [in] all areas." (Dkt. 44-1 at 644, 651-52). However, President Fenves testified, "Q. Do you recall if there was a concern about the case being accelerated or early? A. I do not recall that being part of the discussion. . . . Q. So the fact that Dr. Nikolova was early or accelerated was not one of the reasons why you decided to deny tenure? A. That is correct." Additionally, President Fenves twice wrote that Nikolova "was not held to a higher standard" in a letter rejecting the CCAFR Committee's decision recommending reversal of the tenure decision. (Dkt. 42-5 at 151-52). Judge Pitman in the Order denying summary judgment also recognized the material and contradictory evidence from ECE Department Chair Tewfik regarding whether a different standard of review was applied to

---

Dkt. 44-1 at 765, General Guidelines for Tenure: "recommendations for tenure and recommendations for promotion in rank of *all faculty* are to be based on excellence in performance pursuant to an evaluation of the faculty member's contribution in the following areas: [teaching, research, service, etc.]."

6

Nikolova's case because she was "technically early."[8] (Dkt. 66 at 7).

In *Wallace v. Seton Family of Hosps.*, 777 F. App'x 83, 88-89 (5th Cir. 2019), the defendant employer argued that because the plaintiff was in her "introductory period," evidence of comparator employees who were not in their introductory period was not relevant because they were not "similarly situated." The court observed that "a reasonable jury could conclude that an employer could properly scrutinize an introductory employee closer than a longer-term 'permanent' employee and be inclined to view a violation by an introductory employee more seriously." *Id.* However, this did *not* make the comparator evidence irrelevant or inadmissible. Rather, the Fifth Circuit held "a material question of fact is presented as to whether the longer-term employees—Trevino, Flores, McCaskill, and Saccamondo—were proper comparators for the plaintiff." *Id.* Similarly, in the case at hand, UT is free to argue to the jury that Nikolova was treated differently because she was "technically early" or accelerated, and that "accounts for" the difference in treatment. It is clear, however, that this is a fact issue for the jury to determine and that Plaintiff's comparator evidence is relevant and should not be excluded on this ground.

3. **Assistant Professors Whose Tenure Was Evaluated and Recommended By Dean Wood and Provost Fenves Are Similarly Situated Even If The Ultimate Decision Maker Was Former UT President Powers.**

Finally, Defendant UT argues that Plaintiff's evidence of comparators whose tenure decision was made while Bill Powers was president of UT (academic years 2013-14 and 2014-15) should not be admitted because Powers was a different ultimate decision-maker than Fenves.

---

[8] "[W]e put somebody up for promotion. We said that it's technically early. That's the end of story.' Tewfik noted that [Nikolova's] application was 'technically early' because she had been at UT for only five years and took an extension year. He noted that she had spent two years as an assistant professor at A&M, and '[h]er case would not be early if these two years of service are taken into account.' He stated that '[a]ll promotion cases should be evaluated by the well established metrics' and that dismissing Nikolova's promotion as early 'will do irreparable harm to our ability to continue to recruit highly promising assistant or associate professors from other institutions," and to "retain the star assistant professors that we have recently recruited from top peer departments . . . who had served 2 to 4 years as assistant professors at their initial home institutions.'" (Dkt. 66 at 7, citations omitted).

However, in the case at hand, the evidence to be presented at trial shows that *Dean Wood played a pivotal, material role* in the decision to deny tenure to Dr. Nikolova. She was the first person to recommend against tenure, wrote an assessment allegedly explaining the reasons for her decision, presented her recommendation to the President's Committee which considered her opinion, which was adopted by UT President Fenves, and then Dean Wood communicated the decision to the candidate.[9] (Dkt. 66 at 3, 8-11, 24 and evidence cited therein. *See also* Dkt. 42-5 at 233.) In *all* of the six comparator cases objected to because Powers was UT President at the time, *Dean Wood played the exact same, material role and had the same influence over the decision*, including that she provided a written assessment recommending for tenure of the assistant professor, presented and discussed her decision with the President's Committee, her recommendation was adopted by the President, and then Dean Wood communicated the decision of the President's Committee to the candidate. Moreover, *in all* 21 Cockrell School tenure cases in academic years 2013-14 and 2014-15 when Wood was the Cockrell School Dean, the President/President's Committee *also always followed Dean Wood's recommendation*. Plaintiff's Trial Exhibit 226/Plaintiff's MSJ Ex. 11, Tenure Data Excel Spreadsheet provided to the Court on flash drive.

