1              UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF TEXAS
2                     AUSTIN DIVISION

3    EVDOKIA NIKOLOVA          ) Docket No. A 19-CA-877 RP
                               )
4    vs.                       ) Austin, Texas
                               )
5    UNIVERSITY OF TEXAS       )
     AT AUSTIN                 ) February 16, 2022
6

7         TRANSCRIPT OF FINAL PRETRIAL CONFERENCE
                   VIA VIDEOCONFERENCE
8          BEFORE THE HONORABLE ROBERT L. PITMAN

9

10   APPEARANCES:

11   For the Plaintiff:        Mr. Robert W. Schmidt
                               Crews Law Firm, P.C.
12                             701 Brazos Street, Suite 900
                               Austin, Texas 78701
13
                               Mr. Robert S. Notzon
14                             Law Office of Robert Notzon
                               1502 West Avenue
15                             Austin, Texas 78701

16

17   For the Defendant:        Mr. Benjamin L. Dower
                               Ms. Amy S. Hilton
18                             Texas Attorney General's Office
                               300 West 15th Street
19                             Austin, Texas 78701

20

21   Court Reporter:           Ms. Lily Iva Reznik, CRR, RMR
                               501 West 5th Street, Suite 4153
22                             Austin, Texas 78701
                               (512)391-8792
23

24

25   Proceedings reported by computerized stenography,
     transcript produced by computer-aided transcription.

| | | |
|---|---|---|
| 10:30:49 | 1 | THE COURT:  Good morning, everyone.  Thank you |
| 10:30:50 | 2 | for joining me for this hearing today. |
| 10:30:52 | 3 | I'm going to ask the clerk to call the case and |
| 10:30:53 | 4 | if you could make announcements for the record, please. |
| 10:30:56 | 5 | THE CLERK:  A 19-CV-877, Evdokia Nikolova vs. |
| 10:31:03 | 6 | University of Texas at Austin, for final pretrial |
| 10:31:05 | 7 | conference. |
| 10:31:08 | 8 | MR. SCHMIDT:  Yes, your Honor.  This is Robert |
| 10:31:10 | 9 | Schmidt, or Bob Schmidt, for Plaintiff Evdokia Nikolova. |
| 10:31:11 | 10 | And I also have today Robert Notzon, who's representing |
| 10:31:15 | 11 | Dr. Nikolova. |
| 10:31:16 | 12 | THE COURT:  Mr. Smith, Mr. Notzon. |
| 10:31:18 | 13 | MR. SCHMIDT:  Good morning, Judge. |
| 10:31:19 | 14 | THE COURT:  Good morning. |
| 10:31:20 | 15 | MR. DOWER:  And Benjamin Dower, Ben Dower for |
| 10:31:24 | 16 | U.T. Austin, along with my colleague, Amy Hilton. |
| 10:31:55 | 17 | THE COURT:  Well, thank you both for joining me |
| 10:31:56 | 18 | today for a final pretrial conference.  I want to cover a |
| 10:31:59 | 19 | number of issues.  Typically what I will do is sort of go |
| 10:32:02 | 20 | through my list of things that would be, I think, of |
| 10:32:07 | 21 | interest to you about sort of jury selection issues, other |
| 10:32:13 | 22 | -- hopefully answering most of the questions that you'll |
| 10:32:15 | 23 | have about the upcoming trial.  And then, obviously please |
| 10:32:18 | 24 | let me know at the end, if I have left any questions |
| 10:32:21 | 25 | unanswered or if you have any additional issues that you'd |

10:32:24  1  like to raise with me.

10:32:25  2          Let me start by inquiring as to whether or not we

10:32:28  3  are still in the posture of needing to try this case.  I'm

10:32:33  4  assuming that I would have heard otherwise but, Mr.

10:32:36  5  Schmidt, you're giving me a nod there.

10:32:40  6          MR. SCHMIDT:  Yes, your Honor.  I'm afraid that

10:32:41  7  that's the direction that we are heading.

10:32:42  8          THE COURT:  Okay.  That's fine.  And that's what

10:32:44  9  we're here for.  Obviously you're all very experienced

10:32:47 10  lawyers and you know the risks of going to trial, and I

10:32:50 11  don't need to review that with you.  But if at any point,

10:32:53 12  you need any encouragement from me that I haven't already

10:32:57 13  given you about seeking a resolution of this case, then

10:33:01 14  let me know if there's anything I can do to encourage you

10:33:03 15  in that.

10:33:04 16          But I'm also here and available to give you a

10:33:08 17  jury trial in the case.  Let me start by saying that, as

10:33:11 18  you all know, civil trials are always subject to being

10:33:17 19  bumped by criminal trials because of the Speedy Trial Act

10:33:20 20  and, indeed, I am -- regret to tell you that apparently

10:33:24 21  that's what's going on with your current setting.  So let

10:33:27 22  me tell you what's going on.  We're currently set in this

10:33:30 23  case for a March 7th jury selection.  I have a case that

10:33:35 24  has been now specially set three times, but because of

10:33:38 25  COVID -- a criminal case, because of COVID, we have

10:33:41  1  provisionally set for the week before that, but it's going

10:33:46  2  to be, by all accounts, a two-week trial.

10:33:49  3          What I would like to do is explore two

10:33:52  4  possibilities with you.  First, I would like to see

10:33:55  5  whether or not -- obviously I want to get this case tried.

10:33:57  6  And I know you're in a posture of being ready and counting

10:34:00  7  on that.  Sometimes these criminal cases go away, as you

10:34:05  8  know, at the last minute, and so, I am somewhat hesitant

10:34:09  9  to release you at this point because there is some

10:34:14  10  possibility that March 7th will still be available to try

10:34:17  11  this case.

10:34:19  12          I will know that for sure next Friday.  What's

10:34:23  13  the date?  The 25th, because I'm actually picking that

10:34:28  14  jury the Friday before the Monday that we're set to start.

10:34:30  15  So I will know on the 25th whether or not that -- the

10:34:35  16  March 7th date is taken.  And so, what I would like to do

10:34:40  17  is to go ahead and keep this sort of on the March 7th

10:34:45  18  docket in the event that something happens, and then, we

10:34:47  19  will let you know promptly on Friday morning, whether or

10:34:51  20  not we're in the process of picking a jury or the case has

10:34:54  21  been resolved or continued.

10:34:56  22          I know that's not ideal because it's -- you know,

10:34:59  23  it's keeping you kind of on the line.  But, you know, I

10:35:02  24  hope you can understand, having been through the last two

10:35:05  25  years of not being able to try cases, we have a bit of a

| | | |
|---|---|---|
| 10:35:09 | 1 | logjam and we're trying to triage cases and shoehorn |
| 10:35:13 | 2 | things in where we can and be as sensitive and -- to your |
| 10:35:18 | 3 | needs and concerns as we can while, at the same time, you |
| 10:35:21 | 4 | know, getting as many cases tried as possible. |
| 10:35:23 | 5 | So let me first ask whether or not everybody is |
| 10:35:27 | 6 | willing to sort of stay on line until next Friday, and |
| 10:35:31 | 7 | then, we'll give you a hard answer about our March 7th |
| 10:35:34 | 8 | date. |
| 10:35:34 | 9 | Mr. Schmidt, does that work for the plaintiff? |
| 10:35:36 | 10 | MR. SCHMIDT:  Of course it does.  Yes, your |
| 10:35:38 | 11 | Honor. |
| 10:35:38 | 12 | THE COURT:  Okay.  Mr. Dower? |
| 10:35:39 | 13 | MR. SCHMIDT:  We totally understand.  Obviously. |
| 10:35:42 | 14 | MR. DOWER:  Yes.  Obviously.  The one thing I |
| 10:35:44 | 15 | will say is that president -- or former president of U.T. |
| 10:35:48 | 16 | Austin, Greg Fenves, is trying his darnedest to appear in |
| 10:35:54 | 17 | person, notwithstanding him being out of subpoena range, |
| 10:35:56 | 18 | so he can provide testimony to the Court.  And I expect |
| 10:36:01 | 19 | when I let him know that we're in hiatus until the 25th, |
| 10:36:05 | 20 | he will be none too pleased to hear that, but I think he's |
| 10:36:09 | 21 | just going to have to live with it, just like we are.  And |
| 10:36:11 | 22 | we obviously respect where the Court is coming from there. |
| 10:36:14 | 23 | THE COURT:  Okay.  Thank you. |
| 10:36:15 | 24 | Now, I want to go ahead, then, and talk about |
| 10:36:18 | 25 | what we will do in the event that I give you the bad news |

10:36:23  1  next week that I'm going to be in criminal trial during

10:36:26  2  the week that we've planned on.  And I've looked very

10:36:29  3  closely -- I'll just tell you how I'm doing this and that

10:36:32  4  is, I looked for -- I'm stacked six or eight trials deep

10:36:36  5  every Monday.  And so, what I do then is for cases that

10:36:41  6  we're having to sort of look for a trial date, I go and I

10:36:45  7  compare the file date of these cases with the cases that

10:36:50  8  are currently set, and the next date where you would be a

10:36:57  9  priority setting, based on the filing date of the case,

10:37:01  10  would be April the 4th for a jury selection.

