IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| EVDOKIA NIKOLOVA, | § § § § § § § § § § § | |
| Plaintiff, | | |
| vs. | | CIVIL ACTION NO. 1:19-CV-00877-RP |
| UNIVERSITY OF TEXAS AT AUSTIN | | |
| Defendant. | | |

**DEFENDANT'S MOTION TO RECONSIDER COURT'S ORDER PARTIALLY GRANTING PLAINTIFF'S MOTION TO MODIFY OR SET ASIDE THE ORDER STRIKING THE EXPERT TESTIMONY OF PROFESSOR PETER GLICK**

Defendant The University of Texas at Austin ("Defendant" or "UT Austin") files this Motion to Reconsider the Court's Order Partially Granting Plaintiff's Motion to Modify or Set Aside the Order Striking the Expert Testimony of Professor Peter Glick (the "Motion to Reconsider").[1]

## I.   INTRODUCTION

Defendant's original Motion to Exclude the Opinion and Testimony of Plaintiff's Expert Peter Glick (the "Motion to Exclude") detailed the many deficiencies that render Glick's opinions and testimony unreliable under Federal Rule of Evidence 702.[2] These include Glick's failure to employ reliable scientific methods, his reliance solely on information provided by counsel for Plaintiff, his failure to rule out any alternative explanations, and the resulting prejudice and jury confusion. In her detailed 17-page order, the Magistrate granted the motion on each of the bases and ruled that Glick's

---

[1] ECF 76 (Order); ECF 71 (Motion to Reconsider).
[2] ECF 49 (the "Magistrate's Order").

1

"social framework" testimony[3] and his report should be excluded.[4] In particular, the Magistrate concluded:

> Glick admits that his testimony and opinions about bias and discrimination include unconscious or implicit bias, as well as unintentional discrimination. Glick's opinions, therefore, have no relevance to the ultimate issue of whether Defendant intentionally discriminated against Nikolova because of her sex or pregnancy status. Such opinions will only lead to prejudice and jury confusion, and should therefore be excluded.[5]

In response, Plaintiff filed her Motion to Reconsider on February 25, 2022, ten days before trial.[6] Under Local Rule CV-7, Defendant's response was due on March 11, 2022. The Court did not set any expedited briefing schedule on Plaintiff's Motion to Reconsider. Given the conflict of Defendant's response with the trial setting, Defendant was intending to file its response by March 4, 2022, before the beginning of trial on March 7, 2022, so that the Court could address the motion as a final pre-trial matter. On March 3, 2022, before Defendant submitted any response, the Court partially granted Plaintiff's Motion to Reconsider and held that the first portion of Glick's report regarding stereotypes and unconscious bias research was admissible, while excluding Glick's opinions

---

[3] Glick defines his "social framework" testimony as follows:
> I will provide "social framework" testimony to inform the decision makers in this case about empirically validated principles concerning the operation of stereotypes and bias that can lead to workplace discrimination via double standards toward women as compared to men. Social psychological and organizational research provides a scientific knowledge base illuminating the forms stereotyping and discrimination take, the circumstances that elicit stereotyping and bias, and their relation to discriminatory behavior. This information can substantially supplement decision-makers' knowledge, going beyond common assumptions about how stereotypes and biases operate.

ECF 49-1 at 7; *see also E.E.O.C. v. Bloomberg L.P.*, No. 07 CIV. 8383 LAP, 2010 WL 3466370, at *4 (S.D.N.Y. Aug. 31, 2010) (describing social framework expert as "us[ing] general conclusions from tested, reliable, and peer-reviewed social science research as a context for educating fact finders about the case facts at hand.") (internal quotations omitted).

[4] ECF 64.

[5] ECF 64 at 17.

[6] ECF 71. Notably, Plaintiff's counsel mentioned his intent to file the Motion to Reconsider at the Pre-Trial Conference on February 16, 2022. ECF 75-1 at 34:19-36:25.

applying such research to this case as unreliable.[7] In its 2-page order overruling the Magistrate's prior ruling, the Court cited no legal authority supporting admission of Glick's opinions regarding stereotyping and unconscious bias.

For the reasons set forth here, Defendant requests that the Court reconsider its Order granting, in part, Plaintiff's Motion to Reconsider and fully exclude Glick's testimony in its entirety.

