UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| EVDOKIA NIKOLOVA, | § | |
| *Plaintiff*, | § | |
| | § | CASE NO. 1:19-CV-00877-RP |
| vs. | § | |
| | § | |
| UNIVERSITY OF TEXAS AT AUSTIN, | § | |
| *Defendant.* | § | |

## PLAINTIFF'S MOTION FOR REASONABLE FEES AND COSTS

Pursuant to 42 U.S.C. § 2000e-5(k), FED. R. CIV. P. 54(d)(2)(A), the jury verdict in favor

of Evdokia Nikolova (Doc. 95) and the Court' order entering judgment (Doc. 106), Dr. Nikolova

as the prevailing party moves for an award of reasonable attorney's fees and costs (including the

costs that are recoverable under 28 U.S.C. §1920 on a bill of costs) incurred in the successful

pursuit of her action.

### A.      The Attorney's Fees

The Supreme Court has established a "'strong presumption'" that the lodestar—the

product of multiplying hours reasonably expended by a reasonable hourly rate—represents "the

reasonable fee" for prevailing parties, *Perdue v. Kenney A.*, 559 U.S. 542, 553-54, 130 S. Ct.

1662, 1673, 176 L. Ed. 2d 494 (2010), which is to say a fee that "*roughly* approximates" what an

attorney would have received if representing a client who paid by the hour. *Perdue*, 559 U.S. at

551, 130 S. Ct. at 1672.

The *Perdue* Court contrasted the lodestar method with one the Fifth Circuit "set out in

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (C.A.5 1974), which listed 12

factors that a court should consider in determining a reasonable fee." *Perdue*, 559 U.S. at 550-51,

130 S. Ct. at 1671-72. (The *Johnson* factors are listed *infra* p. 11.) The *Perdue* Court's reasoning

1

clearly indicates a strong preference for the lodestar method over the *Johnson* factors: "This method, however, 'gave very little actual guidance to district courts. Setting attorney's fees by reference to a series of sometimes subjective factors placed unlimited discretion in trial judges and produced disparate results." *Perdue*, 559 U.S. at 551. Post-*Perdue*, the Fifth Circuit has treated the *Johnson* factors as a *complement* to the lodestar. *See, e.g.*, *Combs v. City of Huntington*, 829 F.3d 388, 392 (5th Cir. 2016) ("[t]hough the lodestar is presumed reasonable, … the court may enhance or decrease it based on the … *Johnson* factors"); *Amawi v. Pflugerville Indep. Sch. Dist.*, 2021 WL 1226569, at *6-7 (W.D. Tex. March 13, 2021) (Pitman, J.), *rev'd and remanded on other grounds*, 2022 WL 4093123 (5th Cir. Sept. 7, 2022); *Mohammadi v. Nwabuisi*, 2017 WL 4820364, at *2 (W.D. Tex. Oct. 24, 2017) (Pitman, J.)

Consistently with that approach, this memorandum discusses first the *Perdue* lodestar fee, and then the *Johnson* factors.

### 1.     The Hours Reasonably Expended

"'[C]ourts customarily require the applicant to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for noncompensable hours ...'" *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1044 (5th Cir. 2010). Contemporaneity helps ensure the reliability of the records.

Billing records are "not required 'to describe in excruciating detail the professional services rendered for each hour or fraction of an hour.'" *Mohammadi v. Nwabuisi*, 2016 WL 9450697, at *4 (W.D. Tex. June 13, 2016) (Pitman, J.). Records are adequate if they exhibit "sufficient specificity and clarity for the court to make a reasonable inquiry as to whether the hours appear to be excessive or duplicative." *Id.*

Dr. Nikolova's lawyers' billing records are presented in Exhibit 3A (containing task descriptions in chronological order) and in Exhibit 3B (the same task descriptions, but organized by the phases of the case, with each phase's entries in chronological order). Her counsel have attested to the reliability of the billing records in a manner consistent with W.D. Texas Local Rule CV-54. (R. Schmidt Dec. (Exh. 1) at ¶ 21; R Notzon Dec. (Exh. 2) at ¶ 21; R. McKnight Dec. (Exh. 8) at ¶ 16.)

<blockquote>a.      <strong>Features of the Case Bearing on the Reasonableness of the <u>Hours</u></strong></blockquote>

Time claimed in a fee motion must be reasonable in order for it to be compensable. *League of United Latin American Citizens No. 4552 v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997). Several features of this case are important for evaluating the reasonableness of the claimed hours.

