UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| EVDOKIA NIKOLOVA §<br>　Plaintiff, §<br>§<br>vs. §<br>§ CASE NO. 1:19-cv-00877-RP<br>UNIVERSITY OF TEXAS AT AUSTIN §<br>　Defendant. § | |

**DECLARATION UNDER PENALTY OF PERJURY OF
ROBERT S. NOTZON**

I, Robert S. Notzon, declares under penalty of perjury and state as follows:

1.  My name is Robert S. Notzon. I am over the age of eighteen (18) years, of sound mind, and fully capable of making this Declaration. I am fully competent to testify to the matters stated in this Declaration, of which I have personal knowledge.

**Professional Background**

2.  I finished law school at the University of Texas School of Law with my JD in May 1996. I finished graduate school at the LBJ School of Public Affairs with my MPAf in December 1996. Because I was in a "joint degree" program, my graduation was not complete for either degree until both were completed. Therefore, I graduated with my JD in December 1996. I became licensed to practice law in Texas in January 1997.

3.  Upon receiving my license to practice law, I immediately began working as a self-employed solo practitioner under the firm name of The Law Office of Robert S. Notzon, in Austin. I have continued as a solo practitioner since January 1997 to the present.

4.  My practice has consisted of between 95% and 99% employment-related claims throughout the last 25+ years.

5. I have also provided substantial pro bono services since 1997 for the non-profit organization, Texas NAACP, as its State Legal Redress Committee Chair advising the Texas NAACP State Executive Committee and the hundreds of Local NAACP Branches across the State of Texas and representing the Texas NAACP in litigation to include the Texas redistricting litigation following the 2000 census, the 2010 census, and currently regarding the current redistricting litigation following the 2020 census. I also participated in the Voter ID litigation from last decade representing the Texas NAACP in that case. I am awaiting the final ruling on appeal and thereafter payment of my attorney's fees for the last decade's redistricting litigation for work being sought at the reasonable and necessary rate of $500.00/hour, which is slightly less than I am seeking in this case ($575.00/hour) due in part to the fact that I am not as experienced in that area of litigation as I am in the employment law litigation field, though the complexity is similar given the presence in both practices of racial discrimination, circumstantial evidence, and pretext.

6. The following is an abbreviated list of my trial experience, in reverse chronological order[1]:

☐ *Limuel v. City of Austin*, No. D-1-GN-19-001786 (Travis County District Court): I served as plaintiff's counsel in the litigation leading up to and including a six-day jury trial in July 2022 on claims of retaliation and disability discrimination. The jury found that the City of Austin had engaged in illegal retaliation but ruled in favor of the defendant on the disability discrimination claim. There are still post-trial motions pending and expected to be filed and the Court has yet to issue a final judgement in the case.

☐ *Nikolova v. UT Austin,* No. 1-19-cv-877-RP (Austin Division of the Western District

---

[1] I have not listed dozens of other cases that I either tried during the first 15 years of my practice as a solo or settled, thus obviating trial.

of Texas – **the instant case**): I served as plaintiff's co-counsel in the litigation leading up to and including a five-day jury trial in March 2022 concerning claims of gender and pregnancy discrimination. The jury awarded damages of $3,050,000.00. The jury verdict has been remitted to the statutory cap of $300,000.00 for past and future compensatory damages, $50,000.00 in back pay damages. The parties have yet to present the Court with complete application and briefing on front pay damages and attorneys' fees and costs. This application and briefing are expected in the near future.

☐   *Daniels v. TxDOT,* 4:15-CV-702-CAN (Sherman Division of the Eastern District of Texas). I served as plaintiff's counsel in the litigation leading up to and including a four-day (closing arguments and deliberation on the 5th day) jury trial in January 2017 concerning claims of race discrimination and retaliation against a state agency, the plaintiff was a laborer who had worked for the state agency for 18 years before he was terminated. The jury came back with a verdict finding that the state agency had racially discriminated against the plaintiff and awarded him $117,219.00 in back pay damages and $252,000.00 in past emotional damages. The case settled for $650,000.00 so there was not a fee award.

