IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| EVDOKIA NIKOLOVA, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No.: 1:19-CV-00877 |
| | § | |
| UNIVERSITY OF TEXAS AT AUSTIN, | § | |
| *Defendant.* | § | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR FEES AND COSTS**

Defendant The University of Texas at Austin (UT Austin) files this Response to Plaintiff's Motion for Fees and Costs (Dkt. #111). Cognizant that "[a] request for attorney's fees should not result in a second major litigation," *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), UT Austin does not challenge any of Plaintiff's counsels' billing entries or costs. Nor does UT Austin seek a reduction in the lodestar. But Plaintiff's request for fees in the amount of $1,259,043.75 for a total of 2,089.05 hours billed by three attorneys is unreasonably high because it is based on excessive hourly rates. Counsel's requested hourly rates should be reduced for four reasons.

First, the hourly rates that Plaintiff seeks—$625 and $575—are significantly higher than the hourly rates awarded in numerous recent fee orders issued by district courts in the Western District of Texas. Second, the rates requested exceed the needs of the case. This was not a particularly contentious case, and it involved no novel legal issues. Third, in a case where the judgment awards Plaintiff $350,000 plus interest, the amount of fees sought is disproportionate to the result counsel achieved. Finally, because UT Austin is a publicly funded university, they act as stewards of public funds, and equitable principles warrant a more modest fee award.

**ARGUMENTS & AUTHORITIES**

## I.    Standard of Review.

The party seeking attorneys' fees bears the burden of proving up those fees. Courts in the Fifth Circuit apply the lodestar method to calculate attorneys' fees. *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (citing *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038 (5th Cir. 1999)). The lodestar amount is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate. *Black*, 732 F.3d at 502 (citing *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012)). The appropriate hourly rate is defined by the market rate in the community in which the district court sits and should reflect the prevailing market rates, not the rates that "lions at the bar may command." *Id.*; *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002); *Hopwood v. Texas*, 236 F.3d 256, 281 (5th Cir. 2000). The party seeking attorneys' fees must demonstrate that the requested rate is in line with the market rate in the community for "similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 (1984).

After calculating the lodestar fee, the court "then considers whether the lodestar figure should be adjusted upward or downward depending on the circumstances of the case." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). While neither party in this case has requested an adjustment to the lodestar, many of the factors that inform an adjustment to the lodestar are also considered in determining the appropriate market rate for fees. *See, e.g.*, *Jason D.W. by Douglas W. v. Hous. Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998) (noting that many of these factors "usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate") (citing *Hensley*, 461 U.S. at 434 n.9); *Rodriguez v. City of Houston*, Civ. A. No. H-06-2650, 2009 WL 10679670, at *1 (S.D. Tex. Dec. 22, 2009) (factors "may bear on the

market rate or on whether the hours were reasonably spent"). Those factors include (1) the time and labor required by the litigation; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the award in similar cases. *Migis*, 135 F.3d at 1047 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)). In determining the reasonableness of the fee, the most important determination is the plaintiff's monetary success. *Id.* at 1048.

Only "reasonable fees" are compensable. *EEOC v. Clear Lake Dodge*, 60 F.3d 1146, 1154 (5th Cir. 1995). A fee is reasonable if it falls within a range of fees charged by the legal community within the scope of a judicial district, not just the division in which the court sits. *Lewallen v. City of Beaumont*, 394 F. App'x 38, 46 (5th Cir. 2010); *see also Treadway v. Otero*, No. 2:19-CV-244, 2020 WL 5905364, at *4 (S.D. Tex. Oct. 6, 2020) ("When it comes to parsing between divisions, it appears that it is the district, rather than the division, that should govern the decision."); *Ramirez v. Lewis Energy Group, L.P.*, 197 F. Supp. 3d 952, 956 (S.D. Tex. 2016) ("The relevant community refers to 'the judicial district in which the litigation occurred . . . , not the particular division in which the case was pending.'" (quoting *Bear Ranch, LLC v. Heartbrand Beef, Inc.*, 6:12-CV-14, 2016 WL 3549483, at *5 (S.D. Tex. June 30, 2016), *aff'd*, 885 F.3d 794 (5th Cir. 2018)).