Additionally, in the six cases offered as evidence by Nikolova when Powers was UT President, former President *Fenves was still a decision maker and/or influencer that participated in these tenure decisions.* Fenves was Provost at the time, the second highest ranking official at UT and the highest-ranking member of the President's Committee (other than the president).

---

[9] In the 33 Cockrell School tenure cases from 2015-16 when Fenves became President of UT through 2018-19 when Nikolova was denied tenure, Fenves *always followed Dean Wood's recommendation*. Plaintiff's MSJ Ex. 11, Tenure Data Excel Spreadsheet provided to the Court on flash drive and Plaintiff's Trial Exhibit 226; *See also* Dkt. 44-1 at 372, 384, Fenves Dep. 8:21-9:8, 57:3-10. Janeta Zoldan's case, decided two years *after* Plaintiff's tenure case and *after* this lawsuit was filed, is the one time when President Fenves did not accept the recommendation of Dean Wood. In that case, Dean Wood again recommended to deny tenure to a female assistant professor allegedly based on the sustainability of funding, similar to Plaintiff Nikolova.

Fenves reviewed the tenure cases at issue, voted on the tenure cases as part of the President's Committee, and had without question had input and influence on the tenure decisions at issue. Additionally, Fenves, in his role as Provost, actually signed the "Recommendation for Change in Academic Rank/Status" form memorializing the approval of tenure for all of the comparators. (*See e.g.* Dkt. 44-4 at 22, 29, 39 etc.)

To the extent Defendant's objection is that these decisions, made in academic years 13-14 and 14-15 are "too remote in time," Defendant has not provided any explanation how that timing makes these tenure cases irrelevant or prejudicial. To the contrary, Dr. Nikolova began her employment with UT in academic year 2013-14, observed the outcome of these tenure cases, and accordingly should have been able to rely on decisions made during the years she was on the "tenure track" at UT. Defendant UT certainly can present testimony and evidence to show that the timing or the fact that case was decided under Powers "accounts for" the difference in treatment, however, this an issue for the jury. Moreover, Defendant has presented no such evidence or arguments to the Court at this stage to justify the exclusion of this evidence.

### IV. Defendant UT Was Aware Of All Comparators, Plaintiff's Interrogatory Response Was Sufficient, and Defendant's Objection that Certain Comparators Were Not Disclosed In Plaintiff's Interrogatories Should Be Overruled.

Defendant objects that comparator evidence concerning Mikhail Belkin, Hsin-Chih Yeh, Chadi El Mohtar, J. Eric Bickel, Andreas Gerstlauer, and Janeta Zoldan, should not be permitted because they were not disclosed in response to Defendant's Interrogatory Request No. 6. However, Plaintiff's response to this interrogatory specifically states that her comparators "include but are not limited to" the individuals specifically identified. Additionally, Plaintiff stated in her interrogatory that "Plaintiff refers Defendant to the tenure dossiers produced by Defendant" and to "pleadings filed" in this case. Moreover, with the exception of assistant professor Janeta Zoldan,

9

Plaintiff specifically identified all of the comparators at issue in her Response to Defendant's Motion for Summary Judgment filed more than four months ago on October 20, 2021. However, President Fenves was questioned at length about Zoldan case in his deposition on May 27, 2021. (Dkt. 44-1 at 391-93). There is absolutely no surprise to Defendant regarding any of these comparators and Defendant's objection should be denied.

### V. Plaintiff's Individual Comparator Exhibits Are Clearly Relevant And Show Favorable Treatment Under Nearly Identical Circumstances For Male Professors And A Female Professor Who Was Not Pregnant.

In addition to the reasons set forth above why Plaintiff's exhibits relating to other Assistant Professors within the Cockrell School are relevant and admissible, Plaintiff offers the following specific evidence and explanations regarding how the specific comparators were treated more favorably that Nikolova under nearly identical circumstances:

---

**Zoya Heidari (Plaintiff's Exhibits 130, 142–43, 175–180) (Female But Not Pregnant)**

- **"Technically Earlier" Than Nikolova.** (Dkt. 44-1 at 61-63).