10:37:05  11       So you don't have to tell me right now, but if

10:37:08  12  you could sort of talk to each other and to your clients

10:37:13  13  and witnesses about April the 4th, that would be the next

10:37:16  14  date where you would get the priority setting.  So again,

10:37:22  15  I know that's not ideal way to do things, but that's the

10:37:25  16  only way I know to do it.

10:37:27  17       And what you could do is, if you don't mind, go

10:37:29  18  ahead and for planning purposes, let us know as soon as

10:37:33  19  you have an idea of whether that's going to work for you

10:37:35  20  or not.  Just e-mail Ms. Golden, and if that is the case,

10:37:41  21  then we will sort of plug you in provisionally for April

10:37:45  22  the 4th and not put anybody ahead of you while there are

10:37:47  23  plenty of people on that date already, but nobody will be

10:37:49  24  ahead of you, again, barring another criminal case.

10:37:52  25       I think that we're not anticipating that the

| | | |
|---|---|---|
| 10:37:56 | 1 | April 4th date would be eclipsed by a criminal case at |
| 10:38:00 | 2 | this point, but that's not -- I don't have perfect ability |
| 10:38:03 | 3 | to predict that.  So -- and in the event that that is a |
| 10:38:07 | 4 | conflict for you, then what we would do perhaps is wait |
| 10:38:11 | 5 | till next Friday and after I pick that jury, maybe a |
| 10:38:15 | 6 | Friday afternoon, or one afternoon the following week, |
| 10:38:19 | 7 | have another phone conference and kind of search for |
| 10:38:21 | 8 | another date. |
| 10:38:22 | 9 | So if April 4th is not going to work, if you'd go |
| 10:38:25 | 10 | ahead and talk to your clients and witnesses about the |
| 10:38:27 | 11 | next couple of months so that at that time, we'll be able |
| 10:38:31 | 12 | to have all the information we need to identify a date |
| 10:38:34 | 13 | that we can plug in to give you a firm setting. |
| 10:38:37 | 14 | So any questions about that?  Or issues? |
| 10:38:41 | 15 | MR. SCHMIDT:  No, your Honor.  Thanks. |
| 10:38:44 | 16 | MR. DOWER:  No, your Honor. |
| 10:38:44 | 17 | THE COURT:  So let's go forward, then, and talk |
| 10:38:46 | 18 | about -- and all these things will apply, then, regardless |
| 10:38:48 | 19 | of whether we go on the 7th, or 4th, or other date in the |
| 10:38:51 | 20 | future.  I'll sort of go through the list that I have of |
| 10:38:54 | 21 | things that would be relevant to you and hopefully answer |
| 10:38:57 | 22 | many of your questions in advance. |
| 10:38:59 | 23 | First of all, with regard to our COVID protocols, |
| 10:39:04 | 24 | we are opening back up for business under the following |
| 10:39:09 | 25 | sort of conditions.  We are only summoning jurors who are |

| | | |
|---|---|---|
| 10:39:14 | 1 | fully vaccinated.  And so, if you have any issue with |
| 10:39:18 | 2 | that, let me know sooner than later, but that's the way it |
| 10:39:23 | 3 | will be.  And if you have a problem, I'll give you full |
| 10:39:27 | 4 | opportunity to get your objections in and for the record. |
| 10:39:31 | 5 | But we just believe that the evidence is so strong that |
| 10:39:34 | 6 | doing otherwise really puts -- to call in jurors who |
| 10:39:38 | 7 | either haven't been vaccinated or not being able to assure |
| 10:39:44 | 8 | them that other fellow jurors have been vaccinated were |
| 10:39:46 | 9 | just -- we're just not going to do that in the Austin |
| 10:39:50 | 10 | Division. |
| 10:39:51 | 11 | While here, we're going to have everyone's |
| 10:39:55 | 12 | temperature taken at the door.  We have an order currently |
| 10:39:59 | 13 | in force where everyone remains masked at all time unless |
| 10:40:03 | 14 | in a speaking role, that is, counsel and witnesses.  We |
| 10:40:08 | 15 | are going to be trying this case hopefully in the special |
| 10:40:13 | 16 | proceedings courtroom on the first floor because it's |
| 10:40:18 | 17 | significantly larger than the other district courtrooms, |
| 10:40:21 | 18 | and it allows for easier social distancing both for jury |
| 10:40:25 | 19 | selection and trial. |
| 10:40:26 | 20 | So we'll be trying it in the first floor |
| 10:40:29 | 21 | courtroom.  I can't speak for April 4th on that because we |
| 10:40:33 | 22 | don't know yet whether -- okay.  Apparently that is |
| 10:40:36 | 23 | available that day, as well.  But if we pick another date, |
| 10:40:39 | 24 | it might have already been reserved.  In an ideal world, |
| 10:40:43 | 25 | we'll be trying this in the first floor special |

10:40:46  1    proceedings courtroom.

10:40:48  2            We have Hepa filters that are portable that are

10:40:53  3    around the courtroom that are circulating and filtering

10:40:58  4    the air.  For any witness, lawyer, or party who is not

10:41:05  5    fully vaccinated, you need to let us know that, and we're

10:41:09  6    requiring a test before -- within 24 hours of jury

10:41:17  7    selection and then, a daily rapid test every day after

10:41:21  8    that for any lawyer, witness, staff person, or party who

10:41:27  9    is not fully vaccinated.

10:41:31  10           MR. NOTZON:  Is that before coming in the

10:41:33  11   courtroom, your Honor?

10:41:33  12           THE COURT:  That's correct.  Yes.  We don't need

10:41:35  13   to see proof of evaluation.  We'll take your word for

10:41:38  14   that.  But if you're unvaccinated, we will require proof

10:41:41  15   of a negative COVID test.  And again, everyone will remain

10:41:49  16   masked, including jurors, except when speaking.  I am

10:41:56  17   going to ask that you consider questioning the witnesses

10:42:01  18   from the counsel table while standing, if you can.  But if

10:42:06  19   there are issues with being able to see the witness or you

10:42:12  20   just have a strong preference to do it from the podium,

10:42:14  21   that's fine.  Just let me know that and I'll let you do it

10:42:18  22   from the podium.  I don't want you to sacrifice any

10:42:20  23   ability to see the witness or to see the jury.  But we're

10:42:24  24   just trying to maximize distancing, if we can.

10:42:29  25           Any questions about COVID protocols, or

10:42:31  1  questions, or issues with any of that?

10:42:35  2       MR. DOWER:  Yes, your Honor.  Primarily for the

10:42:37  3  purposes of error preservation, because I recognize the

10:42:40  4  Court has very strong feelings about the subject, but if

10:42:43  5  we were to object to the only summoning fully vaccinated

10:42:46  6  jurors, would we just file a brief written objection?

10:42:50  7       THE COURT:  Yes.  Absolutely.  If you want to

10:42:52  8  preserve that as an issue for appeal, that's great.

10:42:56  9       MR. DOWER:  Okay.  Thank you, your Honor.  That

10:42:57 10  was all I had.

10:42:58 11       THE COURT:  Okay.  So we will pick a jury of

10:43:02 12  seven and that is -- there will not be any alternates, but

10:43:06 13  that gives us a cushion of one juror that we might lose

10:43:11 14  during a week trial, which is very rare, but that gives us

10:43:16 15  a cushion in the event we do lose a juror.  So we'll pick

10:43:20 16  seven, but all seven again will deliberate.  There won't

10:43:23 17  be any that will be designated as an alternate.  Each side

10:43:27 18  will have three strikes at the conclusion of the jury

10:43:33 19  questioning.