## II.     ARGUMENTS & AUTHORITIES

### A.     Standard of Review.

A Magistrate Judge's determination regarding a non-dispositive matter is reviewed under the "clearly erroneous or contrary to law" standard.[8] "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."[9] Thus, "under this deferential standard of review the court must affirm the magistrate judge's description unless it finds that based on all the evidence it is left with a definite and firm conviction that a mistake has been committed."[10]

In addition, a party may not use briefing before the Magistrate as a test run, and thereafter raise new arguments before the District Court. As the Fifth Circuit and courts within the Fifth Circuit have long held, "issues raised for the first time in objections to the report of a magistrate judge are not properly before the district judge."[11]

---

[7] ECF 71.
[8] *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *Castillo v. Frank*, 70 F.3d 382, 385 (5th Cir. 1995) ("Section 636(b)(1)(A) specifically requires the district court to apply a 'clearly erroneous' standard when reviewing a magistrate judge's ruling on a non-dispositive, pretrial motion such as a discovery motion.").
[9] *Martin v. Frail*, No. SA-09-CA-695-H, 2012 WL 12950505, at *2 (W.D. Tex. July 26, 2012) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) (internal quotations omitted)).
[10] *Bhakta-Gallier v. Tenet Healthcare Corp.*, No. 4:17-CV-3178, 2018 WL 1316741, at *1 (S.D. Tex. Mar. 13, 2018) (quoting *Baylor Health Care Sys. v. Equitable Plan Servs., Inc.*, 955 F. Supp. 2d 678, 689 (N.D. Tex. 2013) (internal quotations omitted)).
[11] *Finley v. Johnson*, 243 F.3d 215, 219 n. 3 (5th Cir. 2001); *see also Firefighters' Ret. Sys. v. EisnerAmper, L.L.P.*, 898 F.3d 553, 559 (5th Cir. 2018) (holding that the objecting party forfeited an argument "by

> **B.** **The Magistrate correctly struck the summary of stereotyping and implicit bias research in Glick's report.**

In her Motion to Reconsider, Plaintiff argues that the Magistrate erred in striking Glick's summary of stereotyping and unconscious bias because the Magistrate's order (1) was factually incorrect; (2) failed to acknowledge UT Austin's alleged affirmation of such research; (3) would harm Plaintiff's case; and (4) that it was logically flawed. However, none of these arguments render Glick's flawed social framework testimony admissible under Rule 702.

> *1.* *The Magistrate's characterization of Glick's report was factually correct.*

Plaintiff argues that the Magistrate erred by finding that "the majority of Glick's expert report focuses on gender stereotyping and bias throughout society," because the report also addresses bias and unconscious bias towards women and pregnancy in STEM fields.[12] First, Plaintiff misleadingly misquotes the Magistrate's order. In describing the report's summary of research, the order states: "The majority of Glick's report discusses the social framework theory and how sex stereotypes and discrimination exist throughout society and in particular in the Science, Technology, Engineering, and Math ("STEM") fields."[13]

If anything, it is Plaintiff who mischaracterizes Glick's report by describing the first section to include social science research on "discrimination and retaliation."[14] To the extent the words

---

raising it for the first time in their objection to the magistrate judge's Report and Recommendation."); *Mugg v. Hatmacher*, No. 1:18-CV-732-RP, 2019 WL 3536049, at *1 (W.D. Tex. Aug. 2, 2019) (deeming arguments waived when made for the first time in objections to the Magistrate's report); *Instituto Mexicano Del Seguro Social v. Orthofix Int'l N.V.*, No. 4:18-CV-00121, 2018 WL 4561621, at *2 (E.D. Tex. July 31, 2018) (holding that the "Plaintiff cannot offer new arguments for the first time through objections.").

[12] ECF 71 at 7 (partially quoting ECF 64 at 15).

[13] ECF 64 at 5. The order goes on to describe in detail the specific ways in which Glick's discusses his social theory framework in light of in the context of the workplace, STEM fields, teaching evaluations, workplace flexibility policies, pregnancy, and retaliation. *Id.*

[14] ECF 71 at 3. The Court's Order restates this misleading characterization by quoting Plaintiff's Motion to Exclude. ECF 72 at 2 (quoting ECF 71 at 3).