**Discrimination cases based on indirect evidence are hard, and tenure-denial cases based on indirect evidence are among the hardest.** "[A]lthough the legal standard is the same whether the plaintiff in an employment discrimination case is a salesman or a scientist, practical considerations make a challenge to the denial of tenure at the college or university level an uphill fight—notably the absence of fixed, objective criteria for tenure at that level." *Blasdel v. Nw. Univ.*, 687 F.3d 813, 815 (7th Cir. 2012). *See also Hatcher v. Bd. of Trs. of S. Ill. Univ.*, 829 F.3d 531, 541 (7th Cir. 2016) ("we have held that scholars are in the best position to make the highly subjective judgments reviewing scholarship and tenure"), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). Hence, "it can be difficult to infer the presence of an invidious influence … merely by comparing successful and unsuccessful candidates." *Blasdel*, 687 F.3d at 817. Other opinions have pointed out that the complexity of evaluative judgments is not the only obstacle: it's the combination of that complexity and the

number of people who may influence a denial of tenure. *Mawakana v. Bd. of Trs. of Univ. of D.C.*, 926 F.3d 859, 865–66 (D.C. Cir. 2019) (the Title VII burden is no more difficult to meet *because* the employer is a university"; rather, the burden is more difficult because of two circumstances common in tenure decisions: "complex judgments and numerous decisionmakers"); *Haynes v. Ind. Univ.*, 902 F.3d 724, 734 (7th Cir. 2018) (challenges to tenure decisions are difficult because "[s]cholars, not courts, 'are in the best position to make highly subjective judgments related with the review of scholarship and university service,'" and because of the multi-layered structure of tenure review).

Here, the difficulty of the burden is reflected in the fact that the defendant's discovery productions amounted to over 37,000 pages of documents and the parties between them took 11 depositions. (Exh. 1 at ¶ 18; Exh. 2 at ¶ 19). Also, Dr. Nikolova's counsel devoted significant time in developing statistical evidence, which they used to excellent effect at trial in support of her claim of disparate treatment. Statistical evidence is relatively unusual in single-plaintiff disparate treatment cases, and it is difficult to present *probative* statistical evidence because it must identify and eliminate non-discriminatory explanations such that whatever disparity remains possesses weight as evidence of a discriminatory explanation.[1] But with the aid of their statistics

---

[1] *See, e.g., Chi. Teachers Union v. Bd. of Educ.*, 14 F.4th 650, 657–58 (7th Cir. 2021) ("[T]he fact that CTU has shown that layoffs disparately impacted African Americans in a statistically significant way does not reasonably lead to the inference that the Board intentionally discriminated. CTU points to nothing in the record undermining the Board's evidence that its layoff decisions were based on declining enrollment, not any intention to discriminate."); *Miles v. S. Cent. Human Res. Agency*, 946 F.3d 883, 896 (6th Cir. 2020) ("nowhere does Miles make any argument that 'eliminate[s] the most common nondiscriminatory explanations for the disparity'"); *Luster v. Vilsack*, 667 F.3d 1089, 1094 (10th Cir. 2011) (in a single-plaintiff sex discrimination case, plaintiff's statistics were non-probative for failure to "eliminate nondiscriminatory reasons for any gender disparity"); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1283 (9th Cir. 2000) ("Jeney's statistics failed to account for obvious variables—including education, previous position at the company, and distribution of age groups by position—that
(continued...)

expert, Dr. Shane Thompson, Dr. Nikolova's counsel marshaled a body of evidence so well

supported that the defendant did not move in limine to exclude Dr. Thompson or his evidence.[2]

**Dr. Nikolova's conducted appropriate discovery.** Despite the extent of discovery, there

were no discovery disputes that required the Court's intervention. That indicates the

reasonableness of Dr. Nikolova's discovery requests, and her reasonableness in responding to the

defendant's discovery requests (as well as the defendant's reasonableness in the same two

respects). Neither of the parties wasted time with unreasonable positions in discovery, despite the

magnitude of discovery demanded by the difficult nature of Dr. Nikolova's burden.