☐   *Saldivar v. AISD,* 1:14-CV-00117-SS, (Austin Division of the Western District of Texas): I served as plaintiff's counsel in the litigation leading up to and including a four-day jury trial in November into December of 2015 on a FLSA overtime claim against the School District. The jury found that the defendant had failed to pay the plaintiff earned overtime. The Court ordered attorney's fees paid to me at the rate of $350/hour. I was not aware of the rates being awarded and charged by other attorneys of comparable experience, reputation, and competency practicing plaintiff's employment law in Austin. I have since educated myself by joining the Texas Employment Lawyers Association and National Employment Lawyers Association and researching court-awarded fees.

☐ *Powers v. TWC-CRD*, D-1-GN-02-004541, (Travis County District Court): I served as plaintiff's co-counsel in the litigation leading up to and including a five-day jury trial in September 2015 on a claim retaliation against a state agency. The jury found that the Civil Rights Division of the Texas Workforce Commission had unlawfully retaliated against the plaintiff and awarded the plaintiff $173,028.79 in damages. The parties mediated the dispute prior to filing post-trial motions or a notice of appeal. The settlement contains a strict confidentiality provision as to the final amount, so I am not able to make any mention of that amount or the attorney's fees portion. The parties settled so there was not a fee award.

☐ *Morrison v. TWC-CRD*, D-1-GV-03-863, (Travis County District Court): I served as plaintiff's co-counsel in the litigation leading up to and including a five-day jury trial in 2010 on a claim retaliation against a state agency. The jury found that the Civil Rights Division of the Texas Workforce Commission had unlawfully retaliated against the plaintiff and awarded the plaintiff $300,000.00 in back pay, $150,000.00 in past compensatory damages, $150,000.00 in future compensatory damages.  These amounts were modified post trial and following appeal due to the $50,000.00 cap on smaller employers like the defendant; even though it is a part of the State of Texas. The parties settled so there was not a fee award.

☐ *Dowd v. Dillards, Inc.*, arbitration in Austin in 2011: I represented the plaintiff in the arbitration discovery and three-day hearing involving the claim of age discrimination.  The arbitrator found that the defendant had illegally discriminated against the plaintiff due to her age and awarded the plaintiff damages and a specific award of attorney's fees in the amount of $150,000.00.

7. The following cases include cases that I took to trial but lost.  These are listed to show both that taking cases on a contingency basis doesn't always end in victory and payment, and because there are lessons learned and experiences gained even from these:

☐   *Poole v. Affiliates for Women's Health, P.A.*, 4:17-CV-00885-LHR (Houston Division of the Southern District of Texas): I served as plaintiff's counsel in the litigation leading up to and including a six-day jury trial in January into February 2019 concerning claims of disability discrimination and retaliation and breach of contract by a medical doctor against a privately owned/run medical practice.  The jury returned a verdict in favor of the defendant in this case.  An appeal was not filed.

☐   *Jones v. TDCJ*, 4:17-CV-00885-FHS, (Houston Division of the Southern District of Texas): I served as plaintiff's counsel in the litigation leading up to and including a five-day jury trial in February 2018 concerning claims of race discrimination and retaliation by a longtime correctional officer against a state agency.  The jury returned a verdict in favor of the defendant in this case.  An appeal was not filed.

☐   I participated in multiple other employment trials as either counsel or co-counsel in the years between January 1997 and 2011 in the Austin (including trials, but not limited to trials before Federal District Judge Nowlin (Wrenn v. TNRCC) and Judge Sparks (who, just before trial, transferred the case to a Federal Judge from Shreveport, LA) (Carson v. UT School of Law)(tried through to verdict as a solo against the following opposing counsel on this one case: Joe Jamail, Shannon Ratliff, David J. Beck, and their associates), and also trials before Federal Magistrates Austin (Gratten v. City of Austin) and Magistrate Capelle (Gregory v. Texas Youth Commission).