II.    **The Hourly Rates Plaintiff Seeks Are Excessive.**

    A. **Plaintiff's Requested Rates Are Higher Than the Rates Courts in the Western District Have Recently Awarded to Experienced Counsel in Comparable Cases.**

Plaintiff requests hourly rates of $625 for Mr. Schmidt and $575 for Mr. Notzon and Mr. McKnight. Dkt. #111 at 17. These requested rates are significantly higher than the hourly rates awarded in recent years by courts in the Western District to experienced lawyers in various kinds of cases, including employment-law cases. For example:

- In 2021, Judge Nowlin found that hourly rates of $325 (for work before 2021) and $375 (for work starting in 2021) were "appropriate hourly rates in the community" in an employment-law case in the Austin Division for an attorney who was Board Certified in Labor and Employment law and had nearly 20 years of experience. *Menefee v. N-Title, LLC*, No. A-19-CV-00737, 2021 WL 3413319, at *12 (W.D. Tex. July 9, 2021).

- In 2021, Judge Rodriguez awarded rates between $230 and $345 per hour to lawyers in an employment case in the San Antonio Division involving an arbitration award under the Railway Labor Act. *See Union Pac. R.R. Co. v. Am. Ry. & Airway Supervisors' Ass'n*, No. SA-17-CV-00270, 2021 WL 2444957, at *6 (W.D. Tex. June 15, 2021).

- In 2021, Judge Lamberth awarded hourly rates of $325 for an experienced partner in an insurance dispute in the San Antonio Division. *See Agredano v. State Farm Lloyds*, No. 5:15-cv-1067-RCL, 2021 WL 4228340, at *10-11 (W.D. Tex. Sept. 16, 2021).

- In 2021, Magistrate Judge Hightower recommended an hourly rate of $300 for a lawyer with 11 years' experience in an ERISA case in the Austin Division. *See Newman v. Arens Servs.*, No. 1:19-CV-1102-LY, 2021 WL 5564269, at *2 (W.D. Tex. Nov. 29, 2021). Judge Yeakel accepted the recommendation, to which no party objected. *See Newman v. Arens Servs.*, No. 1:19-CV-1102-LY, 2022 WL 1546647, at *1 (W.D. Tex. Jan. 4, 2022).

- In 2021, Judge Guaderrama awarded hourly rates of $250 for an attorney with 20 years' experience in an employment case in the El Paso Division. *See Burns v. Nielsen*, No. EP-17-CV-00264-DCG, 2021 WL 534711, at *5-6 (W.D. Tex. Feb. 12, 2021).

- In 2020, Judge Albright awarded an hourly rate of $350 for attorneys in a Title VII suit in the Waco Division, and the Fifth Circuit affirmed that rate on appeal this year. *See Alvarez v. McCarthy*, No. 6-16-CV-00172-ADA, 2020 WL 1677715, at *8 (W.D. Tex. Apr. 6, 2020) (*Alvarez I*), *aff'd in pertinent part, vacated and remanded in part*, 2022 WL 822178, at *3-5 (5th Cir. March 18, 2022) (*Alvarez II*).

- In 2020, Judge Pitman awarded hourly rates ranging from $225 to $425 to lawyers in a "complex and unusually contentious case" in the San Antonio Division involving a dispute

over investment properties and construction financing. *See Halprin v. FDIC*, 2020 WL 411045, at *7 (W.D. Tex. Jan. 24, 2020).

The hourly rates of $625 and $575 requested by Plaintiff significantly exceed the rates awarded in the above cases.