- **Significantly lower grant funding than Nikolova.** (*Id.*).

- **UT Honored Promise To Heidari To Go Up For Tenure Considering Time At TAMU. UT Made Same Commitment To Nikolova But Didn't Honor.** (*Id.*; Dkt. 44-1 at 69)

**Mikhail Belkin (Plaintiff's Exhibits 144–45)**

- **Low teaching evaluations Excused and Explained Away.** (Dkt. 42-4 at 161)

**Mohit Tiwari (Plaintiff's Exhibits 146–47)**

- **Started at UT Same Academic Year As Nikolova, But 2.5 Years *Less* Teaching Experience/Time As Assistant Professor Than Nikolova.** (Dkt. 44-2 at 164-78).

- **Advised and Allowed to Withdraw Probationary Extension After Deadline So Case Would *Not* Be Considered "Technically Early."** (Dkt. 44-3 at 134-42)

- **Low and "Oscillating" Teaching Scores Excused Because of Large Size of Class.** (Dkt. 44-2 at 164-78).

---

| |
|---|
| • **Lower Grant Funding Trajectory Than Nikolova.** (Dkt. 44-2 at 164-78).<br><br>• **Comparable H-Index and Lower Publication Numbers Than Nikolova.** (*Id.*) |
| **John Foster (Plaintiff's Exhibits 148–49)**<br><br>• **Excused Low Teaching Score By Pointing Out Large Class Size.** (Dkt 44-2 at |
| **Brady Cox (Plaintiff's Exhibits 150–51)**<br><br>• **Also "Technically Early" similar to Nikolova.** (Dkt. 44-3 at 1-11)<br><br>• **Excused Low Student Evaluation Scores Including Blaming On Guest Lecturers.** (*Id.*) |
| **Navid Saleh (Plaintiff's Exhibits 152–53)**<br><br>• **Also "Technically Early" similar to Nikolova.** (Dkt. 44-3 at 13-21).<br><br>• **"Concerns were expressed" about a drop in student ratings, but dismissed the concerns.** (*Id.*)<br><br>• **Lower total grant funding and funding trajectory than Nikolova.** (*Id.*) |
| **Ryosuke Okuno (Plaintiff's Exhibits 154–55)**<br><br>• **Lower total grant funding and funding trajectory than Nikolova.** (Dkt. 44-3 at 255-62)<br><br>• **No Federal funding unlike Nikolova.** (*Id.*) |
| **Salvatore Salamone (Plaintiff's Exhibits 156–57)**<br><br>• **Lower total grant funding and funding trajectory than Nikolova.** (Dkt. 44-3 at 263-70) |
| **Hsin-Chih Yeh (Plaintiff's Exhibits 158–59)**<br><br>• **Lower total grant funding (considering costs higher for "applied research") and lower funding trajectory than Nikolova.** (Dkt. 44-3 at 271) |
| **Nan Sun (Plaintiff's Exhibits 160–61)**<br><br>• **ECE Department like Nikolova** (Dkt. 44-4 at 1-10). |

|  |
|---|
| • **Accelerated case because of probationary extension like Nikolova.** (*Id.*). |
| • **Significantly lower H-index and citation count than Nikolova.** (*Id.*). |
| • **Lower grant funding trajectory (even more so considering costs higher for "applied research") than Nikolova.** (*Id.*). |
| <u>**Georgios-Alex Dimakis (Plaintiff's Exhibits 164–65)**</u> |
| • **ECE Department like Nikolova** (Dkt. 44-4 at 22-28). |
| • **Accelerated case because of probationary extension like Nikolova.** (*Id.*). |
| • **Comparable or lower grant funding trajectory than Nikolova.** (*Id.*). |
| <u>**Todd Humphreys (Plaintiff's Exhibits 166–67)**</u> |
| • **Significantly lower grant funding trajectory than Nikolova.** (Dkt. 44-4 at 29-38). |
| • **"No competitive federal grants" unlike Nikolova.** (*Id.*) |
| <u>**Chadi El Mohtar (Plaintiff's Exhibits 168–69)**</u> |
| • **Lower grant funding trajectory than Nikolova.** (Dkt. 44-4 at 39-50). |
| • **Several concerns noted by external reviewers.** (*Id.*) |
| • **Low graduate course student teaching evaluations.** (*Id.*) |
| <u>**J. Eric Bickel (Plaintiff's Exhibits 170–71)**</u> |
| • **Lower grant funding trajectory than Nikolova.** (Dkt. 44-4 at 51-59). |
| <u>**Andreas Gerstlauer (Plaintiff's Exhibits 172–73)**</u> |
| • **Lower grant funding trajectory than Nikolova.** (Dkt. 44-4 at 60-69). |
| <u>**Janeta Zoldan (Plaintiff's Exhibit 174)**</u> |
| • **Female professor who was pregnant.** (Dkt. 69-34). |
| • **Dean Wood recommended against promotion in spite of strong votes from department budget council and P&T Committee.** (*Id.*) |