10:43:34 20       I know that you have submitted a request to do a

10:43:37 21  jury questionnaire.  Those are generally disfavored in

10:43:40 22  this division.  I checked and the last time we did one was

10:43:43 23  in a very significant complex case six years ago.  What I

10:43:46 24  will do, though, is assure you that I will incorporate as

10:43:49 25  many of the questions as you have indicated you would like

| | | |
|---|---|---|
| 10:43:54 | 1 | me to ask the jury in the Court's voir dire.  I will also |
| 10:43:59 | 2 | give each side 20 minutes to do a lawyer-led questioning |
| 10:44:05 | 3 | of either followup of questions that I've already asked or |
| 10:44:10 | 4 | to ask questions that I haven't asked yet.  So feel |
| 10:44:15 | 5 | free -- again, 20 minutes per side.  I hope that at the |
| 10:44:21 | 6 | conclusion of the Court's questioning, I will have |
| 10:44:25 | 7 | included most of the questions that you have wanted asked, |
| 10:44:28 | 8 | but if not, that will give you your opportunity then to |
| 10:44:31 | 9 | question the panel. |
| 10:44:35 | 10 | Let's see, the way we will do this is, rather |
| 10:44:38 | 11 | than in a group of however many that we would be -- have |
| 10:44:43 | 12 | on the initial panel, the problem that I always try to |
| 10:44:47 | 13 | solve is not asking questions of folks who are so far |
| 10:44:53 | 14 | outside the strike zone that they really -- we're wasting |
| 10:44:58 | 15 | time soliciting answers from people who aren't going to |
| 10:45:02 | 16 | ever be on a jury. |
| 10:45:03 | 17 | The way I try to solve that problem is, I have -- |
| 10:45:07 | 18 | I put in an initial group of people who are in the initial |
| 10:45:12 | 19 | strike zone, which is the seven jurors that will |
| 10:45:17 | 20 | ultimately be seated plus the six peremptory strikes that |
| 10:45:22 | 21 | you get -- so that's 13 -- plus four that is a cushion for |
| 10:45:27 | 22 | folks who are challenged for cause during the Court's |
| 10:45:30 | 23 | questioning.  So very rarely do I dismiss more than four |
| 10:45:34 | 24 | jurors.  But as a result of that, you will be able to |
| 10:45:39 | 25 | identify 17 folks who you will be asking questions of. |

| | | |
|---|---|---|
| 10:45:43 | 1 | The remainder of the twelve or however many will |
| 10:45:45 | 2 | be on the panel, I will come out and explain this process |
| 10:45:49 | 3 | to them and say, listen, we're only asking -- I'm only |
| 10:45:53 | 4 | asking questions of this initial group of 17, but if more |
| 10:45:57 | 5 | than four of this panel -- of that initial group are |
| 10:46:00 | 6 | challenged and excused for cause, then I will go back to |
| 10:46:05 | 7 | that second group and say, all right, I'm going to go |
| 10:46:09 | 8 | through these questions that I've already asked the first |
| 10:46:11 | 9 | group with you.  And so, I'll say, please listen because |
| 10:46:14 | 10 | in the event that we have to pull you from that second |
| 10:46:16 | 11 | group, I'm going to ask you to recall if you've had any -- |
| 10:46:21 | 12 | you would have had any answers to the questions I've asked |
| 10:46:22 | 13 | the first group. |
| 10:46:23 | 14 | That typically works pretty well.  I don't simply |
| 10:46:26 | 15 | ask, would you have had any answers.  I go through and |
| 10:46:29 | 16 | talk about the different areas that I've already covered. |
| 10:46:31 | 17 | That seems to be the most efficient way to do it because I |
| 10:46:34 | 18 | rarely have to do that.  But in the event I do, it takes |
| 10:46:38 | 19 | far less time than if we have twelve other people who have |
| 10:46:41 | 20 | no chance of being on this jury going on and on about why |
| 10:46:45 | 21 | they either do or don't want to be on the jury.  So that's |
| 10:46:49 | 22 | the way that works.  And again, you will be able to |
| 10:46:53 | 23 | identify visually the 17 people who are in that initial |
| 10:46:56 | 24 | questioning zone. |
| 10:46:59 | 25 | Let's see, any questioning about voir dire that I |

| | | |
|---|---|---|
| 10:47:04 | 1 | haven't covered so far? |
| 10:47:07 | 2 | MR. SCHMIDT: I have just a few quick questions, |
| 10:47:10 | 3 | sir. One question is, I was just curious, approximately |
| 10:47:12 | 4 | how long do you spend on voir dire? I know that is |
| 10:47:14 | 5 | probably dependent case-by-case, but I'm just curious |
| 10:47:17 | 6 | about that. |
| 10:47:17 | 7 | THE COURT: I'm pretty efficient. That's a |
| 10:47:19 | 8 | euphemism for pretty quick. I'm of the school of thought |
| 10:47:24 | 9 | that, you know, the default should be that we should be |
| 10:47:27 | 10 | able to get seven people off the street and put them in a |
| 10:47:30 | 11 | jury box and they should hear the case. So I'm not |
| 10:47:33 | 12 | looking for reasons to get people off of a panel. So I |
| 10:47:39 | 13 | don't have the same interest that perhaps each of you do |
| 10:47:42 | 14 | about sort of following up. I'm pretty efficient and |
| 10:47:46 | 15 | don't ask too many followup questions. |
| 10:47:48 | 16 | What I'll do, really, what it ends up being is, I |
| 10:47:51 | 17 | will identify folks who perhaps because of the initial |
| 10:47:55 | 18 | answer they gave me, you might want to use some of your 20 |
| 10:47:57 | 19 | minutes to go back and say when you told Judge Pitman so |
| 10:47:59 | 20 | and so, can you tell me a little more about that kind of a |
| 10:48:02 | 21 | thing. |
| 10:48:03 | 22 | MR. SCHMIDT: Okay. And then, another question |
| 10:48:04 | 23 | is, approximately how big is the panel? |
| 10:48:06 | 24 | THE COURT: You know, usually 23. So there will |
| 10:48:12 | 25 | be probably in this case -- I'll look again, but in a case |

| | | |
|---|---|---|
| 10:48:15 | 1 | this size, we'll probably have 23 in the whole panel. |
| 10:48:18 | 2 | MR. SCHMIDT:  Okay.  And continue asking |
| 10:48:21 | 3 | questions, will we have a seating chart?  Or can you or |
| 10:48:23 | 4 | someone in your office tell us how they're seated so we |
| 10:48:26 | 5 | can make our own seating chart? |
| 10:48:29 | 6 | THE COURT:  We will give you a seating chart, but |
| 10:48:30 | 7 | it won't be until immediately prior because we won't know |
| 10:48:34 | 8 | until that morning.  We'll randomize that morning after |
| 10:48:36 | 9 | they show up, and then, we'll plug in their names in the |
| 10:48:39 | 10 | seating chart and we will give that to you before they |
| 10:48:42 | 11 | come out but not long -- you won't have it long enough to |
| 10:48:46 | 12 | like do all of your Google searches before they come out. |
| 10:48:49 | 13 | MR. SCHMIDT:  All right.  Yeah.  Of course.  And |
| 10:48:52 | 14 | then, finally, on challenges for cause, do you generally |
| 10:48:58 | 15 | -- is there any particular way you handle those? |
| 10:49:00 | 16 | THE COURT:  Great question.  Yeah.  What I will |
| 10:49:02 | 17 | do is, if I'm realizing that I'm having sufficient |
| 10:49:06 | 18 | concerns about a juror and the response they're giving me, |
| 10:49:11 | 19 | I will, you know -- then I will spend a little more time |
| 10:49:14 | 20 | with them, getting them to elaborate on whatever issue |
| 10:49:17 | 21 | seems to be of concern.  If I at that point am concerned |
| 10:49:22 | 22 | enough that they are a problem, I will summon you to the |
| 10:49:28 | 23 | bench at that time because if it's that apparent, I want |
| 10:49:32 | 24 | to do that sooner than later because we need to pull, you |
| 10:49:35 | 25 | know -- we need to know, you need to know sooner than |

| | | |
|---|---|---|
| 10:49:38 | 1 | later who's going to be excluded. |
| 10:49:40 | 2 | If I think it's just something that I think it's |
| 10:49:42 | 3 | going to be on you to convince me that it's a challenge |
| 10:49:46 | 4 | for cause, then what I will do is wait until after all of |
| 10:49:52 | 5 | the questioning and give you the opportunity to come up |
| 10:49:55 | 6 | before I release the jury and before you exercise your |
| 10:49:58 | 7 | challenges to give me -- to give you the opportunity to |
| 10:50:04 | 8 | convince me that certain jurors should be stricken for |
| 10:50:06 | 9 | cause. |
| 10:50:07 | 10 | MR. SCHMIDT:  Thank you. |
| 10:50:09 | 11 | MR. DOWER:  A related question, your Honor.  Just |
| 10:50:11 | 12 | based on the physical layout of the courtroom, is it such |
| 10:50:14 | 13 | that it's easy for counsel to approach and have a quiet |
| 10:50:17 | 14 | conversation with your Honor without the jury being able |
| 10:50:20 | 15 | to hear them? |
| 10:50:21 | 16 | THE COURT:  Yes.  Especially in that courtroom |
| 10:50:23 | 17 | because it's on the far side and there's a microphone at |
| 10:50:27 | 18 | the side of the bench so that the court reporter can hear |
| 10:50:30 | 19 | you with a whisper.  And then, we have a noise cancelling |
| 10:50:36 | 20 | kind of white noise that the clerk turns on so that -- |
| 10:50:41 | 21 | yeah.  Although you typically speak very loudly. |
| 10:50:46 | 22 | MR. DOWER:  That question is very important to |
| 10:50:48 | 23 | me, specifically, your Honor. |
| 10:50:50 | 24 | MR. SCHMIDT:  Afraid I suffer from that, as well. |
| 10:50:52 | 25 | Let's see how loud I am in court. |