4

"discrimination and retaliation" are intended to reflect the legal meaning of such terms under Title VII and as relevant to this case, Glick admits that is not how he defines those terms. Rather, Glick's report includes research regarding unconscious bias, not intentional discrimination or intentional retaliation precluded by law. Indeed, Glick admittedly conflates intentional discrimination with unintentional discrimination based on implicit bias and stereotypes, and does nothing to separate effects of unconscious bias from those of intentional discrimination.[15] Moreover, Glick has previously admitted that when he uses the term "retaliation," he considers it as a synonym for his definition of unintentional discrimination, and not as in a legal sense to reflect intentional actions taken in response to protected activity.[16]

As the Magistrate's Order recognized, the "burden is on Plaintiff to prove that she was discriminated against because of her sex, not just that gender stereotyping or bias exists throughout society."[17] Plaintiff cannot win her case simply by showing that gender stereotyping and unconscious bias exists generally in STEM fields or in higher education teaching evaluations. Glick cannot offer any scientifically valid testimony indicating that gender stereotyping or unconscious bias affected UT Austin's decisions related to Plaintiff, much less that any decisions regarding Plaintiff were the result of intentional discrimination in violation of Title VII. As such, the Magistrate correctly held that "[b]ecause the majority of Glick's expert report focuses on gender stereotyping and bias throughout society, the jury may assume that such stereotyping and bias existed at UT Austin" and that "[s]uch opinions will only lead to prejudice and jury confusion, and should therefore be excluded" under Federal Rule of Evidence 403.[18] As the Supreme Court found in *Dukes*, where a social framework

---

[15] ECF 49-2, Glick Dep. 30:17-33:20 (admitting that his report conflates intentional discrimination with unintentional discrimination based on implicit bias and stereotypes).
[16] Ex. A, Glick Dep. in *Mullenix* at 168:5-21.
[17] ECF 64 at 15.
[18] ECF 49 at 17.

expert has no answer to the "essential question on which" the case depends, then the court "can safely disregard what he has to say."[19]

Though Plaintiff argues that Glick's purported tailoring of his testimony to academia and STEM fields renders his summary of research relevant, Plaintiff neglects to mention that Glick's report relies heavily on meta-analyses of research studies regarding workplace gender bias that have no connection to UT Austin.[20] These meta-analyses rely on unpublished studies, studies that are more than 60 years old, and studies conducted in other countries, such as China, Japan, Egypt, Turkey, and Saudi Arabia.[21] In addition, Glick's report includes a section entitled, "Discrimination from Above, Female Leaders in STEM also Discriminate against Women," in which he claims women are "sometimes more likely to discriminate against women."[22] However, Glick admitted that the research he relied on for this assertion that comes from the United States "showed no difference in the tendency to discriminate between male and female STEM faculty in the U.S."[23] Moreover, the research he did cite for the purported "queen bee" phenomenon in STEM of women being more discriminatory towards their fellow female colleagues was conducted in select European countries, namely Switzerland and the Netherlands.[24] Glick admitted that he failed to conduct any analysis as to whether his cited studies were conducted in similar contexts as this case.[25]

---

[19] 564 U.S. at 354-55.
[20] ECF 71 at 7.
[21] ECF 49-2, Glick Dep. 77:15-78:18 & Ex. 2 (discussing use of studies from 1960's and unpublished studies in Roth et al. meta-analysis); 98:24-99:1 & Ex. 3 (discussing use of studies from China in Joshi et al. meta-analysis); ECF 49-2 Ex. 3 at 1537 (relying on studies by Chen, Z. et al. from China); 113:25-114:15 & Ex. 5 (discussing use of studies from China, Egypt, Saudi Arabia, and turkey in Koenig, et al. meta-analysis); *see also* ECF 49-2 Ex. 5 at 622-624 (chart summarizing studies in meta-analysis); 121:4-122:3 (discussing use of studies going back to 1953 in Clausen meta-analysis, cited in Glick report).
[22] ECF 49-1 at 24-28.
[23] ECF 49-2, Glick Dep. 130:20-131:18 ("That one showed no difference in the tendency to discriminate between male and female STEM faculty in 18 the U.S.").
[24] ECF 49-2, Glick Dep. 131:19-133:4.
[25] ECF 49-2, Glick Dep. 106:1-14 ("[I]f you're asking did I go and then read all the studies they cite