**Nonetheless, the defense was vigorous.** "'The [defendant] cannot litigate tenaciously

and then be heard to complain about the time necessarily spent by the plaintiff in response.'" *City

of Riverside v. Rivera*, 477 U.S. 561, 581, 106 S. Ct. 2686, 2697, 91 L. Ed. 2d 466 (1986). The

defendant filed a wholly unsuccessful motion for summary judgment (Doc. 66), and a motion

that only partly succeeded in excluding the testimony of Dr. Peter Glick (Docs. 76, 87).

**Pre-suit time spent pursuing a remedy through an employer's voluntary internal**

**processes is compensable.** In *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 662 (5th

Cir. 2002), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S.

53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006), the Fifth Circuit affirmed a Title VII fee award

---

[1](...continued)
would have affected the results of the analysis"), *cert. denied*, 533 U.S. 950, 121 S. Ct. 2592, 150 L. Ed. 2d 751 (2021).

[2] Dr. Nikolova originally retained Dr. Thompson with a regard to a claim of disparate impact discrimination. Because she eventually dropped that claim, her counsel have eliminated time spent discussing and researching it, and those eliminations are reflected in Exhibits 3A and 3B. But because Dr. Thompson's statistics ended up supporting the disparate treatment claims, Exhibits 3A and 3B include time spent locating and then working with Dr. Thompson in developing and presenting the statistical evidence. (Exh. 1 at ¶ 13.)

that included time the plaintiff's lawyer spent litigating a worker's compensation claim that grew

out of the on-the-job harassment that was the subject of the Title VII claim. "The worker's

compensation case made available to Green's counsel information and discovery which was

necessary to effectively litigation the Title VII claim." *Id.* at 662. Here, Dr. Nikolova's counsel

pursued a pre-suit appeal of her denial of tenure to the defendant's Committee of Counsel on

Academic Freedom and Responsibility (CCAFR), as well as a Request for Reconsideration/Final

Arguments to the defendant's president. Doing so provided considerable benefit to her in this

litigation. The CCAFR investigated the denial, found significant irregularities, and recommended

reconsideration: all of that was useful evidence in Dr. Nikolova's case. The fact that the

defendant rejected the CCAFR's findings and  recommendation and ignored and failed to

respond or investigate Dr. Nikolova's Request for Reconsideration, which raised concerns of

discrimination to the highest levels of the University, was even more useful evidence. All of the

time spent pursuing a remedy through the CCAFR is compensable.

**Also generally compensable are:**

● Time spent in the mandatory exhaustion of administrative remedies through the

Equal Employment Opportunity Commission. *N.Y. Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 61

n.2 & 71, 100 S. Ct. 2024, 2030 n.2 & 2034, 64 L. Ed. 2d 723 (1980) (observing that "all the

Court of Appeals that have considered the question have upheld fee awards under [Title VII] for

work done in federal administrative proceedings that must be exhausted as a condition to filing

an action in federal court," and extending the rule to "state proceedings to which a complainant

was referred pursuant to the provisions of Title VII").

● Time spent preparing (and, later, replying in support of) a motion for fees and

costs. *Cruz v. Hauck*, 762 F.2d 1230, 1233-34 (5th Cir. 1985).

● Time spent in the pursuit of settlement. *Pérez-Sosa v. Garland*, 22 F.4th 312, 323 (1st Cir. 2022) ("time reasonably spent in pursuit of settlement is worthwhile, and, therefore, generally fit for inclusion in a fee award"). In this case, the time spent in pursuit of settlement has been rather small, but as Mr. Schmidt explains, the defendant rebuffed his effort to discuss settlement before the suit was filed and again after the Court denied the motion for summary judgment. (Exh. 1 at ¶¶ 19-20; Exh. 2 at ¶ 20.)

**b.    Non-Prevailing Claims and Exercise of Billing Judgment**

Also bearing on the reasonableness of the claimed hours is the evidence, in Exhibits 3A and 3B, of what Dr. Nikolova's counsel have excluded from the claim. In evaluating the reasonableness of the exclusions, two principles are important. The first is that when a plaintiff "present[s] in one lawsuit distinctly different claims for relief that are based on different facts and legal theories," and one of those "distinctly different" claims fails, the plaintiff cannot recover time spent pursuing it: "[t]he congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim." *Hensley v. Eckerhart*, 461 U.S. 424, 434–35, 103 S. Ct. 1933, 1940, 76 L. Ed. 2d 40 (1983). But

> [i]t may well be that cases involving such unrelated claims are unlikely to arise with great frequency. Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.
>
> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award

7

should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Hensley*, 461 U.S. at 435, 103 S. Ct. at 1940 (citation and footnote omitted).