8.   I am a member of the National Employment Lawyers Association and the Texas Employment Lawyers Association. I received an award in 2017 for the highest single-plaintiff jury verdict in Texas that year (*Daniels v. TxDOT*, listed above).

## My Rate

9.   My current hourly rate for 2022 is $575. I charge clients this rate exclusively

when I am representing clients in litigation involving fee shifting statutory claims involving the filing and trying of lawsuits on a contingency basis, wherein I am paid by the defendant, either through attorney's fees awarded by the Court, the jury, or through a percentage of a settlement by agreement with my client. Since I do not bill fee paying clients, I have determined $575/hour to be my reasonable hourly rate from my knowledge of the Austin legal market, from reviewing the Texas Employment Lawyer Association 2022 survey of hourly rates (attached as Exh. 2 to David Wiley's declaration), and from the declarations of the other colleagues who are also knowledgeable about the Austin legal market and with my level of skill, experience, and reputation (Exhs. 6 and 7).

### Exhibit 3 and Timekeeping Practices

10.   Throughout the years I have worked on this case, I have made contemporaneous time records and linked my time records to contemporaneous documentation of my work to within a tenth, and sometimes to the quarter, of an hour identifying when the work began and ended. These contemporaneous timekeeping records are the basis for the time records attributed to my work within Exhibit 3A and Exhibit 3B to the motion for reasonable fees and costs, and I affirm they are a true and correct billing record of the time I spent on this case: the hours shown on Exhibit 3A and Exhibit 3B as having been expended by me were actually expended by me on the topics stated and for the time stated. These time records have been checked against other "'contemporaneous records, briefs, or memoranda to ensure against recording errors,'" *Cobell v. Norton*, 407 F. Supp. 2d 140, 155 (D.D.C. 2005), and have been edited for clarity and completeness so as "to allow 'this Court to make an informed decision about the relevance and appropriateness of the entry.'" *Id.* To the extent the hours have not been reduced in the exercise of billing judgment, these hours were reasonable for the work of representing our client in this matter.

11. Exhibit 3A and Exhibit 3B also include the time entries of Robert E. McKnight. Mr. McKnight has a well-earned and deserved reputation for assisting the counsel of prevailing plaintiffs in preparing and submitting motions for reasonable attorney's fees and costs. I have not drafted and presented nearly as many such motions for fees compared with Mr. McKnight so I asked him to assist me in doing this work that would have taken me much longer to perform on my own. I am aware from my own experience and the experience of other professional colleagues, that Mr. McKnight performs this work faster than I can, and so I asked him to assist me in this case. Mr. McKnight has provided his own testimony in support of the plaintiff's fee motion averring to the accuracy and reasonableness of the process in supporting and filing this fee motion.

## Billing Judgment

12. The plaintiff alleged multiple causes of action in this case, which were eventually reduced both through motion practice and voluntarily to only two claims: gender and pregnancy discrimination; both of which the plaintiff prevailed on as documented in the jury verdict in this case. (Doc. 95) Pursuant to the jury's verdict and prior to full briefing on front pay damages, the Court has entered final judgment (Doc. 106) for

- back pay of $50,000;

- compensatory damages (for past and future injuries) of $300,000 (having applied the cap to the $3,000,000 awarded from the jury);

- pre-judgment interest in the amount of $8,170.05;

- post-judgment interest to be calculated pursuant to 28 U.S.C. §1961 on the date judgment is paid.