### B. Plaintiff's Requested Rates are Disproportionate to the Needs of the Case.

This was not a case with novel legal issues that demanded the most experienced and costly employment lawyers. Plaintiff abandoned her Equal Pay Act, disparate impact, and retaliation claims before Defendant presented its case. As a result, the jury was presented with two liability questions about sex and pregnancy discrimination under Title VII that effectively amounted to a single claim.[1] The resolution of that claim depended whether the jury credited (1) Plaintiff's assertion that she was similarly situated to male faculty members in the Cockrell School of Engineering (and female faculty members who had not become pregnant) who had received early promotion and tenure, and (2) Defendant's explanations as to why those other faculty members were promoted early but Plaintiff was not.

Defendant presented no affirmative defenses to the jury. Dkt. #95 at 12-13. Thus, while Plaintiff called numerous witnesses at trial, and her discovery requests produced a large volume of responsive documents, the legal issue the case presented was straightforward. The degree of

---

[1] Under Title VII, pregnancy discrimination is a form of sex discrimination. 42 U.S.C. § 2000e(k) (stating that "[t]he terms 'because of sex' or 'on the basis of sex' include . . . because of or on the basis of pregnancy"); *see Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 859 (5th Cir. 2002) ("The [Pregnancy Discrimination Act] amended Title VII by explicitly including discrimination based on pregnancy and related medical conditions within the definition of sex discrimination."). Moreover, the evidence for the claims overlapped significantly, and jury answered both questions the same way. Dkt. #95 at 12.

expertise required to prosecute this case was not so great as to require attorneys with hourly rates roughly twice the median of hourly rates for attorneys in Austin.[2]

In *Alvarez*, Judge Albright cited other courts as recognizing that "employment cases with just one or even two claims are 'simple' and do not warrant [a large] attorneys' fees award." 2020 WL 1677715, at *2 (citing *Faulk v. Duplantis*, No. CIV.A. 12-1714, 2015 WL 3539637, at *3 (E.D. La. June 4, 2015) (awarding $65,137.50 in fees in a single-claim retaliation case that was tried to verdict twice)); *Halupka v. Fed. Express Corp.*, No. 4:03-cv-350, 2006 WL 8441053, at *4 (E.D. Tex. Jun. 22, 2006) (reducing fee award in two-plaintiff case involving racial discrimination and hostile work environment claims). The district court in *Alvarez* considered the absence of novel or complex legal issues in reducing the hourly rates for the attorneys involved. 2020 WL 1677715, at *7-8. Similarly, in *Burns*, another employment case, the district court noted that the case "presented no novel issue" and was not "an unusually contentious case" before reducing the hourly rates used to calculate the lodestar *Burns v. Nielsen*, Civ. A. No. EP-17-CV-00264-DCG, 2021 WL 534711, at *3, *6 (W.D. Tex. Feb. 12, 2021).

*Burns* was a simple case because, although the plaintiff alleged five claims, only three were tried to the jury, and those three were effectively a single claim because they were all based on same facts. *Id.* at *6. Judge Guaderrama further noted that the trial took only six days, there were no discovery disputes that required the court's involvement, and the defendant filed no substantive motions filed other than a motion for summary judgment and a motion in limine, as well as post-trial motions seeking judgment as a matter of law or a new trial. *Id.* at *3-4.

---

[2] 2019 Income and Hourly Rates, TEXAS STATE BAR, https://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Economic_Trends&Templ ate=/CM/ContentDisplay.cfm&ContentID=54237#:~:text=The%20median%20hourly%20rate%20for,in% 20the%20largest%20metro%20areas (last visited Oct. 25, 2022) at 10 (attached as **Exhibit A**).

This case is comparable in many respects. Here, the trial took five days, instead of six. Here, as in *Burns*, there was effectively only one claim tried to the jury, and there were likewise no discovery disputes that required judicial intervention. This case did involve a greater number of witnesses than *Burns*. And here, Defendant filed the same motions as those mentioned in *Burns*, plus a motion for partial dismissal under Rule 12, a motion to exclude one of Plaintiff's experts, and a motion seeking reconsideration of the district court's decision regarding that expert. In sum, this case was not significantly more complex than *Burns*.