> - **Fenves went against Wood for first time and granted promotion, *after* Nikolova suit was filed.** (*Id.*)
>
> **Sujay Sanghavi (Plaintiff's Exhibit 235)**
>
> - **Also "Technically Early" even more so than Nikolova.** (Dkt. 44-4 at 179-189).
> - **ECE Department like Nikolova.** (*Id.*)
> - **Below average student teaching evaluations.** (*Id.*)
> - **Comparable H-index to Nikolova.** (*Id.*)

### VI. Defendant's Objections to Plaintiff's "Cumulative Exhibits" Should Be Denied.

Plaintiff has offered a number of exhibits that consist of selected documents from the comparator tenure dossiers.[10] Plaintiff offered these to save time for both parties, the Jury and Court to avoid having to go through the voluminous tenure dossiers and locate the relevant documents during trial. Plaintiff has also offered the entire tenure dossiers so that the complete file is available should either of the parties chose to refer to other documents. Defendant objected to the selected document exhibits stating that should its substantive objections under Rule 401 and 403 be overruled, "UT Austin invokes Rule 106 and asks the Court to admit only the entire dossier." Plaintiff respectfully requests that the Court deny Defendant's objections to the selected document exhibits so that the trial may be conducted in as efficient manner as possible.

### VII. Conclusion.

Plaintiff has carefully selected comparator evidence that meets the "similarly situated/nearly identical" standards in all ways. Plaintiff's exhibits present relevant, admissible evidence essential to her case that male Assistant Professors and a female Assistant Professor who

---

[10] Exhibits 142, 144, 146, 148, 150, 152, 154, 156, 158, 160, 162, 164, 166, 168, 170, and 172.

was not pregnant in the Cockrell School were treated more favorable by Dean Wood and Former President and Provost Fenves under similar and nearly identical circumstances. As the Fifth Circuit has clearly held, any alleged differences in the comparators that accounts for the difference in treatment raise fact issues for the jury to consider and determine. *Wallace,* 777 F. App'x at 89 ("whether two employees are 'similarly situated' generally presents a question of fact for the jury.") Defendant's objections should be overruled.

    Respectfully submitted,

    CREWS LAW FIRM, P.C.
    701 Brazos, Suite 900
    Austin, Texas 78701
    (512) 346-7077
    (512) 342-0007 (Fax)
    schmidt@crewsfirm.com


    By: /s/ Robert W. Schmidt
    Robert W. Schmidt
    State Bar No. 17775429
    Joe K. Crews
    State Bar No. 05072500

    /s/ Robert Notzon
    Robert Notzon
    The Law Office of Robert Notzon
    Texas Bar No. 00797934
    1502 West Avenue
    Austin, Texas 78701
    (512) 474-7563
    (512) 852-4788 facsimile

    **ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2022, this document was served pursuant to Federal Rules of Civil Procedure on counsel for Defendant through the Court's electronic filing system at the following address:

Benjamin L. Dower
Assistant Attorney General
Amy S. Hilton
Assistant Attorney General
Office of the Attorney General of Texas
General Litigation Division
P.O. Box 12548
Capitol Station,
Austin, Texas 78711-2548
Fax (512) 320-0667
benjamin.dower@oag.texas.gov
amy.hilton@oag.texas.gov

By: /s/ Robert W. Schmidt