| | | |
|---|---|---|
| 10:50:54 | 1 | THE COURT:  I'll shush you if I think that the |
| 10:50:57 | 2 | jury can hear you. |
| 10:50:58 | 3 | MR. DOWER:  Appreciate that.  Audible shush. |
| 10:51:02 | 4 | THE COURT:  Exactly.  All right.  Any other |
| 10:51:04 | 5 | questions so far?  Okay. |
| 10:51:07 | 6 | So now time limits.  Twenty minutes for your |
| 10:51:11 | 7 | opening statements, 25 minutes for closings unless at the |
| 10:51:14 | 8 | conclusion of the evidence, you want to try to convince me |
| 10:51:17 | 9 | that 25 minutes is not sufficient.  The use of |
| 10:51:22 | 10 | demonstratives during opening, I would ask that you confer |
| 10:51:26 | 11 | with each other and disclose whatever you're going to use |
| 10:51:29 | 12 | in your opening.  Beware if you -- in a minute, we're |
| 10:51:37 | 13 | going to talk about pre-admitted exhibits.  You can use |
| 10:51:39 | 14 | pre-admitted exhibits.  Those are exhibits that will be -- |
| 10:51:42 | 15 | have been agreed to pre-admission by everyone.  So you can |
| 10:51:47 | 16 | use those with the consent of counsel during your opening. |
| 10:51:55 | 17 | Let's see, what else.  Anything about opening |
| 10:52:01 | 18 | statements, something just flashed in my mind.  Okay. |
| 10:52:10 | 19 | Typically I get juries picked before lunch the first day, |
| 10:52:12 | 20 | and so, you should expect that we will probably -- that |
| 10:52:16 | 21 | the typical chronology is that we'll pick a jury, give |
| 10:52:20 | 22 | them an hour for lunch and come back and hit the ground |
| 10:52:23 | 23 | running with opening statements.  And the plaintiff needs |
| 10:52:25 | 24 | to be ready with couple of two or three hours of testimony |
| 10:52:32 | 25 | for that first day. |

| | | |
|---|---|---|
| 10:52:34 | 1 | What really I feel very strongly about is, I know |
| 10:52:37 | 2 | it's a great inconvenience to witnesses to have to sort of |
| 10:52:41 | 3 | be on call and to be sitting out there, but it's better to |
| 10:52:44 | 4 | inconvenience one or two people than to have a jury of |
| 10:52:46 | 5 | seven waiting because witnesses are not lined up and ready |
| 10:52:52 | 6 | to go.  So be ready, in other words, to hit the ground |
| 10:52:55 | 7 | running and start getting evidence in front of the jury on |
| 10:52:59 | 8 | the first day. |
| 10:52:59 | 9 | On that note, I observe a kind of an unusual |
| 10:53:04 | 10 | trial schedule that I want to talk to you about.  I don't |
| 10:53:08 | 11 | think either of you have tried anything since I've done |
| 10:53:11 | 12 | this.  So the first day, we'll pick a jury at 9:00.  It |
| 10:53:15 | 13 | will be a fairly typical day.  We will go until a natural |
| 10:53:19 | 14 | stopping point between 5:00 and 6:00 the first day.  For |
| 10:53:23 | 15 | every successive day, however, we will start at 8:30 and |
| 10:53:27 | 16 | we will end at 3:30.  We will have two 20-minute breaks |
| 10:53:32 | 17 | spaced evenly throughout the day with no lunch break.  So |
| 10:53:36 | 18 | again, 8:30 to 3:30 with only two 20-minute breaks during |
| 10:53:40 | 19 | that time period. |
| 10:53:41 | 20 | Now, let me tell you what that does and why I do |
| 10:53:43 | 21 | it.  If jurors know in advance that they're not going to |
| 10:53:48 | 22 | have a full hour for lunch, but that they bring sufficient |
| 10:53:51 | 23 | snacks for two 20-minute breaks to get them to 3:30, they |
| 10:53:56 | 24 | are extraordinarily grateful to be done by 3:30 to go pick |
| 10:54:02 | 25 | up kids, to beat traffic, because some of them are, you |

| | | |
|---|---|---|
| 10:54:04 | 1 | know, three counties away, and it gives you the |
| 10:54:07 | 2 | opportunity to sort of have a couple of hours to prepare |
| 10:54:09 | 3 | for the next day, gives me the opportunity to do some |
| 10:54:12 | 4 | sentencings or to take care of other court business in the |
| 10:54:15 | 5 | afternoon.  And juries don't mind not having -- not taking |
| 10:54:21 | 6 | lunches if forewarned.  And we can get just as many trial |
| 10:54:26 | 7 | hours in as if -- believe it or not, as if we do 9:00 to |
| 10:54:31 | 8 | 6:00 with two breaks and a lunch.  Taking those three |
| 10:54:33 | 9 | breaks, one of those being an hour lunch, getting people |
| 10:54:36 | 10 | in and out of the courthouse and the jury room, it's |
| 10:54:42 | 11 | incredibly inefficient.  And so, I hope that you'll be |
| 10:54:45 | 12 | able to adjust to that and find that that's an efficient |
| 10:54:48 | 13 | way of doing things. |
| 10:54:49 | 14 | Now, as for how many -- I do put you on a clock. |
| 10:54:55 | 15 | I'm going to -- I've looked at -- obviously having been |
| 10:55:00 | 16 | familiar with the potential evidence in the case in the |
| 10:55:04 | 17 | motions that have already been considered by the Court and |
| 10:55:07 | 18 | looking at the witness lists that you have submitted, what |
| 10:55:09 | 19 | I do is, I look at all of that and I give my best |
| 10:55:12 | 20 | good-faith estimate of how many hours it will take you to |
| 10:55:16 | 21 | try the case.  I will give you a number and you will |
| 10:55:21 | 22 | cringe and cry and gnash your teeth, and you will say that |
| 10:55:25 | 23 | I'm so unfair and that there's no way you can do that, and |
| 10:55:30 | 24 | I will say, oh, yes, you can. |
| 10:55:35 | 25 | But here's what I will do.  In the event that I |

| | | |
|---|---|---|
| 10:55:39 | 1 | have misjudged and you get to the conclusion of your case |
| 10:55:43 | 2 | and you have been efficient in getting people on and off |
| 10:55:47 | 3 | the stand, not covering the same ground three and four |
| 10:55:51 | 4 | times, not fumbled with audiovisual, all of the things |
| 10:55:57 | 5 | that could sort of result in delays, if you've done all of |
| 10:56:01 | 6 | that and you still haven't been able to get all your |
| 10:56:03 | 7 | evidence in, I will always give you more time so that you |
| 10:56:06 | 8 | can do that. |
| 10:56:06 | 9 | If, however, at the conclusion of the number of |
| 10:56:09 | 10 | hours I've given you, I think you have not made the best |
| 10:56:12 | 11 | use, I will have had a margin where I've been making |
| 10:56:15 | 12 | little notes to make a very strong record about why the |
| 10:56:18 | 13 | number of hours I gave you was fair to begin with and why |
| 10:56:22 | 14 | I'm not going to give you more.  I don't know that I've |
| 10:56:24 | 15 | ever -- it's only come up a couple of times and I don't |
| 10:56:28 | 16 | think I've ever not given anybody -- have I?  One time.  I |
| 10:56:32 | 17 | have.  Sorry.  I have, but I made a really good record and |
| 10:56:37 | 18 | didn't get reversed by having limited their numbers. |
| 10:56:41 | 19 | So I'm trying to be fair, but I also want to give |
| 10:56:44 | 20 | you a real incentive to be efficient, to not sort of go |
| 10:56:49 | 21 | over things four and five times.  The number of hours -- |
| 10:56:55 | 22 | and this is inclusive of -- we literally have a chess |
| 10:57:00 | 23 | clock and this is inclusive of your direct and then, your |
| 10:57:03 | 24 | cross-examination, as well.  And so, we will toggle and |
| 10:57:06 | 25 | keep track.  It's exclusive of your opening statement and |

10:57:10  1  final argument.

10:57:12  2          So the number of hours that you will each be

10:57:14  3  allocated for this trial will be nine hours a side, and

10:57:18  4  again, that's direct and cross at the conclusion of which,

10:57:23  5  if you have -- typically people wail and gnash their teeth

10:57:28  6  and then, they use like two-thirds of what I've given

10:57:33  7  them.  So don't feel like you have to use all of it, but

10:57:36  8  that's what I'm going to allocate for this trial.

10:57:40  9          Any questions about anything that we've covered

10:57:44  10 so far?  Just housekeeping, mechanical things?

10:57:51  11         MR. DOWER:  I think I'm supposed to say that's

10:57:53  12 unfair and gnash my teeth.  That sounds bad for my molars,

10:57:57  13 so I'm not going to do that --

10:57:57  14         THE COURT:  That'll get your beard a little bit.

10:57:58  15         MR. DOWER:  I did have one question.  Sometimes

10:58:03  16 there's little conferences with the Court about

10:58:06  17 objections, things like that.  Does the clock stop during

10:58:08  18 those?

10:58:08  19         THE COURT:  It does.