The court in *E.E.O.C. v. Wal-Mart Stores, Inc.*, rejected the expert's proffered testimony in remarkably similar circumstances to this case.[26] There, the expert made clear that his testimony was not specific to intentional discrimination and did not opine on whether intentional discrimination occurred at the employer's workplace (as opposed to in society generally).[27] Similarly, the first section of Glick's report opines on gender stereotyping and unconscious bias without regard to intent[28] and without discussion of whether discrimination actually occurred in situations similar to UT Austin.[29]

As both the Court in *E.E.O.C. v. Wal-Mart Stores, Inc.*, and this Court in *Mullenix* found, expert testimony will lead to prejudice and jury confusion where the focus is on gender stereotyping and bias in environments other than the employers' workplace.[30] Here, there is no indication that the research summary section of Glick's report addresses intentional discrimination or is tailored to Plaintiff's workplace at UT Austin, and Plaintiff fails to show otherwise. Thus, the Magistrate correctly excluded this aspect of Glick's testimony and opinions.

---

[in a meta-analysis], no I did not."), 95:8- 101:2.

[26] No. 6:01-CV-339-KKC, 2010 WL 583681, at *3-4 (E.D. Ky. Feb. 16, 2010) (finding that "Dr. Bielby's testimony makes clear that gender stereotyping does not even necessarily include intentional discrimination," that "the EEOC indicated that it offers Dr. Bielby's testimony to establish that gender stereotyping is a 'plausible explanation,'" and that "he indicates that gender stereotyping exists in all facets of life."). Though Plaintiff attempts to distinguish this case as inapplicable here, ECF 71 at 11, her argument is unconvincing. The case is only inapplicable to the extent that Glick testifies about intentional actions of UT – something Glick himself repeatedly states that he will *not* (nor could he) do. ECF 49-2, Glick Dep. 30:14-16 ("in my report I'm not making claims of people's degree of awareness of their biases"); 31:8-10 ("So, you know, I'm not making claims about people's awareness of their intent to discriminate.").

[27] *Id.*

[28] ECF 49-2, Glick Dep. 30:17-33:20 (admitting that his report conflates intentional discrimination with unintentional discrimination based on implicit bias and stereotypes).

[29] ECF 49-1 at 40.

[30] *Wal-Mart Stores, Inc.,* 2010 WL 583681, at *4 (excluding expert opinions and testimony because the expert "indicates that gender stereotyping exists in all facets of life," and therefore, "the jury may well presume such stereotyping existed at Wal-Mart and require Wal-Mart to provide evidence that it did not exist at the distribution center."); *Mullenix*, 2021 WL 4304815, at *7 (excluding Glick's testimony and opinions "[b]ecause the majority of Glick's expert report focuses on gender stereotyping and bias throughout society, the jury may assume that such stereotyping and bias existed [in this case].").

2. *The Magistrate has no reason to account for UT Austin's alleged affirmation of gender stereotyping and bias research.*

Plaintiff next argues that the Magistrate clearly erred by failing to address "Plaintiff's evidence that Defendant UT itself actually uses and relies on" gender stereotyping and bias research, such as gender bias in student evaluations.[31] In a prior summary judgment ruling, the Court recognized that a faculty member *at a separate institution* made a passing reference to such studies in a letter of support for Plaintiff's tenure application.[32] In addition, when asked at her deposition, Dean Wood simply acknowledged being aware of the studies cited in the letter, but did not state that these studies were used or relied upon for any decision regarding Plaintiff.[33] Similarly, while Associate Dean Julien is aware of these studies, there is no evidence she relied on such studies in taking any action with respect to Plaintiff.

In its Order, the Court relied on Plaintiff's argument in overturning the Magistrate's initial order.[34] However, awareness of social science research by witnesses is not a factor regarding admissibility of expert opinion summarizing such research under Rule 702 and does not render Glick's testimony admissible or alleviate the concerns regarding jury confusion under Rule 403. Plaintiff cites no authority for this argument, and the Court likewise cited no authority in relying on Plaintiff's argument. Moreover, Plaintiff did not raise this argument before the Magistrate,[35] and it would be impossible for the Magistrate to have committed clear error on a point of argument that was never presented by Plaintiff.