The second principle is the importance of "demonstrat[ing] proper billing judgment by 'writing off unproductive, excessive, or redundant hours.'" *Amawi*, 2021 WL 1226569, at *6.

Here, Dr. Nikolova prevailed before the jury on disparate treatment claims that her pregnancy, and that her sex apart from her pregnancy, were but-for causes of the defendant's denial of tenure in February 2019. (Doc. 95 at 1.) At various times in the life of the case, Dr. Nikolova's counsel considered presenting to the jury, but ultimately did not present, a claim of disparate impact discrimination, a claim of sex discrimination under the Equal Pay Act, and a claim of retaliation. The abandoned disparate impact claim was not "distinctly different" from the successful disparate treatment claim: that is apparent from the fact that Dr. Thompson's statistical evidence, originally developed with a disparate impact claim in mind (*see supra* note 2), was re-purposed for the disparate treatment claim. And yet Dr. Nikolova's counsel have exercised billing judgment in Exhibits 3A and 3B by eliminating time spent discussing and researching a disparate impact claim. They have also eliminated time that could be segregated into pursuit of the Equal Pay Act claim (such time was spent mainly, though perhaps not exclusively, in responding to the defendant's motion to dismiss of July 15, 2020 (Doc. 22), which is collected in Phase 6 of Exhibits 3A and 3B), and into pursuit of the EPA claim in combination with the retaliation claim (such time was spent mainly, though perhaps not exclusively, in drafting the First Amended Complaint (Doc. 21), and in responding to disccovery requests relating to the EPA and retaliation claims).

In addition to these eliminations, Dr. Nikolova's counsel have also exercising billing judgment by eliminating or reducing time spent on numerous other tasks scattered throughout the phases of the litigation. The adjustments are apparent in Exhibits 3A and 3B and are too numerous to itemize here. In total, the "RWS Adjust" and "RSN Adjust" columns in Exhibits 3A and 3B show they wrote off, respectively, 102.95 and 157.30 hours. *See also* Exh. 8 at ¶ 13 (Mr. McKnight's billing judgment).

The remaining time—the time for which Dr. Nikolova seeks compensation for her attorneys—amounts to 1,156.80 hours for Mr. Schmidt and 920.05 hours for Mr. Notzon, which totals 2,076.85 hours (not including all the time for the fees and costs motion). Though every case is different, there have been other single-plaintiff cases for which compensation in excess of 2,000 hours has been awarded: for example, in *Meniex v. Houston Housing Auth.*, 2019 WL 4920646, at *13 (S.D. Texas Sept. 13, 2019), Judge Atlas awarded compensation for 2,423 hours. The Court will commit no abuse of discretion by awarding compensation for all the hours that the fee applicants have not excluded.

### 2.      The Reasonable Hourly Rates

Once the compensable time is determined, the Court's second step is to determine reasonable hourly rates "according to the prevailing market rates in the relevant community," *Blum v. Stenson*, 465 U.S. 886, 895, 104 S. Ct. 1541, 1547, 79 L. Ed. 2d 891 (1984), i.e., "in the community in which the district court sits." *Mohammadi*, 2017 WL 4820364, at *3. "'Generally, the reasonable rate for a particular community is established through affidavits of other attorneys practicing there.'" *Id.* (quoting *Tollet v. City of Kemah*, 285 F.3d 357, 368 (5th Cir.), *cert. denied*, 537 U.S. 883, 123 S. Ct. 105, 154 L. Ed. 2d 141 (2002)).

The timekeepers for whom Plaintiffs seek compensation, their rates,[3] and the testimonial evidence supporting their rates are charted below (the supporting declarants are David L. Wiley, (Exh. 5), David Weiser (Exh. 6), Sherrard (Butch) Hayes (Exh. 7), and Colin Walsh (Exh. 8A):

| Timekeeper | JD/Year Licensed | Requested Rate | Evidence |
|---|---|---|---|
| Robert W. Schmidt | 1989 (Texas) | $625 | Exh. 1, ¶ 8<br>Exh. 5 at page 47<br>Exh. 6, ¶ 12<br>Exh. 7, ¶ 8 |
| Robert S. Notzon | 1997 (Texas) | $575 | Exh. 2, ¶ 9<br>Exh. 5 at pages 47-49<br>Exh. 6, ¶ 12<br>Exh. 7, ¶ 8 |
| Robert E. McKnight, Jr. | 1993 (Louisiana)<br>2005 (Texas) | $575 | Exh. 5 at 50-51<br>Exh. 8, ¶ 15<br>Exh. 8A, ¶ 9 |