13. In recognition of the dismissed/withdrawn claims – disparate impact discrimination, Equal Pay Act, and retaliation – we have voluntarily reduced or removed time from our records attributable to those dismissed/withdrawn claims. Or put another way, work

that was not attributable to producing, presenting, and arguing evidence before the jury in support of the gender and pregnancy discrimination claims has been removed from the time records as compensable time. Therefore, to the extent I have not deducted other time that may have been spent over the life of the case on the dismissed/withdrawn claims, it is because that work was not discrete from, but was instead intertwined with, the work on the successful discrimination claims:

> In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, even where the claims are brought against the same defendants— often an institution and its officers, as in this case—counsel's work on one claim will be unrelated to his work on another claim…. The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.
>
> … Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.
>
> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation …. [T]he fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Hensley v. Eckerhart*, 461 U.S. 424, 434–35 (1983) (footnote omitted).

    14. Here, the dismissed/withdrawn claims were "related legal theories" for explaining the adverse action that the jury found that the defendant had taken against the plaintiff. It would not be fair or accurate to remove all work performed related to the dismissed/withdrawn claims.

For example, Dr. Thompson was originally retained as an expert for purposes of supporting the disparate impact claim, however, following the decision not pursue the disparate impact claim, the evidence reviewed by Dr. Thompson and his analysis and expert opinions were admitted to the jury in support of the gender and pregnancy discrimination claims.

15. Further, the dismissed/withdrawn claims made no difference to the relief obtained. That is, even if plaintiff had continued to pursue those claims and obtained jury verdicts in her favor, the plaintiff would not have been entitled to any more damages than she obtained in this case. Hence, the dismissal/withdrawal of those claims never affected the quantum of damages that the plaintiff claimed, nor was awarded.

16. In addition to the reductions described herein, I have made other reductions in the exercise of billing judgment; these are documented in Exhibit 3A and Exhibit 3B. These reductions include, but are not limited to, work performed of which I felt were not as efficiently performed as I am professionally willing to verify and seek ; therefore, I have decided not to seek compensation for their time.

17. I have no travel time expended, documented, or requested in this case.

18. Because I do not employ administrative staff, there are occasions when I perform non-legal tasks. I sometimes record that time, so I have been careful to scrutinize all of my time entries in Exhibit 3A and Exhibit 3B in order to reduce or eliminate such time on non-lawyer tasks. Wherever I observed such tasks recorded in those exhibits—tasks such as scheduling, filing, and other administrative issues that involved no decision making—I have reduced the time so as to eliminate the administrative, non-legal aspect.

19. This case was staffed by Mr. Schmidt and me. Discovery was substantial: the plaintiff took seven depositions, and the defendant took the plaintiff's deposition and the depositions of three of the plaintiff's experts. Both parties were sufficiently cooperative in

discovery that neither filed a motion to compel against the other. Besides the substantial number of depositions taken in this case and the larger number of experts than are typical in employment discrimination cases, there were a very large number of documents produced in this case by UT – over 37,000 pages, which is also much larger than is produced in a typical single plaintiff employment discrimination case, there was no feature of the attorneys from both sides that unnecessarily or unreasonably increased the amount of time/fees required to try this case.

20. Notwithstanding the parties' cooperative approach to discovery, the defendant litigated this case vigorously: filing an extensive motion for summary judgment and a late-filed motion to strike our expert, Dr. Glick, and our objection to the Report and Recommendation to strike Dr. Glick, on which the plaintiff prevailed. Nor did the defendant engage in any significant settlement discussions.

### LOCAL RULE CV-54 Affirmation

21. Pursuant LOC. R. CV-54, I affirm that all of the hours expended by me for which compensation is sought in this motion were actually expended on the tasks and topics as stated in Exhibit 3A and Exhibit 3B, that the hours expended as stated there for compensation (i.e., net of any reductions or adjustments) were reasonable, and that the rates claimed were reasonable at the times when the work was performed.

### Costs

22. The plaintiff incurred recoverable costs through me. These costs are itemized by category and totaled in Exhibit 4. I have reviewed these costs in Exhibit 4 and hereby certify that all of the costs for items and services reflected there were actually and necessarily expended. All of these costs are of the type that are normally charged to my clients.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 13, 2022.

                                           */s/ Robert S. Notzon*
                                           Robert S. Notzon