### C.  The Hourly Rates Plaintiff Seeks Are Disproportionate to the Results Obtained.

"[T]he plaintiff's monetary success in a private civil rights suit must be the primary determinant of the attorney's fee." *Migis*, 135 F.3d at 1048. While "[t]here is no strict rule or maximum limit on the permissible ratio of fees to damages," courts consider the "totality of the circumstances" in determining whether the attorneys' requested fees are disproportionate to the plaintiff's monetary recovery. *Lewallen*, 394 F. App'x at 46-47; *Dodge v. Hunt Petroleum Corp.*, 174 F. Supp. 2d 505, 510 (N.D. Tex. 2001). Fee awards are not intended to result in "windfalls to attorneys." *City of Riverside v. Rivera*, 477 U.S. 561, 580 (1986).

Here, the Court's Final Judgment awards Plaintiff $350,000 in compensatory damages and back pay, plus interest. Dkt. # 106 at 1-3. Plaintiff's request for $1,259,043 in fees is more than 3.5 times that $350,000 amount. In *Alvarez*, the district court significantly reduced the plaintiff's requested fee award after observing that the requested amount was "more than two times the amount of the Court's judgment." *Alvarez I*, 2020 WL 1677715, at *1 (W.D. Tex. Apr. 6, 2020). And here, the disproportionality of Plaintiff's requested fee award is particularly stark in light of the fact that Plaintiff abandoned (and therefore did not prevail on) her Equal Pay Act, disparate impact, and retaliation claims.

III.    **The Court Should Reduce Counsels' Hourly Rates in Calculating the Lodestar.**

    A. **$400 Is a Reasonable Hourly Rate for Mr. Schmidt.**

Mr. Schmidt seeks an hourly rate of $625, citing his 32 years of experience practicing law in Texas. Dkt. # 111-2 at 8. But he does not claim to actually charge that rate to any paying clients, because he handles cases exclusively on a contingency basis. *Id.* And while he bases his requested rate of $625 per hour on rates charged by purportedly comparably experienced employment lawyers, such as those published in the Texas Employment Lawyers' Association 2022 Hourly Rates Yearbook ("TELA Yearbook"), his self-described practice experience does not demonstrate that he is entitled to the rate he is asking Texas taxpayers to pay.

Mr. Schmidt's affidavit notes that he spent nine of his 32 years of legal practice working for the Texas Legislative Counsel, the Texas Ethics Commission, and the Texas Attorney General's Office. Dkt. #111-2 at 1. The affidavit does not specify how many years he spent with each employer, in which division of the Attorney General's Office he served, or whether he obtained employment litigation experience—or *any* litigation experience—in any of those three positions. Absent such information, the Court should not simply assume that those nine years count as relevant experience that justifies the hefty $625 hourly fee he seeks.

Indeed, Mr. Schmidt's affidavit appears to confirm that he lacks the relevant experience trying employment cases that one would expect of a three-decade employment lawyer who seeks more than $600 per hour. The affidavit lists a total of seven litigation matters that Mr. Schmidt handled prior to this case, and his descriptions of those matters do not demonstrate significant trial skill and experience in employment law. *Id.* at 5-8. Five of those matters were resolved by either pre-trial settlements (*Del Bosque* and *Charles*), arbitration (*Huggins*), or rulings for the defendant (*Jones* and *Chavez*). *Id.* Only two (*Doe* and *Collier*) resulted in favorable jury verdicts, and Mr.

Schmidt's role in those cases is unclear; he had two other lawyers serving as co-counsel in *Doe*, and three co-counsel in *Collier*. *Id.* at 7. Also, *Doe* was not an employment case. Thus, Mr. Schmidt's list of prior cases contains only a single employment case in which he—with the help of three co-counsel—obtained a favorable verdict.