10:58:10  20         MR. DOWER:  And will we be able to ask --

10:58:12  21         THE COURT:  Let me say this, though.  If you

10:58:13  22 start requesting bench conferences too frequently, I will

10:58:16  23 tell you that the next time you do that, we're going to

10:58:19  24 keep your clock running.

10:58:21  25         MR. DOWER:  That is fair.

| | | |
|---|---|---|
| 10:58:27 | 1 | THE COURT:  All right?  Any other questions? |
| 10:58:29 | 2 | MR. SCHMIDT:  I will just also gnash and -- |
| 10:58:32 | 3 | THE COURT:  For the record. |
| 10:58:33 | 4 | MR. SCHMIDT:  -- cry and whine because I do think |
| 10:58:36 | 5 | that we probably will need additional time, but we will do |
| 10:58:39 | 6 | everything we can to be obviously as efficient as |
| 10:58:41 | 7 | possible. |
| 10:58:41 | 8 | THE COURT:  And that's all I ask.  Absolutely. |
| 10:58:43 | 9 | MR. SCHMIDT:  Just need to make that note. |
| 10:58:45 | 10 | On the opening and on the use of demonstratives, |
| 10:58:47 | 11 | I just wanted to just clarify that.  So I assume something |
| 10:58:50 | 12 | like a PowerPoint would fall within what you're talking |
| 10:58:53 | 13 | about and -- |
| 10:58:54 | 14 | THE COURT:  Well, no.  You don't have to disclose |
| 10:58:58 | 15 | it in the sense like if all you're doing is, if it's an |
| 10:59:00 | 16 | outline of, you know -- I don't want you to have to |
| 10:59:03 | 17 | disclose your trial tactics in your opening statement.  If |
| 10:59:06 | 18 | you're using anything that is going to be an exhibit at |
| 10:59:09 | 19 | trial or something -- anything more than like a PowerPoint |
| 10:59:14 | 20 | where you're just kind of putting -- it's tracking the |
| 10:59:16 | 21 | opening statements that you're giving, that's fine.  But |
| 10:59:19 | 22 | if it's going to be more than that, if you're using |
| 10:59:21 | 23 | evidence or doing anything that's potentially |
| 10:59:23 | 24 | objectionable, run it by opposing counsel first. |
| 10:59:27 | 25 | MR. SCHMIDT:  Okay.  And that would include even |

| | | |
|---|---|---|
| 10:59:30 | 1 | pre-admitted exhibits. |
| 10:59:31 | 2 | THE COURT:  Yeah, but the only reason they're |
| 10:59:33 | 3 | pre-admitted is because you both agree to it.  So that |
| 10:59:36 | 4 | shouldn't be objectionable. |
| 10:59:37 | 5 | MR. SCHMIDT:  Okay.  Great. |
| 10:59:39 | 6 | THE COURT:  While you're talking about that |
| 10:59:41 | 7 | audiovisual, if you would, please, make a trip to the |
| 10:59:44 | 8 | courthouse and make an appointment with Ms. Golden to see |
| 10:59:47 | 9 | what we have, and see how it works, and see how it marries |
| 10:59:52 | 10 | up with the technology you have.  There's nothing more |
| 10:59:54 | 11 | discouraging than you getting here and figuring out that |
| 10:59:57 | 12 | you didn't bring the right, you know, hardware or whatever |
| 11:00:03 | 13 | to connect up. |
| 11:00:04 | 14 | I will also say it's just something that has |
| 11:00:07 | 15 | happened during the last two jury trials I've had, and so, |
| 11:00:10 | 16 | I started kind of sharing this story is, often when you |
| 11:00:14 | 17 | are connected live to your laptop and you are bringing |
| 11:00:18 | 18 | things up and down, the default is to your desktop.  And |
| 11:00:23 | 19 | in both of the trials, the desktop has inadvertently, I |
| 11:00:28 | 20 | believe, contained things that were highly prejudicial. |
| 11:00:35 | 21 | So I think it was unintentional, but make sure that you |
| 11:00:38 | 22 | have a clean desktop so that you don't inadvertently when |
| 11:00:41 | 23 | you're going back and forth between exhibits or deposition |
| 11:00:44 | 24 | video, or whatever -- one of them was -- on the desktop, |
| 11:00:50 | 25 | there was an open file that was a photograph of a news |

11:00:56    1   account of a multimillion-dollar verdict in the kind of

11:01:03    2   case we were trying.  Curiously the plaintiff was the one

11:01:06    3   who had that on.

11:01:08    4            MR. SCHMIDT:  Yeah.  That's not appropriate to

11:01:09    5   flash that up there.

11:01:11    6            THE COURT:  So that sort of thing, just please --

11:01:15    7   you know, I had to give a curative instruction and, you

11:01:17    8   know, I took the jury up and one -- I asked the juror, I

11:01:22    9   said, did anybody see anything?  And one juror said yeah,

11:01:25   10   and I said, come up here and tell me.  Yeah, it was a

11:01:27   11   multimillion-dollar verdict in a case just like this, and

11:01:32   12   I said oh, boy.  So anyway, just word to the wise.

11:01:35   13            Okay.  So let's launch now into the more

11:01:39   14   substantive issues that I have, that is, your motions in

11:01:42   15   limine.  I want to go ahead and get those ruled on, and

11:01:44   16   then, we'll talk a little bit about some objections that

11:01:47   17   you've made.

11:01:51   18            MR. DOWER:  Your Honor, could I make sure that

11:01:53   19   we've covered the more logistical matters if we're at a

11:01:56   20   transition point.

11:01:57   21            THE COURT:  Sure.

11:01:58   22            MR. DOWER:  We have a witness who we would like

11:02:00   23   to -- he's physically living in California, and then, on

11:02:05   24   top of that, his wife has a health condition that makes

11:02:09   25   her particularly vulnerable for COVID, and he would very

| | | |
|---|---|---|
| 11:02:13 | 1 | much like to appear remotely.  And I've already talked to |
| 11:02:15 | 2 | Mr. Schmidt about it.  He's not opposed.  Should I file a |
| 11:02:19 | 3 | motion to allow him to appear remotely, like via Zoom like |
| 11:02:23 | 4 | we're doing right now? |
| 11:02:24 | 5 | THE COURT:  No.  You can -- we'll just put in the |
| 11:02:28 | 6 | minutes of this hearing.  I don't want this to be a |
| 11:02:31 | 7 | regular practice, but in the event that there is a special |
| 11:02:36 | 8 | concern about someone with any preexisting condition that |
| 11:02:40 | 9 | would be of concern and it's unobjected to, which Mr. |
| 11:02:45 | 10 | Schmidt, is that the case? |
| 11:02:47 | 11 | MR. SCHMIDT:  That's correct.  Yes. |
| 11:02:48 | 12 | THE COURT:  Okay.  Then I will certainly allow |
| 11:02:50 | 13 | that.  We will have to talk about -- that will require |
| 11:02:52 | 14 | special setup on our end of setting up video.  And we'll |
| 11:02:58 | 15 | have to talk about how we're going to do that and what |
| 11:03:00 | 16 | equipment we're going to have to bring in to get that |
| 11:03:03 | 17 | done.  We'll do that and you can -- I'll leave that to Ms. |
| 11:03:06 | 18 | Golden and you can talk with her about that.  But I will |
| 11:03:10 | 19 | allow you -- can you tell us what witness that is? |
| 11:03:14 | 20 | MR. DOWER:  Sure.  It's Dr. Tewfik.  I believe |
| 11:03:18 | 21 | he's -- I think he's on, if not both -- I'm sure he's on |
| 11:03:21 | 22 | my witness list.  He may also be on Bob's. |
| 11:03:25 | 23 | MR. SCHMIDT:  He is. |
| 11:03:27 | 24 | MR. DOWER:  Next quick logistical question, Greg |
| 11:03:31 | 25 | Fenves has very limited availability.  If we need to take |

| | | |
|---|---|---|
| 11:03:38 | 1 | him out of order, is that something I should just work |
| 11:03:41 | 2 | with Mr. Schmidt on?  Or does the Court need to be |
| 11:03:44 | 3 | involved in that?  I mean, I think, Bob, you were planning |
| 11:03:47 | 4 | to call him as an adverse witness, so maybe we can just |
| 11:03:50 | 5 | work through that.  But if we were to stick with our |
| 11:03:52 | 6 | original setting, he's only available Monday and Tuesday |
| 11:03:55 | 7 | of the trial. |
| 11:03:58 | 8 | THE COURT:  Unless he's not.  University |
| 11:04:00 | 9 | presidents have put on their pants the same as everyone |
| 11:04:04 | 10 | else, and he's not going to get any special treatment in |
| 11:04:07 | 11 | this court. |
| 11:04:08 | 12 | MR. DOWER:  I understand, your Honor.  His pants |
| 11:04:10 | 13 | are being put on in Georgia, which makes it a little bit |
| 11:04:13 | 14 | trickier.  But I understand. |
| 11:04:14 | 15 | THE COURT:  Sure.  Yeah.  Obviously work out what |
| 11:04:16 | 16 | you can. |
| 11:04:18 | 17 | MR. DOWER:  Okay. |
| 11:04:18 | 18 | THE COURT:  But my favorite thing is when doctors |
| 11:04:21 | 19 | come in and say, you know, oh, gosh, you really need to -- |
| 11:04:24 | 20 | I said how many years of my life have I spent in doctor's |
| 11:04:27 | 21 | offices waiting for them to maximize their profits.  So |
| 11:04:33 | 22 | no.  No one by virtue of their position is going to be |
| 11:04:36 | 23 | treated differently than any other witness. |
| 11:04:39 | 24 | MR. DOWER:  Understood. |
| 11:04:41 | 25 | Some of the exhibits that I think both parties |