---

[31] ECF 71 at 8 (italics removed).
[32] ECF 66 at 9, *citing* ECF 44-1 at 143 (letter from faculty member at Swarthmore College).
[33] ECF 39-2, Wood Dep. at 41:21-43:12 (Dean Wood acknowledging awareness of studies about the role of gender or pregnancy in student teaching scores).
[34] ECF 72.
[35] *See Finley v. Johnson*, 243 F.3d 215, 219 n. 3 (5th Cir. 2001) ("issues raised for the first time in objections to the report of a magistrate judge are not properly before the district judge."); *Firefighters' Ret. Sys. v. EisnerAmper, L.L.P.*, 898 F.3d 553, 559 (5th Cir. 2018) (holding that the objecting party forfeited an argument "by raising it for the first time in their objection to the magistrate judge's Report and Recommendation.")

Finally, Plaintiff nevertheless fails to explain how Glick's summary of gender stereotyping and bias in other contexts outside of UT Austin demonstrates that stereotyping and bias exist at UT Austin (much less that Plaintiff was intentionally discriminated against). Lacking that crucial element, Glick's report will "blur, if not erase altogether, the line between hypothetical possibility and concrete fact," leading only to prejudice and jury confusion.[36]

> 3. *The admissibility of expert testimony does not hinge on whether exclusion "directly harms and handicaps" the plaintiff.*

Plaintiff also argues that the Magistrate clearly erred by failing to consider or respond to the "important issue" that exclusion of Glick's testimony and opinions "directly harms and handicaps Plaintiff," by limiting her ability to rebut a theoretical argument that she speculates Defendant will make—i.e. because Dean Wood is a woman, she cannot discriminate against women.[37] Defendant has never made such an argument in this case. Furthermore, Plaintiff does not cite any authority for the proposition that social science research on the prevalence of implicit bias by members of a protected class against other members of a protected class is somehow admissible in an intentional discrimination case under Title VII. Rather, courts around the country have repeatedly excluded

---

[36] *Jones v. Nat'l Council of YMCA*, 34 F. Supp 3d 896, 901 (N.D. Ill. 2014); *see also Wal-Mart Stores, Inc.*, 2010 WL 583681, at *4 (excluding expert opinions and testimony because the expert "indicates that gender stereotyping exists in all facets of life," and therefore, "the jury may well presume such stereotyping existed at Wal-Mart and require Wal-Mart to provide evidence that it did not exist at the distribution center."); *Mullenix*, 2021 WL 4304815, at *7 (excluding Glick's testimony and opinions "[b]ecause the majority of Glick's expert report focuses on gender stereotyping and bias throughout society, the jury may assume that such stereotyping and bias existed [in this case]."); *E.E.O.C. v. Bloomberg L.P.*, No. 07 CIV. 8383 LAP, 2010 WL 3466370, at *15 (S.D.N.Y. Aug. 31, 2010) (excluding expert because the expert admitted he was "unable to conclude that Bloomberg managers were intentionally stereotyping" and would therefore not support allegations of intentional discrimination); *Jackson v. Scripps Media, Inc.*, No. 18-00440-CV-W-ODS, 2019 WL 6619859, at *6 (W.D. Mo. Dec. 5, 2019) (excluding testimony of expert in discrimination case who proposed to "opine that people make decisions without realizing they are affected by subconscious beliefs derived from stereotypes," as it will "not help the jury resolve the issues in this case and is more likely to create confusion.").
[37] ECF 71 at 9-10.

expert testimony on this and similar bases.[38] Here, on an even narrower scope, Plaintiff asserts that Glick's opinions and testimony are relevant to show that *Dean Wood specifically* discriminated against Plaintiff on the basis of her sex.[39] However, just as Glick admitted he is unable to scientifically conclude whether UT Austin discriminated against Plaintiff, he admitted he is similarly unable to make those definitive conclusions about Dean Wood specifically.[40]

### 4. *The Magistrate's Order is not logically flawed.*

Finally, Plaintiff argues that the Magistrate finding that "[t]he burden is on Plaintiff to prove that she was discriminated against because of her sex, not just that gender stereotyping or bias exists throughout society," is "logically flawed," and "makes little or no sense."[41] Plaintiff's argument misstates Glick's own testimony, and ignores the requirement that she demonstrate discriminatory intent.