In addition to the testimonial evidence, the rates are reasonable because they are consistent with court-awarded rates to lawyers in the Western District of Texas with comparable years of licensure, rates which have been exhaustively and objectively documented by the Texas Employment Lawyers Association, as described in the declaration of Mr. Wiley. Mr. Wiley sets forth, in particular, that

---

[3] Current rates are requested even though the first time recorded in this case was in 2019. That is consistent with *Missouri v. Jenkins*, 491 U.S. 274, 283-84, 109 S. Ct. 2463, 2469, 105 L. Ed. 2d 229 (1989):

> [C]ompensation received several years after the services were rendered ... is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed .... We agree, therefor, that an appropriate adjustment for delay in payment—whether by the application of current rates rather than historic hourly rates or otherwise—is within the contemplation of the statute [§ 1988].

10

- Mr. Schmidt's requested rate of $625/hour is less than rates awarded to the following lawyers, some with fewer years of licensed experience: $908.54 for Stephen E. Fox (JD 1987), $885.16 for Jesse J. Gelsomini (JD 1986), $867.81 for Felicity A. Fowler (JD 1992), $790.00 for Eric Taube (JD 1983), $773.94 for Kelly D. Hine (JD 1997), and $665.00 for David Weiser (JD 1986). (Exh. 2 at page 47.)

- Mr. Notzon's requested rate of $575/hour is less than rates awarded to the following lawyers, some with fewer years of licensed experience: $773.94 for Kelly D. Hine (JD 1997), $600.44 for Colin W. Walsh (JD 2011), $600.44 for Kalandra N. Wheeler (JD 2005), $587.74 for John Wenke (JD 1993), and $587.74 for John P. Mobbs (JD 1992). (Exh. 2 at page 47.) As Mr. Wiley also notes, the requested rate is "close to these with the same law school graduation year: $563.52 for Laura O'Donnell (JD 1996) and $559.65 for Galvin B. Kennedy (JD 1996)." (*Id.*)

- Mr. McKnight's requested rate of $575/hour matches the inflation-adjusted rate he was awarded in 2015 in the Northern District of Texas. (Exh. 2 at page 51.) Mr. Wiley's opinion is that $600/hour would be reasonable for Mr. McKnight (*id.* at 50), and that $600/hour is less than rates awarded to the following lawyers, some with fewer years of licensed experience: $867.81 for Felicity A. Fowler (JD 1992), $773.94 for Kelly D. Hine (JD 1997), $600.44 for Colin W. Walsh (JD 2011), and $600.44 for Kalandra N. Wheeler (JD 2005). (Exh. 2 at 51.). Nonetheless, Mr. McKnight has chosen to request a rate even more reasonable.

Texas courts have sometimes cited the State Bar of Texas's hourly rate survey, but the State Bar itself disclaims its usefulness for ruling on fee motions:

> In order to streamline the survey, hourly rate information is no longer collected. *Past hourly rate reports were not designed for nor intended to be used for setting*

*appropriate attorney fees.* Other factors should be considered in determining attorney hourly rate fees that are outside the scope of these reports.[4]

Judge Montalvo in *Diocesan Migrant & Refugee Servs., Inc. v. U.S. Immig. & Customs Enforcement* rejected reliance on the state bar rate survey because of this disclaimer. 2021 WL 289548, at *12 (W.D. Tex. Jan. 28, 2021) ("[t]ellingly, the Texas Bar itself warns against using the Fact Sheet to set attorney fees"). That disclaimer is not empty verbiage: courts have acknowledged the state bar rate survey to be unreliable. *See*, *e.g.*, *Diocesan Migrant*, 2021 WL 289548 (favorably citing expert statistician: it "suffered from the fatal defects of a limited sample size, selection bias, and suboptimal methodology," and "does not reliably reflect the hourly rates of attorneys in Texas"); *Miniex v. Houston Hous. Auth.*, 2019 WL 4920646, at *4 (S.D. Tex. Sept. 13, 2019) ("[t]he Court is unpersuaded that the median rates for labor and employment lawyers in the 2015 SBOT survey is a reliable gauge for reasonable hourly rates"). *See also* Exh. 5 at 35-45 (describing the deficiencies of the Sate Bar's rate survey).