Plaintiff's counsel and their attorney declarants, particularly Mr. Wiley, rely heavily on the TELA Yearbook to support Mr. Schmidt's requested hourly rate of $625. But the "Yearbook" is not an objective source of data; it was assembled by Mr. Wiley and other plaintiffs' lawyers who handle labor and employment cases. *See* Wiley Decl., Dkt. #111-7 at 22. Its self-evident purpose is to promote the hourly rates cited therein—some over $1,000 per hour—as "reasonable" rates for Texas employment lawyers. *Id.* at 63. And it lists only those awards that Mr. Wiley and his collaborators chose to include. *See id.* at 45 (acknowledging that "[t]here may be relevant rates both higher and lower that are not contained in it."). Perhaps for these or other reasons, Judge Boyle in the Northern District of Texas expressly declined to rely on the Yearbook, noting that she could find "no case or court that references the Yearbook or similar materials in determining reasonable hourly rates." *Tovar v. S.W. Bell Tel., L.P.*, No. 3:20-CV-1455-B, 2022 WL 2306926, at *3 (N.D. Tex. June 27, 2022).

In any event, the TELA Yearbook does not support Mr. Schmidt's requested rate of $625 per hour. That rate is at the high end of the Yearbook's range of rates for a lawyer in the Western District in the class of the 1980s, and it exceeds the median rate of $588.90. Dkt. #111-7 at 225. Of the 68 employment law attorneys listed for the Western District in the TELA Yearbook, Mr. Schmidt's requested rate exceeds all but seven. *Id.* As discussed above, Mr. Schmidt's practice experience includes nearly a decade in positions that likely provided little or no experience in

litigation or employment law. Accordingly, to the extent the Court opts to rely on the TELA Yearbook, Mr. Schmidt should be treated comparably to a 1990s or 2000s law school graduate. The Yearbook lists the median rate for employment lawyers in the Western District who graduated from law school in the 1990s as $484.23. Dkt. #111-7 at 232. The median rate for such lawyers who graduated in the 2000s as $377.55. *Id.* at 244.

The recent cases cited above show that even an experienced employment lawyer would be unlikely to receive much more than $400 per hour in the Western District. In *Menefee*, Judge Nowlin awarded an employment lawyer with nearly 20 years' experience only $325 per hour. 2021 WL 3413319, at \*12. In *Burns*, Judge Guaderrama awarded an attorney with 20 years' experience $250 per hour. 2021 WL 534711, at \*5-6. And in *Alvarez*, Judge Albright awarded $350 per hour for all the plaintiff's attorneys—including Mr. Wiley, an experienced employment lawyer. 2020 WL 1677715, at \*8. That is consistent with the most recent State Bar Income and Hourly Rates report, which shows that the median hourly rate for attorneys in Austin in 2019 was $299.[3] Based on all of the above, $400 per hour is a reasonable rate for Mr. Schmidt's services.

**B. $385 Per Hour Is a Reasonable Rate for Mr. Notzon.**

As with Mr. Schmidt, Mr. Notzon does not actually bill any clients for the hourly rate he is requesting in this case. Dkt. #111-3 at 6. Mr. Wiley opines that "analyzing *actual* and *identified* rates—either awarded or billed"—is the best way to determine "prevailing rates in the relevant community." Dkt. #111-7 at 46 (emphasis in original). Since neither Mr. Schmidt nor Mr. Notzon purport to bill actual clients at the rates they are seeking in this case, UT Austin believes the best guidance for determining their rates is to be found in the recent fee orders from judges in the

---

[3] *See* Exhibit A at 10.

Western District, such as those cited above. Consistent with those precedents, Mr. Notzon's requested hourly rate of $575 should be reduced to a rate no higher than $385.