| | | |
|---|---|---|
| 11:04:42 | 1 | are intending to offer are Excel spreadsheets that are -- |
| 11:04:47 | 2 | there's no way they can be printed on eight-and-a-half. |
| 11:04:50 | 3 | Now, we can, you know, go to Kinko's maybe and do a big |
| 11:04:54 | 4 | blowup, but is that how the Court would prefer Excel |
| 11:04:57 | 5 | spreadsheets that have too many columns to be conveniently |
| 11:05:01 | 6 | printed on a normal eight-and-a-half-by-11 page? |
| 11:05:05 | 7 | THE COURT:  You know, in terms of actually |
| 11:05:09 | 8 | introducing them in evidence and what format the jury |
| 11:05:12 | 9 | would have access to them? |
| 11:05:13 | 10 | MR. DOWER:  Yes, your Honor. |
| 11:05:14 | 11 | THE COURT:  I think that that will be digitally |
| 11:05:15 | 12 | available to them, and so, I don't think that format is |
| 11:05:18 | 13 | going to be a problem. |
| 11:05:19 | 14 | MR. DOWER:  Okay.  That was my question is, do |
| 11:05:22 | 15 | they have the ability to take into the jury room an Excel |
| 11:05:26 | 16 | spreadsheet in its native form? |
| 11:05:27 | 17 | THE COURT:  All of the evidence will be digital |
| 11:05:30 | 18 | and available to them in the jury room. |
| 11:05:34 | 19 | MR. DOWER:  Okay.  That makes that very -- thank |
| 11:05:36 | 20 | you, your Honor.  Oh, witness breakout rooms, will those |
| 11:05:41 | 21 | be available? |
| 11:05:42 | 22 | THE COURT:  Yes.  We have attorney conference |
| 11:05:44 | 23 | rooms and you'll have access to those throughout the |
| 11:05:48 | 24 | trial. |
| 11:05:48 | 25 | MR. DOWER:  Okay.  I think those are all of my |

| | | |
|---|---|---|
| 11:05:52 | 1 | questions.  Thank you, your Honor. |
| 11:05:53 | 2 | THE COURT:  Okay.  Mr. Schmidt? |
| 11:05:54 | 3 | MR. SCHMIDT:  That reminded me of a question.  Do |
| 11:05:57 | 4 | you want or will we be asked to provide paper copies of |
| 11:06:00 | 5 | any of our exhibits? |
| 11:06:03 | 6 | THE COURT:  Only in the event that you feel like |
| 11:06:05 | 7 | it's something that you want me to be looking at.  You'll |
| 11:06:10 | 8 | have the ability obviously to be -- to put it up on the |
| 11:06:13 | 9 | screen and -- but if you want to give the Court a courtesy |
| 11:06:20 | 10 | copy if it's something that you want me to have the |
| 11:06:21 | 11 | ability to look at, that's fine.  But I typically am |
| 11:06:24 | 12 | paperless and I will be looking -- and I have a monitor at |
| 11:06:27 | 13 | the bench where I'm looking at whatever evidence you're |
| 11:06:30 | 14 | referring to.  And so, unless you feel particularly that |
| 11:06:32 | 15 | you want me to have a hardcopy, I don't need hardcopies of |
| 11:06:35 | 16 | anything. |
| 11:06:36 | 17 | MR. SCHMIDT:  Okay. |
| 11:06:39 | 18 | THE COURT:  Okay.  Great.  Well, let's go, then, |
| 11:06:41 | 19 | into the motions in limine.  Starting with the plaintiff's |
| 11:06:45 | 20 | motions, I think we have five -- and I appreciate |
| 11:06:50 | 21 | particularly the fact that you have been in communication |
| 11:06:54 | 22 | with each other on these, and you have indicated to me |
| 11:06:58 | 23 | what is opposed and unopposed.  That's particularly |
| 11:07:01 | 24 | helpful. |
| 11:07:02 | 25 | One is granted as unopposed.  Two is granted, |

| | | |
|---|---|---|
| 11:07:08 | 1 | except for I do believe that the defendant's sort of |
| 11:07:16 | 2 | condition about the work done by the plaintiff's husband, |
| 11:07:23 | 3 | that is something that -- especially with regard to the |
| 11:07:27 | 4 | dossier, I think that that is something that they will be |
| 11:07:32 | 5 | able to get into, but with that exception, then I will |
| 11:07:36 | 6 | grant No. 2. |
| 11:07:38 | 7 | No. 3, again, with the reasonable exception of |
| 11:07:43 | 8 | the Plaintiff's W-2 forms as indicated in the defendant's |
| 11:07:47 | 9 | response, that will be granted, as well.  And then, 4 and |
| 11:07:51 | 10 | 5 are granted as unopposed. |
| 11:07:53 | 11 | Any questions about that? |
| 11:07:56 | 12 | MR. SCHMIDT:  (Moves head side to side.) |
| 11:07:58 | 13 | THE COURT:  Okay.  Moving on, then, to the |
| 11:07:59 | 14 | defendant's, 1 is granted as agreed.  Two, granted as |
| 11:08:07 | 15 | agreed.  Three, granted as agreed.  Four will be denied. |
| 11:08:21 | 16 | I think that that's probative.  And if you have any |
| 11:08:25 | 17 | specific objection as it's coming in, you can do that |
| 11:08:28 | 18 | during trial.  No. 5, I agree with the defendant's |
| 11:08:35 | 19 | objection there about pattern or practice.  And so, I'll |
| 11:08:38 | 20 | grant that.  And again, that's sort of a term of art that |
| 11:08:46 | 21 | it does not pertain in this kind of case.  So I'll grant |
| 11:08:52 | 22 | 5. |
| 11:08:52 | 23 | Six is denied as being probative.  Seven, denied |
| 11:09:00 | 24 | on the same ground.  Eight, 9 and 10 are sort of ones that |
| 11:09:05 | 25 | I wanted to visit with you a little bit about.  And this |

| | | |
|---|---|---|
| 11:09:11 | 1 | is talking about medical care, treatment, and the ability |
| 11:09:16 | 2 | for the plaintiff to comment on her own mental medical |
| 11:09:27 | 3 | psychological conditions.  What I would intend to do in |
| 11:09:32 | 4 | these categories is, obviously if we're talking about |
| 11:09:34 | 5 | expert testimony on any condition, that would require |
| 11:09:41 | 6 | expert -- the disclosure of a report and -- then I get |
| 11:09:49 | 7 | that.  But the plaintiff is going to be able to talk about |
| 11:09:51 | 8 | sort of her experiences.  I mean, that's the nature of |
| 11:09:55 | 9 | these kinds of damages. |
| 11:09:56 | 10 | So let me just ask sort of, Mr. Dower, if you |
| 11:09:59 | 11 | could tell me what you're wanting to really avoid there, |
| 11:10:02 | 12 | understanding that the plaintiff is going to be -- |
| 11:10:07 | 13 | understandably going to be able to talk about her own |
| 11:10:11 | 14 | experience of what she's gone through and her |
| 11:10:13 | 15 | interpretation of those experiences. |
| 11:10:15 | 16 | MR. DOWER:  Yes, your Honor.  I think, of course, |
| 11:10:17 | 17 | she'll be able to talk about her mental state, her mental |
| 11:10:20 | 18 | anguish from her own perspective.  I think what we're |
| 11:10:22 | 19 | trying to avoid is something that would effectively |
| 11:10:24 | 20 | operate as a medical diagnosis like my denial of tenure |
| 11:10:28 | 21 | gave me clinical depression or made me bipolar.  Something |
| 11:10:31 | 22 | that's -- really goes outside the realm of just lay |
| 11:10:34 | 23 | testimony about someone's feelings and experiences and |
| 11:10:39 | 24 | crosses over into the realm of sort of a layperson's |
| 11:10:42 | 25 | self-diagnosis. |

11:10:43  1          THE COURT:  Sure.  Okay.

11:10:44  2          Mr. Schmidt.

11:10:45  3          MR. SCHMIDT:  Your Honor, Dr. Nikolova is

11:10:50  4  obviously going to be testifying about going through

11:10:52  5  severe depression as a result of what has happened here.