Plaintiff argues that a court "would never exclude expert testimony about the scientifically verified propensity of an action to occur," such as how alcohol affects the brain, how metal reacts under certain conditions, or how water freezes at 32 degrees.[42] However, courts routinely exclude expert testimony where an expert's experiments and methodology fail to sufficiently demonstrate

---

[38] *E.g.*, *Scripps Media*, 2019 WL 6619859, at *6 (excluding social framework expert from testifying about the "same actor inference," as the expert "is not a lawyer, and the 'same actor inference' is based on binding case law."); *Wal-Mart Stores, Inc.,* 2010 WL 583681, at *4 (excluding social framework expert's report where it "points to no evidence of intentional actions by decision makers," and instead concludes that the distribution center "is the kind of environment where gender stereotyping can occur.").

[39] ECF 71 at 9 (arguing that Glick's testimony and opinions are necessary to rebut a speculated argument that "Dean Wood is a woman and therefore would never discriminate.").

[40] ECF 49-2, Glick Dep. 198:12-19 ("Q. . . You can't make a scientific determination as to whether or no Dr. Wood – Dr. Wood's gender and prior experience, in fact, made her more likely to discriminate, or in fact, caused her to discriminate? A. As an individual, right. I mean, we already went over this, I think. I think I already answered that question. And if I understand the question correct, the answer is: No, I cannot."); *see also* ECF 49-2, Glick Dep. 68:11-13 (admitting that even when a specific study is conducted, "we can't for sure identify specific individuals as having discriminated or not . . .").

[41] ECF 71 at 10.

[42] ECF 71 at 10.

10

causation, or are not sufficiently tied to the context of a specific case.[43] Moreover, none of the questions posed by Plaintiff seek to answer the complex question of whether an individual decision-maker intentionally discriminated against an employee, and are therefore wholly irrelevant comparisons for purposes of this case.

Here, Plaintiff is required to demonstrate discriminatory intent to prove her claims.[44] As such, Glick's testimony would only assist the factfinder if it shed light on whether the decision-makers in this case acted with any such discriminatory intent. Glick repeatedly states that he does not (and cannot) make such an assertion.[45] Unlike each of Plaintiff's hypothetical examples, Glick states that he cannot testify based on any scientifically-verified methodology that gender stereotypes or unconscious bias actually affected UT Austin's decisions regarding Plaintiff, much less that intentional discrimination occurred.[46]

Further, Plaintiff argues that the originators of the "social framework" testimony—Monahan, Walker, and Mitchell—concluded that general summaries of social science research can be valuable to a factfinder, even if linking that research to specific facts (as the second section of Glick's report does)

---

[43] *See, e.g., Baker v. Chevron USA, Inc.*, 680 F. Supp. 2d 865, 883-85 (S.D. Ohio 2010) (excluding expert testimony in air pollution toxic tort case where, even assuming that meta-analyses linking benzene to cancer that were relied upon by the expert were valid, the disconnect in circumstances between participants in those studies and the plaintiffs created "too great an analytical leap."); *United States v. Semrau*, 693 F.3d 510, 521-23 (6th Cir. 2012) (affirming district court's exclusion of fMRI lie detection expert in a healthcare fraud case, based upon a distinction between conclusions drawn between laboratory testing, and real-world testing); *Brumbaugh v. Sandoz Pharm. Corp.*, 77 F. Supp. 2d 1153, 1156 (D. MT 1999) (excluding medical expert testimony in pharmaceutical products liability case involving link between the drug and seizure, because the expert relied on reports that "do not contain a testable and systematic inquiry into the mechanism of causation," and instead "reflect reported data, not scientific methodology.").
[44] *Ricci v. DeStefano*, 557 U. S. 557, 577 (2009) (a plaintiff bringing a disparate treatment claim "must establish that the defendant had a discriminatory intent or motive for taking a job-related action.") (internal quotations omitted).
[45] *E.g.*, ECF 49-2, Glick Dep. 30:17-33:20.
[46] *E.g.*, ECF 49-2, Glick Dep. 67:10-13 (stating that he believes it to be "impossible to completely scientifically nail [] down" whether discrimination occurred in the context of a legal case).