The requested and charted rates, well-supported by the evidence, are the rates the Court should determine to be reasonable and use to calculate the lodestar fee.

### 3.    The Lodestar Fee, After Billing Judgment and Before Adjustment Pursuant to the *Johnson* Factors

The presumptively correct lodestar fee is:

| Timekeeper | Hours | Rate | Lodestar Fee |
|---|---|---|---|
| Robert W. Schmidt | 1,156.80 | $625 | $723,000.00 |
| Robert S. Notzon | 920.05 | $575 | $529,028.75 |
| Robert E. McKnight, Jr. | 12.20 | $575 | $7,015.00 |

---

[4] State Bar of Texas, Demographic & Economic Trends, *available at* https://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Economic_Trends (last visited September 12, 2022) (italics added).

| Total Hours/Lodestar Fee | 2,089.05 | | $1,259,043.75 |
|---|---|---|---|

### 4.      The *Johnson* Factors

Although the lodestar is presumed to be the reasonable fee, a consideration of the

*Johnson* factors may, in some cases, persuade the Court that the presumption is incorrect (*see*

*supra* p. 1). The *Johnson* factors are:

> (1) [T]he time and labor required; (2) the novelty and difficulty of the questions;
> (3) the skill required to perform the legal service properly; (4) the preclusion of
> other employment by the attorney due to acceptance of the case; (5) the customary
> fee; (6) ... ;[5] (7) time limitations imposed by the client or the circumstances; (8)
> the amount involved and the results obtained; (9) the experience, reputation, and
> ability of the attorneys; (10) the undesirability of the case; (11) the nature and
> length of the professional relationship with the client; and (12) awards in similar
> cases.

*Johnson*, 488 F.2d at 717-719. But no adjustment may be made on the basis of a *Johnson* factor

that has already been considered in setting either of the lodestar components (the reasonable

hours or the reasonable rates). *Black v. SettlePou, PC*, 732 F.3d 492, 502 (5th Cir. 2013) ("[t]he

lodestar may not be adjusted due to a *Johnson* factor that was already taken into account during

the initial calculation of the lodestar"); *Mohammadi*, 2016 WL 9450697, at *6 ("[I]n its

assessment of the reasonableness of the number of hours billed, the Court already accounted for

the novelty and difficulty of the cases. Accordingly, the Court will not adjust the lodestar on the

basis of this factor.").[6]

---

[5] The sixth factor was "whether the fee is fixed or contingent," but it was eventually
disallowed. *Rutherford v. Harris County*, 197 F.3d 173, 193 (5th Cir. 1999) ("the Supreme Court
has barred any use of this factor").

[6] This observation is consistent with one that the Supreme Court has twice repeated.
*Perdue*, 559 U.S. at 553, 130 S. Ct. at 673 ("the novelty and complexity of a case … 'presumably
[are] fully reflected in the number of billable hours recorded by counsel"); *Blum*, 465 U.S. at 898,
104 S. Ct. at 1549 ("[t]he novelty and complexity of the issues presumably were fully reflected in
the number of billable hours recorded by counsel ….").

Dr. Nikolova contends the lodestar fee already captures all of the *Johnson* factors relevant to setting a reasonable fee for this action: no enhancement or decrease is warranted. Her counsel have eliminated and reduced time in keeping with the principles described above (*see supra* pages 7-8). There is, undeniably, a disparity between the requested fee and the monetary success gained so far by Dr. Nikolova, but three points are important.

The first is that, in the wake of this litigation, the defendant recently "carefully review[ed] [Dr. Nikolova's] request for reconsideration [dated March 25, 2019, and which was among Mr. Schmidt's earliest documented work on this case]," and she has been recommended for tenure. (Doc. 105.) The lifetime value of tenure as a feature of Dr. Nikolova's success cannot be ignored. Second, Dr. Nikolova's front pay remains unresolved. (Doc. 109 at 2.) Third, Dr. Nikolova's monetary success is less than the requested fees only because of the Title VII cap: the jury appraised significant injuries warranting combined compensatory damages of $3 million. Only because of the cap is Dr. Nikolova able to recover only $300,000 of that amount. Meanwhile, the hours claimed by her attorneys are reasonable in light of the difficulty of the case, the vigor of the defense, and all the other factors described above (*see supra* pages 3-7). Because of situations like this, there is no rule of proportionality between a plaintiff's monetary success and the amount of the fee. *Gurule v. Land Guardian, Inc.*, 912 F.3d 252, 259 (5th Cir. 2018) (rejecting defendant's "argument that the fee award was an abuse of discretion solely due to the disproportion between the award and the plaintiff's actual recovery"); *Black*, 732 F.3d at 503 ("it would be an abuse of discretion for the district court to reduce Black's attorney's fee award solely on the basis of the amount of damages obtained").[7] Otherwise, the Title VII cap would