In the TELA Yearbook, Mr. Notzon's inflation-adjusted rate as of the end of 2021 is listed as $391.75. *See* Dkt. #111-7 at 243. That figure is based on Mr. Notzon having requested and been awarded an hourly rate of $350 by Judge Sparks in an employment-law case in the Austin Division in 2016. *See Saldivar v. AISD*, Civ. A. No. 1:14-CV-00177-SS, 2016 WL 1064654, at *5 (W.D. Tex. March 15, 2016); *see also* Dkt. #111-3 at 3. As noted above, however, recent fee awards in the Western District indicate that a lawyer of Mr. Notzon's skill and experience might well be awarded less. Further, as noted above, the median hourly rate for attorneys in Austin in 2019 was $299. Based on these figures, it would be reasonable to award Mr. Notzon a rate no higher than $385 per hour.

Mr. Notzon attempts to downplay the fact that he previously testified to the reasonableness of his $350 hourly rate, claiming that, at the time, he "was not aware of the rates being awarded and charged by other attorneys of comparable experience, reputation, and competency practicing plaintiff's employment law in Austin." Dkt. #111-3 at 3. But at least one other court in the Western District has used an attorney's testimony in a prior case regarding the reasonableness of his hourly rate in that case to reduce the attorney's rate in the later case. *See Burns*, 2021 WL 534711, at *5-6 (citing attorney's affidavit in another case that $300 per hour was a reasonable rate in awarding the same attorney $250 per hour in a less complex case). Similarly, it is worth noting Mr. Notzon's acknowledgement of his pending request for a $500 hourly rate in a lawsuit over Texas's redistricting litigation from the last decade—a requested rate he has not received. Dkt. #111-3 at 2. Although Mr. Notzon may be "less experienced in that area of litigation," *id.*, his assertion that

"the complexity is similar" between this case and that one beggars belief. Moreover, in a recent voter identification case for which Mr. Notzon served as counsel, he requested an hourly rate of $544 and $572, but the district court awarded fees at $350 per hour. *Veasey v. Abbott*, Civ. A. No. 2:13-cv-193, 2020 WL 9888360, at *39 (S.D. Tex. May 27, 2020). No party challenged that rate, and the Fifth Circuit affirmed the award on appeal. *Veasey v. Abbott*, 13 F.4th 362, 367 (5th Cir. 2021).

Plaintiff attempts to bolster her requested rates with declarations from several other attorneys who practice employment law. But those declarations are undermined by recent fee orders from judges in the Western District rejecting as unreasonable the hourly rates sought by those same attorneys that are similar to the hourly rates upon which their declarations rely. For example, Mr. Wiley states that attorneys with less experience than Mr. Schmidt and Mr. Notzon charge higher rates, pointing to Colin Walsh (who earned his J.D. in 2011) as an example. Dkt. #111-7. Mr. Wiley testifies that Mr. Walsh charges $600 per hour. *Id.* Even assuming that Mr. Walsh has clients who actually pay him that rate, it doesn't mean he would be awarded fees based on that rate. Just this year, the Fifth Circuit upheld a district court's order reducing Mr. Walsh's hourly rate from his requested rate ($585 in that case) to $350 per hour. *See Alvarez II*, 2022 WL 822178; *Alvarez I*, 2020 WL 1677715, at *6-7.

While Mr. Wiley endorses Mr. Notzon's requested hourly rate of $575, he and Mr. Notzon are both 1996 law school graduates, and Mr. Wiley's own inflation-adjusted rate is listed as $535 per hour. Mr. Wiley fails to explain why he believes Mr. Notzon should be awarded a rate $40 more per hour than he himself charges. *See generally* Dkt. #111-7. This analytical gap is particularly pronounced because it fails to account for differences in experience and firm size. Mr. Wiley states