11:10:57  6  She also has filed and been granted FMLA leave for having

11:11:02  7  depression.  Also has seen multiple medical providers.  So

11:11:07  8  I think the only thing that we would like to be able to

11:11:09  9  have her talk about is that she, again, saw medical

11:11:15  10  providers, you know, that she's gone to therapy, tried to,

11:11:17  11  you know, do things to treat herself and to deal with

11:11:21  12  this.

11:11:22  13          You know, we do agree, you know, she can't say,

11:11:24  14  my therapist told me I have depression.  And so, we

11:11:28  15  certainly understand that, but we can -- I think she can

11:11:30  16  testify as to her own understanding of what her condition

11:11:32  17  is.  And that's basically all we'd like to do.  We'd also

11:11:36  18  point out, she -- in addition to FMLA, she had asked for a

11:11:39  19  reasonable accommodation because of her depression, which

11:11:42  20  was essentially granted.  So those are the kind of things

11:11:45  21  that we see coming out and we'd like to present to the

11:11:48  22  Court and to the jury.

11:11:49  23          THE COURT:  All right.  As long as you don't

11:11:52  24  stray into sort of getting in front of a jury evidence of

11:11:55  25  a diagnosis about which there is no expert testimony, then

| | | |
|---|---|---|
| 11:11:59 | 1 | that's fine.  And, you know, I think you both are |
| 11:12:02 | 2 | experienced, you know how to kind of manage that and stay |
| 11:12:05 | 3 | within those sort of boundaries.  But if not, Mr. Dower, |
| 11:12:09 | 4 | you object and we can talk about it more. |
| 11:12:13 | 5 | MR. DOWER:  Yes, your Honor. |
| 11:12:13 | 6 | THE COURT:  Okay.  So what I'm going to do, then, |
| 11:12:15 | 7 | is deny those with the understanding that if you do have |
| 11:12:24 | 8 | concerns about the direction of any questioning or the |
| 11:12:28 | 9 | response to any answer, Mr. Dower, then you can approach |
| 11:12:30 | 10 | and we'll discuss it. |
| 11:12:34 | 11 | Eleven is granted as agreed, as is 12.  Okay. |
| 11:12:49 | 12 | Thirteen, sort of tell me what we're getting into there, |
| 11:12:53 | 13 | Mr. Dower, and what you're concerned about. |
| 11:12:56 | 14 | MR. DOWER:  I guess -- well, I don't really see |
| 11:12:59 | 15 | this as being a probable issue.  I think we're just -- we |
| 11:13:02 | 16 | don't want to be blind-sided by a new damages model during |
| 11:13:07 | 17 | the trial that we -- because we did depose the two experts |
| 11:13:11 | 18 | on damages.  And so, we're just trying to prevent sort of |
| 11:13:15 | 19 | unfair surprise during trial with things that weren't |
| 11:13:18 | 20 | disclosed. |
| 11:13:19 | 21 | THE COURT:  Okay.  And, Mr. Schmidt, you get |
| 11:13:21 | 22 | that, right? |
| 11:13:22 | 23 | MR. SCHMIDT:  Yeah, we get that.  And we would |
| 11:13:24 | 24 | only ask -- we'll probably have our expert update their |
| 11:13:27 | 25 | damage model through the date of trial.  And then, of |

| 11:13:30 | 1 | course, we made reference to emotional stress, |

course, we made reference to emotional stress,

compensatory damages wouldn't be covered by this.  But

that's the only -- we don't intend to offer new categories

of damages.

THE COURT:  Okay.  Great.

So I'll grant that -- I mean, I'm sorry, I'll

deny that, but, Mr. Dower, you can obviously re-urge this

if we stray into that territory.

Fourteen through 17, I'm going to deny only

because those are covered by the rules of evidence, and I

typically deny things that are otherwise prohibited by the

rules of evidence, but obviously without prejudice to you

using those if you become concerned during trial.  And 18,

I think that I get that you need to establish predicate

before you can get in, but I think that there is a world

in which you could get in that evidence.

So I mean, Mr. Dower, as long as you understand

that -- as long as they establish first that there's a

person that's similarly situated, then with that, I would

be inclined to deny it and leave you the opportunity to

object in the event that they have not done that.

MR. DOWER:  That's fair, your Honor.  I think

this will probably be a longer topic of discussion once we

get to the exhibits.  So understood.

THE COURT:  Okay.  Very good.

| | | |
|---|---|---|
| 11:14:52 | 1 | So 19, for the same reasons I believe it's |
| 11:14:55 | 2 | covered by the rules of evidence, so I'll deny that |
| 11:14:57 | 3 | without prejudice to you urging that at a later time. |
| 11:15:02 | 4 | So now that we do move to the exhibits, let me |
| 11:15:07 | 5 | ask you this.  It seems to me that many, if not most, of |
| 11:15:11 | 6 | the objections that you have are objections that would |
| 11:15:15 | 7 | best be left for trial in the context of the trial and may |
| 11:15:22 | 8 | or may not sort of require any rulings in advance.  What I |
| 11:15:28 | 9 | would like to do is have you -- without going exhibit by |
| 11:15:34 | 10 | exhibit today, what I would like for you to do is to |
| 11:15:36 | 11 | confer, once again, and to narrow down exhibits that you |
| 11:15:41 | 12 | absolutely need a ruling in advance because it's so |
| 11:15:45 | 13 | important to sort of maybe the theory of your case or how |
| 11:15:50 | 14 | you would approach things. |
| 11:15:52 | 15 | If you absolutely need a ruling, if you could |
| 11:15:55 | 16 | resubmit that in a format of -- I would like a pleading |
| 11:16:00 | 17 | from the two of you that would be -- these are the |
| 11:16:03 | 18 | exhibits that we agree there are no objections to and we |
| 11:16:06 | 19 | have no objection to pre-admitting them.  These are |
| 11:16:11 | 20 | exhibits that we still have remaining objections to, but |
| 11:16:14 | 21 | they are ones that can be raised at trial.  And three, the |
| 11:16:19 | 22 | small subset of issues that you would like to have another |
| 11:16:26 | 23 | conference before trial and get a pretrial ruling on those |
| 11:16:32 | 24 | exhibits. |
| 11:16:34 | 25 | MR. DOWER:  That sounds good to me, your Honor. |

| | | |
|---|---|---|
| 11:16:36 | 1 | I'll say in the category three, I think we're probably |
| 11:16:39 | 2 | going to need the Court to resolve some of the who is a |
| 11:16:42 | 3 | proper comparator because it has such a profound influence |
| 11:16:45 | 4 | on witness preparation we need to be able to talk about. |
| 11:16:50 | 5 | THE COURT:  I'll take a look at that and that |
| 11:16:51 | 6 | will be the subject of our next visit, and I'll make those |
| 11:16:54 | 7 | rulings in advance of the trial so that you'll have that |
| 11:16:56 | 8 | information. |
| 11:16:58 | 9 | MR. SCHMIDT:  Your Honor, we'll submit some |
| 11:17:00 | 10 | additional documentation on that, too, then. |
| 11:17:02 | 11 | THE COURT:  Okay.  Super.  Okay. |
| 11:17:04 | 12 | So that's everything that was on my list.  Let me |
| 11:17:06 | 13 | now give you the opportunity to follow up any questions |
| 11:17:10 | 14 | you might have. |
| 11:17:11 | 15 | Mr. Schmidt. |
| 11:17:12 | 16 | MR. SCHMIDT:  Your Honor, I had one question for |
| 11:17:13 | 17 | you.  We recently received a ruling on defendant's motion |
| 11:17:19 | 18 | to strike one of our experts.  It is a professor who's an |
| 11:17:26 | 19 | expert on the field of discrimination and how it manifests |
| 11:17:30 | 20 | itself, things like student evaluations that have a bias, |
| 11:17:33 | 21 | particularly in the field of engineering where 80 percent |
| 11:17:36 | 22 | of the students are male.  There's a lot of evidence that |
| 11:17:39 | 23 | that is, in fact -- that student evaluations can be |
| 11:17:43 | 24 | biased.  U.T.'s own diversity dean who deals with this |
| 11:17:49 | 25 | issue says yes, we look at those studies, we abide by |