11

is not.[47] Yet Defendant is not arguing (nor did the Magistrate hold) that social science testimony is *per se* inadmissible, or that it cannot ever provide value to a factfinder. Rather, Glick's testimony (including his report's research summary of gender stereotyping and unconscious bias) is inapplicable to this case, which requires a showing of discriminatory intent. Again, courts routinely hold that testimony regarding implicit bias, stereotyping, and unintentional discrimination is inadmissible in cases requiring discriminatory intent.[48]

### C. The Fifth Circuit has never ruled that social framework testimony is admissible in an employment case.

Not surprisingly, the Fifth Circuit has never ruled that social framework testimony is admissible in an employment case. Plaintiff argues that because expert testimony about the behavior of rape victims was held admissible in *United States v. Simmons*, Glick's social framework testimony is necessarily admissible in the employment context.[49] However, the Fifth Circuit has never ruled that social framework expert testimony in the employment context can survive a challenge under Rules 702 or 403.

In *Simmons*, the expert testified that the victim's behavior following the alleged sexual assault and her in-court testimony were "quite consistent" with "indica of rape-victim behavior" developed

---

[47] ECF 71 at 11.
[48] *See, e.g.*, *White v. BNSF Ry. Co.*, 726 F. App'x 603, 604 (9th Cir. 2018) (affirming district court's exclusion of expert testimony on implicit bias because there was no showing of "how testimony regarding implicit bias would be helpful to the jury in a disparate treatment case requiring evidence of intentional discrimination."); *Nat'l Council of YMCA*, 34 F. Supp 3d at 901 (finding that plaintiff's cannot use an expert's opinions "to support their intentional discrimination claims, since Dr. Greenwald's opinions speak only to the question of implicit, or hidden, bias—not intentional acts," and are therefore of no assistance to the factfinder); *Bloomberg*, 2010 WL 3466370, at *15 (excluding expert because he admitted he was "unable to conclude that Bloomberg managers were intentionally stereotyping" and would therefore not support allegations of intentional discrimination); *Scripps Media*, 2019 WL 6619859, at *6 (excluding testimony of expert in discrimination case who proposed to "opine that people make decisions without realizing they are affected by subconscious beliefs derived from stereotypes," as it will "not help the jury resolve the issues in this case and is more likely to create confusion.").
[49] ECF 71 at 5-6 (citing *United States v. Simmons*, 470 F. 3d 1115 (5th Cir. 2006)).

though use of therapeutic tools.[50] However, the expert in Simmons did not offer testimony regarding perpetrator's behavior (much less their intent), the incident in question, or the ultimate question of criminal liability.[51] The Fifth Circuit determined that the expert's testimony was admissible, given inherent limitations in empirical research of rape victims, and the limited scope of the testimony.

*Simmons* is markedly different from this case in a number of ways.[52] Importantly, the expert testimony in *Simmons* did not include a general summary of social framework research, such is the case here, nor did the expert attempt to opine on the behavior of people who are likely to commit rape and the circumstances in which rape may occur—as Glick does here with respect differential treatment of women by decision-makers in the employment context.[53] In addition, arguing that the testimony in *Simmons* is similar to that of Glick's, Plaintiff points to Glick's statements about a "social desirability bias."[54] This is misleading, at best. Put simply, Glick discussed "social desirability bias" in his deposition to explain why his social framework testimony is limited to unconscious bias and why he cannot provide testimony regarding intentional discrimination, which further supports exclusion of his testimony.[55] Conversely, the expert in *Simmons* did not testify about the defendant's behavior or intent at all, but only linked the victim's behavior to that of rape victims, generally.

---

[50] *Simmons*, 470 F.3d at 11122-23.
[51] *Id.* (describing scope of testimony).
[52] As the Magistrate's Order recognized, *Simmons* was a criminal case involving expert testimony on the behavior of rape victims, and decided prior to the Supreme Court's rejection of social framework testimony in *Wal-Mart Stores v. Dukes*. ECF 64 at 12. Though it is clear that *Daubert* and Rule 702 are apply in both civil and criminal cases, that is not to say (as Plaintiff argues) that expert testimony deemed admissible in a criminal case is necessarily admissible in a civil one, particularly given the difference of issues between the prosecution of rape and employment discrimination, and the nature of the testimony proffered in connection with each case.
[53] *Simmons*, 470 F.3d at 1122 (discussing the basis upon which Simmons objected to the proffered expert testimony).
[54] ECF 71 at 6.
[55] ECF. 49-2, Glick Dep. 26:25-27:21; 67:6-69:3.