---

[7] *Gurule* and *Black* involved fee awards under the Fair Labor Standards Act, but the Supreme Court has made clear that the principles for determining a reasonable fee under a fee-
(continued...)

discourage the filing of worthy claims, which could not be what Congress intended. "We have emphasized the key role played by 'private Attorneys General' in actions involving employment discrimination." *James v. Stockham Valves & Fittings Co.*, 559 F.2d 310, 358 (5th Cir. 1977), *cert. denied*, 434 U.S. 1034, 98 S. Ct. 767, 54 L. Ed. 2d 781 (1978). That role could not be fulfilled if the cap on damages could curtail otherwise-reasonable attorney's fees.

> B.      **The Prevailing Plaintiffs' Costs**

"Costs" in an action of this nature includes not just those available to a prevailing party in a bill of costs under 28 U.S.C. § 1920: all other costs that an attorney would normally charge to a fee-paying client are recoverable as part of the attorney's fee. *See, e.g.*, *Mota v. Univ. of Texas Houston Health Sci. Ctr.*, 261 F.3d 512, 529 (5th Cir. 2001) (in a prevailing party fee award under Title VII, 42 U.S.C. § 2000e-5(k), holding that a reasonable attorney's fee includes costs items beyond those allowed under 28 U.S.C. § 1920, including all reasonable costs charged a fee-paying client); *Amawi*, 2021 WL 1226569, at *10 (quoting *Associated Builders & Contractors, Inc. v. Orleans Parish Sch. Bd.*, 919 F.2d 374, 380 (5th Cir. 1990): "all reasonable out-of-pocket expenses, including charges for photocopying, paralegal assistance, travel, and telephone, are plainly recoverable in fee awards under 42 U.S.C. § 1988 because they are part of the costs normally charged to a fee-paying client").

_____

[7](...continued)
shifting statute are uniform. *Hensley*, 461 U.S. at 433 n.7, 103 S. Ct. at 1939 n.7 ("[t]he standards set forth in this opinion [based on 42 U.S.C. § 1988] are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party'"), *cited with approval in Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 n.4, 121 S. Ct. 1835, 1839 n.4, 149 L. Ed. 2d 855 (2001); *Burlington v. Dague*, 505 U.S. 557, 562, 112 S. Ct. 2638, 2641, 120 L. Ed. 2d 449 (1992) ("our case law construing what is a 'reasonable' fee applies uniformly to all" federal fee-shifting statutes).

In addition, Title VII explicitly provides for recovery of "expert fees." 42 U.S.C. § 2000e-5(k).

The total costs—both the costs recoverable only under § 1920 (listed on a bill of costs on AO Form 133, which is part of Exhibit 4) and the costs recoverable without regard to § 1920 —are listed in Exhibit 4. Dr. Nikolova's attorneys attest that the requested costs are for items that their firms—and firms in this legal market—would normally charge to fee-paying clients, and were reasonably necessary for the pursuit of this litigation. (Exh. 1 at ¶ 22; Exh. 2 at ¶ 22.) The Court should award all of them.

### C.        Post-Judgment Interest on the Award of Fees and Costs

A prevailing party is entitled to post-judgment interest on an award of fees and costs from the date of the judgment on the merits that establishes the right to the award of fees and costs. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 331-32 (5th Cir.), *cert. denied*, 516 U.S. 862, 116 S. Ct. 173, 133 L. Ed. 2d 113 (1995). Hence, the Court's order on this motion should provide for interest from the date of the judgment (August 22, 2022) (Doc. 106).

### D.        Supplemental Motion

Dr. Nikolova may file a supplemental motion to itemize, for example, fees and costs expended in replying in support of this motion, in briefing the issue of front pay, and in opposition to any post-judgment motion the defendant may yet file.