that he has experience working in "one of the largest firms in Texas" and practiced as a solo practitioner for only one year, whereas Mr. Notzon has practiced as a solo practitioner for his entire career. *Compare* Dkt. #111-7 at 7, *with* Dkt. #111-3 at 1. Fee orders in the Western District have recognized that small firms and solo practitioners (like Plaintiff's counsel here) have lower median rates than larger firms. *Id.* at 13; *see also Agredano*, 2021 WL 4228340, at *10 (accounting for firm size in determining a reasonable hourly rate); *Alvarez I*, 2020 WL 167715, at *7 (declining to rely on attorneys' fee cases that involved "rates awarded to attorneys in national and international law firms with hundreds of attorneys" and "required some form of specialization on the part of counsel"). Neither the TELA Yearbook, Mr. Wiley's declaration, or the recent Western District cases cited above support Mr. Notzon's requested rate of $575 per hour.

### C. $350 Per Hour Is a Reasonable Rate for Mr. McKnight.

Plaintiff seeks $575 per hour for Mr. McKnight's work preparing her motion for attorneys' fees. Dkt. #111 at 12. As with the hours billed by Mr. Schmidt and Mr. Notzon, Defendant does not challenge as excessive the number of hours expended by Mr. McKnight, nor does Defendant dispute Mr. Schmidt's and Mr. Notzon's assertions that it was more expedient to retain Mr. McKnight to prepare Plaintiff's Motion for Attorneys' Fees than to prepare the motion themselves. *See* Dkt. #111-2 at 9; Dkt. #111-3 at 7. Instead, Defendant challenges only the $575 hourly rate requested by Mr. McKnight.

This year, the Fifth Circuit upheld Judge Albright's 2020 order in *Alvarez* reducing Mr. McKnight's hourly rate to $350. *See Alvarez II*, 2022 WL 822178; *Alvarez I*, 2020 WL 1677715, at *6-7. In that case, Mr. McKnight was brought into the litigation for the same purpose for which he was retained here—to handle the plaintiff's motion for attorneys' fees. *Id.* And as with the hourly rates requested by Mr. Schmidt and Mr. Notzon, the rate sought by Mr. McKnight is significantly

higher than the rates awarded in other attorneys' fee cases in the Western District cited above, as well as the average hourly rate for Austin attorneys in 2019. Accordingly, it would be appropriate here to award Mr. McKnight a rate of $350 per hour.

### D.  The Court Should Not Award More Than $850,129.25 in Attorneys' Fees.

As the Supreme Court has observed, "because state and local governments have limited budgets, money that is used to pay attorney's fees is money that cannot be used for programs that provide vital public services." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 559 (2010). The fees the Court awards will be funded by public dollars. For the reasons discussed above, a significant reduction in the amount of attorneys' fees awarded to Plaintiff is warranted. As calculated below, the fee award for Plaintiff's counsel should not exceed $821,209.25.

| Timekeeper | Hours | Rate | Lodestar Fee |
|---|---|---|---|
| Robert W. Schmidt | 1,156.80 | $400 | $462,720.00 |
| Robert S. Notzon | 920.05 | $385 | $354,219.25 |
| Robert E. McKnight, Jr. | 12.20 | $350 | $4,270.00 |
| **Total Hours/Lodestar Fee** | 2,089.05 | | $821,209.25 |

### CONCLUSION

The Court should award Plaintiff's counsel no more than $821,209.25 in attorneys' fees.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN COWLES**
Deputy Attorney General for Civil Litigation

**CHRISTOPHER D. HILTON**
Chief for General Litigation Division

*/s/ Amy S. Hilton*
**AMY S. HILTON**
Assistant Attorney General
Texas State Bar No. 24097834
amy.hilton@oag.texas.gov
Attorney-in-Charge

Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 / Fax (512) 320-0667

**COUNSEL FOR UT AUSTIN**

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2022, a true and correct copy of the foregoing document

was served via the Court's ECF system to all counsel of record.

_/s/ Amy S. Hilton_
AMY S. HILTON
Assistant Attorney General