| | | |
|---|---|---|
| 11:17:53 | 1 | those and we give them credence.  Dean Sharon Wood, who's |
| 11:17:57 | 2 | a figure in this case, also was aware of that. |
| 11:17:59 | 3 | That kind of testimony as well as just there's |
| 11:18:03 | 4 | some other testimony about, for example, whether a woman |
| 11:18:07 | 5 | might discriminate against a woman.  In this case, as you |
| 11:18:11 | 6 | probably are aware, Dean Wood is female, and she was the |
| 11:18:15 | 7 | first person to make a recommendation to deny tenure.  And |
| 11:18:19 | 8 | there's a whole field of study that talks about that women |
| 11:18:22 | 9 | can, in fact, discriminate against women.  So the |
| 11:18:27 | 10 | magistrate or Judge Hightower struck the testimony of our |
| 11:18:31 | 11 | witness that was going to be talking about that. |
| 11:18:33 | 12 | And I just wanted to kind of float with you and |
| 11:18:36 | 13 | let you know, I would like to file a motion for you to |
| 11:18:42 | 14 | review and consider that order.  I do think there's some |
| 11:18:46 | 15 | very fatal flaws in that order and just wanted to let you |
| 11:18:49 | 16 | know that that may be coming your way.  I don't know what |
| 11:18:51 | 17 | your position is on, you know, rulings by magistrates on |
| 11:18:56 | 18 | pretrial matters.  But. |
| 11:18:57 | 19 | THE COURT:  Obviously I give them great |
| 11:19:00 | 20 | deference, but if it's a case I'm going to try, I'll take |
| 11:19:02 | 21 | a look at it and I'm happy to consider any motions to |
| 11:19:08 | 22 | reconsider and will absolutely do that. |
| 11:19:12 | 23 | MR. SCHMIDT:  Thank you sir.  I wanted to just |
| 11:19:14 | 24 | raise that to you. |
| 11:19:15 | 25 | THE COURT:  Sure.  Great. |

| | | |
|---|---|---|
| 11:19:16 | 1 | MR. SCHMIDT:  That is all I have. |
| 11:19:17 | 2 | THE COURT:  Okay.  Mr. Dower. |
| 11:19:19 | 3 | MR. DOWER:  I have one last thing and I'm |
| 11:19:21 | 4 | slightly hesitant to raise it because it sounds petty, |
| 11:19:24 | 5 | even from my own mind.  But the plaintiff's statement of |
| 11:19:27 | 6 | the case is very long.  It's like -- it's supposed to be a |
| 11:19:32 | 7 | half page and I think it's more like three-fourths, |
| 11:19:36 | 8 | basically twice my word count.  So I didn't want to put -- |
| 11:19:43 | 9 | can we talk a little bit more parity there in terms of |
| 11:19:46 | 10 | length? |
| 11:19:46 | 11 | THE COURT:  No.  Actually, I have a better |
| 11:19:49 | 12 | suggestion -- I'm sorry, and I'm so glad you raised that |
| 11:19:51 | 13 | -- is I want you both to come up together with one |
| 11:19:53 | 14 | unobjectionable statement of the case.  And I don't think |
| 11:19:57 | 15 | we saw any -- and it can be however long you want it to |
| 11:20:00 | 16 | be.  How's that? |
| 11:20:02 | 17 | MR. SCHMIDT:  Great.  And, Mr. Dower, and your |
| 11:20:04 | 18 | Honor, I actually started a revision of that.  After I had |
| 11:20:08 | 19 | filed it, I had some concerns about it being too long. |
| 11:20:10 | 20 | So, Ben, I will work with you on that and we'll -- |
| 11:20:14 | 21 | MR. NOTZON:  That's Mr. Schmidt not blaming me. |
| 11:20:17 | 22 | My fault and I take total responsibility. |
| 11:20:20 | 23 | MR. SCHMIDT:  This topic was discussed prior to |
| 11:20:24 | 24 | filing.  But. |
| 11:20:26 | 25 | THE COURT:  That's fine.  I know you two get |

| | | |
|---|---|---|
| 11:20:28 | 1 | carried away sometimes in your zeal. |
| 11:20:34 | 2 | MR. SCHMIDT:  We will work with -- |
| 11:20:36 | 3 | THE COURT:  What we need is a very neutral |
| 11:20:39 | 4 | statement of the case that just -- you know, the purpose |
| 11:20:42 | 5 | of this is just to let the jury know why they're there and |
| 11:20:45 | 6 | so, a very neutral, mutually agreeable statement of the |
| 11:20:52 | 7 | facts of the case, that will be great. |
| 11:20:54 | 8 | And while I'm thinking of it, something else |
| 11:20:57 | 9 | we're going to need if you could start working on is, if |
| 11:21:00 | 10 | you could get together to work on a joint submission that |
| 11:21:04 | 11 | is proposed jury instructions where you red line whatever |
| 11:21:09 | 12 | your disagreements are so that we have one document in |
| 11:21:12 | 13 | Word format that we can go through, and it's easy for us |
| 11:21:15 | 14 | to see what the disputes are and be able to more easily |
| 11:21:21 | 15 | incorporate our rulings on which of you -- which of your |
| 11:21:25 | 16 | either inclusion or the language or exclusion, which is |
| 11:21:30 | 17 | much easier for us to do if it's done in that format. |
| 11:21:33 | 18 | MR. DOWER:  Your Honor, I'm hesitant to ask for a |
| 11:21:35 | 19 | deadline, but do you have a deadline for when you would |
| 11:21:39 | 20 | like that submitted? |
| 11:21:40 | 21 | THE COURT:  No.  Any time before the trial is |
| 11:21:43 | 22 | fine.  That will not be anything that we talk about until |
| 11:21:47 | 23 | our charge conference. |
| 11:21:48 | 24 | MR. DOWER:  Okay.  Thank you, your Honor. |
| 11:21:50 | 25 | THE COURT:  Unless you need a deadline, I'm happy |

| | | |
|---|---|---|
| 11:21:52 | 1 | to give you one. |
| 11:21:53 | 2 | MR. DOWER:  Before the trial is a good deadline. |
| 11:21:57 | 3 | MR. SCHMIDT:  You could give Mr. Dower a deadline |
| 11:21:58 | 4 | and we'll -- he needs a deadline but not -- |
| 11:22:02 | 5 | THE COURT:  Okay.  Great.  So the way it stands |
| 11:22:05 | 6 | now is, we're going to be in touch with you next Friday |
| 11:22:08 | 7 | and we'll either say we -- between now and then, you'll |
| 11:22:13 | 8 | let us know whether April 4th will be our backup date. |
| 11:22:18 | 9 | Next Friday, we will be in touch with you and tell you |
| 11:22:21 | 10 | that either we picked a jury and we're going to go with |
| 11:22:24 | 11 | April 4th, or we haven't picked a jury and we'll go on |
| 11:22:27 | 12 | March 7th, or we picked a jury and April 4th is not |
| 11:22:31 | 13 | working for you so we'll get on the line and look for |
| 11:22:35 | 14 | other dates. |
| 11:22:38 | 15 | Final thing, a note passed to me that we have not |
| 11:22:42 | 16 | gotten stipulated facts from you, so if you could work on |
| 11:22:44 | 17 | that, that'd be great.  It's always helpful. |
| 11:22:49 | 18 | MR. SCHMIDT:  Yes, your Honor. |
| 11:22:49 | 19 | THE COURT:  Okay.  Very good.  Any last |
| 11:22:51 | 20 | questions?  Complaints? |
| 11:22:54 | 21 | MR. NOTZON:  (Moves head side to side.) |
| 11:22:55 | 22 | THE COURT:  Comments?  All right.  Good. |
| 11:22:57 | 23 | Well, thank you all so much.  Looking forward to |
| 11:22:59 | 24 | this.  You are encouraged to continue exploring ways to |
| 11:23:08 | 25 | resolve this case other than going to trial.  Always happy |

| | | |
|---|---|---|
| 11:23:12 | 1 | for you to continue to do that and know that all of you |
| 11:23:16 | 2 | are accustomed to doing that and good at it.  So please |
| 11:23:20 | 3 | continue to work on it.  And we will be in touch with you |
| 11:23:23 | 4 | next Friday and let you know when we're going to proceed. |
| 11:23:27 | 5 | MR. SCHMIDT:  All right. |
| 11:23:28 | 6 | MR. NOTZON:  Thank you, your Honor. |
| 11:23:29 | 7 | MR. SCHMIDT:  Thank you, your Honor. |
| 11:23:30 | 8 | THE COURT:  Thank you all.  Have a nice day. |
| 11:23:33 | 9 | MR. SCHMIDT:  You too. |
| | 10 | (Proceedings concluded.) |

1                           *  *  *  *  *  *

2

3   UNITED STATES DISTRICT COURT  )

4   WESTERN DISTRICT OF TEXAS)

5

6      I, LILY I. REZNIK, Certified Realtime Reporter,

7   Registered Merit Reporter, in my capacity as Official

8   Court Reporter of the United States District Court,

9   Western District of Texas, do certify that the foregoing

10  is a correct transcript from the record of proceedings in

11  the above-entitled matter.

12     I certify that the transcript fees and format comply

13  with those prescribed by the Court and Judicial Conference

14  of the United States.

15     WITNESS MY OFFICIAL HAND this the 21st day of February,

16  2022.

17                              *Lily Iva Reznik*

18                              ~~~~~~~~~~~~~~~~~~~~~~~~
                                *LILY I. REZNIK, CRR, RMR*
19                              *Official Court Reporter*
                                *United States District Court*
20                              *Austin Division*
                                *501 West 5th Street,*
21                              *Suite 4153*
                                *Austin, Texas 78701*
22                              *(512)391-8792*
                                *SOT Certification No. 4481*
23                              *Expires:  1-31-23*

24

25