The dissimilarity between *Simmons* and this case can also clearly be shown by other courts' rejection of the same testimony in the employment discrimination context. Specifically, the expert in *Simmons* (Dr. Louise Fitzgerald) has repeatedly been excluded from offering social framework testimony in such cases. In *Howard v. Cook County Sherriff's Office*, the court found that Dr. Fitzgerald did not use a "reliable methodology to reach her opinions" about sexual harassment at the sheriff's office, and only reviewed information provided by the plaintiffs.[56] In *Van v. Ford Motor Company*, the court excluded Dr. Fitzgerald's social framework testimony regarding an alleged hostile work environment, finding that "even if the underlying social science evidence upon which Dr. Fitzgerald bases her opinions is reliable and accepted in the relevant scientific community, Dr. Fitzgerald may not extrapolate unfounded conclusions [about a specific employer] from that evidence."[57]

Given the irrelevance of *Simmons* to employment discrimination claims (like those here), only one court within the Fifth Circuit has previously ruled on the admissibility of "social framework" expert testimony in the employment context: *Mullenix v. The University of Texas at Austin*.[58] Plaintiff cherry-picks small distinctions between *Mullenix* and this case but ignores the obvious: the Court in *Mullenix* excluded a remarkably similar report from Glick, prepared within two months of his report in this case, in the context of alleged discrimination by a UT Austin faculty member. The Magistrate properly relied on *Mullenix* and other persuasive authority, and correctly distinguished *Simmons* as inapplicable.

---

[56] No. 17-C-8146, 2019 WL 3776939, at *2 (N.D. Ill. Aug. 12, 2019).

[57] 332 F.R.D. 249, 267 (N.D. Ill. 2019). Ironically, Plaintiff's Motion attempts to distinguish the holding in *Van v. Ford Motor Co.*, despite involving the same expert as in *Simmons*. ECF 71 at 16.

[58] Plaintiff argues that because *Mullenix* is not a Fifth Circuit or Supreme Court decision, it "is not controlling." ECF 71 at 16. But, in the context of the Supreme Court's decision in *Dukes*, and absent any applicable Fifth Circuit decisions, *Mullenix* is far and away the most persuasive authority at issue here.

**D.     The Magistrate properly rejected Glick's opinions applying research to the facts of this case.**

The Magistrate's Order also found that Glick's application of research to this case was inadmissible because it is not based on scientific methods, relies only on information provided by Plaintiff, and fails to rule out any alternative explanations.[59] Because the Court agreed with the Magistrate and excluded the second portion of Glick's report, Defendant does not address Plaintiff's various arguments with regard to this portion of Glick's report. However, Defendant reserves the right to address any similar arguments made by Plaintiff in response to this motion.

## III.     CONCLUSION

As demonstrated in Defendant's Motion to Exclude and the Magistrate's order, neither section of Glick's report satisfy the requirements regarding expert testimony set forth in the Federal Rules of Evidence. As such, the Magistrate's Order properly struck Glick's testimony and opinions as unreliable, and because it will not assist the trier of fact in this case and lead to jury confusion. Nothing within Plaintiff's Motion for Reconsideration demonstrates otherwise, or shows that the Magistrate's ruling was clearly erroneous or contrary to law. Accordingly, the Court reconsider its prior order and exclude the first section of Glick's report summarizing social framework testimony regarding stereotypes and unconscious bias.

---

[59] ECF 64 at 6-14.

Dated: March 4, 2022 Respectfully submitted,

/s/ Darren Gibson
Darren Gibson
Texas State Bar No. 24068846

LITTLER MENDELSON, P.C.
A Professional Corporation
100 Congress Avenue, Suite 1400
Austin, Texas 78701
512.982.7250
512.982.7248 (Fax)
dgibson@littler.com

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF CONFERENCE**

I hereby certify that on March 4, 2022, I conferred with Plaintiff's counsel regarding this motion, and Plaintiff's counsel confirmed that Plaintiff is opposed to this motion.

/s/ Darren Gibson
Darren Gibson

**CERTIFICATE OF SERVICE**

I hereby certify that on March 4, 2022, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

/s/ Darren Gibson
Darren Gibson