### Conclusion

Dr. Nikolova's lawyers have fully complied with their obligations in seeking fees and costs in this case. They maintained meticulous, detailed contemporaneous records of their time and expenses. They have exercised billing judgment and deleted from this request time that was unnecessary, duplicative or unreasonable for any reason. And they have sought for themselves

billing rates that are consistent with the standard of reasonableness documented in the numerous

supporting declarations.

The Court should award fees, costs, and postjudgment interest as set forth below:

a.       A fee of $ 1,259,043.75 detailed as follows:

| Timekeeper | Hours | Rate | Lodestar Fee |
|---|---|---|---|
| Robert W. Schmidt | 1,156.80 | $625 | $723,000.00 |
| Robert S. Notzon | 920.05 | $575 | $529,028.75 |
| Robert E. McKnight, Jr. | 12.20 | $575 | $7,015.00 |
| **Total Hours/Lodestar Fee** | 2,089.05 | | $1,259,043.75 |

b.       Costs (including those in the bill of costs) in the total amount of $64,598.61 (of

which $34,356.27 is allocated to Mr. Schmidt, and $30,242.34 is allocated to Mr. Notzon).

c.       Postjudgment interest on $ 1,323,642.36 from August 22, 2022.

Respectfully submitted,


CREWS LAW FIRM, P.C.
701 Brazos, Suite 900
Austin, Texas 78701
(512) 346-7077
(512) 342-0007 (Fax)
schmidt@crewsfirm.com

By: */s/ Robert W. Schmidt*
Robert W. Schmidt (of counsel)
State Bar No. 17775429
Joe K. Crews
State Bar No. 05072500

Robert Notzon
The Law Office of Robert Notzon
Texas Bar No. 00797934
1502 West Avenue
Austin, Texas 78701
(512) 474-7563
(512) 852-4788 facsimile

17

*/s/ Robert E. McKnight, Jr.*
Robert E. McKnight, Jr.
Texas Bar No. 24051839
Marek, Griffin & Knaupp
203 N. Liberty Street
Victoria, Texas 77901
Telephone: (361) 573-5500
Facsimile: (361) 573-5040
mcknightr@lawmgk.com

## CERTIFICATE OF CONFERENCE

We certify that we have conferred with opposing counsel concerning the motion for reasonable fees and costs as required by Local Rule CV-54. We started the process with Mr. Schmidt sending opposing counsel on September 9, Friday afternoon near the end of the day, a close-to-final draft of the chronology chart here presented as Exhibit 3A, as well as the receipts for all compensable costs; then on Monday morning Mr. Schmidt also sent a close-to-final draft of the phase chart here presented as Exhibit 3B. We then conferred by telephone with opposing counsel, and invited opposing counsel to provide her points of opposition, which she provided the following day (September 13) in writing as follows verbatim:

> Given the short timeframe between the receipt of these drafts and Plaintiff's filing deadline, as well as the enormity of the request (which exceeded $1.25M in the draft Defendant received the day before this filing), Defendant has not had a sufficient opportunity to review these entries in detail before conferring on Plaintiff's request. Defendant's review of these documents remains ongoing pending receipt of Plaintiff's final charts, and, accordingly, Defendant cannot agree to the reasonableness of Plaintiff's requested fees. At present, Defendant anticipates challenging Plaintiff's counsel's hourly rates as well as specific entries that do not allow UT to ascertain whether the fees associated with the activity are reasonable. UT also anticipates challenging particular entries and costs that do not appear to be recoverable. UT reserves its right to challenge additional issues as it continues to evaluate Plaintiff's request.

Plaintiffs' counsel agree that the foregoing points of opposition are not exhaustive and do not preclude the defendant from raising any other points of opposition, especially in light of the number of time entries in Exhibits 3A and 3B and the difficulty of fully evaluating Exhibits 3A and 3B in the time available for conferral.

*/s/ Robert W. Schmidt*
Robert W. Schmidt

*/s/ Robert E. McKnight, Jr.*
Robert E. McKnight, Jr.

## **CERTIFICATE OF SERVICE**

I certify that on September 13, 2022, this document was served pursuant to Federal Rules of Civil Procedure on counsel for Defendants at the following address:

Amy Hilton
Assistant Attorney General
Office of the Attorney General of Texas
General Litigation Division
P.O. Box 12548
Capitol Station
Austin, TX 78711-2548
amy.hilton@oag.texas.gov


*/s/ Robert E. McKnight, Jr.*
Robert E. McKnight, Jr.